Exhibit C

AGREEMENT made as of the 1st day of January, 1979, by and between CAN'T STOP PRODUCTIONS, INC. of 65 East 55th Street, New York, New York 10022 (herein called "Company") and GLENN M. HUGHES, DAVID HODO, ALEXANDER BRILEY, RANDOLPH JONES, FELIPE ROSE and VICTOR WILLIS (herein jointly and severally called "you").

WHEREAS, Company and you are parties to various personal service agreements dated October 14, 1977 and November 28, 1977 (the "Prior Agreements") and the parties desire to terminate the term of the Prior Agreements and to continue their relationship in accordance with the terms set forth in this agreement;

WHEREAS, you have informed Company that it is your desire that your remuneration under the terms of this agreement be determined in such a manner as will permit you to benefit to the extent of your success and likewise accept the risk of failure and that it is your desire not to receive a fixed weekly or other periodic salary.

NOW THEREFORE, in consideration of the premises and the mutual covenants and promises made herein, the parties hereby agree as follows:

1. <u>Engagement.</u>

(a) Company hereby engages you and you hereby accept such engagement to render your exclusive services to Company, during the Term of this Agreement, as a vocalist, performer, dancer, actor and in such other capacity as Company may direct in consultation with you if you so request, in any and all fields of endeavor in the entertainment industry. The foregoing fields of endeavor shall include, without limitation, motion pictures, filmed or live television, radio, theatrical performances, tours, roadshows, night clubs, and in making master recordings or phonograph records as a featured, non-featured or background vocalist and in all other media or fields of public entertainment as now known or as may be hereafter devised. You shall render your services hereunder to the best of your efforts and ability, and under the direction and control of Company, and at such times and places, anywhere in the world, as Company may designate from time to time in consultation with you if you so request, and you shall comply with all rules

1

and regulations of Company. Without limiting the generality of the foregoing, you shall render your services hereunder either alone or together with such others as Company may direct, including but not limited to your performing as a member of the performing and recording group known as "Village People". However, Company shall not have the right to require you to perform as a member of any group other than the "Village People" unless Company has first secured your prior written consent, which consent shall not be unreasonably withheld by you. As of the commencement of this agreement, it is contemplated that your services will be rendered primarily as a member of the "Village People".

(b)  During the Term hereof, you will not perform or render services of any nature whatsoever for any third party without first consulting with Company and then obtaining Company's prior written consent, which Company shall have the right to withhold in its sole discretion, and you will not engage in any activity which would interfere with the performance of your services hereunder.

(c)  Subject to your full and faithful performance of all the terms and conditions hereof, if your individual gross earnings hereunder from all sources shall not achieve the respective amounts set forth below, then you shall have the right to terminate the exclusivity provisions of paragraph 1 hereof with respect to your services by giving Company written notice to such effect only during the thirty-day period following the expiration of the applicable earnings period, and the foregoing shall be your sole remedy in such event:

| Period | Earnings |
|---|---|
| January 1, 1979 to December 31, 1979 | $50,000 |
| January 1, 1979 to December 31, 1980 | $100,000 |
| January 1, 1979 to December 31, 1981 | $150,000 |
| January 1, 1979 to December 31, 1982 | $200,000 |
| January 1, 1979 to December 31, 1983 | $250,000 |

2.  <u>Term of Engagement.</u>

(a)  The term of this agreement (the "Term") shall consist of an initial period commencing on the date hereof and ending on December 31, 1979, unless sooner terminated by Company in accordance with the provisions hereof, plus the

option periods, if exercised, as provided in subparagraphs 2(b),(c), (d) and (e) hereof.

(b) (i) Company is hereby granted the irrevocable option to extend the Term for an additional period of one (1) year to and including December 31, 1980, unless sooner terminated by Company in accordance with the provisions hereof.

(ii) If Company exercises the foregoing option, Company is hereby granted a second irrevocable option to extend the Term for an additional period of one (1) year to and including December 31, 1981, unless sooner terminated by Company in accordance with the provisions hereof.

(iii) If Company exercises the foregoing option, Company is hereby granted a third irrevocable option to extend the Term for an additional period of one (1) year to and including December 31, 1982, unless sooner terminated by Company in accordance with the provisions hereof.

(iv) If Company exercises the foregoing option, Company is hereby granted a fourth irrevocable option to extend the Term for an additional period of one (1) year to and including December 31, 1983, unless sooner terminated by Company in accordance with the provisions hereof.

(d) The foregoing option shall be deemed automatically exercised by Company unless it shall give you written notice to the contrary at least fourteen (14) days prior to the expiration of the then current period of the Term. Company shall have the right to exercise or refrain from exercising the foregoing option(s) with respect to any one, or more, or all of you. Accordingly, if Company shall not extend this agreement with respect to any one or more of you, such person's future services shall not thereafter be subject to this agreement, however, the remaining members of you shall in all respects be and remain subject to this agreement.

3. Payments.

Company shall pay you and you hereby accept the following in full consideration for your services hereunder and all rights granted by you hereunder:

3

−20−

(a) <u>Records.</u>

(i) You shall each be entitled to the contingent royalty payment (the "Net Royalty") set forth in paragraph 1(a)(i) of Exhibit "A" annexed hereto based upon the sale of phonograph records consisting of master recordings bearing your performances as a vocalist as part of the featured recorded performances of the artist known as "Village People" that are recorded by Company commencing with the master recordings comprising the albums entitled "MACHO MAN" and "CRUISIN" and all for all master recordings made by Company after the date hereof.

(ii) Intentionally omitted.

(iii) As used herein, the term "Net Royalty" shall mean the amount by which the royalty set forth in Exhibit "A" annexed hereto exceeds the Recording Costs described in Exhibit "A" that are incurred by Company in making the Master described in paragraph 3(a)(i) and (ii) hereof. Any and all terms set forth in Exhibit "A" are deemed incorporated into and made a part of this agreement.

(iv) The Net Royalty shall be payable to each person comprising you except that the Net Royalty payable to Victor Willis shall be the subject of a separate agreement between Company and Victor Willis.

(b) <u>Tours and Concerts.</u>

(i) You shall collectively be entitled to the Net Income in respect of your appearances as the Village People at single engagements or tours comprised of concert, cabaret, night club or similar appearances (the "Tours") but excluding any such appearances that are made for promotional purposes. The term "Net Income" as used herein shall mean the total amounts received by Company in respect of your appearances as the Village People on the Tours (the "Gross Income") less the aggregate of (A) Company's Tour Fee and (B) all expenses (direct or indirect) that are incurred by Company in respect of the Tours, including without

4

- 21 -

limitation, booking agency fees, travel, meals, lodging, costumes, salaries for road crew, road managers, and others, rehearsal fees and expenses, scenery, props, equipment, trucking, advertising and promotion, reasonable legal and accounting, a reasonable reserve to cover start-up costs for the next Tour, and all other expenses of any nature whatsoever incurred in the preparation and operation of the Tour, and anything related thereto and (C) the Net Tour Loss in respect of any prior Tour other than the first Tour, and (D) with respect to the first Tour, if the first Tour results in a Net Tour Loss, an amount to the lesser of fifty (50%) percent of the Net Tour Loss or fifty (50%) percent of Company's Tour Fee in respect of the First Tour. As used in the preceding two (2) sentences, the term "Net Tour Loss" shall mean the amount by which the aggregate of items (A) and (B) above exceed the Gross Income in respect of a Tour. Any and all expenses incurred by Company prior to the date hereof in preparation for the first Tour to be conducted after the date hereof are deemed to be expenses of the first Tour.

(ii)   Company shall deduct and retain from Gross Income a Tour Fee of twenty-five (25%) percent of the Gross Income.

(iii)   At your request, Company shall review with you collectively prior to the commencement of each Tour, the proposed Tour locations, as well as the potential income and expenses in respect of such Tours. Company acknowledges that it may, but shall not be obligated to, provide for a weekly or other periodic payment to you during the Tour. The determination of the amount of such payment, if any, shall be in Company's sole control and discretion, and any such payment shall constitute an expense described in item (B) of paragraph 3(b)(i).

(c)   Merchandising Rights. - As used herein, the term "Merchandising Rights" shall mean the use of your name or likeness or the name "Village People" on articles other than phonograph records (i.e., T-shirts, belt buckles, posters, bracelets, necklaces and similar articles). You shall collectively be entitled to receive the following percentage of the net income received by Company in connection with the exploitation of Merchandising Rights after deduction of all costs and expenses incurred by Company in connection therewith (the "Net Merchandising Income").

5

-22-

| Net Merchandising Income | Percentage |
|---|---|
| 0 – $75,000 | 10% |
| $75,001 – $150,000 | 15% |
| $150,001 – $250,000 | 20% |
| $250,001 or more | 25% |

Company shall not use your individual names as an endorsement of any product or service without such individual's consent.

(d) <u>Promotional Appearances.</u> – With respect to promotional appearances (including, but not limited to television) within the United States of America, or outside of the United States of America you shall each be entitled to the applicable union scale payment that is payable for such appearance, or if there shall be no applicable union scale payment, you shall be entitled to such amount as Company shall be able to obtain for you, if any, from the record company in respect of such appearances. Company shall pay all reasonable travel and per diem expenses approved by Company in connection with the promotional appearances made by you anywhere in the world. You acknowledge that it is a material obligation on your part to make promotional appearances at such times and places as Company may direct, to promote records embodying the performances of Village People, and for such other purposes as Company may deem necessary or desirable. You further acknowledge that, in certain instances, there may be no payments to you for your promotional appearances. The sums paid to you pursuant to this subparagraph (d) shall not be deducted from the Net Royalty described in paragraph 3(a) hereof in respect of phonograph records embodying the performances of the Village People, or from any other sums payable to you hereunder.

(e) <u>Television and Motion Pictures.</u>

(i) With respect to your performances as the Village People on any television program, special or series (other than promotional appearances described in paragraph 3(d) hereof), or in any motion picture, you shall be entitled to 66-2/3% of the net fee (the "Net Fee") that is paid to Company in respect of providing your services as the Village People or otherwise, after deducting from gross income ("Gross Income") all costs and expenses incurred by Company in connection therewith, and Company shall be entitled to retain the remaining 33-1/3% thereof. The foregoing shall be applicable with respect to all income and for all purposes except to the extent specifically limited or modified below.

6

(ii) If Company shall utilize the services of a booking agent, who is entitled to a fee for his services in excess of 8-1/3% of Gross Income, then the agent's fee shall constitute a deductible expense and the 66-2/3% amount set forth in the first sentence of paragraph 3(e)(i) is deemed increased to 75% and Company shall be entitled to retain the remaining 25% thereof.

(iii) If the Gross Income for your collective services with respect to the appearances described in paragraph 3(e) is collectively Five Thousand ($5,000.) Dollars or less, then the 75% amount set forth in the first sentence of this paragraph (e) is deemed increased to 100%.

(iv) If Company shall render services or act in any capacity ("Separate Services") other than or in addition to providing the services of the Village People in respect of such television programs, specials or series or motion pictures, (e.g. as Producer, executive producer, director, etc.) Company shall be entitled to retain the fee paid to it for its Separate Services without any participation or claim by you and without affecting Company's right to retain its applicable 33-1/3% or 25% fee out of the Net Fee that is paid to Company with respect to providing your services as the Village People or otherwise.

(v) If Company's Separate Services shall be as producer or executive producer, then no costs or expenses shall be deducted from the moneys payable to you pursuant to this paragraph 3(e).

(iv) If Company's Separate Services shall be as the producer or executive producer of a television "special" featuring Village People, the the 66-2/3% amount set forth in the first sentence of paragraph 3(e) is deemed increased to 100% only with respect to the first Twenty Thousand ($20,000.) Dollars of your collective Gross Income with respect to your appearance on any such television special.

(vii) If Company's Separate Services shall be as the producer or executive producer of a <u>second</u> or any subsequent feature length motion picture featuring Village People, then the 66-2/3% amount set forth in the first sentence of paragraph 3(e) is deemed increased to 100% only with respect to the first Two Hundred Thousand ($200,000.) Dollars of your collective Gross Income with respect

7

-24-

to your appearances in the <u>second</u> or in any subsequent motion picture featuring Village People.

(f) (i) The amounts payable to you pursuant to paragraphs 3(b), (c) and (e) hereof in respect of your performances as the Village People shall be divided among you by Company in accordance with the percentages described in Exhibit "B" annexed hereto. However, if any one of you shall perform hereunder alone and not as a member of the Village People, such person shall be entitled to the entire amount otherwise payable to you collectively pursuant to paragraphs 3(b),(c) and (e) hereof.

(ii) Notwithstanding anything to the contrary expressed or implied herein, Company shall have the right to engage additional persons (the "New Member(s)") to perform with you as a member of Village People. If any one or more of you shall no longer be a member of Village People (A) by reason of Company's election not to exercise its option to extend the Term hereof with respect to such person or (B) by reason of termination pursuant to paragraph 9 hereof or otherwise (the "Discontinued Member"), Company may substitute such New Member in this Agreement for the Discontinued Member and such New Member shall be bound by all the terms and conditions hereof that relate to or involve you, including, without limitation, the substitution of the New Member for the percentage that the Discontinued Member would otherwise have been entitled to pursuant to paragraph 3(f)(i) hereof. Except as set forth in the preceding sentence, Company may not diminish your respective percentages set forth on Exhibit "B" by engaging a New Member.

(g) Except as expressly set forth above, and except where a minimum union scale payment is required pursuant to the rules of any union having jurisdiction, no remuneration or other payments shall be payable to you in respect of the services rendered by you hereunder or the rights granted by you hereunder. No additional compensation shall be made to you by reason of the number of hours worked or by reason of any hours worked on Saturdays, Sundays or holidays.

(h) Company shall render statements to you setting forth the amounts payable to you pursuant to this agreement in accordance with the following schedule and such statements shall be accompanied by payment of the amount shown to be due thereon less any permissible offsets.

(i) Records - in accordance with paragraph 3 of Exhibit "A";

(ii) Tours and Concerts - within sixty (60) days following the conclusion of each Tour;

(iii) Merchandising Rights - within sixty (60) days following June 30th and December 31st of each year;

(iv) Promotional Appearances - within fourteen (14) days following Company's receipt of the payment(s) covering the applicable promotional appearance;

(v) Television and Motion Pictures - within fourteen (14) days following the completion of your services with respect to the particular television or motion picture engagement. However, if Company receives any payments prior to your rendering the services described in this category, then Company shall immediately be entitled to retain its applicable 33-1/3% or 25% share from the amount paid to Company. From the balance, you shall be entitled to payment of 2/3 thereof within seven (7) days following Company's receipt of such amount and the remaining 1/3 shall be payable to you within the fourteen (14) day period described in the preceding sentence (i.e., if Company receives One Hundred Thousand ($100,000.) Dollars, Company shall retain its fee of 33-1/3% and from the balance of Sixty Six Thousand Six Hundred and Sixty Six ($66,666.), Company shall pay you Forty Four Thousand Four Hundred and Forty Four ($44,444.) Dollars and shall retain Twenty Two Thousand Two Hundred Twenty Two ($22,222.) Dollars, which amount shall be payable to you after completion of your services).

Notwithstanding anything to the contrary expressed or implied herein, in respect of any payments to you that are to be based upon payments received by Company from third parties, Company shall have no obligation to make any payments to you herein unless and until the payments from such third parties are

9

-26-

actually received by Company. If Company shall arrange for payments to be made to you directly by a third party, you shall look solely to such third parties, and not to Company, for such payments.

(i) At any time within one (1) year after any statement is rendered to you hereunder, you shall have the right collectively to give Company written notice of your intention to examine Company's books and records with respect to such statement. Such examination shall be commenced within three (3) months after the date of such notice, at your sole cost and expense, by any certified public accountant or attorney designated by you. Such examination shall be made during Company's usual business hours at the place where Company maintains the books and records which relate to you and which are necessary to verify the accuracy of the statement(s) specified in your notice to Company and your examination shall be limited to the foregoing. Your right to inspect Company's books and records shall be only as set forth in this paragraph and Company shall have no obligation to produce such books and records more than once with respect to each statement rendered to you. Unless notice shall have been given to Company as provided in this paragraph, each statement rendered to you shall be final, conclusive and binding on you and shall constitute an account stated. You shall be foreclosed from maintaining any action, claim or proceeding against Company in any forum or tribunal with respect to any statement or accounting rendered hereunder unless such action, claim or proceeding is commenced against Company in a court of competent jurisdiction within two (2) years after the date such statement.

4. Name - "Village People".

Company has advised you and you hereby acknowledge that Company previously created, established and owns the service mark and trade name "Village People" (the "Name") for any and all uses and purposes whatsoever throughout the world. You further acknowledge and agree that you do not and shall not have any ownership or other rights of any nature whatsoever in and to the Name and that for all purposes the ownership of, and all rights of any nature whatsoever, in and to the Name is and shall remain the sole, exclusive and separate property of Company with the sole right vested in Company to control the use of the Name. After the expiration or termination of this agreement, you shall make no use or association with the name "Village People" including any use such as "formerly with Village People".