ADELMAN MATZ P.C.
1173A Second Avenue, Suite 153
New York, New York 10065
Phone: (646) 650-2207

*Attorneys for Defendants/Counterclaim Plaintiff*

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
X------------------------------------------------------------X
CAN'T STOP PRODUCTIONS, INC.,

|  |  |
|---|---|
| Plaintiffs, | **ANSWER WITH AFFIRMATIVE DEFENSES, COUNTERCLAIMS AND JURY DEMAND** |
| -against- | |
| SIXUVUS, LTD., ERIC ANZALONE, ALEXANDER BRILEY, FELIPE ROSE, JAMES F. NEWMAN, RAYMOND SIMPSON, and WILLIAM WHITEFIELD, | Case No.: 7:17-cv-06513-CS |
| Defendants. | |

X------------------------------------------------------------X

Defendants Sixuvus, Ltd. ("Sixuvus"), Eric Anzalone ("Anzalone"), Alexander Briley ("Briley"), Felipe Rose ("Rose"), James F. Newman ("Newman"), Raymond Simpson ("Simpson"), and William Whitefield ("Whitefield") (collectively "Defendants"), by their undersigned attorneys, submit this Answer, along with their Affirmative Defenses, and Counterclaims in response to the Complaint ("Complaint") of plaintiff Can't Stop Productions, Inc., ("Plaintiff" or "Can't Stop") upon knowledge as to themselves and their own actions and upon information and belief as to all others matters alleged, answers as follows:

## PARTIES

1.     Defendants deny knowledge and information sufficient to form a belief as to the truth of the allegations contained in paragraph 1 of the Complaint, and aver that paragraph 1 of the Complaint asserts legal conclusions to which no response is required.

2.      Defendants deny knowledge and information sufficient to form a belief as to the truth of the allegations in paragraph 2 of the Complaint, except admit that Sixuvus, Ltd., is a corporation organized and existing under the laws of the State of New York, with its principal place of business in New York, New York.

3.      Defendants admit the truth of the allegations in paragraph 3 of the Complaint.

4.      Defendants admit the truth of the allegations in paragraph 4 of the Complaint.

5.      Defendants admit the truth of the allegations in paragraph 5 of the Complaint.

6.      Defendants deny the truth of the allegations in paragraph 6 of the Complaint.

7.      Defendants deny the truth of the allegations in paragraph 7 of the Complaint.

8.      Defendants admit the truth of the allegations in paragraph 8 of the Complaint.

9.      Defendants deny the truth of the allegations contained in paragraph 9 of the Complaint.

## JURISDICTION AND VENUE

10.      Defendants deny knowledge and information sufficient to form a belief as to the truth of the allegations contained in paragraph 10 of the Complaint, and aver that paragraph 10 of the Complaint asserts legal conclusions to which no response is required.

11.      Defendants deny knowledge and information sufficient to form a belief as to the truth of the allegations contained in paragraph 11 of the Complaint, and aver that paragraph 11 of the Complaint asserts legal conclusions to which no response is required.

## COMMON ALLEGATIONS

12.      Defendants deny knowledge and information sufficient to form a belief as to the truth of the allegations contained in paragraph 12 of the Complaint.

13.    Defendants deny knowledge and information sufficient to form a belief as to the truth of the allegations contained in paragraph number 13 of the Complaint, and otherwise aver that the alleged Agreement speaks for itself and refers the Court to said agreement for the best evidence of the terms set forth therein.

14.    Defendants deny knowledge and information sufficient to form a belief as to the truth of the allegations contained in paragraph number 14 of the Complaint, and otherwise aver that the alleged Agreement speaks for itself and refers the Court to said agreement for the best evidence of the terms set forth therein.

15.    Defendants deny knowledge and information sufficient to form a belief as to the truth of the allegations contained in paragraph 15 of the Complaint.

16.    Defendants deny knowledge and information sufficient to form a belief as to the truth of the allegations contained in paragraph 16 of the Complaint and otherwise aver that the alleged agreements speak for themselves and refers the Court to said agreements for the best evidence of the terms set forth therein.

17.    Defendants deny knowledge and information sufficient to form a belief as to the truth of the allegations contained in paragraph 17 of the Complaint.

18.    Defendants deny knowledge and information sufficient to form a belief as to the truth of the allegations contained in paragraph 18 of the Complaint, and aver that paragraph 18 of the Complaint asserts legal conclusions to which no response is required.

19.    Defendants deny knowledge and information sufficient to form a belief as to the truth of the allegations contained in paragraph 19 of the Complaint, and otherwise aver that the alleged Agreement speaks for itself and refers the Court to said agreement for the best evidence of the terms set forth therein.

20.    Defendants deny knowledge and information sufficient to form a belief as to the truth of the allegations contained in paragraph number 20 of the Complaint, and otherwise aver that the alleged Agreement speaks for itself and refers the Court to said agreement for the best evidence of the terms set forth therein.

21.    Defendants deny knowledge and information sufficient to form a belief as to the truth of the allegations contained in paragraph number 21 of the Complaint.

22.    Defendants deny knowledge and information sufficient to form a belief as to the truth of the allegations contained in paragraph 22 of the Complaint, except admit that Sixuvus was formed in 1987 and admit that Can't Stop and Sixuvus entered into an oral agreement that allowed Sixuvus to provide live performances of Village People in return for a license fee. Defendants otherwise state that this paragraph contains allegations that are so vague and ambiguous that Defendants cannot reasonably prepare a response.

23.    Defendants deny the truth of the allegations contained in paragraph 23 of the Complaint.

24.    Defendants deny the truth of the allegations contained in paragraph number 24 of the Complaint, including Plaintiff's characterization of the document, and otherwise aver that the document speaks for itself and refers the Court to said document.

25.    Defendants deny knowledge and information sufficient to form a belief as to the truth of the allegations contained in paragraph number 25 of the Complaint, and otherwise aver that the alleged Agreement speaks for itself and refers the Court to said agreement for the best evidence of the terms set forth therein.

26.    Defendants deny knowledge and information sufficient to form a belief as to the truth of the allegations contained in paragraph number 26 of the Complaint, and otherwise aver

that the alleged Agreement speaks for itself and refers the Court to said agreement for the best evidence of the terms set forth therein.

27.     Defendants deny knowledge and information sufficient to form a belief as to the truth of the allegations contained in paragraph number 27 of the Complaint, and otherwise aver that the alleged Agreement speaks for itself and refers the Court to said agreement for the best evidence of the terms set forth therein.

28.     Defendants deny the truth of the allegations contained in paragraph number 28 of the Complaint, including Plaintiff's characterization of the purpose of Sixuvus' signature.

29.     Defendants deny knowledge and information sufficient to form a belief as to the truth of the allegations contained in paragraph 29 of the Complaint.

30.     Defendants deny knowledge and information sufficient to form a belief as to the truth of the allegations contained in paragraph 30 of the Complaint, except admit that on May 30, 2017 Sixuvus received an email purporting to terminate its license from Plaintiff.

## AS AND FOR AN ANSWER TO THE FIRST CLAIM FOR RELIEF
### (Trademark Infringement)

31.     Defendants deny the truth of the allegations contained in paragraph 31 of the Complaint.

32.     Defendants deny knowledge and information sufficient to form a belief as to the truth of the allegations contained in paragraph 32 of the Complaint, and aver that paragraph 32 of the Complaint asserts legal conclusions to which no response is required.

33.     Defendants deny knowledge and information sufficient to form a belief as to the truth of the allegations contained in paragraph 33 of the Complaint.

34.     Defendants deny knowledge and information sufficient to form a belief as to the truth of the allegations contained in paragraph 34 of the Complaint, and aver that paragraph 34 of the Complaint asserts legal conclusions to which no response is required.

35.     Defendants deny knowledge and information sufficient to form a belief as to the truth of the allegations contained in paragraph 35 of the Complaint, except admit that Defendants dispute Plaintiff's rights in the alleged marks.

36.     Defendants deny knowledge and information sufficient to form a belief as to the truth of the allegations contained in paragraph 36 of the Complaint.

37.     Defendants deny the truth of the allegations contained in paragraph 37 of the Complaint, and aver that paragraph 37 of the Complaint asserts legal conclusions to which no response is required.

38.     Defendants deny the truth of the allegations contained in paragraph 38 of the Complaint, and aver that paragraph 38 of the Complaint asserts legal conclusions to which no response is required.

## AS AND FOR AN ANSWER TO SECOND CAUSE OF ACTION
### (For Declaratory Relief)

39.     Defendants deny knowledge and information sufficient to form a belief as to the truth of the allegations contained in paragraph 39 of the Complaint, and aver that paragraph 39 of the Complaint asserts legal conclusions to which no response is required.

40.     Defendants deny knowledge and information sufficient to form a belief as to the truth of the allegations contained in paragraph 40 of the Complaint, deny Plaintiff's characterization of Defendant's positions, and aver that paragraph 40 of the Complaint asserts legal conclusions to which no response is required.

41.      Defendants deny knowledge and information sufficient to form a belief as to the truth of the allegations contained in paragraph 41 of the Complaint, and aver that paragraph 41 of the Complaint asserts legal conclusions to which no response is required.

42.      Defendants deny knowledge and information sufficient to form a belief as to the truth of the allegations contained in paragraph 42 of the Complaint, and aver that paragraph 42 of the Complaint asserts legal conclusions to which no response is required.

43.      Defendants deny the truth of the allegations contained in paragraph 43 of the Complaint, and aver that paragraph 43 of the Complaint asserts legal conclusions to which no response is required.

44.      Defendants deny knowledge and information sufficient to form a belief as to the truth of the allegations contained in paragraph 44 of the Complaint, and aver that paragraph 44 of the Complaint asserts legal conclusions to which no response is required.

## AFFIRMATIVE DEFENSES

Defendants hereby set forth their separate and distinct affirmative defenses to the claims set forth in Plaintiff's Complaint.  By listing any matter as an affirmative defense, Defendants do not assume the burden of proving any matter upon which Plaintiff bears the burden of proof under applicable law.

## FIRST AFFIRMATIVE DEFENSE

The Complaint fails to state a claim upon which the relief it requests may be granted.

## SECOND AFFIRMATIVE DEFENSE

Plaintiff's claims are barred in whole or in part by the doctrine of laches.

## THIRD AFFIRMATIVE DEFENSE

Plaintiff's claims are barred in whole or in part by the doctrines of Waiver and/or Estoppel.

## FOURTH AFFIRMATIVE DEFENSE

The damages Plaintiff seeks are the result of acts or omissions on the part of persons or entities over which Defendants had no control and has no control, and for whom Defendants were not responsible and are not responsible.

## FIFTH AFFIRMATIVE DEFENSE

The damages Plaintiff seeks are the result of acts or omissions or bad faith on the part of Plaintiff and/or acts or omissions or bad faith on the part of third parties.

## SIXTH AFFIRMATIVE DEFENSE

Plaintiff's claims are barred in whole or in part by failure to perform conditions precedent.

## SEVENTH AFFIRMATIVE DEFENSE

Plaintiff's claims are barred in whole or in part by the doctrine of ratification.

## EIGHTH AFFIRMATIVE DEFENSE

Plaintiff's claims are barred in whole or in part by its own bad and/or negligent acts.

## NINTH AFFIRMATIVE DEFENSE

Plaintiff has breached or induced others to breach the settlement agreement in the California Litigation, under which Victor Willis agreed to follow the preliminary injunction which provided that: "Victor Willis, as well as Victor Willis' associates, agents, suppliers, servants, employees, officers, directors, representatives, successors, assigns and attorneys, and any other person(s) acting in concert or participation with Victor Willis, [were] restrained and

enjoined from engaging, committing, or performing, directly or indirectly, any and all of the following acts:  **Disrupting any live performance or public appearance of Sixuvus performing as the Village People."**

### TENTH AFFIRMATIVE DEFENSE

Plaintiff's claims are barred in whole or in part on the grounds that Plaintiff failed to mitigate its alleged damages.

### ELEVENTH AFFIRMATIVE DEFENSE

Plaintiff's claims are barred in whole or in part by the doctrine of unjust enrichment.

### TWELFTH AFFIRMATIVE DEFENSE

Plaintiff's claims are barred in whole or in part by the statute of limitations.

### THIRTEENTH AFFIRMATIVE DEFENSE

Plaintiff's claims are barred in whole or in part by the doctrine of consent.

### FOURTEENTH AFFIRMATIVE DEFENSE

Plaintiff's claims are barred in whole or in part by lack of consideration.

### FIFTEENTH AFFIRMATIVE DEFENSE

Plaintiff's claims are barred in whole or in part by improper venue.

### SIXTEENTH AFFIRMATIVE DEFENSE

Plaintiff's claims are barred in whole or in part by the statute of frauds.

### SEVENTEENTH AFFIRMATIVE DEFENSE

Plaintiff's claims are barred in whole or in part by the doctrine of acquiescence.

### EIGHTEENTH AFFIRMATIVE DEFENSE

Plaintiff's claims are barred in whole or in part by the doctrine of unclean hands.

## NINETEENTH AFFIRMATIVE DEFENSE

Defendants have not infringed any valid and enforceable trademark rights owned by Plaintiff.

## TWENTIETH AFFIRMATIVE DEFENSE

Plaintiff's claims are barred in whole or in part by the doctrine of setoff, offset and/or recoupment.

## TWENTY-FIRST AFFIRMATIVE DEFENSE

Plaintiff's claims are barred in whole or in part by its own breaches of the alleged agreements and/or failure to perform.

## TWENTY-SECOND AFFIRMATIVE DEFENSE

Any recovery by Plaintiff should be limited to the extent Plaintiff has failed to mitigate any of the damages alleged in the Complaint.

## TWENTY THIRD AFFIRMATIVE DEFENSE

Plaintiff's claims are barred in whole or in part by its own failure to perform and/or breaches of the relevant agreements.

## TWENTY FOURTH AFFIRMATIVE DEFENSE

Plaintiff's claims are barred in whole or in part by failure to provide consideration.

## TWENTY FIFTH AFFIRMATIVE DEFENSE

Plaintiff's claims are barred in whole or in part by lack of personal jurisdiction over the Defendants.

## TWENTY SIXTH AFFIRMATIVE DEFENSE

Attorneys' fees award not permissible.

## TWENTY SEVENTH AFFIRMATIVE DEFENSE

Plaintiff's claims are barred in whole or in part by Plaintiff's own bad acts including tortious interference with contracts, tortious interference with business relations and prospective economic advantage.

## TWENTY EIGHTH AFFIRMATIVE DEFENSE

Plaintiff's claims are barred in whole or in part as it does not own a valid trademark.

## TWENTY NINTH AFFIRMATIVE DEFENSE

Plaintiff's claims are barred in whole or in part by the doctrine of naked licensing and/or abandonment.

## THIRTIETH AFFIRMATIVE DEFENSE

Plaintiff's claims are barred in whole or in part as Defendants did not cause any of Plaintiff's damages or any of the alleged infringing acts.

## THIRTY FIRST AFFIRMATIVE DEFENSE

Plaintiff's claims are barred in whole or in part by the doctrine of fair use.

## THIRTY SECOND AFFIRMATIVE DEFENSE

Plaintiff's claims are barred in whole or in part, due to Plaintiff's failure to police its mark.  As such the alleged marks have been abandoned and/or have lost trademark significance attributable to Plaintiff.

## THIRTY THIRD AFFIRMATIVE DEFENSE

Plaintiff's claims are barred in whole or in part, based upon the doctrine of abandonment, as the marks at issue have been licensed without quality control, and any alleged rights in or to the marks should be deemed abandoned.

## THIRTY FOURTH AFFIRMATIVE DEFENSE

Plaintiff's claims are barred in whole or in part, on the grounds that they constitute a restraint of trade and/or are contrary to public policy.

## THIRTY FIFTH AFFIRMATIVE DEFENSE

Plaintiff's claims are barred in whole or in part by improper notice of termination.

## COUNTERCLAIMS

Sixuvus ("Counterclaim Plaintiff", "Sixuvus" or "Defendant"), by its attorneys, Adelman Matz P.C., complaining of Can't Stop ("Counterclaim Defendant", "Can't Stop" or "Plaintiff") alleges as follows:

1.      Sixuvus is a corporation duly organized and exiting under the laws of the state of New York.

2.      Upon information and belief, Can't Stop is a corporation duly organized and exiting under the laws of the state of New York, having a place of business at 655 Third Ave 16th Floor, New York, New York 10012.

3.      This Court has supplemental jurisdiction over these claims pursuant to 28 U.S.C. §1367.

## FACTUAL BACKGROUND

4.      Sixuvus was formed in or around March of 1987 to manage the business affairs of the men who were intending to render live music performance services as Village People as well as their non-member co-performers.  The membership of Sixuvus has changed since its formation.

5.      The group that is known as Village People are a group of men who have performed disco music for the last forty years.

6. Sixuvus has rendered live performance services as Village People for approximately thirty (30) years as the same characters: a cowboy, a biker/ "leather man," a Native American, a police officer, a construction worker, and a G.I.

7. Examples of Sixuvus' noteworthy performances include performing at the Major League Baseball All-Star Game Yankee Stadium in 2008, the American Music Festival, Jerry Lewis's Muscular Dystrophy Association Telethon, and in front of over 40,000 people as part of the pre-game entertainment for the New South Wales Rugby League Grand Final.  In 2008, Sixuvus led a crowd of over 40,000 in doing the largest "Y.M.C.A." dance, a Guinness book of world records.

8. The individuals who perform as Village People have changed since 1977. Notably, the original lead singer/police officer, Victor Willis, was replaced by Simpson, who continues to be the lead singer/police officer to this day.

9. Upon information and belief, Can't Stop is the record owner of four trademark registrations with the United States Patent and Trademark Office regarding Village People which consist of:

- VILLAGE PEOPLE – A wordmark under Registration Number 3821800 in International Class 009 for Compact discs featuring music and vocals; downloadable musical sound recordings
- VILLAGE PEOPLE – A stylized mark under Registration Number 2184290 in International Class 009 for pre-recorded phonograph records, audio cassettes, audio tapes and compact discs featuring music and vocals
- VILLAGE PEOPLE – A stylized mark under Registration Number 1101013 in International Class 041 for entertainment services rendered by a musical and vocal group



-                               – A design under Registration Number 2330857 in International Class 041 for Entertainment services, namely, live performances by a musical and vocal group.

  (Collectively the "Can't Stop Registrations")

10.    Upon information and belief, the only one of the Can't Stop Registrations that was in existence prior to the formation of Sixuvus was the for the word mark "Village People" under Registration Number 1101013 in International Class 041 for entertainment services rendered by a musical and vocal group (the "First Registration").

11.    Upon information and belief, from 1987 until mid 2017, Sixuvus was the exclusive source of live Village People performances.

12.    Upon information and belief, from 1987 until the mid 2017, consumers who attended a live Village People performance were seeing Sixuvus' performers performing as Village People.

13.    Upon information and belief, since 1987, millions of people have seen Sixuvus' performers perform as Village People.

14.    Upon information and belief, as a result of Sixuvus' long and exclusive use of Village People in connection with live performance services, the public has come to associate Village People with Sixuvus and its performers.

14

## COUNT I

## TORTIOUS INTERFERENCE WITH THE SETTLEMENT AGREEMENT

15.     Counterclaim Plaintiff repeats and re-alleges each and every allegation contained in paragraphs 1 through 16 above as if fully set forth herein.

16.     Upon information and belief, at or around the formation of Sixuvus in 1987, Can't Stop and Sixuvus entered into an oral license agreement wherein in exchange for Sixuvus being allowed to use Village People in connection with live performance services, Sixuvus would pay Can't Stop a 5% license fee, quarterly, payable on the gross amounts received by Sixuvus, net of agent's commissions (the "Oral Agreement").

17.     Upon information and belief, since in or around 1987, Sixuvus has performed under the Oral Agreement.

18.     Upon information and belief, in or around 2008, Victor Willis and others acting on his behalf, including his wife Karen Willis were trying to disrupt Sixuvus' business and live performances as Village People.

19.     After several incidents, Sixuvus filed a lawsuit in the Superior Court of the State of California (the "California Lawsuit"), for the County of San Diego, alleging claims of intentional interference with contractual relationships, intentional interference with prospective economic advantage, negligent interference with prospective economic advantage, unfair business practices and injunctive relief.

20.     On or around March 10, 2009 the Superior Court of California granted a Preliminary Injunction Order ordering that "Victor Willis, as well as Victor Willis' associates, agents, suppliers, servants, employees, officers, directors, representatives, successors, assigns and attorneys, and any other person(s) acting in concert or participation with Victor Willis,

15

[were] restrained and enjoined from engaging, committing, or performing, directly or indirectly, any and all of the following acts: **Disrupting any live performance or public appearance of Sixuvus performing as the Village People."**

21.     Can't Stop became a party to the California Lawsuit, when Victor Willis impled Can't Stop and several other third parties.

22.     On or around February 22, 2011, the parties reached a settlement agreement, which was entered into in open Court on the record wherein Victor Willis agreed to follow the Preliminary Injunction (the "Settlement Agreement").

23.     Upon information and belief, Can't Stop was aware of the Settlement Agreement.

24.     The central purpose of Sixuvus entering into the Settlement Agreement was to have an assurance that Victor Willis and others acting on his behalf or in concert or participation with him would never again directly or indirectly disrupt Sixuvus' business of performing live as Village People.

25.     Upon information and belief, Can't Stop is and at all times has been aware of the Settlement Agreement, and Mr. Willis' promise to follow the Preliminary Injunction which, prohibited him and his agents, representatives, assigns, and other persons acting in concert or participation with him from engaging, committing, or performing, directly or indirectly any act that would disrupt the live performance or public appearance of Sixuvus as Village People.

26.     Upon information and belief, Karen Willis is the wife and manager of Victor Willis.

27.     Upon information and belief, Can't Stop is and at all times has been aware that Harlem West Entertainment is a fictitious name for Karen Willis or is a company owned or controlled by Karen Willis.

28.    Upon information and belief, Can't Stop is and at all times has been aware that Karen Willis and Harlem West Entertainment is an agent, representative and/or assign of Victor Willis.

29.    Upon information and belief, Can't Stop is and at all times has been aware that Karen Willis and Harlem West Entertainment is acting in concert and participation with Victor Willis.

30.    Upon information and belief, despite such knowledge Can't Stop has purported to grant Karen Willis and/or Harlem West Entertainment an exclusive license to utilize the Can't Stop Registrations in connection with live performances.

31.    Upon information and belief, in the event that Victor Willis or his agents, representatives, assigns or any other person acting in concert or participation with him, engaged committed, or performed, directly or indirectly any act that would disrupt the live performance or public appearance of Sixuvus as Village People, such act would constitute a breach of the Settlement Agreement.

32.    Upon information and belief, by granting Karen Willis, Harlem West Entertainment, who are agents, representatives, assigns and/or are acting in concert or participation with Victor Willis, the exclusive right to use Village People in connection with live performances, Plaintiff has induced the direct and indirect disruption of the live performance and public appearance of Sixuvus as Village People.

33.    Upon information and belief, by granting the exclusive license as set forth above, Plaintiff has intentionally procured a breach of the Settlement Agreement.

34.    Upon information and belief, Plaintiff had no justification for inducing a breach of the Settlement Agreement.

35.     Upon information and belief, since being granted the exclusive license by Plaintiff, Victor Willis, together with those acting on his behalf, have disrupted the live performance and public appearance of Sixuvus as Village People.

36.     On or about May 30, 2017, Sixuvus received an email from Can't Stop purporting to terminate its right perform live as Village People the next day i.e. June 1, 2017.

37.     Upon information and belief, Plaintiff's grant of an exclusive license to Karen Willis and/or Harlem is the reason that Sixuvus has been informed that it cannot use Village People in connection with live performances.

38.     Upon information and belief, Karen Willis and/or Harlem have disrupted the live performance and public appearance of Sixuvus as Village People by telling venues, promoters and booking agents that Sixuvus' does not have the right to perform as Village People.

39.     Upon information and belief, Karen Willis and/or Harlem have disrupted the live performance and public appearance of Sixuvus as Village people by threatening to sue persons who allow Sixuvus to perform as Village People.

40.     Upon information and belief, these breaches of the Settlement Agreement are material.

41.     Upon information and belief, but for Can't Stop providing the purported exclusive license to Karen Willis and/or Harlem, Victor Willis and those acting in concert with him would not have breached the Settlement Agreement.

42.     Upon information and belief, as a direct and proximate result of Can't Stop inducing the afore described breach of the Settlement Agreement, Sixuvus has had performances cancelled, it is unable to book future performances, and is suffering irreparable damage to its relationships in the industry and reputation.

43.     As a direct and proximate result of the foregoing conduct, Sixuvus has been damaged in an amount yet to be determined but no less than one hundred thousand dollars ($100,000), plus interest costs and attorney's fees.

44.     As a direct and proximate result of the foregoing conduct, Sixuvus has and will continue to suffer irreparable injury in the form of damage to its reputation unless Plaintiff is enjoined from inducing Victor Willis to disrupt any live performance or public appearance of Sixuvus, Ltd performing as Village People and/or otherwise preventing Sixuvus, Ltd. From performing live as Village People.

## COUNT II

## COUNTERCLAIM AGAINST CAN'T STOP FOR NAKED LICENSING

45.     Counterclaim Plaintiff repeats and re-alleges each and every allegation contained in paragraphs 1 through 44 above as if fully set forth herein.

46.     Upon information and belief, Can't Stop informed the members of the Village People in or around 1985 that Can't Stop was ceasing to operate in New York and was ending Village People as a performing act.

47.     Upon information and belief, from 1985 to 1987, there were no live Village People performances anywhere in the world.

48.     Upon information and belief, after 1985 Can't Stop had no intention to resume using Village People in connection live performances.

49.     Upon information and belief, former Village People cowboy Randy Jones initiated a reunion of the members of Village People in or around 1987, at or around the time that Sixuvus was formed.

50.     Upon information and belief, Can't Stop did not resist a Village People reunion,

and willingly allowed Sixuvus to use the First Registration starting in or around 1987.

51.    Upon information and belief, in or around 1987, Can't Stop and Sixuvus entered into the Oral Agreement.

52.    Upon information and belief, the Oral Agreement did not provide for any quality controls, policies, procedures or guidelines as to the usage of Village People by Sixuvus in connection with live performances.

53.    Upon information and belief, Can't Stop has never instituted any quality control policies, procedures or guidelines as to the usage of Village People by Sixuvus in connection with live performances.

54.    Sixuvus has had the right to decide how it renders its live entertainment services as Village People.  For the last thirty years Sixuvus has decided when, where, and how it wanted to provide entertainment services as Village People.  It has made decisions about costumes, stage design, light shows, choreography, production values, set lists, rehearsals, billing or any other related aspect of putting on a live stage show.

55.    Upon information and belief, Can't Stop was never part of that process nor did it actually control any of those decisions or even require information or review how Sixuvus was providing live entertainment services as Village People.

56.    Upon information and belief, Can't Stop also never imposed production or rider requirements or any requirements as to the quality of the entertainment services provided by Sixuvus.

57.    Upon information and belief, Can't Stop never interviewed any new or replacement performers that Sixuvus contracted with to perform as Village People.

58.    Upon information and belief, in addition, Can't Stop never attended any auditions

for any new or replacement performers. Sixuvus performed the entirety of the work in finding a substitute performer.

59.     Upon information and belief, Can't Stop never provided or mandated any requirements, standards, guidelines, or anything of the like as to costumes, stage design, light shows, choreography, physical appearances, set lists, rehearsals, or any other related aspect of putting on a live stage show.

60.     Upon information and belief, Can't Stop never required Sixuvus to receive permission to book a show anywhere in the world and never objected to any Sixuvus live performance as Village People.

61.     Upon information and belief, Can't Stop was never part of deciding what live appearances Sixuvus would perform at as Village People.

62.     Upon information and belief, the only time Can't Stop got involved for approvals was if it was outside of our license agreement or if we needed licensing approval for using music.

63.     Upon information and belief, Can't Stop was not involved in Sixuvus using Village People in connection with live performances, aside from collecting their percentage fee.

64.     Upon information and belief, Can't Stop has also failed to exercise quality control in connection with its new alleged licensee Harlem West Entertainment and/or Karen Willis.

65.     Upon information and belief, Can't Stop has never taken any measures to ensure that the quality of live performance services under Village People meets any standard.

66.     Upon information and belief, Can't Stop's failure to exercise quality control and/or police its marks has and will continue to cause damage to consumers.

67.     Upon information and belief, as a result of Can't Stop's failure to exercise quality

control and/or police its marks, Can't Stop has abandoned its rights in and to Village People marks in connection with live entertainment services, including its registrations in International Class 041.

68.    Upon information and belief, as a result of Can't Stop's failure to exercise quality control and/or police its marks, Can't Stop's abandonment of its rights in Village People marks has broken its chain of continuous use, and Sixuvus is now the senior user with senior rights.

69.    Upon information and belief, Can't Stop's failure to exercise quality control and/or police its marks, has operated to divest the Village People marks from having any source indicating significance in Plaintiff's hands.

70.    Upon information and belief, as a result of Can't Stop's failure to exercise quality control and/or police its marks, Can't Stop is estopped from challenging Sixuvus' use.

71.    In the instant action Can't Stop has asserted valid rights in and to the Village People marks.

72.    Based on the foregoing, a valid controversy exists that is sufficient for this Court to declare the rights and remedies of the parties.

73.    In order to resolve this controversy, Counterclaim Plaintiff requests that, pursuant to 28 U.S.C. §§2201 and 2202 this Court declare that (i) the Oral Agreement is void; (ii) Cant Stop's rights in "Village People" in connection with live entertainment services were abandoned prior to 2017, and its U.S. Trademark Registrations Nos. 2330857 and 1101013  should be transferred to Sixuvus; (iii) Can't Stop's abandonment of its rights in Village People marks prior to 2017 has broken its chain of continuous use, and Sixuvus is now the senior user with senior rights; (iv) prior to 2017 Can't Stop's failure to exercise quality control and/or police its marks, operated to divest the Village People marks from having any source indicating significance in

Plaintiff's hands; and/or (v) as a result of Can't Stop's failure to exercise quality control and/or police its marks, Can't Stop is estopped from challenging Sixuvus' use of "Village People" in connection with live performance services.

74.    Additionally, Sixuvus has and will continue to suffer irreparable injury in the form of damage to its reputation unless Plaintiff is enjoined from disrupting any live performance or public appearance of Sixuvus, Ltd performing as Village People and/or otherwise preventing Sixuvus, Ltd. From performing live as Village People.

<u>COUNT III</u>

<u>COUNTERCLAIM AGAINST CAN'T STOP FOR BREACH OF CONTRACT</u>

75.    Counterclaim Plaintiff repeats and re-alleges each and every allegation contained in paragraphs 1 through 74 above as if fully set forth herein.

76.    Upon information and belief, there was a valid Oral Agreement between Sixuvus and Can't Stop regarding the usage of Village People including the First Registration.

77.    Sixuvus performed under the Oral Agreement.

78.    Upon information and belief, on May 30, 2017, Can't Stop notified Sixuvus by email that it would be terminating the Oral Agreement on June 1, 2017, the next day.

79.    Upon information and belief, termination upon one day's notice was a breach of the Oral Agreement.

80.    Upon information and belief, termination upon one day's notice is unreasonable.

81.    As a direct and proximate result of Can't Stop's breach of the Oral Agreement, Defendant has suffered and will continue to suffer damages, including but not limited to damages to its reputation both with its relations in the industry and its fans.

82.    Sixuvus has and will continue to suffer irreparable injury in the form of damage to

its reputation unless Plaintiff is enjoined from disrupting any live performance or public appearance of Sixuvus, Ltd performing as Village People and/or otherwise preventing Sixuvus, Ltd. From performing live as Village People.

83.     In addition, as a direct and proximate result of the foregoing conduct, Sixuvus has been damaged in an amount yet to be determined but no less than one hundred thousand dollars ($100,000), plus interest costs and attorney's fees.

**COUNT V**

**COUNTERCLAIM AGAINST CAN'T STOP FOR
BREACH OF CONTRACT IMPLIED IN FACT/PROMISSORY ESTOPPEL**

84.     Counterclaim Plaintiff repeats and re-alleges each and every allegation contained in paragraphs 1 through 83 above as if fully set forth herein.

85.     Upon information and belief, there was a valid Oral Agreement between Sixuvus and Can't Stop regarding the usage of Village People including the First Registration.

86.     While there was no specific discussion of when the Oral Agreement would terminate, based on Can't Stop's representations and actions both at the time the Oral Agreement was formed and continuing thereafter, it is clear that it was intended that Sixuvus would have the license to use Village People in connection with live performances for as long as Sixuvus wanted to perform.

87.     By way of example, when at or around the time that Oral Agreement was formed, Can't Stop told Sixuvus that it would not be managing them or booking shows and that the men who formed Sixuvus were Village People, and that if they wanted to continue our careers, Can't Stop would let them do so as Village People as long as they paid the agreed upon license fee.

88.     Sixuvus performed under the Oral Agreement and relied on Plaintiff's representations and actions to their detriment.

89.    Upon information and belief, on May 30, 2017, Can't Stop notified Sixuvus by email that it would be terminating the Oral Agreement on June 1, 2017, the next day.

90.    Upon information and belief, Can't Stop's termination was a breach of the contract implied in fact.

91.    As a direct and proximate result of Can't Stop's breach of the Oral Agreement, Defendant has suffered and will continue to suffer damages, including but not limited to damages to its reputation both with its relations in the industry and its fans.

92.    Sixuvus has and will continue to suffer irreparable injury in the form of damage to its reputation unless Plaintiff is enjoined from disrupting any live performance or public appearance of Sixuvus, Ltd performing as Village People and/or otherwise preventing Sixuvus, Ltd. From performing live as Village People.

93.    In addition, as a direct and proximate result of the foregoing conduct, Sixuvus has been damaged in an amount yet to be determined but no less than one hundred thousand dollars ($100,000).

## COUNT VI

## TORTIOUS INTERFERENCE WITH CONTRACTUAL RELATIONS AGAINST CAN'T STOP

94.    Counterclaim Plaintiff repeats and re-alleges each and every allegation contained in paragraphs 1 through 93 above as if fully set forth herein.

95.    As it has done for approximately thirty (30) years, Sixuvus contracted for its performances as Village People with various third parties who engage Sixuvus for the purpose of it performing live entertainment services as Village People.

96.    Upon information and belief, Can't Stop is aware that Sixuvus enters into contracts for live performances usually months in advance.

97.    Upon information and belief, Can't Stop was generally aware that at any given time Sixuvus' had contractual obligations with third parties to render live entertainment services as Village People in the future.

98.    Upon information and belief, despite its awareness of Sixuvus' contracts to render live entertainment services as Village People, sometimes months in the future, Sixuvus terminated the Oral Agreement without justification upon one day's notice.

99.    Upon information and belief, thereafter, with full knowledge these contracts, Can't Stop and its licensee Harlem West induced various third parties to breach their agreements with Sixuvus.

100.    Upon information and belief, as a result of Can't Stop's actions certain third parties cancelled Sixuvus' performances, in breach of their obligations thereunder.

101.    In addition to monetary damages, Can't Stop and its licensee's wrongful interference with Sixuvus' contracts has and, unless enjoined, will continue to cause irreparable harm and reputational damage to Sixuvus.

102.    But for Can't Stop's actions in terminating Sixuvus and granting an exclusive license that permits its licensee Victor Willis, Karen Willis and/or Harlem to perform live as Village People, these contracts would not have been breached.

103.    As a direct and proximate result of the foregoing conduct, Sixuvus has and will continue to suffer irreparable injury in the form of damage to its reputation unless Plaintiff is enjoined from inducing Victor Willis to disrupt any live performance or public appearance of Sixuvus, Ltd performing as Village People and/or otherwise preventing Sixuvus, Ltd. From performing live as Village People.

104.    In addition, as a direct and proximate result of the foregoing conduct, Sixuvus has

been damaged in an amount yet to be determined but no less than one hundred thousand dollars ($100,000), plus interest, costs and attorneys' fees.

**COUNT VII**

**TORTIOUS INTERFERENCE WITH PROSPECTIVE CONTRACTUAL RELATIONS/PROSPECTIVE ECONOMIC ADVANTAGE**

105.    Counterclaim Plaintiff repeats and re-alleges each and every allegation contained in paragraphs 1 through 104 above as if fully set forth herein.

106.    Sixuvus has been performing live as the Village People since 1987.

107.    Over the last three decades, Sixuvus has built strong relationships with various third parties in the music industry, including promoters, venues and booking agents.

108.    On average, these relationships yield approximately fifty engagements for Sixuvus to perform as Village People per year.

109.    Upon information and belief, at all relevant times, Can't Stop was or should have been aware that Sixuvus was in the process of arranging to perform as the Village People with prospective third parties, due to the consistent stream of revenue it received from Sixuvus' performances and appearances.

110.    Upon information and belief, Can't Stop and its licensees have interfered with these business relations by (a) giving Mrs. Willis an exclusive license to use the Village People Marks, which induced Mr. Willis to breach the Settlement Agreement; (b) improperly and unfairly purporting to terminate the oral license agreement; and/or (c) telling third parties that Sixuvus no longer has the right to perform as Village People.

111.    Upon information and belief, Can't Stop used unfair and improper means to terminate the Oral Agreement on one day's notice after thirty (30) years.

112.    Upon information and belief, Can't Stop's was aware of the acrimonious history

27

between Sixuvus and the Willis' and the Wills' campaign to destroy Sixuvus.

113.    Upon information and belief, Can't Stop knew that Karen Willis and/or Harlem would use an exclusive license to harass and injure Sixuvus.

114.    Upon information and belief, Plaintiff knew it would make less revenue from licensing Village People to Karen Willis or Harlem than it did from Sixuvus.

115.    Upon information and belief, Plaintiff had no legitimate business reason to give Karen Willis and/or Harlem an exclusive license.

116.    Upon information and belief, in giving Karen Willis and/or Harlem an exclusive license Can't Stop acted with the sole purpose of harming Defendant.

117.    As a direct and proximate result, Sixuvus' various prospective relationships have been damaged, which has in turn caused damage to Sixuvus.

118.    As a direct and proximate result of the foregoing conduct, Sixuvus has and will continue to suffer irreparable injury in the form of damage to its reputation unless Plaintiff is enjoined from inducing Victor Willis to disrupt any live performance or public appearance of Sixuvus, Ltd performing as Village People and/or otherwise preventing Sixuvus, Ltd. From performing live as Village People.

119.    As a direct and proximate result of the foregoing, Sixuvus has been damaged in an amount to be determined at trial, but no less than $100,000, plus interest, costs and attorneys' fees.

## <u>DEMAND FOR JURY TRIAL</u>

Pursuant to Fed. R. Civ. P. Rule 38(b), Defendants/Counterclaim Plaintiff hereby demand a jury trial on all issues and matters triable by a jury.

**WHEREFORE**, Defendants/Counterclaim Plaintiffs demands judgment as follows:

(a)     Dismiss the Complaint with prejudice in its entirety;

(b)     Deny each and every request for relief set forth in the Complaint;

(c)     On the first cause of action, that the Court issue injunctive relief enjoining Plaintiff from inducing Victor Willis to disrupt any live performance or public appearance of Sixuvus, Ltd performing as Village People and/or otherwise preventing Sixuvus, Ltd. from performing live as Village Peopled and award Sixuvus damages in an amount yet to be determined but no less than one hundred thousand dollars ($100,000), plus interest costs and attorney's fees; and

(d)     On the second claim, that the Court declare that (i) the Oral Agreement is void; (ii) Cant Stop's rights in "Village People" in connection with live entertainment services were abandoned prior to 2017, and its U.S. Trademark Registrations Nos. 2330857 and 1101013 should be transferred to Sixuvus; (iii) Can't Stop's abandonment of its rights in Village People marks prior to 2017 has broken its chain of continuous use, and Sixuvus is now the senior user with senior rights; (iv) prior to 2017 Can't Stop's failure to exercise quality control and/or police its marks, operated to divest the Village People marks from having any source indicating significance in Plaintiff's hands; and/or (v) as a result of Can't Stop's failure to exercise quality control and/or police its marks, Can't Stop is estopped from challenging Sixuvus' use of "Village People" in connection with live performance services; and enjoin Plaintiff from disrupting any live performance or public appearance of Sixuvus, Ltd performing as Village People and/or otherwise preventing Sixuvus, Ltd. from performing live as Village People

(e)     On the third cause of action, that the Court issue injunctive relief enjoining Plaintiff disrupting any live performance or public appearance of Sixuvus, Ltd performing as Village People and/or otherwise preventing Sixuvus, Ltd. from performing live as Village

Peopled and award Sixuvus damages in an amount yet to be determined but no less than one hundred thousand dollars ($100,000), plus interest costs and attorney's fees; and

(f)    On the fourth cause of action, that the Court issue injunctive relief enjoining Plaintiff disrupting any live performance or public appearance of Sixuvus, Ltd performing as Village People and/or otherwise preventing Sixuvus, Ltd. from performing live as Village Peopled and award Sixuvus damages in an amount yet to be determined but no less than one hundred thousand dollars ($100,000), plus interest costs and attorney's fees; and

(g)    On the fifth cause of action, that the Court issue injunctive relief enjoining Plaintiff disrupting any live performance or public appearance of Sixuvus, Ltd performing as Village People and/or otherwise preventing Sixuvus, Ltd. from performing live as Village Peopled and award Sixuvus damages in an amount yet to be determined but no less than one hundred thousand dollars ($100,000), plus interest costs and attorney's fees; and

(h)    On the sixth cause of action, that the Court issue injunctive relief enjoining Plaintiff from inducing Victor Willis to disrupt any live performance or public appearance of Sixuvus, Ltd performing as Village People and/or otherwise preventing Sixuvus, Ltd. from performing live as Village Peopled and award Sixuvus damages in an amount yet to be determined but no less than one hundred thousand dollars ($100,000), plus interest costs and attorney's fees; and

(i)    On the seventh cause of action, that the Court issue injunctive relief enjoining Plaintiff from inducing Victor Willis to disrupt any live performance or public appearance of Sixuvus, Ltd performing as Village People and/or otherwise preventing Sixuvus, Ltd. from performing live as Village Peopled and award Sixuvus damages in an amount yet to be

determined but no less than one hundred thousand dollars ($100,000), plus interest costs and attorney's fees;

    (j)      Costs, reasonable attorney's fees and disbursements for this action; and

    (k)      Any such further relief as this Court deems just and proper.

Dated: New York, New York              Respectfully submitted,
       November 30, 2017

                              ADELMAN MATZ P.C.

                              By: _/s/Sarah M. Matz_____
                                Sarah M. Matz, Esq.
                                Gary Adelman, Esq.
                            1173A Second Avenue, Suite 153
                            New York, New York 10065
                            T: (646) 650-2207
                            F: (646) 650-2108
                            sarah@adelmanmatz.com
                            g@adelmanmatz.com
                            *Attorneys for Defendants/Counterclaim Plaintiffs*