UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
X--------------------------------------------------X
CAN'T STOP PRODUCTIONS, INC.,

                                Case No.: 7:17-cv-06513-CS

                Plaintiffs,

-against-

SIXUVUS, LTD., ERIC ANZALONE,
ALEXANDER BRILEY, FELIPE ROSE,
JAMES F. NEWMAN, RAYMOND
SIMPSON, and WILLIAM WHITEFIELD,

                Defendants.
X--------------------------------------------------X

**DECLARATION OF JAMES ERIC ANZALONE IN SUPPORT OF MOTION FOR A TEMPORARY RESTRAINING ORDER AND A PRELIMINARY INJUNCTION**

      James Eric Anzalone, pursuant to 28 U.S.C. § 1746, declares under the penalty of perjury, as follows:

      1.      I am the treasurer of Sixuvus, Ltd. ("Sixuvus"), a defendant in the within action and I have knowledge of the facts herein based upon my own personal knowledge and the books and records of Sixuvus.

      2.      I submit this declaration in support of Sixuvus' motion for a temporary restraining order and a preliminary injunction.

      3.      The facts stated herein are true and correct and of my own personal knowledge and the books and records of Sixuvus. If called and sworn as a witness, I could and would testify competently thereto under oath.

      4.      I have been performing with Sixuvus since 1994, when I was hired to be a swing performer. I initially substituted as the construction worker character in Village People. In fact one of my first shows was in front of over one hundred thousand people in Finland. In 1995, I

began performing regularly as leatherman in the group known as Village People, a role which I continue to this day.

5. Can't Stop did not instruct me or to my knowledge, any member of Sixuvus on how to perform. There were no guidelines or standards for performances given to me by Can't Stop. Sixuvus has had the right to decide when, where, and how we would perform, how our stage shows would appear, what songs we would sing, and what choreography we would perform.

6. We made the decisions that went into providing entertainment services, such as the decisions as to costumes, stage design, light shows, choreography, production values, set lists, rehearsals, or every other related aspect of putting on a live stage show.

7. Can't Stop never required Sixuvus to receive permission to book shows anywhere in the world and never objected to any of Sixuvus' live performances as Village People.

8. After many years performing with Sixuvus I was eventually asked to sign a document that Can't Stop's lawyer provided, but it did not have any quality standards or other directives of that nature in it. That document is attached to the Complaint as Exhibit E.

9. Throughout my tenure of performing with Sixuvus, Sixuvus has had the ability to craft the presentations of its live performances. For instance, my outfits and appearance, while maintaining a common motif, have changed throughout my years as the leatherman of Village People, including appearing in silver leather at one point. In addition, my facial hair and hair length has frequently changed. However, historically the leatherman character of Village People has an outfit that typically consists of mostly black leather garments, such as pants, a vest, and hat, all of which are accented by metallic accessories such as chains, spikes, necklaces, rings, and pins. In addition, the leatherman character is known to have a large handlebar-styled mustache. Despite

my own personal adaptations made to the leatherman persona, at no point was I told by Can't Stop that I had to appear a certain way, or reprimanded for my appearance.

10. To my knowledge, Can't Stop never actually controlled the billing and use of "Village People" name for our live performances. Can't Stop certainly had any procedure to approve uses of Village People name or any part of our live performances in advance. The only time we had to go to Can't Stop for any type of permission was when we were approached to do something that might fall outside of the oral license agreement Sixuvus had, or if something Sixuvus was doing required licensing of the music.

11. Can't Stop never interviewed any new or replacement performers with Sixuvus, including myself when I joined in 1994. On my first tour I performed at a show that was in front of over one hundred thousand people without any vetting from Can't Stop. When I was hired by Sixuvus to serve as the leatherman, again, I did not have to seek any approval from Can't Stop. Like I said earlier, Can't Stop didn't ask for any type of paperwork until years later. Between my joining and my signing a document with Can't Stop, I had performed in front of over a million spectators, and on major television shows including shows hosted by Dick Clark and Oprah Winfrey.

12. During my tenure, no one who is at Can't Stop has ever performed as a member of Village People, nor has anyone at Can't Stop ever owned part of Sixuvus.

13. Victor Willis and others acting on his behalf, including his wife Karen Willis have been trying to disrupt Sixuvus' business and live performances as Village People for years. After several incidents, Sixuvus filed a lawsuit in the Superior Court of the State of California, for the County of San Diego, alleging claims of intentional interference with contractual relationships,

intentional interference with prospective economic advantage, negligent interference with prospective economic advantage, unfair business practices and injunctive relief.

14. Sixuvus in fact obtained a Preliminary Injunction in that action which ordered that "Victor Willis, as well as Victor Willis' associates, agents, suppliers, servants, employees, officers, directors, representatives, successors, assigns and attorneys, and any other person(s) acting in concert or participation with Victor Willis, [were] restrained and enjoined from engaging, committing, or performing, directly or indirectly, any and all of the following act: **Disrupting any live performance or public appearance of Sixuvus performing as the Village People.**"

15. When we settled that case, which Can't Stop eventually became a party to, Victor Willis agreed to follow the Preliminary Injunction.

16. The whole point for Sixuvus to enter into the Settlement Agreement was to have an assurance that Victor Willis and others acting on his behalf or in concert or participation with him would never again directly or indirectly disrupt Sixuvus' business of performing live as Village People. Now, and despite Can't Stop's awareness of the Settlement Agreement, that is what they are helping Victor Willis do—breach his obligations under the Settlement Agreement.

17. Can't Stop's attempt to terminate our license is preventing Sixuvus from performing as Village People, and if Can't Stop is allowed to continue to help Victor Willis stop us from performing as Village People, it will have severe consequences Sixuvus.

18. If we are prevented from performing as Village People for the entire time this lawsuit is pending, it will likely ruin our reputation with the various promoters, bookers and venues that we work with regularly and have worked with for years. Also it would be impossible to re-build the business Sixuvus has built if we could not perform live as Village People for a period of months or years.

19.	Sixuvus wish to conduct our business without harassment, interference and disruption caused by Victor Willis, and those acting in concert with him including Karen Willis (his wife) her companies and Plaintiff in this lawsuit, who has claimed to grant Harlem West Entertainment an exclusive license to use Village People marks.

I declare under penalty of perjury that the foregoing is true and correct.

Executed on November 29, 2017, in Monroe Township, New Jersey.

_____
James Eric Anzalone