```
 1  UNITED STATES DISTRICT COURT
    SOUTHERN DISTRICT OF NEW YORK
 2
    ----------------------------------------x
 3  CAN'T STOP PRODUCTIONS, INC.,

 4                      Plaintiff,

 5                                   Case No.  7:17-cv-06513-CS
         -vs-
 6
    SIXUVUS, LTD., et al.,
 7
                        Defendants.
 8
    ----------------------------------------x
 9
                                     United States Courthouse
10                                   White Plains, NY
                                     December 15, 2017
11                                   3:29 p.m.

12  Before:
                HONORABLE CATHY SEIBEL
13
                    District Judge
14

15                       APPEARANCES

16  EISENBERG, TANCHUM & LEVY
    STEWART L. LEVY, ESQ.
17  Attorneys for the Plaintiff

18  ADELMAN MATZ, P.C.
    GARY PHILIP ADELMAN, ESQ.
19  SARAH MICHAL MATZ
    Attorney for Defendants
20
    REITLER KAILAS & ROSENBLATT, LLC
21  ROBERT WILLIAM CLARIDA, ESQ.
    Attorney for Intervenor
22

23

24

25
```

1   THE COURT:  Good afternoon, Mr. Levy.
2   MR. LEVY:  Good afternoon, Your Honor.
3   THE COURT:  Ms. Matz.
4   MS. MATZ:  Good afternoon.
5   THE COURT:  Mr. Adelman.
6   MR. ADELMAN:  Good afternoon, Your Honor.
7   THE COURT:  And Mr. Clarida.
8   Everyone can have a seat.  Do you guys like coming up here
9   every week?
10   MR. ADELMAN:  We have tried three different modes of
11   transportation, and we just took the train and enjoyed that very
12   much.  It's very nice, the flurries coming down.
13   THE COURT:  That's probably the best way to do it on a day
14   like today.
15   It looks, Mr. Levy, like your clients didn't get the
16   message from last week.
17   MR. LEVY:  Your Honor --
18   THE COURT:  Not your clients.  I am sorry.
19   MR. LEVY:  We don't control that.
20   THE COURT:  Mr. Clarida.  I misspoke.  Am I saying it
21   right, Clarida?
22   MR. CLARIDA:  No.  It's Clarida, Your Honor.
23   THE COURT:  Clarida.  It sounds like your clients didn't
24   get the message.
25   MR. CLARIDA:  Yes.  It appears that way, Your Honor.  My

1  client has been making diligent efforts, given the
2  circumstances, and I believe as of today they are in compliance
3  with all of the terms of the order; but I understand it took
4  longer than anyone would have anticipated, and my client is
5  apologetic about that.
6      THE COURT:  Do you agree, Ms. Matz, that they are in
7  compliance now?
8      MS. MATZ:  So I have read Mr. Clarida's letter on the way
9  up --
10     THE COURT:  Oh, I didn't know that there was another
11 letter.  It must have just been filed.
12     MS. MATZ:  It was.  I -- literally my assistant it to
13 handed me as I was walking out the door.
14     THE COURT:  You are ahead of me.  I haven't --
15     MR. CLARIDA:  I have a copy I can hand up, Your Honor.
16     THE COURT:  Okay.
17     MS. MATZ:  It does appear that some of their digital
18 properties have been changed.  I know that there were a couple
19 of others that Mr. Willis's personal Twitter page that I did not
20 see in the exhibits, and to be honest, just because it was just
21 filed, I have not had a chance to go back.  I checked it.  We
22 checked at noon, and a lot of the things that they submitted
23 even now weren't the way they are now in the way they were
24 attached to Mr. Clarida's letter.  I believe that that happened
25 afterwards.  So I am not entirely positive.

1   THE COURT:  Well, I have to say, Mr. Clarida, even if for
2   some inexplicable reason it took a week to do that which could
3   have been done in a day or two, it seemed pretty obvious to me
4   that Mr. Willis was disparaging the defendants, and that's a
5   fairly obvious disregard of my order.
6       So either the communication between lawyers and clients is
7   the problem or the clients are the problem.  You don't have to
8   tell me which it is, but make sure Ms. Willis and Mr. Willis and
9   everyone on their team understands that these orders are not
10  optional, and it won't be good for them in the long run to give
11  me the impression that they are trying to skirt them.
12      Let me take a moment to read your letter.
13      MR. CLARIDA:  Thank you, Your Honor.
14      THE COURT:  And I understand that Mr. Willis is in
15  Australia, but it doesn't take a lot of effort to send an email
16  saying the judge ordered, among other things, that you -- each
17  side can't disparage the other.  So don't disparage them.
18      A lot of what he said was disparaging, and a lot of what
19  they did in the last 24 to 36 hours they could have done last
20  weekend.
21      Unless there is a reason why the exact wording of my order
22  can't be used, the exact wording of my order should be used.
23      MR. CLARIDA:  Yes, Your Honor.
24      THE COURT:  Quote, "Village People is the subject of
25  litigation.  There are two versions of Village People," is not

1  either the wording that I suggested or the alternative wording
2  that the parties asked for in the order, which I granted.  So
3  that should be fixed.
4       MR. CLARIDA:  Right.  Your Honor, that is referring to the
5  text that is actually in the body of the text of the social
6  media page.  The photograph itself now has the text as the Court
7  ordered it with the asterisk and the exact language of the
8  Court's order on the photo.
9       THE COURT:  I guess I am not sure what 3A is.
10      MR. CLARIDA:  Oh, 3A the website for Pyramid Entertainment,
11 which is the booking agent that books the Harlem West Village
12 People.
13      THE COURT:  I don't see the disclaimer.  Oh, there it is.
14      MR. CLARIDA:  It's about five lines down.
15      THE COURT:  Yeah, that's kind of buried.
16      MR. CLARIDA:  Okay.
17      THE COURT:  I think that should come right after the first
18 sentence.
19      MR. CLARIDA:  Okay.  We will fix that, Your Honor.  We will
20 pass that along to the client.
21      THE COURT: Yes.  Let me keep reading.
22      I am not sure -- I am not sure what -- which document I
23 should be looking at that has the language, "Get a load of these
24 guys."
25      MR. CLARIDA:  Oh, that was Exhibit 4 to the -- or Exhibit D

1  to the defendant's letter.
2      THE COURT:  Oh, okay.  "Get a load of these guys" is a
3  little close to the line.  It's perfectly okay to say, these
4  guys are not us.  I can't find it, but I think it's fine to say,
5  "This is not us.  We are the Village People featuring the real
6  singer and writer of all the Village People hits."
7      "Get a load of these guys" is disparaging.
8      MR. CLARIDA:  All right, Your Honor.  I would also just ask
9  about the Australia with the "no" symbol through it that's on
10 the defendant's page.  Do you consider that disparaging?
11     THE COURT:  Where should I see that?
12     MR. CLARIDA:  That's on our attached Exhibit 4, Your Honor,
13 to my letter.
14     MR. ADELMAN:  That was posted on December 7th, Your Honor.
15     MR. CLARIDA:  And it's still up.
16     MR. ADELMAN:  Yes.
17     THE COURT:  "We love our Australian fans so we want all of
18 you to know that we are not the ones performing at the shows
19 currently being advertised for Australia.  No Alex, no Bill, no
20 Eric, no Felipe, no Jim, no Ray."
21     That's okay.
22     MR. CLARIDA:  I am talking about the graphic, Your Honor,
23 the Australia with the line through it.
24     THE COURT:  I don't think -- maybe it's disparaging to
25 Australia, but it's not disparaging to --

```
 1        MR. CLARIDA:  Well, it's in the context of my client's tour
 2   of Australia.
 3        THE COURT:  I am sorry.  It's in the context of?
 4        MR. CLARIDA:  The context of posts about my clients touring
 5   Australia.
 6        THE COURT:  Right.  I mean, they are basically saying, we
 7   are not in Australia.
 8        MR. ADELMAN:  Correct.
 9        THE COURT:  I don't think that it's disparaging the other
10   team.
11        MR. CLARIDA:  And, "Please don't judge us by what you are
12   now seeing and reading"?  If that's not disparaging, then
13   neither is "Get a load of these guys."
14        MR. ADELMAN:  I disagree.  I think they are quite
15   different.  What they are responding to is actually posts that
16   say, "The lead singer dressed up cop so fat that we thought he
17   had eaten all of you."
18        MR. CLARIDA:  No, that's not what we are referring to, Your
19   Honor.
20        MR. ADELMAN:  What do you mean?
21        THE COURT:  Don't talk at the same time.  I have a court
22   reporter here.
23        MR. ADELMAN:  I mean, the thing that they are responding to
24   was saying, don't judge us.  It's the same thing as saying --
25        THE COURT:  What exhibit should I be looking at?  I am
```

1  sorry.
2      MR. ADELMAN:  I am still looking at the same one.
3      THE COURT:  There is a couple that have the Australia with
4  the line through it.
5      MR. ADELMAN:  Yes, but, in essence, it's all of the
6  comments are the same.  They are, "We are not him.  Don't judge
7  us by his performance."  I don't think that is disparaging.
8      THE COURT:  What exhibit should I be looking at?
9      MR. ADELMAN:  Oh, do you know what exhibit?
10     MS. MATZ:  I think it's --
11     MR. ADELMAN:  It has a big -- I think it's Exhibit 4.
12     MS. MATZ:  I think it's 4 to Mr. Clarida's letter, Your
13 Honor, I believe.
14     MR. ADELMAN:  4.
15     THE COURT:  Let me look at it.
16     MR. ADELMAN:  The big Australia with the --
17     MS. MATZ:  This one's cut off.  I can't read it.
18     THE COURT:  And who are these commenters?  I mean --
19     MR. ADELMAN:  Just random -- random fans.
20     THE COURT:  So, obviously, neither side controls that.  It
21 seems to be that the commenter, Janet McDonald, is the one who
22 says the lead singer dressed as a cop was fat.
23     MR. ADELMAN:  That's fine.
24     THE COURT:  So I don't think either side can be held
25 responsible for their commenters.  To the extent I can read it

1  message from the defendants, they are reiterating that we are
2  not the ones performing in Australia.  I can't see what the next
3  sentence says completely.
4      I do think, "Please don't judge us by what you are now
5  seeing and reading," it's getting a little close, but I think
6  not over the line.  Their point is, don't judge us based on what
7  you are seeing because we are not who you are seeing.
8      But I think that can be more clear.  You could say, please
9  don't be confused.  We are not the people that are performing
10 there, and I don't know what anybody might be reading.
11     MR. ADELMAN:  Moving forward, I mean, that's a -- I don't
12 think we can change that.  I am not sure.
13     MS. MATZ:  We can find out, but this was posted prior to
14 the December 8th hearing.  This was not afterwards.
15     THE COURT:  Oh, all right.
16     MS. MATZ:  This was before.
17     MR. ADELMAN:  That's December 7.
18     MS. MATZ:  It's a December 7 post.
19     MR. ADELMAN:  Moving forward, we are happy to hear what the
20 Judge has to say as far as this is concerned so we can guide our
21 clients.  At the same time, we want to make sure our clients are
22 able to say to their fans that that's not us.
23     THE COURT:  Absolutely.
24     MR. ADELMAN:  And you know --
25     THE COURT:  That's the whole point.  Both sides should be

able to say to their fans, the other one is not us.

Let me -- I just want to finish reading the letter.

Defendants point out that the -- in Exhibit 5 that -- excuse me -- Mr. Clarida points out that in Exhibit 5 Red Entertainment is not complying. I see the asterisk, but not the material. Oh, wait. There it is, but it's buried.

MR. ADELMAN: We are happy to -- where would you like it, Your Honor? I mean, it's a much shorter paragraph than theirs, but --

MS. MATZ: It's also this isn't the --

MR. ADELMAN: Yes, it's isn't the full page --

THE COURT REPORTER: One at a time.

MS. MATZ: I was just going to say: It is in that paragraph, it's not the full page. It is also at the very bottom of the page, so that if you scroll and you are past the top, you can see it at the bottom, but we can separate that out so it's more obvious. There is no problem doing that.

THE COURT: Yes. Just make it a new paragraph or something. I mean, I think ordinarily when people see an asterisk -- I don't know what ordinary people do -- I guess, as lawyers, we look to the bottom of the page. Maybe normal people don't do that.

MR. ADELMAN: There is -- and there is another copy of that at the bottom of the page.

THE COURT: Yes. I think if they broke it out into just a

1  new paragraph break, it would be obvious where the asterisk
2  leads to.
3       Let's look at Exhibit 6.  I need to see these websites or
4  at least see the letter he submitted.  Well, the -- I am looking
5  at Exhibit 6, which is a newspaper article or I guess it's not a
6  newspaper article.  It's an article from a website.  I can't --
7  looks like it's called Noise11, and I gather one of the
8  defendants has linked to it on his Facebook page.
9       MR. ADELMAN:  Correct, Your Honor.  August 12th was the
10 date it was posted, and the date it occurred.
11      THE COURT:  And Exhibit 7 is from December 4th.
12      Look, anything that you know in cyberspace, once something
13 is there, it's there forever.  To the extent that you still have
14 the ability to avoid this confusion, you should, but I don't
15 think too many people who are confused are going to be looking
16 back at posts from August.  They are going to look at what's
17 current.  Just make sure -- everybody, make sure the clients
18 understand I mean business.  I am not going to impose contempt
19 sanctions now, but I could.
20      MR. ADELMAN:  Your Honor --
21      THE COURT:  And I would really think it would be a good
22 idea to lower the temperature because if, as everybody says,
23 they want to work this out, the -- to quote the article, the
24 pissing contest is just going to make it that much harder.
25      Yes, Mr. Adelman?

1     MR. ADELMAN:  We would like some clarification from Your
2  Honor on the latest Victor Willis post, which came out last
3  night.
4     THE COURT:  Do I not have that one?
5     MR. ADELMAN:  It's not in the letter, no.  It was not -- if
6  I may?
7     THE COURT:  Yes.
8     MR. ADELMAN:  It was after we submitted our letter.  It
9  came out this morning.  And I will explain to you why we are
10 bringing it up once you have a copy of it.  So when you are
11 ready, Your Honor?
12    THE COURT:  Okay.
13    MR. ADELMAN:  I am bringing it up because, while I am not
14 going to say this is absolutely disparaging, it is.  And the
15 reason is, is because there is 37 years of video, and in the
16 late '70s and early '80s, lip-synching to video, especially on
17 American Bandstand and places like that was quite common.  So
18 Victor Willis, what he is doing here is taking the opportunity
19 to disparage Ray Simpson for actually doing that some -- some
20 years ago.  This mega-mix actually was not even put together by
21 my client, so it was put together by somebody else.
22    And, you know, this is the type of thing I think that
23 raises the temperature because it's a clear shot at Mr. Simpson,
24 even if it's maybe on the line whether it's disparagement or
25 not.  My clients have no interest in like discussing Victor

```
 1  Willis and that sort of thing and, you know, I think I am
 2  just -- maybe I am not asking the Court, but I am just asking
 3  all parties to ask their clients to stop doing things like this
 4  and just focus on their career.
 5          THE COURT:  Well, this is -- it's certainly misleading if
 6  it's, you know, decades old and --
 7          MR. ADELMAN:  I don't know if it's decades old, but it's
 8  old enough that it's -- you know, again, it's -- it was not made
 9  by my client, but it's being used for the purpose of --
10          THE COURT:  Seems to me what would be okay would be, hey,
11  this guy is definitely not me.  He is lip-synching to my iconic
12  Village People voice.  The part about he is pretending my voice
13  is his, that sounds disparaging.  And the question why is
14  provocative.  Put it that way.  I haven't outlawed being
15  provocative, but as I said, I think part of it is disparaging
16  and part of it is provocative.  The provocative part isn't
17  precluded by my order, but it just makes things more difficult,
18  and I don't think either side wants me to think that they are
19  trying to cause trouble.
20          MR. LEVY:  Your Honor, if I can just clarify something, I
21  am quite happy to have these gentlemen working everything out,
22  but just for some historical perspective because I am not quite
23  sure what this is, either.
24          We -- one of the many lawsuits that we suffered through the
25  past seven, eight years was a lawsuit by Ms. Willis about suing
```

1   my client for allowing Sixuvus, the group that we licensed at
2   the time, to perform and give the impression that Victor Willis
3   was who the people would see.  So that the allegations in the
4   Victor Willis, Karen Willis lawsuits were trademark violations.
5   They claimed that when you listened to a radio commercial
6   advertising the Village People, that they were performing
7   someplace, the DJ's would play the original recording of YMCA,
8   which has Victor Willis's voice on it, and yet Victor Willis
9   wasn't going to be at the concert.  It was going to be Ray
10  Simpson.  And as part of that litigation, it was agreed that,
11  look, it's hard to control these DJ's and everything else, but
12  we told Sixuvus, and then, to my best of my knowledge, they
13  complied that they were making it absolutely clear that when
14  they perform they are not going to advertise using the old
15  recording.  They will use the new recordings with Mr. Simpson
16  performing.  I don't know -- and that's -- that was fine on
17  everyone's behalf.
18      So just to be fair, I am not taking sides on this, but I am
19  not sure what this is referring to because I know the Sixuvus
20  people were not -- were not lip-synching to Victor Willis's
21  recordings, and that was the action of one of the lawsuits, but
22  I don't know whether that's what they are accusing or just -- I
23  am also not clear whether this is a mixed tape that some fan put
24  together because that happens all the time, too, where a fan
25  will take the original recording and take a video and synch them

1  up.
2      So I don't really know, but I just want to be clear.  I am
3  not sure it's -- that it's that clear who is at fault for
4  something like this because the Internet is like the wild west,
5  that's all.
6      THE COURT:  Yes, I am -- it doesn't look like your
7  client -- it doesn't look like Mr. Clarida's client put this up.
8  He is just commenting on it, and his -- you know, what it is or
9  when it was created or whether it's a fan who, you know, matched
10 the video up to the audio, I don't know.  We don't need to get
11 into it.  I just would like all sides to comply with my order,
12 and I am suggesting that it would be good for everyone if there
13 weren't anything provocative said or done because that's just
14 more likely either to harden positions so that this can't be
15 worked out and then everybody is going to -- the only people who
16 are going to be happy will be the lawyers because they will be
17 making loads of money, or it's just going to mean that, you
18 know, we are going to have these meetings weekly on Friday
19 afternoons.  Much as I enjoy seeing you all, I would like that
20 not to be the --
21     MR. ADELMAN:  Yes, Your Honor.
22     THE COURT:  -- the procedure going forward.  All right.
23 Anything else we should do now?
24     MS. MATZ:  May I just ask that, only because I haven't had
25 an opportunity to fully review, there were four things from --

1  that I had seen yesterday that I have not seen evidence that
2  they were changed, and I don't know if they are, but could we
3  just impose a time limit for them to be changed?  Because I do
4  think that that was part of the frustration on our side and why
5  we sent the letter was -- you know, on Monday we sent an email
6  saying, we haven't seen compliance.  We heard back on Tuesday,
7  you know.
8          THE COURT:  Well, yes.  I was frustrated, too.  That's why
9  I made you run in here today.
10         Mr. Clarida, are you in a position to make a representation
11 regarding whether the items attached to defendants' letter of
12 yesterday have been fixed?
13         MS. MATZ:  I am sorry.  Not all attached just for
14 clarification one.
15         THE COURT:  Or described.
16         MS. MATZ:  One was attached, and I can describe the rest,
17 but go ahead.  I apologize.
18         MR. CLARIDA:  Anything that's been called to our attention
19 in defendants' letter I believe has been fixed, Your Honor.  If
20 there is things we haven't been notified yet, I don't know.
21         THE COURT:  Well --
22         MS. MATZ:  Do you want me to tell you what I believe they
23 are?  Again, I am not saying they are not fixed.  I am saying --
24         THE COURT:  Why don't you tell Mr. Clarida what they are,
25 and if they are not fixed, they need to be fixed by 12:00 noon

```
 1   tomorrow.
 2         MR. CLARIDA:  Okay.
 3         MS. MATZ:  Thank you very much, Your Honor.
 4         Do you want me to read them into the record or --
 5         THE COURT:  If you like, go ahead.
 6         MS. MATZ:  Okay.  One is Mr. Willis's personal Twitter page
 7   @Victor Willis.  There's still references, and you know, that he
 8   describes himself as the lead singer of Village People.  There
 9   is not new language or anything like that.  The other is
10   Instagram page 1.
11         MR. CLARIDA:  Could you slow down, please?  I am taking
12   notes?
13         MS. MATZ:  I can supply with you a copy of this.
14         MR. CLARIDA:  Okay.  That would be great.
15         MS. MATZ:  The first page of Instagram, while they did put
16   the disclaimer language in the most recent comment, the Court
17   had ordered that it be on -- the disclaimer be on the first
18   page, and then there is also The Victor Willis Instagram, and I
19   believe there were some things in the bio on Mr. Willis's
20   Facebook page.
21         THE COURT: All right.  Well, it shouldn't be a problem to
22   address those even with the time change to Australia.  Okay.
23         MR. CLARIDA:  All right.  But Your Honor, if I may, that is
24   extremely vague.  Some things in the bio?
25         THE COURT:  Well, I will assume if you look at the bio, if
```

1  there is something that violates my order like there is no
2  asterisk and no footnote.
3      MR. ADELMAN:  We will give him the page.
4      MR. CLARIDA:  Okay.  Terrific.
5      MR. ADELMAN:  It's very obvious.
6      THE COURT:  All right.  I mean, the lawyers all seem to be
7  behaving professionally.  Maybe it's the clients who just need
8  their butts kicked a little.  I am happy to do that, but I think
9  you would rather not have me do that.  I think you would rather
10 do it yourselves.
11     MR. CLARIDA:  Would the same noon tomorrow deadline also
12 apply to the Red Entertainment page that was attached to my
13 letter that's not in compliance?
14     THE COURT:  That was -- I am told from back when, right?
15 Isn't that --
16     MS. MATZ:  That's the one --
17     THE COURT:  No, that's the one that they are just going to
18 move and they are going to start a paragraph.  Yeah, if you
19 can -- unless there is some reason why you can't reach them.
20     MR. ADELMAN:  They are a third party, and they may or may
21 not be working over the weekend.  We are not in control of them.
22     THE COURT:  Yes.
23     MR. ADELMAN:  Other than --
24     THE COURT:  On your train ride home try to reach them
25 before 5:00 and just ask them to do that, but I am not going to

1  make them come in over the weekend, but they are not parties.
2  They are third parties, or they are agents of parties.
3       MR. ADELMAN:  Correct.
4       THE COURT:  All right.
5       MR. ADELMAN:  Thank you, Your Honor.
6       THE COURT:  Thank you all.  Have a good weekend.
7       (Time noted:  4:00 p.m.)