Karen L. Willis, J.D.
220 West G Street, Suite E.
San Diego, CA. 92101
(619) 206-5311

February 12, 2018

**DOCKETING OF DECEMBER 7, 2017 MOTION TO INTERVENE, TRO AND MOTION TO VACATE**

Per the request of Hon. Judge Cathy Siebel, the following papers dated December 7, 2017, is hereby docketed:

*Memorandum of Law to Vacate or Modify;
*OSC to Permit Intervention or Modify TRO;
*Declaration of Brian Caplan;
*Declaration of Karen Willis;
*Declaration of Sal Michaels

Respectfully submitted,

Karen L. Willis, J.D.

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-----------------------------------------------------------x
CAN'T STOP PRODUCTIONS, INC.,

    Plaintiff,

              -against-                              7:17-cv-06513-CS

SIXUVUS, LTD., ERIC ANZALONE,
ALEXANDER BRILEY, FELIPE ROSE, JAMES
F. NEWMAN, RAYMOND SIMPSON, and
WILLIAM WHITEFIELD,
              Defendants.

-----------------------------------------------------------x

## MEMORANDUM OF LAW IN SUPPORT OF MOTION BY KAREN WILLIS D/B/A HARLEM WEST ENTERTAINMENT TO INTERVENE AND TO VACATE OR MODIFY TEMPORARY RESTRAINING ORDER

### PRELIMINARY STATEMENT

Proposed Intervenor Karen Willis d/b/a Harlem West Entertainment ("Harlem West"), as exclusive licensee of the federally registered VILLAGE PEOPLE trademark at issue in this action (the "Mark"), respectfully requests leave to assert a counterclaim against Defendants, and seeks to: vacate the temporary restraining order issued by this Court on December 1, 2017 (ECF 37)("TRO") and thus to maintain the *status quo ante*; to order expedited discovery; to prohibit Defendants from using social media or other communications channels to interfere with Harlem West's exclusive use of the Mark; and to schedule a preliminary injunction hearing, including Harlem West, as soon as possible after the January 5, 2018 mediation date that has been set in this matter. In the alternative, Harlem West seeks to modify the TRO to state that Defendants may, pending the mediation date, accurately refer to their entertainment services as follows: "SIXUVUS presents Felipe Rose and Alexander Briley, former members of the legendary

1

Village People, and company." The language that this Court provisionally approved in the December 1 TRO, *i.e.*, "Sixuvus Presents the Legendary Village People," with "Village People" double the font size of "Sixuvus," will create confusion among the relevant purchasing public by effectively creating two competing and unrelated "Village People" performing groups, thus vitiating the Mark and the exclusive rights of Harlem West in the Mark.

Harlem West is the exclusive licensee of the Mark. See accompanying Declaration of Karen Willis dated December 7, 2017 ("Willis Decl.") at ¶ 17 and Ex. 1 to the Willis Decl.

As set forth below, because Harlem West's mark is strong and entitled to broad protection, the parties' marks are identical or substantially identical, the parties' services offered under the respective marks are identical, and the market channels and customers for those goods are identical, Harlem West is likely to succeed on the merits and will suffer irreparable injury unless an injunction is issued. In addition, because the Defendants sat on their hands and took no action for six months after being notified that their rights to use the Mark were terminated, and then intentionally came to this Court purporting to seek emergency relief without including Harlem West as a party in their counterclaim, the balance of the hardships tips strongly in Harlem West's favor. Accordingly, the relief sought by Harlem West is both necessary and appropriate to preserve Harlem West's exclusive rights in the Mark, to prevent irreparable injury to Harlem West's goodwill and reputation in the VILLAGE PEOPLE Mark, and to prevent confusion, deception and mistake among consumers.

I. **HARLEM WEST IS ENTITLED TO INTERVENE UNDER RULE 24(A)**

Rule 24 of the Federal Rules of Civil Procedure ("Rule 24"), governs intervention. Rule 24(a) addresses intervention as a matter of right, and provides, in pertinent part:

2

On timely motion, the court must permit anyone to intervene who:

....

(2) claims an interest relating to the property or transaction that is the subject of the action, and is so situated that disposing of the action may as a practical matter impair or impede the movant's ability to protect its interest, unless existing parties adequately represent that interest.

In order to intervene as of right under Fed. R. Civ. P. 24(a)(2), an applicant must (1) file a timely application, (2) show an interest relating to the property or transaction that is the subject matter of the action, (3) demonstrate that the ability to protect that interest may be impeded or impaired by the disposition of the action, and (4) show that the interest is not protected adequately by the parties to the action. *United States v. State of New York*, 820 F.2d 554, 556 (2d Cir.1987); *accord New York News, Inc. v. Kheel*, 972 F.2d 482, 485 (2d Cir.1992); *accord Brennan v. New York City Bd. of Educ.*, 260 F.3d 123, 128 (2d Cir.2001). The inquiry under Rule 24(a)(2) is a flexible one, 6 DANIEL R. COQUILLETTE, ET AL., MOORE'S FEDERAL PRACTICE § 24.03[1][b], at 24–23 (3d ed. 2015), and the factors should "be read not discretely, but together." *United States v. Hooker Chems. & Plastics Corp.*, 749 F.2d 968, 983 (2d Cir.1984). "A showing that a very strong interest exists may warrant intervention upon a lesser showing of impairment or inadequacy of representation. Similarly, where representation is clearly inadequate, a lesser interest may suffice as a basis for granting intervention." *Id.*

Harlem West has satisfied all four elements.

**A. Harlem West's Motion is Timely**

3

"Among the factors to be taken into account to determine whether a motion to intervene is timely are: (a) the length of time the applicant knew or should have known of his interest before making the motion; (b) prejudice to existing parties resulting from the applicant's delay; (c) prejudice to applicant if the motion is denied; and (d) presence of unusual circumstances militating for or against a finding of timeliness." *United States v. State of New York*, 820 F.2d at 557. The most significant criterion is whether the delay in moving for intervention has prejudiced any of the existing parties. *Hartford Fire Ins. Co. v. Mitlof*, 193 F.R.D. 154, 160 (S.D.N.Y.2000) (quoting *United States v. Int'l Bus. Machs. Corp.*, 62 F.R.D. 530, 541–42 (S.D.N.Y.1974)).

Here, the motion is timely. The Order was just issued on December 1, less than one week ago, and there will be no prejudice to Defendants if Harlem West is allowed to be heard. Harlem West had no reason to seek to intervene prior to the entry of the TRO on December 1. It did not participate in the pleadings to date in this action, and its goal is simply to protect its own rights in the Mark as an exclusive licensee.

### B. Harlem West Has An Interest in the Property Here At Issue

A proposed intervenor does not have to assert a property interest, but rather "an interest relating to the property or transaction which is the subject of the action." *Brennan v. New York City Bd. of Educ.*, 260 F.3d at 130 (quoting Rule 24(a)(2)). "The 'interest' required by Rule 24(a)(2) has never been defined with particular precision," *Sec. Ins. Co. of Hartford v. Schipporeit, Inc.*, 69 F.3d 1377, 1380 (7th Cir.1995), but at a minimum, it must be a "significantly protectable interest," *Donaldson v. United States*, 400 U.S. 517, 531, 91 S.Ct.

4

534, 27 L.Ed.2d 580 (1971), that is direct and substantial. *Washington Elec. Coop., Inc. v. Mass. Mun. Wholesale Elec. Co.*, 922 F.2d 92, 97 (2d Cir.1990).

Harlem West clearly has a "significantly protectable interest" in the property that is the subject matter of the action because it is the exclusive licensee of rights in the federally registered, incontestable VILLAGE PEOPLE Mark.

### C. Harlem West's Rights Are Impaired by the TRO

The facts here demonstrate that this Court's December 1 Order has allowed the Defendants to use the VILLAGE PEOPLE mark in a manner that Harlem West believes will create a likelihood of confusion, thus impairing Harlem West's exclusive rights.

### D. Harlem West Lacks Adequate Representation in This Action

Finally, Harlem West's interest was not, and will not be, adequately represented by the existing parties in the action, nor is it identical to the interests of Can't Stop. The burden of showing such an inadequacy is minimal, *Washington Elec. Coop., supra*, 922 F.2d at 98. Because Can't Stop has not "demonstrated sufficient motivation to litigate vigorously and to present all colorable contentions," the interests of the intervenor are not adequately represented. *Cf. Natural Res. Def. Council v. New York State Dep't of Envtl. Conservation*, 834 F.2d 60, 62 (2d Cir.1987); *see Delaware Trust Co. v. Wilmington Trust, N.A.*, 534 B.R. 500, 509 (S.D.N.Y. 2015)("As to the final requirement, adequacy, a proposed intervenor's interests cannot be 'identical' to those of other parties, and cannot be adequately represented by another party.").

Courts outside the Second Circuit have also considered whether an intervenor's interests "are sufficiently different in kind or degree from those of the named party," *B. Fernández & Hnos., Inc. v. Kellogg USA, Inc.*, 440 F.3d 541, 546 (1st Cir.2006), and when absentee parties will be affected or may be bound, "Courts have held that asymmetry in the intensity of the interest can prevent a named party from representing the interests of the absentee." *Glancy v. Taubman Ctrs., Inc.*, 373 F.3d 656, 675 (6th Cir.2004) (construing Rule 19(b)). (Quoted with approval by *Securities Investor Protection Corp. v. Madoff*, 550 B.R. 241 (S.D.N.Y. 2016)).

Harlem West's interest in protecting the source-identifying function of the Mark has greater immediacy than does the interest of Can't Stop. Because Can't Stop itself no longer has any present right to make use of the VILLAGE PEOPLE mark -- having licensed exclusive rights in it to the Proposed Intervenor Harlem West until 2027 – Can't Stop's commercial interest in stopping the use is far more attenuated than that of Harlem West.

## II     VACATING OR MODIFYING THE ORDER IS NECESSARY TO AVOID LIKELHOOD OF CONFUSION

Because there is no adequate remedy at law for the prospective damage caused by trademark infringement, vacating or modifying the TRO is the only option to prevent irreparable injury to Harlem West. Federal courts have the power to grant (and therefore to vacate or to modify) injunctions to prevent trademark infringement, see 15 U.S.C. § 1116 (Lanham Act § 34).

### A. The Standard for a Vacating or modifying TRO

"On [a] motion to dissolve a temporary restraining order, ... the party that obtained the order bears the burden of justifying continued injunctive relief." *S.G. Cowen Sec. Corp. v.*

*Messih*, No. 00 Civ. 3228, 2000 WL 633434, at *1 (S.D.N.Y.), *aff'd,* 224 F.3d 79 (2d Cir.2000). "It is well established that the standard for an entry of a temporary restraining order is the same as for a preliminary injunction." *AFA Dispensing Grp. B.V. v. Anheuser-Busch, Inc.,* 740 F.Supp.2d 465, 471 (S.D.N.Y.2010). "A plaintiff seeking a preliminary injunction must establish that he is likely to succeed on the merits, that he is likely to suffer irreparable harm in the absence of preliminary relief, that the balance of equities tips in his favor, and that an injunction is in the public interest." *Winter v. Natural Res. Def. Council, Inc.,* 555 U.S. 7, 20, 129 S.Ct. 365, 172 L.Ed.2d 249 (2008). A plaintiff must satisfy each part of the standard by a preponderance of the evidence. *WestLB AG v. BAC Fla. Bank,* No. 11 Civ. 5398, 2012 WL 3135825, at *3 (S.D.N.Y. Aug. 2, 2012).

As a threshold matter, because Harlem West was an indispensable party to Defendant's belated counterclaim, and was not included in that pleading, see Willis Decl. at ¶¶ 40-45, the injunction must be dissolved. *See e.g., Ram v. Lal,* 906 F. Supp. 2d 59, 80 (E.D.N.Y. 2012) (failure to join necessary party disposes of movant's preliminary injunction motion because movant cannot show a likelihood of success on the merits of its lawsuit); *Boat Basin Inv'rs, LLC v. First Am. Stock Transfer, Inc.,* 2003 WL 282144, at *8 (S.D.N.Y. Feb. 7, 2003) (same); *Shenandoah v. U.S. Dep't of Interior,* 1997 WL 214947, at *3 (N.D.N.Y. Apr. 14, 1997), *aff'd,* 159 F.3d 708 (2d Cir. 1998) (same).

Even if Harlem West were not an indispensiable party, however, the burden would be on on **Defendants**, as the parties who obtained the TRO, to make the requisite showing to maintain the TRO. *S.G. Cowen Sec. Corp. v. Messih,* No. 00 Civ. 3228, 2000 WL 633434, at *1 (S.D.N.Y.), *aff'd,* 224 F.3d 79 (2d Cir.2000). They would have to show "(a) irreparable harm and (b) either (1) likelihood of success on the merits or (2) sufficiently serious questions going to

7

the merits to make them a fair ground for litigation and a balance of hardships tipping decidedly toward the party requesting the preliminary relief." *Hasbro, Inc. v. Lanard Toys, Ltd.*, 858 F.2d 70, 73 (2d Cir. 1988). In fact, though it is not Harlem West's burden to make any showing, all of these factors actually favor Harlem West and the dissolution of the TRO, not its continuation. Further, because the TRO entered in this case altered the status quo, rather than preserving it, Defendants would face an even higher standard for showing that it should be continued. See *Tom Doherty Assocs. Inc. v. Saban Ent'm't Inc.*, 60 F.3d 27, 33-34 (2d Cir. 1995)

**B. Harlem West, Not Defendants, Is Likely To Succeed On The Merits.**

To prevail, Harlem West must establish that it has exclusive rights in a valid, protectable mark and that Defendants' use of a similar mark is likely to cause confusion as to origin. 15 U.S.C. § 1125(a) (Lanham Act § 43(a)); *Lane Capital Management, Inc. v. Lane Capital Management, Inc.*, 192 F.3d 337 (2d Cir. 1999); *Tri-Star Pictures, Inc. v. Leisure Time Productions, B.V.*, 17 F.3d 38, 43 (2d Cir. 1994); *Pirone v. MacMillan, Inc.*, 894 F.2d 579, 581-82 (2d Cir. 1990). Harlem West easily satisfies both prongs of the test in this case.

**C. Harlem West's Mark Is Valid And Protectible.**

By agreement dated May 19, 2017, Plaintiff granted an exclusive worldwide license to Harlem West to use the Mark in connection with live performances and related promotional appearances. Willis Decl., ¶ 17, and Ex. 1. Harlem West's Mark is protectible because it is suggestive, and thus inherently distinctive. *Two Pesos, Inc. v. Taco Cabana, Inc.*, 505 U.S. 763, 768 (1992)(suggestive marks are inherently distinctive); *Genesee Brewing Co., Inc. v. Stroh Brewing Co.*, 124 F.3d 137, 143 (2d Cir. 1997)(same). Moreover, the Mark is incontestable, as shown in the on-line records of the United States Patent and Trademark Office, www.uspto.gov.

8

1.  **Defendants Unauthorized Use of Both Identical and
    Nearly Identical Marks for Identical Services is
    Likely to Cause Confusion, Mistake and Deception.**

The central factor in determining liability in a trademark infringement action is whether the Defendants' use of their trademark is likely to cause confusion. 15 U.S.C. § 1125(a) (Lanham Act § 43(a)); *Lane Capital Management, Inc. v. Lane Capital Management, Inc.*, 192 F.3d 337 (2d Cir. 1999); *Tri-Star Pictures, Inc. v. Leisure Time Productions, B.V.*, 17 F.3d 38, 43 (2d Cir. 1994); *Pirone v. MacMillan, Inc.*, 894 F.2d 579, 581-82 (2d Cir. 1990). Thus, at the preliminary injunction stage, if Harlem West establishes a likelihood of confusion, it has necessarily established both likelihood of success and irreparable harm. *Hasbro* at 73; *Home Box Office, Inc. v. Showtime/The Movie Channel Inc.*, 832 F.2d 1311, 1314 (2d Cir.1987); *Standard & Poor's Corp. v. Commodity Exch., Inc.*, 683 F.2d 704, 708 (2d Cir.1982); *Omega Importing Corp. v. Petri-Kine Camera Co.*, 451 F.2d 1190, 1195 (2d Cir.1971).

The Second Circuit has established an eight-factor test to determine likelihood of confusion. *Polaroid Corp. v. Polarad Electronics Corp.*, 287 F.2d 492, 495 (2d Cir. 1961). Courts must weigh:

> 1) the strength of the plaintiff's mark; 2) the similarity of plaintiff's and defendant's marks; 3) the competitive proximity of the products; 4) the likelihood that Harlem West will "bridge the gap" and offer a product like defendant's; 5) actual confusion between products; 6) good faith on the defendant's part; 7) the quality of defendant's product; and 8) the sophistication of buyers.

*See Gruner + Jahr USA Publishing v. Meredith Corp.*, 991 F.2d 1072, 1077 (2d Cir.1993); *Arrow Fastener Co. v. Stanley Works*, 59 F.3d 384, 391 (2d Cir.1995).

9

Analysis of the parties' respective marks under the eight factor *Polaroid* test leads to only one conclusion – the Defendants' use of VILLAGE PEOPLE in the TRO Formulation is likely to cause confusion resulting in irreparable harm to Harlem West, thereby warranting entry of a preliminary injunction and dissolution of the TRO.

## The VILLAGE PEOPLE Mark is Strong and Entitled to the Widest Scope of Protection

The strength of a mark is defined as its "power to identify the source of a product." *Time, Inc. v. Petersen Pub. Co.*, 173 F.3d 113, 117 (2d Cir. 1999). Strength indicates distinctiveness. For purposes of this motion, Harlem West's mark is conclusively strong because Harlem West's mark is registered and inconstestible. *McGregor-Doniger, Inc. v. Drizzle Inc.*, 599 F.2d 1126, 1132 (2d Cir. 1979). There is no need for Harlem West to establish secondary meaning. *Id.*

This strength factor plainly weighs in favor of a finding of likelihood of confusion.

## The Parties' Marks are Identical or Nearly Identical

There can be no clearer case of copying than this. Not only do Defendants use exactly the same mark – VILLAGE PEOPLE – but even in the TRO Formulation provisionally authorized by the Court, the term VILLAGE PEOPLE is twice the font size of Sixuvus, the actual source of defendants' entertainment services.

Similarity of trademarks is based on the "general impression created by the marks, keeping in mind all factors which the buying public will likely perceive and remember." *W.W.W. Pharmaceutical Co. v. Gillette Co.*, 984 F.2d 567, 573 (2d Cir. 1993). Here the Defendants have used the same words (VILLAGE PEOPLE, together and in sequence), surrounded only by verbiage, in much smaller typeface, that would not be of much import or concern to a buyer of tickets for a live musical performance. The dominant portion of the TRO

10

Formulation, both visually and in terms of commercial impression, is the term VILLAGE PEOPLE. In short, the parties' marks are not merely similar, but for all practical purposes they are identical. *See Nabisco, Inc. v. PF Brands Inc.*, 191 F.3d 208, 222 (2d Cir. 1999) (granting injunction in favor of senior user of "nearly identical" trade dress).

Because of the identity of their dominant portions and meanings, the parties' marks are confusingly similar. This factor weighs heavily in favor of finding a likelihood of confusion.

**The Parties' Services Are Identical**

The next Polaroid factor inquires of the "competitive proximity" of the products. Here, the parties' services compete directly. The products and services are exactly the same. Both parties are engaged in the same business. The proximity factor weighs heavily in favor of finding a likelihood of confusion.

**The Likelihood That Harlem West Will "Bridge The Gap" And Offer A Product Like Defendants' is 100%**

Here, there is no need to speculate: the bridge has been built, for Defendants already offer exactly the same services as Harlem West, and offer nothing more. *Streetwise Maps, Inc. v. Vandam, Inc.*, 159 F.3d 739 (2d Cir. 1998) (gap is bridged where plaintiff and defendant already occupy the same market).

The "gap-bridging" factor weighs heavily in favor of finding a likelihood of confusion.

**Actual Confusion**

There is at least one instance of actual confusion since the TRO was issued. See Willis Decl., Ex. 4 ("I was confused but it appears to be Victor Willis."). This factor weighs in favor of Harlem West.

11

**Good Faith On The Defendants' Part.**

The Defendants' actions demonstrate only bad faith. Defendants waited until six months after Can't Stop's termination of their oral license, i.e., after all of their previously booked performances had been completed, to seek injunctive relief. Willis Decl., ¶23. Defendants have failed and refused to turn over control of the Village People's social media accounts to Can't Stop and have used same to wage a social media campaign to interfere with Harlem West's exclusive license of the Mark. Willis Decl., ¶¶ 30-38. Defendants have also violated the TRO by advertising themselves as the "Legendary Village People" without mentioning "Sixuvus Presents" on multiple occasions since the entry of the Order. Willis Decl., ¶¶ 50-53, and Exs. 4, 6, 7, 8, and 9. Defendants are actively soliciting buyers worldwide as "Village People" despite the terms of the Order. Willis Decl., ¶53, Ex. 9.

**The Quality of Defendants' Product**

The Defendants have not yet offered their services under the TRO Formulation, so there is no basis for making a determination about this factor.

**The Sophistication of Buyers**

Purchasers of tickets for live pop music performances do not engage in extensive research, but respond principally to the name of the featured performer. Here, a reasonable consumer would believe, incorrectly, that the featured performers were the VILLAGE PEOPLE, which is the visually and semantically dominant part of the TRO Formulation, and which is preceded by the term "Legendary" and appears in type font twice as large as the Defendant's name, Sixuvus. The level of consumer care in purchasing the parties' products therefore favors a finding of likelihood of confusion.

12

### B.  HARLEM WEST WILL SUFFER IRREPARABLE HARM

Once a trademark owner has shown a likelihood of success on the merits, the resultant loss of control over the trademark and the risk to the goodwill and reputation associated therewith constitutes irreparable injury warranting a preliminary injunction. *Dep Corp. v. Opti-Ray, Inc.*, 768 F.Supp. 710 (C.D. Cal. 1991) (citing Apple Computer v. Formula Int'l, Inc., 725 F.2d 521, 526 (9th Cir. 1984)). In the Second Circuit, Harlem West's demonstrated probable success on the merits creates a *presumption* that Defendants' conduct will result in irreparable injury to Harlem West. *Church of Scientology Int'l. v. Elmira Mission of the Church of Scientology*, 794 F.2d 38, 42 (2d Cir. 1986). The loss of control over Harlem West's reputation cannot be compensated by money; an injunction is imperative to the protection of Harlem West's exclusive rights in the Mark.

The very purpose of a trademark is to identify a product as emanating from a single source, here Can't Stop, and its exclusive licensees. McCarthy, § 3:3. The loss of control of the mark removes the ability of the owner to control its own reputation. The magnitude of this loss caused by the inability to control one's trademark is thus impossible to assess.

If an individual or concert promoter purchases entertainment services from Defendants believing the services to be those of Can't Stop or Harlem West, any disappointment in quality of the Defendants' show will harm Harlem West's reputation and goodwill. Dissatisfied customers will not purchase tickets for Harlem West's services in the future and will negatively influence other consumers. As such, harm to Harlem West's reputation is irreparable. It can only be prevented by an order from this Court enjoining Defendants' further use of the confusingly similar VILLAGE PEOPLE trademark.

### C. BALANCE OF THE HARDSHIPS FAVORS HARLEM WEST

Harlem West's demonstration of likelihood of success on the merits and irreparable injury alone warrant the relief sought. *GoTo.com Inc. v. Walt Disney Co.*, 202 F.3d 1199, 1209 (9th Cir. 2000). However, the balance of hardships also tips sharply in Harlem Wests' favor.

Beginning as far back as May 30 of this year, Can't Stop put Defendants on notice that their oral trademark license had terminated. Willis Decl., ¶21. Defendants sat on their hands and did not contest the termination until they appeared before this court seeking a TRO by order to show cause six months later, on December 1. Willis Decl., ¶23. Defendants had ample opportunity to stop their use of the Mark or seek the Court's assistance, and thus to minimize the financial impact and disruption of business of changing their stage name. Having failed to take action for six months, Defendants are in no position to seek emergency relief from this Court. Further, Defendants have announced no engagements for the next thirty days. Willis Decl., ¶ 58.

As demonstrated above, there exists a significant likelihood of confusion. Defendants have chosen their path and may not now be heard to complain that the path is fraught with hardship. If this Court does not enter a preliminary injunction stopping Defendants' use of the Mark, exclusive licensee Harlem West will suffer irreparable injury. Willis Decl., ¶55-56; Declaration of Sal Michaels dated December 7, 2017, ¶¶ 8-10. If Defendants are permitted to continue booking live shows and performing as the "Village People" or "Legendary Village People," it will have a detrimental impact on Harlem West's ability to procure its own engagements for its group and possibly enable Defendants to book an engagement that otherwise would have been booked by Harlem West. Id., at ¶¶8-9. Moreover, Defendants' use of the Mark in competition with Harlem West effectively chills any momentum Harlem West is gathering as it begins to use the Mark on the Australia Tour and otherwise. Id., at ¶ 10. The hardships favor Harlem West and the granting of the requested relief.

14

## CONCLUSION

For all the foregoing reasons, Harlem West respectfully requests that the Court enter an order vacating the temporary restraining order issued by this Court on December 1, 2017, setting an expedited discovery schedule, and scheduling a preliminary injunction hearing, including Harlem West, as soon as possible after the January 5, 2018 mediation date. In the alternative, Harlem West seeks an order modifying the TRO to state that Defendants may, pending the mediation date, accurately refer to their entertainment services as follows: "SIXUVUS presents Felipe Rose and Alexander Briley, former members of the Legendary Village People, and company."

Dated: New York, New York
December 7, 2017

REITLER KAILAS & ROSENBLATT LLC

By: _____
Brian D. Caplan, Esq.
Robert W. Clarida, Esq.
885 Third Avenue, 20th Floor
New York, New York 10022
Telephone: (212) 209-3050
bcaplan@reitlerlaw.com
rclarida@reitlerlaw.com

15