# Exhibit 1

180316can'tstopC                    Conference


1  UNITED STATES DISTRICT COURT
   SOUTHERN DISTRICT OF NEW YORK
2  ------------------------------x
   CAN'T STOP PRODUCTIONS, INC.,
3
                Plaintiff,
4
           v.                          17 Civ. 6513(CS)
5
   SIXUVUS, LTD., et al.,
6
                Defendants.
7

8           v.

9  KAREN WILLIS, doing business
   as Harlem West Entertainment,
10
                Intervenor.
11 ------------------------------x
                                  United States Courthouse
12                                White Plains, N.Y.
                                  March 16, 2018
13                                9:35 a.m.

14 Before:

15            THE HONORABLE CATHY SEIBEL,

16                                        District Judge

17                    APPEARANCES

18 EISENBERG, TANCHUM & LEVY
        Attorneys for Plaintiff
19 STEWART L. LEVY

20 ADELMAN, MATZ, P.C.
        Attorneys for Defendants
21 GARY PHILIP ADELMAN
   SARAH MATZ
22

23 KAREN WILLIS, Pro Se Intervenor

24

25

          SABRINA A. D'EMIDIO – OFFICIAL COURT REPORTER
                    (914)390-4053

180316can'tstopC              Conference

1              (In open court)

2              THE DEPUTY CLERK:  Can't Stop v. Sixuvus.

3              THE COURT:  Good morning, Ms. Willis, Mr. Levy,

4    Ms. Matz, and Mr. Adelman.

5              Can you hear me okay?

6              MR. ADELMAN:  Yes.  Perfectly, your Honor.  Good

7    morning.

8              MS. MATZ:  Yes.  Good morning, your Honor.

9              THE COURT:  All right.  I've got the application from

10   Ms. Willis for a TRO.

11             Can't Stop is not asking for anything at this stage,

12   Mr. Levy?

13             MR. LEVY:  No.  Generally, we are supportive of the

14   motion, but not -- it's not 100 percent in line with our

15   position, so we're just going to wait and see.

16             THE COURT:  Well, it looked to me like some of the

17   relief that was sought really sort of belonged to your client,

18   but let me hear from defendants why I shouldn't enter a TRO.

19   It does look like, from the exhibits, that defendants are

20   continuing to use the trademark, which trademark is not theirs

21   to use.

22             Obviously, the order to show cause is the easy part.

23   You'll have to show cause why a PI shouldn't be entered, but

24   why shouldn't I -- actually, I take it back.  There's really no

25   order to show cause requested; there's just a TRO requested.

180316can'tstopC              Conference

1          MS. WILLIS:  There is an order to show cause, your

2    Honor, at the back.  I put it in the -- it's noted in the

3    last -- look at the order, the last ones.

4          THE COURT:  Oh, you're right, the last paragraph.  The

5    last paragraph says they shall show cause why a PI should not

6    be granted.

7          But why shouldn't I grant a TRO in the meantime,

8    Ms. Matz and Mr. Adelman?  It does look like your clients are

9    continuing to use the trademark based on the exhibits and the

10   other papers.

11         MS. MATZ:  Good morning.  Just for the record, we

12   appreciate you allowing us to appear telephonically.

13         The first issue here is that the TRO should not be

14   entered at all because my clients are no longer using the name

15   in a way that violates anyone's trademark rights.  The exhibit

16   shows that my clients are changing their name to Kings of

17   Disco, Formerly Village People.

18         THE COURT:  Let me interrupt you.  We're having a hard

19   time understanding you.

20         You're on a land line, I take it.  I don't know why it

21   is that you're coming out garbled, but maybe -- I don't know.

22   Maybe -- you're coming out really loud here.

23         MS. MATZ:  I'm coming out really loud, is that what

24   you're saying?

25         THE COURT:  Yes.

180316can'tstopC              Conference

1          MS. MATZ:  Is this a little better?

2          THE COURT:  Yes, it is.

3          MS. MATZ:  Okay.  Great.  I'll just start over.

4     What I was saying is that the use that's complained

5     about is not a use that violates anyone's trademark rights.  My

6     clients are in the process of changing their name to Kings of

7     Disco, Formerly Village People.

8          This was not a name that was addressed by any of the

9     prior proceedings or motion.  And in fact, it is both not going

10    to be the -- Ms. Willis, and if she's allowed to proceed with

11    these claims, this is another issue that I'll address in a few

12    moments -- and the plaintiffs aren't going to be able to prove

13    that there's a likelihood of confusion using that name.

14         THE COURT:  It sounds awfully confusing to me.  I

15    mean, it sounds like -- it's one thing to say "I'm Felipe Rose,

16    formerly of the Village People."  That I think is fair game.

17    But to say "We're Kings of Disco, formerly Village People,"

18    makes it sound like we're the Village People and we've just

19    changed our name, but we're going to be the same act.

20         And I'm having a hard time understanding how your

21    clients are entitled to do the same act.  How are they entitled

22    to still be the Cop and the Cowboy, etc., for live

23    performances?

24         MS. MATZ:  So, I hear what you're saying, but the

25    difference between what you're saying is when there is one

180316can'tstopC                 Conference

1  person who was formerly performing as a band versus, in this

2  case, where the entire group previously performed as Village

3  People.

4         So, I don't think that there is a difference between

5  Kings of Disco, Formerly Village People and the example that

6  you just gave, which is Felipe Rose, Formerly Village People.

7  There's a lot of case law on the use of "formerly" and

8  "formerly of," and both cases in the Southern District and the

9  Ninth Circuit that uses those came out on the side of that

10 instances where "formerly of" and "formerly" were not --

11 were -- both did not satisfy the likelihood of confusion test

12 and, in some cases, were applied as nominative and fair use.

13        THE COURT:  Are your clients doing the same show they

14 did when they were Village People, or essentially the same

15 show?  Are they doing are they performing as the characters?

16        MS. MATZ:  Right now, yes, but that is what cover

17 bands do.  And there's nothing that can stop -- there's no

18 trademark or anything else that can stop them from going out

19 there and singing the songs.  That's a copyright issue, and

20 it's covered by the license performance licenses.

21        THE COURT:  I'm not talking about the copyright issue.

22 They can go out and sing the songs, but can they dress up in

23 the costumes and use the routines and the moves?

24        MS. MATZ:  So, there's two separate questions there:

25 First is the costumes, and I believe that, yes, they can.

180316can'tstopC              Conference

1  There hasn't been any showing that there is a likelihood of

2  confusion.  It would be the same thing as saying a Kiss cover

3  band can't go out there and paint their faces.  Of course they

4  can.

5       THE COURT:  But if that cover band is saying "We're

6  Sweetheart, Formerly Kiss," people are going to think that

7  they're seeing Kiss.  And when they show up, they're going to

8  be like oh, yeah, there's Kiss in the costumes and the make-up,

9  but they're not Kiss.

10      MR. LEVY:  Also, the famous Beatlemania case of 30

11  years ago, where the people performing as the Beatles, dress as

12  the Beatles were shut down because they weren't allowed to do

13  that.

14      And as far as nominative fair use, Ms. Matz is wrong.

15  The Ninth Circuit -- the seminal case is the New Kids on the

16  Block Case, it's the first case that had it.  It recognized in

17  New York and in Boston in the case of the group Boston, "More

18  Than a Feeling," that group.

19      THE COURT:  Yes.

20      MR. LEVY:  And what those cases say is that, you can

21  make reference to what you did in the past if it defines what

22  you did in the past.  So you can use the trademark for that,

23  but you can't use it for future uses.  So that, in the case of

24  the Boston, the lead guitarist was Barry Goudreau, and he was

25  advertising himself as a member of another band featuring Barry

180316can'tstopC                Conference

1  Goudreau of Boston, okay?  The court said, well, he's with

2  another band; it has nothing to do with the group Boston.  He

3  was of Boston, we'll allow it, but they wouldn't let him

4  perform as "Barry Goudreau's Boston."  No.  And that's what

5  nominative fair use is.

6         Now as far as the costumes go, in the preliminary

7  injunction hearing, we introduced our trademarks, registered

8  trademarks, one of which is the costumes as a group, and that

9  was one of the trademarks that was admitted into evidence.

10  They cannot use all our costumes.  It's our trademark.  It was

11  part of the preliminary injunction hearing.  They just can't

12  use it.  And it's flagrant.

13         The reason we didn't join in the motion, as I was

14  telling Ms. Willis, is some of this what happened in Australia

15  and all that, it's really -- we discussed it at the preliminary

16  injunction hearing; it's water under the bridge.  We would

17  think, though, that now is the time to get -- for Sixuvus to

18  get serious and say, all right, you can make reference to Disco

19  Kings featuring the original Indian from the Village People or

20  something, maybe even if you sing some of our songs, we can't

21  stop them from singing some of our songs.  If you want to pay

22  homage for five minutes of something to the Village People,

23  maybe we consider allowing it.  But when they co-opt the entire

24  group so that, going forward, whatever name they're calling

25  themselves is really to the outside world the Village People,

180316can'tstopC                    Conference

1    that's a flagrant trademark violation.

2             THE COURT:  It looks that way to me.

3             It would be -- I mean, this is not a perfect analogy,

4    but if -- let's say there were five guys and they were

5    performing for Blue Man Group, and then they're no longer

6    performing for Blue Man Group, and they start a show called Fun

7    and Magic, Formerly Blue Man Group, the public is going to

8    think, oh, this is -- the Blue Man Group just changed its name,

9    and everything else is continuing the same.

10            Now, here, the performers are the same, but it's just

11   they no longer have the legal right to lead people to believe

12   that the -- that they are the group associated with the

13   trademark.  Right now, somebody else is associated with the

14   trademark, and the trademark covers not just the two words, but

15   the concept of we're going to have these six characters.

16            Now, I'm a little bit hampered because I don't have

17   any law from either side on "formerly" and how that can be

18   used.  It seems to me, one -- so I'm just going on a gut

19   feeling here.  It seems to me that one can state the historical

20   truth that one is formerly of the Village People.  If the Kings

21   of Disco are all formerly members of the Village People, it

22   seems to me they can state the historical fact - Kings of

23   Disco, all formerly of the Village People.

24            If one or more of them wants to say I'm formerly the

25   Cowboy or formerly the Leather Man or whatever, it seems to me

              SABRINA A. D'EMIDIO - OFFICIAL COURT REPORTER
                          (914)390-4053

180316can'tstopC                    Conference

1   they can say that.

2          But I was confused, frankly, when I saw Kings of

3   Disco, Formerly Village People, that looks to the public like

4   there's been only a name change and that the everything else is

5   the same.  And if that's true, and everything else is the same,

6   then it seems like the trademark in the characters and the

7   costumes is being infringed on.

8          And it also, since there is a legal licensee, the

9   public is going to be confused because they're going to say,

10  well, wait a minute, this Kings of Disco is Village People;

11  then who is this other guy?  And this other guy is actually the

12  one who is legally entitled, at least based on what I saw at

13  the hearing, to use the name.

14         So I'm not understanding, Ms. Matz, how what your

15  clients are doing is kosher.

16         MS. MATZ:  Your Honor, the intent was -- the intent in

17  choosing that name was to fit under a meaning that would

18  designate the historical fact.  If the Court feels that that

19  name is confusing and it's a matter of -- right now it's "Kings

20  of Disco, Formerly Village People."  If it should be "formerly

21  of" or formerly -- "Former Members of," if it's just a matter

22  of a couple small tweaks like that that the Court feels that

23  would make it less confusing, my clients would probably be

24  amenable to doing that because the intent was not to confuse

25  the public.  The intent was to reference the historical fact

180316can'tstopC                Conference

1   that all six of the people in the group were formerly

2   performing as Village People.  And this is --

3            THE COURT:  I think "of" or "Members of" would make a

4   big difference.

5            MS. MATZ:  Okay.  We appreciate the clarity.

6            One of the struggles here in the TRO is that the

7   wording is incredibly broad, and it's trying to enjoin all uses

8   of Village People, which is why I started out by saying that we

9   don't feel that any should be enjoined.

10           THE COURT:  There are some other problems.  I'm just

11  looking at the exhibits.  Again, I'm not sure this is -- the

12  extent to which this is Ms. Willis' beef as opposed to

13  Mr. Levy's, but how does your client get to the words Official

14  Village People on its Facebook page?

15           MS. MATZ:  So I'm actually happy that you brought that

16  up, because there's a couple things about the exhibits that I

17  wanted to address as well.

18           The first is that we can't change that, and we have

19  put in a request to Facebook to change it.  The clients are

20  actively trying to consistently rebrand at the moment.

21  Notwithstanding that we're not giving up our original claims

22  and defenses, they are, for the pendency of this, trying to

23  rebrand to something that will be acceptable either under a

24  fair use or under a likelihood of confusion while this

25  litigation is being is being finished.

180316can'tstopC                  Conference

1    MR. LEVY:  We want to address --

2    MS. MATZ:  Can I finish?

3    MR. LEVY:  One point.  There should be some corrective

4    advertising.  One, I do not know whether what Ms. Matz is

5    saying is correct, that it can't be changed, but to the extent

6    that it can't, there has to be some corrective advertising.

7    Drawing analogies to advertising where companies compare their

8    price with another product, you cannot mislead the public.

9    It is very misleading to say on the Twitter account,

10    it says Official Village People; on the Facebook, it says Disco

11    Kings at Official Village People.

12    Frankly, I don't think this is as innocuous as

13    Ms. Matz is saying.  I think this is too cute by a half.  You

14    can't have that.  I also don't think when you use the word

15    "formerly," just going back to the first point, you can say

16    this group consists of so and so, formerly of, but you can't

17    have the whole group be formerly of.

18    It could be "Disco Kings featuring Ray Simpson and

19    whoever it is, formerly of Village People," but you can't say

20    "The Group Disco Kings, Formerly Village People," because they

21    weren't formerly Village People.

22    THE COURT:  I agree.  "Kings of Disco, Formerly

23    Village People," which is what they've been doing now, is not

24    acceptable.

25    MR. LEVY:  I can brief nominal fair use, if you want,

180316can'tstopC                Conference

1    Judge.

2            THE COURT:  "Kings of Disco, Formerly Members of

3    Village People" seems fine.

4            MS. WILLIS:  No, your Honor.  I'll weigh in on that.

5    It's too broad in that the problem with that, your Honor, is

6    that the Kings of Disco were not actually formerly of Village

7    People.  It's a brand-new name they've just created.

8            THE COURT:  But the individuals are formerly members

9    of Village People.

10            MS. WILLIS:  Absolutely.  So in this case, your Honor,

11    there's no case law – and I've searched, your Honor – that

12    would support a contention that a group or a company, for

13    example, has some sort of a rights of association, but there

14    are individuals have that right, Raymond Simpson, Felipe Rose.

15    They all have individual rights of association.  They were a

16    former member, right.

17            So in this case, your Honor, it would be proper, and I

18    would not have a problem with it, if they stated "the Kings of

19    Disco, featuring Felipe Rose and Alex Briley, former members of

20    Village People" or "Featuring Raymond Simpson, Felipe..."  So

21    they have to, your Honor, qualify by stating their individual

22    association, not collectively like that.  That's where you get

23    into the confusion.

24            So I would not have a problem if they stated their

25    names as former members.  Case law supports that.

180316can'tstopC                Conference

1          MS. MATZ:  Your Honor, if I may.  I'd like to address

2    that point.

3          First of all, I disagree with that given that the

4    corporation here was formerly the licensee.  So in other

5    instances where courts have been deciding the rights of former

6    members of a group, those cases did not deal with situations

7    where all of the people who are now going out and performing

8    were former members of the group, and they also do not address

9    a situation where the actual corporate defendant was the

10   licensee and was formerly this group.

11         So I don't think it's misleading at all, like your

12   Honor said, for it to be "Kings of Disco, Formerly of" or

13   "Former Members of."

14         MS. WILLIS:  No.  Here's the problem, your Honor.  It

15   was the Sixuvus Ltd., that was the actual licensee.  Not the

16   Kings of Disco.

17         THE COURT:  Right, but if the Sixuvus wants to create

18   Kings of Disco, I don't see why it's necessary to name the

19   individuals as part of the title of the act as long as it's

20   clear that all that's being said is the members of Kings of

21   Disco were formerly members of the Village People.

22         And I think the clearest, simplest way to say that is

23   "Kings of Disco, Formerly Members of Village People," and

24   there's no confusion about that.  It's very clear that the

25   people who comprise Kings of Disco are formerly members of the

SABRINA A. D'EMIDIO - OFFICIAL COURT REPORTER
(914)390-4053

180316can'tstopC               Conference

1   Village People, assuming that's true.

2          If, at some point, somebody drops out and a new person

3   comes in who was not formerly part of Village People, then it

4   would have to be changed.  It would have to be five out of six

5   of whom are formerly members of Village People, but I'm still

6   troubled by a couple of things.

7          I'm troubled -- I don't understand why you can't take

8   down a Facebook page or drop a Twitter handle.  And to suggest

9   that your client's group, Ms. Matz, is the Official Village

10  People, look, apart from the confusion, they're still

11  defendants in this case.  Every day that that's up there,

12  that's ka-ching ka-ching for the plaintiff or the intervenor.

13  So I don't understand how they can argue that they have any

14  right to @villagepeople on Twitter or the, quote/unquote,

15  Official Village People Facebook page.  And I don't think

16  anybody makes you, once you sign up for Twitter or Facebook,

17  stay for life.

18         MR. LEVY:  Costumes, the costumes.  Let me just bring

19  it up.

20         THE COURT:  Hold on, Ms. Matz.

21         MR. LEVY:  The costumes on the Facebook page, when it

22  says Kings of Disco, behind it are the guys dressed up as the

23  Village People.  So now if I'm a consumer, even if you put the

24  restriction "Featuring Former Members of," now you see them

25  dressed up as the Village People, doesn't that defeat the whole

180316can'tstopC              Conference

1    purpose?  It's, like, oh, that's the Village People.

2              THE COURT:  It does.

3              It seems to me, that to be fair, these images have to

4    have captions making clear here's a picture of us when we were

5    Village People.  I think the problem isn't just the photograph;

6    the problem is the act.

7              MS. WILLIS:  Yes.

8              THE COURT:  If the Kings of Disco act looks like

9    this picture, then there's a problem because the defendants

10   don't have the right to be the Cop, the Leather Man, the Biker

11   -- the Cowboy, etc., and that's the larger problem – the act

12   itself is infringing.

13             And what I think has to happen here is, they -- as

14   Mr. Levy said, maybe there's room for some brief homage, and

15   that's something I think the parties should work out, but these

16   guys have to come up with a new act.

17             They can't change their name to Green Man Group and do

18   the same act as Blue Man Group if somebody else has the license

19   for it.  And they can't do the act they've been doing for 30

20   years when they don't own or have rights to the trademark.  So

21   these photographs are arguably not misleading because the

22   photographs are showing what the act really is.  It's the act

23   that's the problem.

24             I think if the Kings of Disco want the world to know

25   that this is what we look like when we are Village People, they

180316can'tstopC              Conference

1    have to make it clear on their website that here's our act when

2    we were Village People, and not suggest this is our new act.

3            I mean, I'm all ears, Ms. Matz, as to why it would be

4    okay for Kings of Disco to go out and perform as Village People

5    any more than it would be okay for them to go out to perform as

6    Blue Man Group without a license or to go out and perform as

7    the cast of "Hamilton" without a license.

8            MS. MATZ:  Your Honor, I'm sorry.  There have been

9    several points raised that I've been trying to respond to.  If

10   you don't mind, I'd be happy to respond to those, or if

11   Ms. Willis would like to go, I can go after her.

12           THE COURT:  You can go ahead.

13           MS. MATZ:  Thank you.  I appreciate that.

14           First of all, we don't have any objection to

15   clarifying the photographs make clear that they were taken when

16   our clients were Village People, that's not an issue, because

17   they are historical.  Our clients have a lot of historical

18   material, and nothing should prevent them from being able to

19   show their past history.  But if the Court would like some

20   clarification, that, again, is not an issue.

21           The other thing that was raised was, and I'm going to

22   address the costume flap, but the other thing that was raised

23   was the social media handles.  So, the issue here is that it's

24   only the URLs that our client is having trouble changing.  And

25   our client -- the intervenor essentially requested that those

180316can'tstopC                Conference

1    URLs be turned over to her, which I think is inappropriate for

2    a temporary restraining order.

3              Our clients have already changed the name on Twitter

4    to Kings of Disco.  Now they can't change the URL.  Twitter

5    doesn't allow that functionality.  We can look and see what we

6    can do about transferring it or something, but those are not --

7    those types of actions are not things that we can do without

8    Twitter or without Facebook, and I'm only talking about the

9    URLs.

10             THE COURT:  Let me make sure -- I'm going to show my

11   ignorance.  Let me make sure I know what you mean by the URL.

12             MS. MATZ:  That's fine.

13             THE COURT:  Tell me what you mean by the URL.

14             MS. MATZ:  So when you go to a website, you type in --

15   if I was going to the Southern District, and I don't have the

16   exact address, I'd type in www.southerndistrictofnewyork.  For

17   example, on Twitter, there is a URL that is

18   twitter.com/villagepeople, okay?  That is the URL.  It's like a

19   phone number.  It's a unique identifier that tells your browser

20   to go to that website.

21             Then when you get --

22             THE COURT:  Hold on.

23             MS. MATZ:  Go ahead.

24             THE COURT:  Why can't you just tell Twitter we're

25   dropping this and cancel it and go away?  Like, if I had a

180316can'tstopC              Conference

1    Twitter account, twitter.com/cathyseibel, and I died, somebody

2    eventually will come along and say she's dead, take that down,

3    then you can have a new Twitter account,

4    twitter.com/kingsofdisco.  And then people who are looking for

5    Village People, won't be sent to your site; they'll be sent to

6    the licensee's site.

7              MS. MATZ:  The answer to that question is that the

8    information and our followers, and it would be unfair to ask us

9    to turn those over without being allowed to transfer that

10   somewhere else.

11             THE COURT:  I'm not suggesting you turn it over.  I'm

12   suggesting you take the content, you put it on

13   twitter.com/kingsofdisco, you call up Twitter and you say we

14   don't want this anymore.  And if Ms. Willis wants to call up

15   Twitter and ask for that handle, she can do it.

16             MS. MATZ:  And that's part of what our clients are

17   trying to do, but that is not something that they can do

18   without Twitter's help or without Facebook's help.  And

19   actually, Facebook may have been -- I know they've been in

20   communication with Facebook.  I've seen the e-mails.  So it's

21   part of what they're trying to do.  But in the meantime, they

22   shouldn't be shut down because that information would be lost.

23             And for the record, they haven't posted anything, at

24   least on Twitter, what I'm looking at.  The last post here was

25   January 23rd.  You see the new name Kings of Disco, and then

180316can'tstopC              Conference

1    you see this post, that was done during the TRO.  And you can

2    tell that because they even included the disclaimer language at

3    the bottom.

4           When you change the visible name, the username, which

5    is what they did change, that's the piece they have control

6    over, it changes for all the tweets, all the historical tweets,

7    as well.  So it is -- they are taking steps to move toward

8    that.  It's not something that can happen immediately.

9           And the information --

10           THE COURT:  What about Facebook?  It looks like

11    they're still -- their Facebook page is still called Official

12    Village People.

13           MS. MATZ:  So that's the -- you're talking about the

14    URL or the username?  Yeah, that's the username they've put in

15    to be changed, but they don't want to lose the verification

16    status.  They want a new verification status for Kings of

17    Disco, and that's what they're trying to do.

18           THE COURT:  I'm confused, and I don't know from

19    Facebook, but I don't understand why they can't take the

20    content, which they own, which is stuff that -- I mean, not the

21    comments and stuff, I guess, they didn't create, but the rest

22    of the material that they created and put it on a Facebook page

23    that has the URL Kings of Disco.  And if, for some reason that

24    I don't understand, Facebook doesn't allow you to ever leave,

25    once you sign up, you're there forever, it seems, at the very

180316can'tstopC              Conference

1    least, there ought to be a big banner across the top saying "If

2    you're looking for the Village People, here's their Facebook

3    page, that's not us."

4           But I still am not convinced that you can't notify

5    Facebook that you want to drop out of Facebook.  And Official

6    Village People can drop out of Facebook, they can come back to

7    life as Kings of Disco, and then there won't be confusion.  But

8    people who are looking for the concert of Mr. Willis and Google

9    Village People, your client's Facebook page is going to come

10   up.

11          MS. MATZ:  Your Honor, the answer to that is, again,

12   the information.  If you just drop out of Facebook, if you shut

13   down your page, you lose all the historical data.  So the point

14   that I'm trying to make is what our clients are trying to do is

15   transition that data.

16          THE COURT:  What do you mean by historical data?

17          MS. MATZ:  For example, their followers and their

18   fans – those shouldn't just be shut down.  And if the issue is

19   taking some steps to mitigate confusion, putting something up

20   across the top of the photo, the banner photo or something to

21   make it clear that these are former members of and they are not

22   actually the Village People, that's not a problem.  My clients

23   are happy to take steps to mitigate any confusion that the

24   Court thinks is likely, while the things that they can control,

25   like the banner photo or a post pinned to the top or something

180316can'tstopC                 Conference

1    along those lines, that's not an issue.

2         The issue is that our clients shouldn't be forced to

3    shut the page down entirely on a TRO hearing without a

4    briefing, because if they shut the page down and they lose all

5    that information, there's no getting it back, and that's the

6    problem with this kind of requests for temporary relief.

7         So again, my clients will be perfectly happy to

8    include some information across the top, the places that they

9    have control over, to mitigate this while the issue is briefed

10   and while they are trying to make this change, but to force

11   them to shut it down immediately and delete it and lose all the

12   data is actually in the nature of a permanent injunction.

13        THE COURT:  I mean, we do have -- my order came out, I

14   don't know -- I'm trying to go back and see when --

15   February 16, so it's been a month.

16        Why, in the last month, haven't they been able to take

17   care of this?

18        MS. MATZ:  So initially when your order came out, your

19   Honor, there were two orders.  There was the first one denying

20   it and then there was the second one explaining it.  And my

21   clients were attempting to choose a new name and hoping that

22   the explanation portion of the order, frankly, would give them

23   some clarity, and they have taken steps since then to change

24   it.  And, again, we can make it faster or we can do certain

25   things that are in our control, but we can't speed up

180316can'tstopC                Conference

1   Facebook's response.  That's just not something that's within

2   our control.

3           THE COURT:  Yes, but you can put -- you can do a

4   couple of things.  You can put a banner up saying, We are not

5   Village People; if you're looking for Village People, go to

6   whatever site, whatever URL or whatever Facebook or Twitter

7   handle the intervenor is using.

8           The other thing you can do is put up a banner saying

9   this Facebook page and this Twitter feed is being shut down in

10  seven days.  Anybody who wants to follow us on our new page for

11  Kings of Disco ought to follow us there.

12          MS. WILLIS:  I agree with that, your Honor, 100

13  percent.  And may I chime in now?

14          THE COURT:  Yes.

15          MS. WILLIS:  Absolutely, your Honor, that's what has

16  to occur, and that's the purpose of this TRO, because what

17  Ms. Matz is missing here is that the material that she's

18  referring to is relating to the Village People.  That does not

19  belong to them.  That belongs to the owner of the mark, Village

20  People, so they have no right.

21          And, for example, they're talking about fans.  Those

22  are Village People fans, your Honor.  And so what they're

23  trying to do is to confuse the public by trying to somehow

24  continue to present themselves as Village People.  Now, your

25  Honor, they're being disingenuous finally in that all they have

180316can'tstopC                Conference

1  to do is to go right now - it will take them ten minutes - and

2  create a new Facebook page, a new Twitter account for the Kings

3  of Disco.

4        I will agree that we will allow them, I don't know,

5  five days or whatever, seven days, make a post and say this is

6  our new handle; go here.  And then they are to either surrender

7  those URLs or they can shut it down completely, we don't care

8  because, your Honor, quite frankly, we're not interested in the

9  Official Village People handle.  We already have, you know, a

10  handle, but we are very much interested in preventing their use

11  and misleading the public that they are Village People.

12        And also, your Honor, that is a certified Official

13  Village People handle, meaning that Twitter, Facebook, they

14  have certified that these people here are Village People, your

15  Honor, and that's what Ms. Matz doesn't want your Honor to

16  focus on here.  So they cannot use it under any circumstances

17  because they don't have the right to the name and it's

18  trademark infringement.  But, again, I will agree to allow them

19  to make a post, create their new name, your Honor, and say here

20  is our new handles; please visit us there.  And I'd like to see

21  it shut down immediately following, and they can shut it down

22  by, your Honor, by simply pressing a button to Twitter, to

23  Facebook saying we want to shut down this, and it's done within

24  a matter of hours.

25        THE COURT:  Let me ask you, Ms. Matz.  You said you

SABRINA A. D'EMIDIO - OFFICIAL COURT REPORTER
(914)390-4053

180316can'tstopC            Conference

1   were going to talk about the costumes and the characters and

2   what gives your clients the right to continue to dress as the

3   characters and wear the costumes.

4           MS. MATZ:  Yes, absolutely.  So, the first thing is,

5   is that I don't -- the question of how broad or how enforceable

6   their right to the character mark is, I don't think is a

7   question that has been answered.  There's no dispute that at

8   least some of our clients were -- Felipe Rose, for example, has

9   been dressing up as a Native American since before Village

10  People was formed.

11          So the question of whether or not they are not allowed

12  to perform in costume on stage, I think the answer is they

13  absolutely are.  I don't think they have to change their whole

14  routine.

15          Their routine includes, as you know from the

16  preliminary injunction hearing, a lot of non-Village People

17  songs that they perform on their own.  Not all the costumes

18  that they wear during their entire performance are even Village

19  People costumes.  The question here is likelihood of confusion.

20  And there's no proof -- you know, the intervenor has not shown

21  a likelihood of success of saying if tickets are sold to an

22  event called Kings of Disco, Former Members of Village People,

23  that people are going to be confused by the costume, because I

24  don't think they would.

25              I think that they would know that we're talking about

180316can'tstopC                Conference

1    people who were former members of the Village People,

2    performing some of their songs, performing some of their own

3    songs, performing covers of other songs. I don't think people

4    would be confused by that.

5               THE COURT: So you're conceding it's trademark

6    infringement; it's just not confusing?

7               MS. MATZ: No. I'm not conceding it's trademark

8    infringement because --

9               THE COURT: That's what I haven't heard. I mean,

10   Felipe Rose dressing up as a Native American is one thing. Six

11   guys dressing up as a biker, a cop, a cowboy, a Native

12   American, a military guy, and a construction worker is entirely

13   different.

14              So, the fact that Felipe Rose is a Native American and

15   dressed up as a Native American before Village People doesn't

16   help you at all in terms of why it's okay for these six

17   costumes and these six roles to be played by your guys without

18   a license.

19              MS. WILLIS: And --

20              MS. MATZ: I'm sorry, your Honor. You were still

21   talking. I apologize. Go ahead.

22              THE COURT: There's two prongs. One is, does it

23   infringe the trademark; and the other is likelihood of success

24   and irreparable harm.

25              I'm trying to fathom how you have any defense to the

180316can'tstopC                    Conference

1  claim that continuing to perform in these costumes and in these

2  roles without a license isn't trademark infringement.

3          If your guys dressed up as Aaron Burr and Thomas

4  Jefferson and started singing the songs from "Hamilton" without

5  a license, it would be pretty straightforward.

6          Why is this any different, just because they used to

7  have a license.

8          MS. MATZ:  So the point I was making is, it is not

9  trademark infringement because the second element of trademark

10  infringement is likelihood of confusion.  And I don't think

11  that there is likelihood of confusion here.

12          If two people from "Hamilton" went out and said, hey,

13  we were formerly in "Hamilton" and they went out and did a

14  cover in the costumes, there's no evidence that that would be

15  confusing, because purchasers who are purchasing the ticket, as

16  long as they're clear from the billing that the band they are

17  not -- they are going to see is not actually that band, that's

18  the question here.

19          So when they show up and they purchase the ticket that

20  says "Kings of Disco Featuring Former Members of Village

21  People" or "Former Members of Village People" or something that

22  falls into that historical reference kind of fair use thing and

23  they show up and they see former members of the Village People

24  singing Village People songs and in some of the costumes,

25  they're not going to think that they're seeing the

180316can'tstopC                Conference

1  officially-licensed band, and that's my point that; that

2  there's not going to be likelihood of confusion.  And that is

3  the crux of the trademark infringement question.

4         So, no, I don't think it is trademark infringement

5  because I don't think that there's a likelihood that anyone's

6  going to be confused.

7         MR. LEVY:  Your Honor, there's a legal term for what

8  I'm hearing from Ms. Matz.  It's called hooey, hooey, from law

9  school, is what it's called.  It makes no sense at all.

10        You have, a month after the Court order, there is

11 still -- as we've gone now over, just to sum up, they're still

12 using social media to call themselves the official group.

13 They're using pictures of the group in costume.  They're saying

14 Disco Kings, Formerly Village People.  They're performing.

15 They testified at the preliminary injunction hearing.  Half

16 their act are Village people songs.

17        I suggest, as the Court noted, if they want to do a

18 10-minute homage to the group loosely, that would probably be

19 okay, but when they co-opt the entire group -- Mr. Rose

20 testified at the hearing that they've been basically preserving

21 the act the way it's been for 30 years.

22        So now they're taking the act that they had in the

23 license from us, which one of the issues was, is my client

24 regulating it, making sure it's true to the act as developed by

25 Mr. Belolo and Mr. Morali?  And it is.  Now they're taking that

180316can'tstopC              Conference

1    same very act and they're just duplicating it with all this

2    other baggage and --

3              MS. WILLIS:  Passing it off.

4              MR. LEVY:  And then they have the audacity to sit here

5    and say, Oh, I don't know, no one's going to be confused.

6              My suggestion is they should bank on their own

7    talents.  And if they want to perform, they can perform as long

8    as it's not grand rights and they're not acting out anything,

9    they can sing Village People songs, they can sing Beatles

10   songs.  They can sing whatever they want.

11             If they want to do a five-minute homage to disco -- in

12   fact, they testified at the hearing that they wrote one song.

13   The one original song, I think, they wrote is a collage or

14   medley of a lot of disco-type songs together.  If they want to

15   do that, be my guest, but they can't have the whole show where

16   90 percent of it is they're dressed up in our costumes.  I

17   suggest they should come out dressed as -- one should be an

18   actuary, one can be a plumber, one can be an accountant, one a

19   lawyer, you know, maybe a parody.

20             MS. WILLIS:  That's right.

21             MR. LEVY:  But they can't use our costumes.  It's a

22   trademark.

23             THE COURT:  But what about the argument that Ms. Matz

24   just made, which is, part of your burden to prove the

25   infringement is that the people will be confused, and as long

180316can'tstopC              Conference

1   as they say we're not Village People anymore, we're Kings of

2   Disco, no one will be confused.

3            MR. LEVY:  A rose by any other name would smell as

4   sweet.

5            Anyone seeing it is going to walk out and say I just

6   saw the Village People.  It's taken them a long time to make

7   this change and it's hard, all that, one of the interesting

8   things about Ms. Willis' papers, which I found was very good

9   research on her part, is the name Disco Kings was filed for

10  trademark registration by Ms. Matz in August, so they've been

11  sitting with this name since August.  So this wasn't like, Oh,

12  gee, the Court ruled in February and we were caught flat

13  footed.  They've known.  So I just think there's a lot of

14  crocodile tears here.

15           We tried.  We went up to Magistrate Smith.  We'll try

16  to sit down and work it out, but if they're going to take these

17  extreme positions, then we'll go to trial and we'll go for

18  damages.

19           MS. WILLIS:  Your Honor, bottom line is, I'm really

20  harmed by their continued use of the social media.  My agents

21  have all reported it.  We're losing shows.  We have fans

22  confused.

23           So, as I stated earlier, yes, your Honor, I'm willing

24  to say, yes, let's come up with a certain period of time, five

25  days, seven days.  They can immediately make a post saying

1  here's our new handle.  They can create those handles in five

2  minutes.  I could create it for them, your Honor, if they want

3  me to.  I know how to do it.  Facebook, Twitter – you can

4  create a new account at any point you want.

5       And then, within that time, though, I want the Court

6  to order them to stop using Official Village People social

7  handles because it's infringing our mark.  It's as simple as

8  that, your Honor.

9       So yes, we've bent over backwards to attempt to assist

10  them.  They know that they could easily turn over this, but

11  they want the certification, your Honor.  They're not entitled

12  to Twitter, Facebook certifications for the Kings of Disco

13  right now, so they're trying to say, Oh, let's keep this

14  Village People certification.  They're infringing.

15       So your Honor, that's what I'm willing to do, but I'm

16  being harmed, which is why I'm here.  We're losing accounts.

17  We're just in disarray because of them, so I'm hoping the Court

18  grants this relief.

19       THE COURT:  Well, I think a couple of things.  I

20  think, notwithstanding Ms. Matz's creativity, there is a

21  likelihood of confusion because the Kings of Disco are doing

22  the same act as the licensee.  And if you're looking on

23  Facebook and you want to go see the Village People and you see,

24  well, here's Kings of Disco, these guys are formerly members of

25  the Village People and they have the same outfits, and then you

180316can'tstopC              Conference

1    look at Victor Willis, and you say, well, who is he, which of

2    these is the group that I want to see, it's confusing, because

3    the act is the same as the licensed act.  And honestly,

4    particularly because the defendants are the people who have

5    been doing it for decades, people are going to think that

6    Victor Willis is the interloper or the cheater, and he's

7    actually got the license right now.

8         This is just an application for a TRO, but it seems to

9    me, I don't see how somebody who is not familiar with this

10   litigation wouldn't be confused as to who is entitled to be

11   this band.  And the confusion arises in part from something

12   that Mr. Levy said I think the first time we met, which is,

13   like, this is not the Rolling Stones.  People are not looking

14   for Mick Jagger.  These are not the Beatles.  People are not

15   looking for John, Paul, George, and Ringo.

16        If Pete Best, who used to be the drummer before Ringo

17   came along, went out and started a group and he called it "The

18   Spiders, Formerly the Beatles," that would be confusing.  And

19   if he called it -- he said "A Former Member of the Beatles,"

20   but he used their patter and dressed up in their costumes, it

21   seems to me, it could be confusing; and here, more so,

22   particularly because there is some knowledge on the part of

23   fans that there's been litigation.

24        The fact that the defendants are continuing to perform

25   the act and use terms like "Official Village People," I think

180316can'tstopC              Conference

1   it makes it seem like the licensee doesn't have the rights that

2   it has.

3        It's only a TRO.  Maybe we'll have another PI hearing

4   and I'll be convinced that it's not confusing, but if I'm

5   sitting down saying, hey, I want to go see those guys I

6   remember from the '70s, I'm going to be confused as to who is

7   allowed to be the Village People.

8        I may not be confused as to who historically has been

9   Village People, but in terms of the likelihood of confusion for

10  live performances, I think if somebody puts in "Village

11  People," they're going to get both groups, and they could

12  easily think that, even with the change to "Formerly Members of

13  Village People," they could easily think that, well, this is

14  just a name change and everything else is the same, who is this

15  other interloper pretending to be Village People when the

16  interloper is actually the one whose got the license.

17       I also, as I said, you can tell I'm not on Twitter or

18  Facebook, but I'm pretty sure that you can send messages to

19  your followers.  So I don't see why you can't tweet out we're

20  shutting down this Twitter account, follow us at Kings of

21  Disco, and then you bring your followers with you.

22       Or if you've got Facebook followers - I don't know how

23  many there are - but you could make a list of them or you can

24  put out -- send out a Facebook message to all of them saying

25  we're shutting this down and we're going to reopen the next

180316can'tstopC                Conference

1    phase under a new name.

2            MS. MATZ:  Your Honor --

3            THE COURT:  I think there's just a likelihood of

4    confusion just from the simple fact that you've got two groups

5    doing the same act and only one of them's got the license.

6            And I think what ought to happen here is, you ought to

7    go back to Judge Smith and work out a *modus vivendi* – if you'll

8    forgive the Latin – a way to live with each other going forward

9    and have limits.

10           But Ms. Matz, I think your clients are doing something

11   very risky right now, which is the same, or not quite the same,

12   but practically the same as if they, you know, were performing

13   any other performance troupe's act without a license.

14           And if you want to call it a tribute band or a cover

15   band, I haven't gotten any law on that, but I don't think that

16   that is the message that's being sent.  The message that's

17   being sent is that we are the Village People, we've just

18   changed the name, everything else is the same.

19           MS. WILLIS:  Yes.

20           THE COURT:  So I'm going to enter some temporary

21   relief.  I think the intervenor has met the prongs.  And I want

22   to talk in a minute about a lot of loose ends that were left

23   after the prior hearing.

24           Am I correct, Ms. Willis, that Red Entertainment and

25   Pennsylvania Horticultural have not been served yet?

180316can'tstopC                Conference

1          MS. WILLIS:  No, your Honor.  I had to issue the

2     summons on them, and it's been issued today finally.

3          THE COURT:  I don't think I have jurisdiction over

4     them yet, so I don't think I can enjoin them from doing

5     anything.

6          MS. WILLIS:  No problem.  They've already indicated

7     they've stopped, which is wonderful.  So I'm satisfied with

8     that, your Honor.

9          THE COURT:  I'm just going to mark up this proposed

10    TRO.

11         MS. MATZ:  Your Honor, I hear that you're going to

12    mark up the proposed TRO.  I do have a couple of questions.

13    The first is that, are you enjoining any use of Village People,

14    or are you going to exclude the items we've discussed, "Former

15    Members of" and some -- if that is in tandem with not being in

16    all the costumes temporarily while we have the preliminary

17    injunction hearing?  Because I do think that stopping my

18    clients from performing at all or any use that the Court has

19    kind of indicated would not be confusing would be extremely

20    unfair.

21         THE COURT:  Do they have performances booked this

22    month?

23         MS. MATZ:  I'm trying to look on their -- their

24    website is shut down right now.  They actually did shut that

25    down about a week ago while they're trying to rebrand.

180316can'tstopC                Conference

1         No.  I think it's next month, but let me just look at

2    one thing before I say that for sure.

3         The other thing I would ask while I'm looking for this

4    is that any relief that relates to the trademark -- that

5    relates to the social media not require a deletion of the

6    account because, like I said, that would, in essence, be a

7    permanent injunction because the data would be lost and there

8    would be no way of getting it back after that.

9         THE COURT:  I still don't understand why that is.  I

10   don't understand why you can't -- you can tell from Twitter who

11   is following you, right?

12        MS. MATZ:  Yes.

13        THE COURT:  And they communicate with you through

14   their Twitter handles.  So, why can't you, like, copy and paste

15   those names into a document, and then you'll have them all?

16        MS. WILLIS:  You can.  And I've done it with their

17   Facebook page.  I have every one of them.  You can do it.

18   Absolutely.

19        MS. MATZ:  But the point is that this is a temporary

20   restraining order, and it shouldn't be a situation where we are

21   required to delete information we can't get back.

22        If the Court wants us to post something that says

23   we're no longer using this account, we're rebranding the Kings

24   of Disco and leave that post up and not post anything else in

25   the meantime while we're trying to do the transfer, that would

180316can'tstopC              Conference

1   be perfectly acceptable, but requiring a deletion of the

2   account would be tantamount to permanent relief and merely

3   having a list of the followers is not the same as all the data

4   associated with the account.

5        THE COURT:  But you need to tell me what you're

6   talking about, because so far, I haven't heard any data that

7   you would lose except the identity of the followers, and it

8   seems to me that's easy.  And the information that you guys

9   posted, you still have.  So, I don't know what you're going to

10  lose, except comments.

11       MS. WILLIS:  They're going to lose the name Official

12  Village People, your Honor, which they have no rights to use.

13       And again, your Honor is correct, I have gone -- and

14  I'll be glad to provide them with copies, your Honor.  I have

15  the entire Facebook page, Twitter, all of their comments,

16  dating back three to four years, all archived.  They can do the

17  same, and I would be willing to provide them a copy.  But the

18  bottom line is, they have no rights to that historical data.

19  It belonged to Village People.  They obtained that as the

20  licensee.  They're no longer the licensee.

21       However, as a courtesy, sure, you can go in and copy

22  and paste it all.  It's that simple.

23       MS. MATZ:  Your Honor, it's not that simple.  And the

24  association with the users to the account would be lost, as

25  well as all the postings and all the comments.  If those can be

180316can'tstopC                Conference

1    transferred, we will endeavor to do that.  My request is only

2    that you not force us to delete it, okay?  Putting up a banner

3    message that says something like "We're rebranding the Kings of

4    Disco, this is going to be our new page" and leaving it alone

5    and not posting anything new, I think that that would be a

6    perfect compromise if the Court is concerned about the social

7    media.  And we're not trying to keep the verification for

8    Official Village People.  What they're trying to do is get a

9    verified status as Kings of Disco.  That is what our clients

10   are trying to do.

11            And just so the Court knows, our next performance is

12   in April.

13            THE COURT:  But you don't get to keep Official Village

14   People until you have Official Kings of Disco.  I don't know

15   what it takes to get a verification, but one doesn't really

16   have to do with the other.

17            Here's what I'm going to order, and I'm going to need

18   somebody to give me a new proposed TRO that encompasses this

19   because it's going to be too hard to mark this one up.

20            With respect to the Facebook and Twitter:  Immediately

21   there needs to be a prominent banner on the first page that a

22   user would hit saying, This is not the site for Village People;

23   if you are looking for Village People, go to... and then

24   Ms. Willis will supply whatever handle or URL she wants to go

25   in there.

180316can'tstopC                Conference

1        There should also be a banner saying, This page or

2   this Twitter account is being shut down shortly.  And you can

3   tell people that if you want to continue to follow Kings of

4   Disco, go to whatever Facebook page or Twitter account Kings of

5   Disco is going to use.

6        I'm not going to direct that the Facebook -- and I'm

7   going to direct that the -- well, let me back up.

8        I'm not directing that the Twitter account and the

9   Facebook pages be deleted, but I'm directing that they be

10  disabled and frozen within seven days, how ever that can be

11  done.

12       So if there is some risk, I'll let you show it at a

13  hearing, Ms. Matz, as to why you wouldn't be able to retrieve

14  something of value that it's impossible to archive and it's

15  impossible to transfer.  If that's the case, we'll deal with it

16  then, but they have to be disabled to the maximum extent

17  possible.  So if Facebook can black it out within seven days,

18  by next Friday, they'll black it out.  If it's not possible to

19  black it out, but it's possible to make it so that nothing can

20  be added or subtracted and when people go there, they can't do

21  anything on it, that has to happen, because the public is being

22  misled that Kings of Disco is Official Village People when it's

23  not.

24       Any photos on these pages in the meantime have to

25  clarify that these photos are historical; in other words,

180316can'tstopC                Conference

1    they're from when we were Village People.  And pending further

2    hearing, the costumes and routines can't be used.  The Village

3    People costumes and routines can't be used in live performance.

4    Somebody else has the license for that.

5            MS. MATZ:  Your Honor, can I ask what you mean by the

6    routines?  Because the songs themselves is a copyright issue,

7    and half of them don't even belong to -- I understand what

8    you're saying about the costumes, but "the routines" I think is

9    a confusing term.  And like I said --

10           THE COURT:  Maybe there's a better term for it.  I'm

11   not saying anything about the songs.  They can -- as far as I

12   can tell, nobody is asking me to do anything about the songs.

13   They don't have to change their set-list.  And maybe "routines"

14   is not the right word, but there's dance moves and patter that

15   they were using when they were the licensee that was the -- I

16   don't know what you call it.

17           MS. WILLIS:  We call it the Village People.

18           MS. MATZ:  Your Honor --

19           THE COURT:  Everybody is talking at once.  The court

20   reporter is only taking me down.

21           To me, there's a whole shtick that goes along with

22   Village People.  And maybe, if they're not wearing the

23   costumes, it won't be as confusing.  But to the extent

24   there's -- well, to what extent, Mr. Levy, does your client

25   have trademark protection over the dance moves or the patter or

180316can'tstopC                Conference

1    the shtick apart from the costumes and the characters?

2        MR. LEVY:  Only within the context of grand rights

3    usage.  To the extent that the dance moves and the patter are

4    part of a storytelling with -- the grand rights case, which

5    would be a leading case in this district, is the *Stigwood* case.

6    That's the "Jesus Christ Superstar" case.

7        If there's a finding that the way the songs are

8    presented by acting them through constitutes grand rights, then

9    they have -- then they don't have an automatic right to use the

10   songs.  They have to come back to the publisher for a grand

11   rights license, and the publisher is my client.  And I'm

12   telling you, we won't issue one.

13       MS. WILLIS:  And I won't agree, either.

14       MR. LEVY:  Ms. Willis owns part of the publishing,

15   too.  We won't issue it.

16       So to the extent that their patter, their dancing

17   falls within the category of grand rights - and Ms. Matz knows

18   those cases, and the *Stigwood* case is the lead case - they

19   can't do it.

20       THE COURT:  I don't know those cases.  What do they

21   say?

22       MR. LEVY:  To the extent -- anyone can sing a song

23   publicly, okay?  And anyone -- we don't own -- I don't think

24   there's a copyrighted script that they follow, but to the

25   extent that you act out a song, that's a grand right as opposed

180316can'tstopC              Conference

1    to the common petite copyright, which is what we consider a

2    copyright, and a grand right is a separate license.

3            So if they act it out -- so in the case of "Jesus

4    Christ Superstar," there were 24 songs I believe in "Jesus

5    Christ Superstar."  Some act put together a "Jesus Christ

6    Superstar" tribute, and they used 20 of the songs in the same

7    order that it's used in the Broadway play - in your case like

8    "Hamilton" using the same thing - that was considered grand

9    rights usage and it needed a grand rights license.

10           So I guess what I'm telling you is, if they just want

11   to sing the songs, and they're not in costume, and they want to

12   kibitz on stage, and it doesn't really copy the story the way

13   the Village People have always been presented, they can do so;

14   but to the extent that they copy it, that it follows a story

15   format that's been used historically, it becomes a grand rights

16   license.

17           THE COURT:  Did their act have a story?

18           MS. WILLIS:  Yes.  "Y.M.C.A.," for example.

19           MS. MATZ:  No.

20           MS. WILLIS:  Ms. Matz, if you will.

21           If I might, also there's a routine, your Honor,

22   related to "In the Navy" that's been done historically for

23   years.

24           So your Honor, it's easy to really surmise this.  We

25   shall note this as Village People routines, and they are well

180316can'tstopC              Conference

1   known; that's how we can characterize it.  They shall not

2   utilize Village People routines, because it would push us into

3   them imitating Village People, which now, you're moving into

4   grand licensing with respect to that.  Because if you're going

5   to act like the Village People, right, if you're playing as

6   if -- you're playing a role.  If you're doing the "Y.M.C.A.,"

7   you're Village People.  If you are doing the "In the Navy"

8   historical routine with the hats, you're Village People.

9          So those are the types of things that we'd like to

10  prevent them from doing here temporarily.

11         MR. LEVY:  I think it's almost like -- they'll know it

12  when they -- they know.  They know where it's a stock routine.

13  It's like a comedian or something.  There's a stock routine

14  they have and then they do riffs off it.

15         To the extent they're using a stock routine, as

16  Mr. Rose testified, they've been the gatekeepers of what they

17  were taught for 30 years.  So there is -- when they do "In the

18  Navy," the lead singer walks around and he starts ad libbing,

19  you know, "I can't even swim, I can't even swim, I don't want

20  to be in the Navy, you know," and they run after him - well,

21  that's been in their act for 30 years.

22         THE COURT:  That's not ad libbing.

23         MR. LEVY:  That's not ad libbing.  But to the extent

24  that they want to go talk to the audience and they want to

25  kibitz, we don't control that, but they know what are the stock

SABRINA A. D'EMIDIO - OFFICIAL COURT REPORTER
(914)390-4053

180316can'tstopC                Conference

1  routines and what aren't.

2          THE COURT:  I'm going to call it --

3          MS. MATZ:  Your Honor --

4          THE COURT:  I'm going to say that the costumes, the

5  characters, and the stock routines cannot be used in live

6  performances pending further order.

7          And they don't have any shows until when?

8          MS. MATZ:  It's in April, but can I be heard on this

9  issue if you don't mind?  I was trying not to talk over anyone

10 and it's a little bit difficult.  There's a little bit of lag.

11         THE COURT:  First tell me, April what.

12         MS. MATZ:  I believe it's April -- it is April 27th.

13         THE COURT:  Okay.  So we've got time to sort this out.

14         MS. MATZ:  We do, but --

15         THE COURT:  And they've got time to work up an act

16 that won't get them in further trouble.

17         Go ahead.

18         MS. MATZ:  I was going to say, so, there's a few

19 things.  First of all, grand rights is a copyright issue.

20 There aren't even copyright claims in this lawsuit.  And I

21 don't think that there is a story being acted out as in the

22 case of "Jesus Christ Superstar" where there was actually plot

23 and characters and things moving it forward.

24         We're talking about dance routines, which would also

25 be covered by copyright, and again, there's no copyright claim.

180316can'tstopC            Conference

1   And even if there was, there would be no showing of ownership.

2   And the undisputed testimony – and plaintiff conceded this

3   themselves – was that they didn't hire the choreographers for

4   our client; our client did that.  They came up with these dance

5   routines.  There's absolutely no evidence that they own any of

6   the dance routines.  I don't think that they would even fall

7   under grand rights if they did, but this is a complete

8   expansion of the case.  These claims aren't even in this case.

9           MS. WILLIS:  That's not an expansion at all.

10          THE COURT:  Is that correct, Mr. Levy?  Are you

11  claiming that the dance routines are trademarked?

12          MR. LEVY:  No, your Honor.  No, your Honor.  First of

13  all, the dance routines -- we are not talking about Fred

14  Astaire.

15          THE COURT:  Is the patter trademarked?

16          MR. LEVY:  Well, again, yeah, I would say it's part --

17  it's part of the persona of the costumes, because they each

18  have -- the lead singer doesn't want to swim, and the Indian --

19          THE COURT:  I don't think -- it doesn't sound like

20  it's part of the costumes.

21          MR. LEVY:  My suggestion is this:  Why don't we go --

22  maybe they've seen the light.  I think they -- I would go back

23  to Magistrate Judge Smith, because I see -- I'm taking notes on

24  what you want on the TRO.  I don't want to come back and say --

25  you don't want us to come back every two weeks and say, look,

180316can'tstopC                    Conference

1   that wasn't what we had in mind.

2          I'd sit everybody in the room and lock them in there.

3   The last time we went before the magistrate, the problem was

4   everybody was so entrenched in their views, that people weren't

5   budging.  And I think, up until now, we can see the Sixuvus

6   people aren't budging too much, but maybe in light of today, we

7   can go back to the magistrate, because otherwise, I'm afraid

8   that every two, three weeks, we're going to come back in and

9   say, wait a second, look at what they just did.

10          MS. WILLIS:  I'm not opposed --

11          THE COURT:  Here's what I think.  There's not going to

12  be any live performance until April 27, so I don't see an

13  imminent risk of harm with respect to a live performance.

14          There is a pending risk of harm from the Twitter and

15  Facebook.  So, I think, for the moment, what needs to be worked

16  on immediately is getting those shut down within seven days.

17  And we'll have a PI hearing, if we have to.

18          I am going to send you back to Judge Smith because,

19  Ms. Matz, your guys need to be realistic here.  They're not

20  Village People anymore.

21          Do I think it's rotten?  Yes.  But you know what I

22  think the law is.  The law is, at least for now, based on the

23  evidence I've seen, the law sometimes allows people to do

24  rotten things, and your guys have to start facing that.

25          MS. MATZ:  Your Honor, --

180316can'tstopC                Conference

1        THE COURT:  So I'm going to issue right now a TRO

2   which is limited to what I think is the imminent and ongoing

3   harm.  And that's going to -- I think we can actually write

4   this up because it's fairly simple.

5        It's going to require the two banners I described to

6   go up right away.  And it's going to require the defendant to,

7   within seven days, disable or freeze, to the maximum extent

8   possible, both of those sites.

9        I don't think there's an imminent risk of a live

10  performance in the costumes or in the characters, so we have

11  time to sort out those issues.  And with respect to whether the

12  routines and the moves and the patter are even protectable, I

13  don't know at this stage.  It hasn't -- I'm going to need

14  briefing.

15       I'm going to refer you back to Judge Smith.  And as I

16  said, you need to work out a way to live together going

17  forward.  The defendants are going to be allowed to tell the

18  world that this is a new group; it's compromised of people, all

19  of whom were in Village People, but it's not Village People;

20  and they can sing all the songs, but they can't sing them in

21  the costumes and the characters.

22       And I don't know yet about the patter and the dance

23  moves, but it's not going to help to come up with a character

24  that looks just like the construction worker but he's a

25  plumber; and another one that looks just like the Army guy, but

180316can'tstopC              Conference

1   he's a Marine; and one who looks just like the cop but he's a

2   security guard.

3          You're going to have to come up with characters that

4   are distinct enough that there won't be confusion as to who's

5   rightfully the Village People.  And if you want to come up with

6   a chef, and a court reporter, and a ballerina, that's fine, but

7   you know, it's time to start figuring out how everybody is

8   going to make a living going forward.

9          Now, I would like to -- I would like to have -- yes,

10  Ms. Matz?

11         MS. MATZ:  I'm sorry.  I have a question.  I just want

12  to make sure I understand three things because I want to be

13  clear, and I want to give clear direction to my clients.

14         The first is, with respect to disabling or freezing to

15  the maximum extent possible for the social media, if in that

16  seven days we are able to effectuate a transfer, I'm assuming

17  that would be allowable by this order.

18         THE COURT:  Yes, as long as Official Village People

19  and @villagepeople are out of commission.

20         MS. MATZ:  Understood.  The second thing is, I'm

21  assuming the order is not going to prevent the use of "Kings of

22  Disco, Formerly of Village People" or "Former Members of

23  Village People."  So if my clients can transfer the name or

24  start their new pages, they can do so under those names and

25  that is not enjoined by this order.

180316can'tstopC                Conference

1            THE COURT:  I think the way to avoid confusion is

2    "Kings of Disco, Formerly Members of Village People."

3            I don't agree with Ms. Willis that it has to be

4    individual.  I don't think it has to say Kings of Disco,

5    Featuring Ray Simpson, Former Member and Alex Briley, Former

6    Member.

7            I think "Kings of Disco, Former Members of Village

8    People" is clear and it's fair, and there won't be confusion.

9            MS. MATZ:  Thank you, your Honor.

10           And my last question is, I heard what you said about

11   the costumes, and I'm assuming that will be the subject of

12   further briefing, but am I clear in understanding that because

13   our next show is not until April, that for the time being, that

14   is not going to be part of this TRO?

15           THE COURT:  Only because the harm is not imminent, but

16   if I get wind that they're performing or --

17           MS. MATZ:  I understand.

18           THE COURT:  -- or booking a show, then Ms. Willis is

19   going to be back here in a flash; and I will, at that time, in

20   all likelihood, enjoin the use of at least the costumes and the

21   characters in live performance.

22           MS. MATZ:  Your Honor, I'm assuming we can book a show

23   under "Kings of Disco, Formerly of Village People."  I hear

24   what you're saying, that you don't want us using the costumes

25   on stage until we have this further briefing.  I completely

180316can'tstopC                Conference

1   understand that.

2           My point is, you just said if I hear they're booking a

3   show, they would -- the way they book is by using a name.  It

4   doesn't say "and the costumes and the contract" or anything

5   like that.

6           So they are allowed to continue booking for the

7   future, and I heard what you said about the rest of it.

8           THE COURT:  They are allowed to continue booking, but

9   they're not allowed to mislead the other parties into thinking

10  that the show they're going to do is going to be in the

11  costumes playing the characters.

12          MS. MATZ:  Okay.

13          THE COURT:  So you can book performances, but you've

14  got to let people know that the likelihood is that you're not

15  going to be able to perform in the characters and the costumes.

16          MS. WILLIS:  And also, your Honor, the "Formerly of

17  Village People" has to be significantly smaller, so we need to

18  talk about that.  It can't be prominently, the words "Village

19  People" and "Formerly," and all of that.

20          MS. MATZ:  Your Honor, our client already has made

21  that not prominent.  Even in the example Mrs. Willis gave,

22  "Kings of Disco" was much larger than "Formerly Village

23  People."  And that was with the intent of it falling into

24  something that wasn't confusing as a historical reference.

25          MS. WILLIS:  No, your Honor.  It was too large.

180316can'tstopC                Conference

1            THE COURT:  What it's going to say now is "Kings of

2    Disco, Former Members of Village People."  And the words

3    "Former Members of" need to be the same size as "Village

4    People."

5            MS. MATZ:  Okay.

6            THE COURT:  And cannot be larger than the words "Kings

7    of Disco."

8            So, anybody seeing it has to be able to tell in a

9    glance that these are former members of Village People.  You

10   can't have "Kings of Disco" in big letters and then "Former

11   members of Village People" in tiny letters.  You also can't

12   have "Kings of Disco" in big letters, "Former Members of" in

13   tiny letters, and "Village People" in big letters.

14           In other words, "Former Members of" and "Village

15   People" have to be the same size.  And that shouldn't be any

16   larger than "Kings of Disco," nor should it be -- but it seems

17   to me, Ms. Willis, as long as "Former Members of Village

18   People" is all the same size font, it really doesn't matter to

19   you how small it is.

20           If "Kings of Disco" is big and "Former Members of

21   Village People" is small, that's good for you.

22           MS. WILLIS:  It is, yes, as long as it's significantly

23   smaller than "Kings of Disco."

24           THE COURT:  Well, I think it's okay to say "Kings of

25   Disco, Former Members of Village People" all in the same size.

SABRINA A. D'EMIDIO – OFFICIAL COURT REPORTER
(914)390-4053

180316can'tstopC              Conference

1  There's not going to be any confusion there, but it can also be

2  smaller.

3           MS. WILLIS:  Yes.

4           THE COURT:  As long as "Village People" is no more

5  prominent than "Former Members of" and no more prominent than

6  "Kings of Disco."

7           MS. WILLIS:  Okay, your Honor.  That's acceptable to

8  me.

9           THE COURT:  All right.

10          MS. MATZ:  Your Honor, I have one other question, and

11  that is, with regard to the mechanics of the banners that you

12  ordered.  You said that Mrs. Willis is going to give us the

13  site for each social media that she wants us to put on those

14  banners.

15          MS. WILLIS:  Yes.

16          MS. MATZ:  We request that there be a time frame for

17  her doing that, and then we be allowed, you know, 48 or 72

18  hours just to effectuate those changes.

19          MS. WILLIS:  I'll give them to you now.

20          MS. MATZ:  Just because it's loud, is there a chance

21  that they can just be e-mailed after the hearing so that there

22  is no confusion as to what is being asked?

23          MS. WILLIS:  Sure.

24          THE COURT:  She'll e-mail them right away, and they

25  need to be effectuated by Monday.

180316can'tstopC                Conference

1          MS. MATZ:  Thank you, your Honor.

2          THE COURT:  And in terms of a hearing, what I'd like

3    to do -- well, I hope that you'll be able to get to "yes" with

4    the magistrate judge, but I can tell you, this hearing won't

5    take as long as the last one, but I have a trial which is going

6    to start either April 2nd or 4th.  And then I have a two-week

7    PI hearing in another case that's starting April 12th.

8          So I could squeeze you in either between the two or at

9    the end of April, or even at the end of March, if need be.

10          MS. MATZ:  We would like to do between the two.  We

11    think that going to Magistrate Judge Smith is a good idea, but

12    we don't want it to be the end of April until this is decided.

13          THE COURT:  And there is a show April 27th.  So why

14    don't we say, if this works for everybody, that the PI hearing

15    will be April 9th.  It seems to me the issues are much narrower

16    than last time.  It's essentially going to be what's the

17    likelihood of confusion; and this issue with respect to what's

18    actually covered by the trademark, which is whether the patter

19    and the dance routines are covered or not.  So I'm hoping a day

20    will be enough.

21          MS. MATZ:  Can I ask one other question.

22          THE COURT:  Yes.

23          MS. MATZ:  And that is, will we be submitting briefs

24    on the issue ahead of the hearing to cover the legal issues?

25          THE COURT:  Yes.  I was going to get to that.

180316can'tstopC                Conference

1        And actually, April 9th -- I want to switch it to

2   April 10th, if you don't mind, because April 9th -- whether I'm

3   starting the previous trial the 2nd or the 4th is up in the

4   air, and if we start it the 4th, we probably won't finish until

5   the 9th, so let's make this the 10th.

6        Yes, I'm going to need briefing.  I'm going to need

7   briefing on all sorts of things.  I'm going to need briefing on

8   "former" and "formerly", because I haven't had that yet.  I'm

9   going to need briefing on likelihood of confusion and whether

10  the "formerly" language or the "former" language dissipates any

11  likelihood of confusion, and I'm going to need briefing on

12  whether the patter and the dance routines, stock stuff is

13  covered by the trademark or not, and whatever other issues the

14  parties think are relevant.

15       I'll speak to Judge Smith.  Hopefully, she'll be able

16  to get you in quickly.

17       But why don't we say, whatever issues anybody wants to

18  brief, I'll want the briefs on April 2nd.  Actually, we can

19  make it April 3rd.

20       MS. MATZ:  And your Honor, --

21       THE COURT:  The burden at this hearing is going to be

22  yours, Ms. Willis, so you need to tell me what the law is and

23  all of that.

24       And the parties should exchange witness names, why

25  don't we say, on the same date.

180316can'tstopC                Conference

1          MS. MATZ:  Could we have the witness names be slightly

2     after the briefings, only because what issues (inaudible)

3     parties brief other issues that could impact the witness list?

4          THE COURT:  All right.  The 5th, April 5th, exchange

5     the witness names.

6          MS. MATZ:  And your Honor, are you going to be

7     requiring a bond for the TRO to go into effect?  And can we

8     discuss the amount?

9          THE COURT:  Let me hear you.  Why shouldn't I,

10    Ms. Willis?  What if it turns out that you're wrong and they're

11    right, and they're harmed by not having access to these sites?

12         MS. WILLIS:  Well, your Honor, it would all come down

13    to whether or not Can't Stop had a right to terminate their

14    verbal agreement, and I think the case law is clear that they

15    can with proper notice.  And if the notice is proper -- was not

16    proper, the remedy is breach of contract, so there's just no

17    likelihood that I can see.

18         And I think, your Honor, in your ruling, you surmised

19    that they would have the right to -- they would have to show

20    that Can't Stop just could not terminate them, and that's just

21    unlikely.  So I don't see why a bond would be necessary,

22    particularly since we're simply limiting their access to this

23    social media.  And they already are using the Kings of Disco,

24    your Honor.  So, there it is.

25         MS. MATZ:  Your Honor, if I can be heard on this

180316can'tstopC              Conference

1    issue.  I think a bond is required.  Here she's essentially

2    asking to not allow us to use URLs, even if we change the names

3    so that we're no longer going to have active use of these pages

4    that our clients are using for some time that relates directly

5    to our client's ability to book and things like that.  And in

6    the event she's wrong, our client could suffer for monetary

7    damages.

8         And the whole point of a bond is to ensure that the

9    party who is about to be enjoined has some security on that

10   issue.  And I don't think it is fair to issue a TRO against our

11   clients without some requirement of a bond.

12        THE COURT:  Look, I have heard a lot of evidence in

13   this case.  And I think it's not likely that the ultimate

14   outcome is going to be that the defendants are entitled to use

15   Official Village People or Village People to advertise or

16   generate interest in their act, but there I guess remains a

17   remote possibility of that happening.

18        The rule says that the Court can issue a preliminary

19   injunction or TRO only if the movant gives security in an

20   amount that the Court considers proper to pay the costs and

21   damages sustained by any party found to have been wrongfully

22   enjoined or restrained.

23        Given the limited nature of this TRO, it's hard to

24   imagine that there would be a very substantial damage, even if

25   somehow later on, this was found to be an improper TRO, so I'll

SABRINA A. D'EMIDIO - OFFICIAL COURT REPORTER
(914)390-4053

180316can'tstopC              Conference

1   require a bond in the amount of $1,500, which seems to me to be

2   sufficient to cover whatever the damages may be if there are

3   any.

4               MS. WILLIS:  Thank you, your Honor.

5               MR. LEVY:  Can I just ask for clarification also.

6   After -- I was trying to take notes on what this TRO is going

7   to be.  If you take a step back, using my ethnic background,

8   this is, like, a big megillah over nothing, because we had the

9   big preliminary injunction hearing.  It was found my client

10  retains his trademark rights.

11              If the issue here is -- okay, the patter and the

12  dance, I am sure that reasonable people can figure this thing

13  out.  I don't see this as the case of the century for that

14  issue.

15              THE COURT:  The issue that's different now is -- we're

16  not going to revisit that your client retains its trademark

17  rights.  The question at this hearing is going to be, if

18  there's a new group that comes along that's not saying it's

19  Village People, but it's saying Kings of Disco Former Members

20  of Village People, is that going to be confusing if they use

21  the costumes --

22              MR. LEVY:  But your Honor, if --

23              THE COURT:  -- and characters?

24              MR. LEVY:  It's not that I -- I'd love to come back

25  here for another hearing.  I have no other place to go.  It's

180316can'tstopC              Conference

1    very enjoyable.  And we'll have the hearing.  But again, if you

2    were taking this to the nth degree, you would do what you do

3    in a normal trademark infringement case.  I'd have to do

4    surveys, get people to testify and say, gee, I saw the group

5    perform, I was confused, I thought -- that's what you'd want to

6    show, but the group's not performing right now, so it's going

7    to be hard to get eyewitnesses.

8            So what you're down to is a legal issue of "formerly"

9    which is a nominative fair use issue.  That's the one legal

10   issue that I see here.

11           THE COURT:  Well, the argument that the defendants are

12   making, and I'm not saying I'm buying it, but the argument is,

13   sure, if we were going around saying we were Village People and

14   performing in these characters and costumes, people would be

15   confused because there would be two groups doing the same thing

16   and they wouldn't know who is the licensee of Jacques and Henri

17   who were the visionaries who created the Village People and who

18   have, more or less over the years, been policing the quality.

19           However, once you're no longer going around performing

20   as Village People and you're performing as Kings of Disco, the

21   argument goes, nobody's going to think you're Village People

22   and, therefore, there's no likelihood of confusion.

23           And I do think the use of the URL is confusing, and

24   that's what I'm enjoining.  But it's a separate question

25   whether a consumer, who went to see Kings of Disco, Former

180316can'tstopC                Conference

1   Members of Village People, and then saw the whole Village

2   People shtick would or would not be confused as to who is the

3   Village People that the visionaries have created, the Village

4   People have authorized to use the trademark and whose quality

5   is being policed by those people.

6        So I'm not saying that I think the argument is right,

7   but I think we should understand the argument, which is,

8   whatever confusion may have existed from both groups performing

9   under the name Village People is now gone because they're

10  performing under the name Kings of Disco, so nobody is going to

11  think the Village People.

12       MR. LEVY:  It just seems, though -- I understand that,

13  but it just seems to me that this has been ratcheted up to

14  where what Sixuvus is doing is -- instead of trying to help us

15  resolve this after -- we had our day in court.  And when

16  they're ratcheting things up, they're going to make it harder,

17  they're going to make it -- the extent of damages is going to

18  be greater.

19       THE COURT:  I couldn't agree more.  That's why I gave

20  Ms. Matz a speech about why her guys are going to have to come

21  up with a *modus vivendi*, a new way of living, with the sad fact

22  that they can't perform as Village People anymore.  And they're

23  talented guys.  And they're going to have to come up with

24  something that's not infringing.

25       MS. MATZ:  Your Honor --

SABRINA A. D'EMIDIO - OFFICIAL COURT REPORTER
(914)390-4053

180316can'tstopC                Conference

1          THE COURT:  And I hope that the -- look, I know since

2    at least August, they have contemplated the possibility that

3    this ax might fall, and it fell a month ago, and they need to

4    get real.

5          And what you all need to do, even before Judge Smith

6    calls you in, is start talking about what is life going to be

7    like for the Sixuvus going forward and come to some agreement.

8          I don't think Ms. Willis or Mr. Levy is being

9    unreasonable here.  And it seems to be a portion of the show is

10   a tribute.  If they want to make themselves out to be a tribute

11   band, that's a whole different -- well, let me put it this way:

12   that's a whole area of the law about which I know nothing.

13         I don't know.  Can you just say, okay, we won't be --

14   the Village People will be the Village People Tribute Band and

15   do the exact same thing?  I don't know how that works, but so

16   far, they're not advertising themselves as a tribute band.

17         I would imagine the Sixuvus members want to perform.

18   They don't want to pay lawyers and have hearings.  So, I hope

19   that they're more motivated than they were up 'til now to

20   resolve this amicably so that everybody can get back to work.

21         And I'm sure Ms. Matz will share with them her opinion

22   as to what the writing on the wall looks like.

23         Hopefully, I will not see you, but if I do see you, it

24   will be on April 10.  And in the meantime, we will get out an

25   order, and Ms. Matz and her clients will get to work on

180316can'tstopC                Conference

1   complying with it.

2          MR. LEVY:  Your chambers will be issuing the order as

3   opposed to me trying to circulate something.

4          THE COURT:  I think it's a very narrow order.  It's

5   going to just say -- you know what I'll do.  We'll write

6   something, and it really only is going to have four things in

7   it.  It's going to have the two banners, the obligation to

8   disable or freeze, and the name, "Kings of Disco, Former

9   Members of," so I think I can handle that.

10         MR. LEVY:  Thank you.

11         THE COURT:  If, when it comes out, you think there's

12  something horrible in it that we didn't talk about, you can let

13  me know, but that's all that's going to be in there.

14         MS. MATZ:  Your Honor, I have --

15         THE COURT:  And Ms. Willis, you can have until Monday

16  for the bond.

17         MS. WILLIS:  Thank you, your Honor.

18         MS. MATZ:  Two housekeeping items.  One is, if the

19  order could just also reference my question about if it is

20  possible to transfer, because we don't want to be in technical

21  violation if we are able to transfer the sites.

22         THE COURT:  Tell me what language you'd would want.  I

23  can say something about transfer of the sites to --

24         MS. MATZ:  Something along the lines of it would

25  not -- after the freeze or disable language, something along

180316can'tstopC            Conference

1    the lines of it wouldn't be a violation if they are able to

2    transfer to a new URL; that they're able to change it,

3    essentially.

4            THE COURT:  So why don't I say transfer of the content

5    of the Facebook page and Twitter account to different URLs

6    would constitute compliance with this paragraph or something

7    like that?

8            MS. MATZ:  Thank you, your Honor.

9            MS. WILLIS:  As long as Official Village People is not

10   attached to it.

11           THE COURT:  Not employing the term Village People.

12           MS. WILLIS:  Yes.

13           MS. MATZ:  Your Honor, it might employ it in terms of

14   if it's Kings of Disco, Formerly Members of Village People, but

15   not employing only Village People or Official Village People,

16   we understand that.

17           THE COURT:  Not employing the term Village People

18   except as part of the name Kings of Disco, Formerly Members of

19   Village People, but I don't think your URL is going to have all

20   of that in it.

21           MS. MATZ:  I just don't know; that's why I wanted the

22   clarification.

23           THE COURT:  All right.

24           MS. MATZ:  And my last question is, we were going to

25   make a letter application regarding an extension of time to

SABRINA A. D'EMIDIO – OFFICIAL COURT REPORTER
(914)390-4053

180316can'tstopC                Conference

1    answer Mrs. Willis' complaint.  I can put in that letter today

2    or I was planning on just raising it if we were talking about

3    scheduling, unless your Honor would prefer a letter

4    application.

5            THE COURT:  We do have a conference, I think, at the

6    end of the month, at which we were going to have to discuss a

7    bunch of things, including there hasn't been opposition to the

8    motion to intervene yet.

9            MS. MATZ:  Yes.  That's one of the things we were

10   going to bring up.

11           THE COURT:  There hasn't been an answer.  There's been

12   a lot of that -- what I'd like you to do is talk amongst

13   yourselves and see if you can come up with an agreement on when

14   all those things are going to happen if the settlement talks

15   fail.

16           And if you can get to "yes," then we don't have to

17   have the conference at the end of the month.  If you can't,

18   then we'll have a conference at the end of the month and set

19   dates for all of the that.

20           For the moment, I've been treating Ms. Willis as an

21   intervenor.  I'm going to continue to do that.  If I remember,

22   the defendants were not contesting her right to intervene so

23   much as contesting whether she had the right to intervene as of

24   right or as a matter of discretion.  They weren't -- I should

25   put it this way: they weren't opposing her intervention; they

180316can'tstopC                 Conference

1    just wanted to think on whether it was as of right or not,

2    because that would affect some things down the road.

3            MS. MATZ:  Your Honor, sorry.  I didn't realize you

4    weren't finished.  I apologize.  It's difficult over the phone

5    I'm sorry.

6            THE COURT:  Yes, it really is.  Go ahead.

7            MS. MATZ:  I was going to say, at the conference where

8    that happened, we may be opposing her right to intervene at

9    all.  Your Honor had said you were inclined to let her

10   intervene one way or the other.  Obviously, we wanted to brief

11   the issue.

12           Our answer is currently due the day before that

13   conference.  And I did ask Mrs. Willis for an extension and she

14   already refused consent.  That was why I was bringing it up

15   now, because I believe that the intervenor motion should be

16   decided before an answer is required, that's all, or a response

17   or a motion to dismiss or something like that, because the

18   question of the intervenor, whether she's allowed to at all,

19   and if so, whether it's as of right or permissively, could

20   affect what claims she is even allowed to assert.

21           So we just wanted an extension of time that the answer

22   be due after the intervenor motion.  And I agree, we should get

23   together and agree on a briefing schedule for that motion, but

24   technically, the answer is due the day before that conference.

25   And I did already reach out to Mrs. Willis and she said no, so

180316can'tstopC                Conference

1    that was why we were going to make an application.

2              MS. WILLIS:  I would caution, I guess, the defendants

3    that -- not to spend so much time and resources on that issue

4    of intervention, because as you know, your Honor, I've crafted

5    now claims related to things that have occurred since the

6    denial of the preliminary injunction, which means that I can

7    bring those claims independent.  Even if I wasn't intervening,

8    I could go in and file.

9              So why are we spending so much time on that?

10             THE COURT:  That makes a certain amount of sense.  I

11   mean, even if Ms. Willis isn't entitled to intervene in this

12   case, she could just go downstairs and start a new lawsuit, so

13   it's probably in everybody's interest to just deal with it all

14   here.

15             However, I do agree that it makes a certain amount of

16   sense if the outcome of the motion to intervene is going to

17   determine -- may drive what claims the intervenor's allowed to

18   bring, it makes sense to postpone the answer until after that's

19   decided.  So knowing that, and that, therefore, I probably will

20   extend defendant's time to answer the complaint in the

21   intervenor's complaint, why don't you guys talk offline about a

22   motion schedule -- a schedule for the opposition and reply on

23   the motion to intervene, and then the answer would be due 14

24   days after a decision, or something like that.

25             MS. MATZ:  And that's essentially what we would be

180316can'tstopC              Conference

1    looking for.  The answer or other response to the motion or

2    dismiss, whatever, be due a couple of weeks after the

3    intervention motion is decided.

4          THE COURT:  Right.  But Ms. Willis is making a

5    practical suggestion, which I would give serious consideration

6    to, which is, really, what is the point?  She's just going to

7    sue you in a separate lawsuit anyway.  So, maybe your clients

8    have a pot of gold that they like spending on legal fees, but

9    if they don't, maybe we should just try to work this all out in

10   one proceeding.

11         MS. WILLIS:  Your Honor just made my point.  Thank

12   you.

13         MR. LEVY:  And case management plan --

14         MS. MATZ:  I don't mean to belabor this.  I hear what

15   you're saying, but I think part of our point is, she doesn't

16   have a right to sue under her license.  So I think there are

17   very serious questions about what's the status and what claims

18   she can assert as opposed to Can't Stop.

19         And I hear what you're saying, but and at the same

20   time, we do hope we work it out.  We were very close at the

21   preliminary injunction hearing, and I'm not going to get into

22   what happened, but it was very unfortunate that it didn't

23   settle then, and hopefully the parties can work something out

24   this time.

25         THE COURT:  Good.

SABRINA A. D'EMIDIO - OFFICIAL COURT REPORTER
(914)390-4053

180316can'tstopC              Conference

1        MR. LEVY:  When doing the case management plan, I was

2   filling it out, I was going to send it to Ms. Willis and to

3   Ms. Matz, but if she's not officially in the case --

4        THE COURT:  I think we'll postpone discovery until

5   after we've figured out who's in and who's out.

6        MR. LEVY:  So, do I submit a case management plan with

7   no discovery cutoff date?

8        THE COURT:  I don't think we need a case management

9   plan at all right now.

10       MR. LEVY:  Oh.  It's due March 28.

11       THE COURT:  Well, I'm waiving it.

12       MR. LEVY:  You're waiving.  Okay.

13       MS. MATZ:  So do we still need to -- so we'll still

14  discuss the briefing schedule and send a letter to the Court on

15  that and the response to the complaint?

16       THE COURT:  Yes.  And if you can't agree -- or if you

17  can agree, and if there are no other issues to discuss, then

18  you can send me a letter saying here's what we agreed to,

19  there's no other issues to discuss, and then we don't need to

20  have the conference on the 28th, or whatever date it was.

21       MR. LEVY:  The 28th.

22       THE COURT:  But if you can't agree, or if there are

23  issues to discuss, we'll have the conference, but I'd love to

24  see you working more toward resolving it.

25       I don't need to know why the settlement that seemed so

180316can'tstopC                Conference

1    close to being in hand cratered.  Obviously, the defendants are

2    in a less optimistic position now, but I won't go any further

3    into it.

4            I imagine, as I said, the defendants have better

5    things to do than litigate.  And I imagine Ms. Willis, who is

6    not paying for counsel, still has things she'd rather do with

7    her time than come here and litigate this matter, and I'm sure

8    Mr. Belolo feels the same way.

9            So it seems like this is yet another opportunity for a

10   peace treaty, and I hope that you can get there; otherwise,

11   I'll see you on is it March 28.

12           MR. LEVY:  Yes.

13           THE COURT:  March 28.

14           MS. WILLIS:  Thank you.

15           MS. MATZ:  Thank you, your Honor.

16           THE COURT:  Thank you.

17                    - - -

18   Certified to be a true and correct

19   transcript of the stenographic record

20   to the best of my ability.

21   _____

     U.S. District Court

22   Official Court Reporter

23

24

25

SABRINA A. D'EMIDIO – OFFICIAL COURT REPORTER
(914)390-4053