UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

X---------------------------------------------------------------X

CAN'T STOP PRODUCTIONS, INC.,

Plaintiffs,

-against-

SIXUVUS, LTD., ERIC ANZALONE, ALEXANDER BRILEY, FELIPE ROSE, JAMES F. NEWMAN, RAYMOND SIMPSON, and WILLIAM WHITEFIELD,

Defendants.

X---------------------------------------------------------------X

Case No.: 7:17-cv-06513 (CS) (LMS)

**MEMORANDUM OF LAW IN FURTHER SUPPORT OF DEFENDANTS' MOTION TO ENFORCE THE SETTLEMENT AGREEMENT**

# TABLE OF CONTENTS

TABLE OF AUTHORITIES ............ ii

I. THE SETTLEMENT AGREEMENT IS VALID AND ENFORCEABLE ............ 1

A. WHEN ENTERING INTO THE 3/28/18 SETTLEMENT AGREEMENT INTERVENOR DID NOT MAKE ANY EXPRESS RESERVATION NOT TO BE BOUND IN THE ABSENCE OF A WRITING ............ 1

B. DEFENDANTS HAVE PARTIALLY PERFORMED UNDER THE SETTLEMENT AGREEMENT ............ 5

C. THE PARTIES ASSENTED TO THE TERMS OF THE SETTLEMENT AGREEMENT ............ 7

D. INTERVENOR'S ARGUMENT THE SETTLEMENT AGREEMENT IS THE TYPE OF AGREEMENT THAT IS USUALLY COMMITTED TO WRITING IS UNPERSUASIVE ............ 8

II. THIS COURT HAS JURISDICTION OVER THE SETTLEMENT AGREEMENT ............ 9

CONCLUSION ............ 10

# TABLE OF AUTHORITIES

Page(s)

**Cases**

*Aguiar v. New York*,
2008 WL 4386761 (S.D.N.Y. Sept. 25, 2008),
*aff'd as modified*, 356 F. App'x 523 (2d Cir. 2009) .......... 7

*Alvarez v. City of New York*,
146 F.Supp.2d 327 (S.D.N.Y. 2001) .......... 7, 8, 10

*Bayway Ref. Co. v Oxygenated Mktg. and Trading A.G.*,
215 F.3d 219 (2d Cir. 2000) .......... 4

*Ciaramella v Reader's Digest Ass'n, Inc.*,
131 F3d 320 (2d Cir. 1997) .......... 1

*Francis v Home Box Off., Inc.*,
2005 WL 1020863 (S.D.N.Y. Apr. 28, 2005) .......... 9

*Grgurev v. Licul*,
2016 WL 6652741, (S.D.N.Y. Nov. 10, 2016) .......... 8

*Little v Greyhound Lines, Inc.*,
2005 WL 2429437 (S.D.N.Y. Sept. 30, 2005) .......... 9

*Lopez v City of New York*,
242 F Supp 2d 392 (S.D.N.Y. 2003) .......... 6

*Marino Inst. of Continuing Legal Educ., Inc. v. Issa*,
2013 WL 6723614 (S.D.N.Y. Dec. 20, 2013) .......... 1

*MBIA Ins. Corp. v. Patriarch Partners VIII, LLC*,
950 F. Supp. 2d 568 (S.D.N.Y. 2013) .......... 6

*Mone v. Park E. Sports Med. & Rehab., P.C.*,
2001 WL 1518263 (S.D.N.Y. Nov. 29, 2001) .......... 8, 9

*N. Fork Country, LLC v. Baker Publ'ns, Inc.*,
436 F.Supp.2d 441 (E.D.N.Y., 2006) .......... 6

*Powell v. Omnicom*,
497 F.3d 124 (2d Cir. 2007) .......... 1, 2, 4, 9

*Pullman v Alpha Media Pub., Inc.*,
2014 WL 5043319 (S.D.N.Y. Mar. 14, 2014) .... 4

*Searles v. Pompilio*,
2010 WL 11507379 (S.D.N.Y. Jan. 28, 2010).... 10

*Sprint Commc'ns Co. L.P. v. Jasco Trading, Inc.*,
5 F. Supp. 3d 323 (E.D.N.Y. 2014).... 2

*United States v. Bank of New York*,
14 F.3d 756 (2d Cir.1994).... 9

*Wesley v. Correction Officer Badge No. 9417*,
2008 WL 41129 (S.D.N.Y. Jan. 2, 2008).... 6

**Rules**

Fed. R. Civ. P. 1.... 10

Defendants submit this memorandum of law in further support of their motion to enforce the Settlement Agreement[1] between the parties in this action.

## I. THE SETTLEMENT AGREEMENT IS VALID AND ENFORCEABLE

Applying the Winston factors,[2] it is clear that the Settlement Agreement here is enforceable.

### A. When Entering into the 3/28/18 Settlement Agreement Intervenor Did Not Make Any Express Reservation Not to Be Bound in the Absence of a Writing

Contrary to Intervenor's attempt to argue otherwise, it is clear that none of the parties, including Intervenor, made an express reservation not to be bound to their agreement [REDACTED] Intervenor's quotations, to the extent they are accurate, [REDACTED] However, such an intent does not prevent contract formation, nor does it prevent the Settlement Agreement from being binding and enforceable on all parties. As set forth herein, it is clear that the first Winston factor weighs in favor of enforcing the Settlement Agreement.

In *Powell v. Omnicom*, 497 F.3d 124 (2d Cir. 2007), the Second Circuit held that "[p]arties may enter into a binding contract orally, and the intention to commit an agreement to writing, standing alone, will not prevent contract formation [and the] settlement remains binding even if a party has a change of heart between the time he agreed to the settlement and the time those terms are reduced to writing" *Powell*, 497 F.3d at 129 (finding no express reservation of rights where the counsel for defendants "stated without objection that the 'parties have agreed that the formal settlement documents will incorporate the following terms and conditions,'" which suggested "that the settlement's reduction to writing was only a formality."); *see also Marino Inst. of Continuing Legal Educ., Inc. v. Issa*, No. 12–CV–4320, 2013 WL 6723614, at *2, *5 (S.D.N.Y. Dec. 20, 2013) (finding no express reservation where parties read the terms of the agreement into the record and

---

[1] Capitalized terms herein utilize the definitions set forth in in Defendants' Memorandum of Law [Dckt. No. 150].

[2] "No single factor is decisive, but each provides significant guidance." *Ciaramella v Reader's Digest Ass'n, Inc.*, 131 F.3d 320, 323 (2d Cir. 1997).

stated "[i]t is the intention of the parties that all of the material terms of the agreement as set forth as we go on will be subject to a written long-form agreement," but that the written agreement would be "based on the material terms as agreed to today"). *C.f. Sprint Commc'ns Co. L.P. v. Jasco Trading, Inc.*, 5 F. Supp. 3d 323, 332 (E.D.N.Y. 2014) (acknowledging that "[w]here parties have read the terms of the agreement into the record and expressly agreed to . . . the agreement as a whole, courts have found those representations to lack express reservation of the right not to be bound in the absence of a formal written document", but finding against enforcement where there was no discussion of the terms in the record, only a representation that the matter was 'pending' execution, and emails directly prior to conference indicated that they meant to convey to the Court that settlement was imminent).



To the contrary, as in *Powell* and *Issa*,                                                        , which is different than an express reservation not to be bound absent a written settlement document.  Here, also as in *Powell* and *Issa*,                                                        even though Intervenor had "a change of heart between the time [s]he agreed to the settlement and the time those terms are reduced to writing." *Powell*, 497 F.3d at 129.  Intervenor's attempt to use the                                                        is also irrelevant.  When the Court made that statement on page 24,                                                        *See e.g. id.* pp. 25-37

*See id.* Pp. 30-32:17-19 

*See* Adelman Decl., Ex. 2, 3/28/18 Tr. Pp. 37:18-21.

*See* Adelman Decl., Ex. 2, 3/28/18 Tr. Pp. 37:25.

*See* Adelman Decl., Ex. 2, 3/28/18

Tr. Pp. 38:24-39:1 .

Similarly, disingenuous is Intervenor's attempt to insert statements into the transcript that she never actually said. Intervenor did not say "until I do that (review the written agreement), I'm not agreeing to this" nor did she at any time make the reservation that if there was no written agreement, she would not agree to the terms of the 3/28/18 Settlement Agreement. *See* Adelman Decl., Ex. 2, pp. 45:25-47:10. This argument, only invented on opposition, is just an attempt to avoid being forced to abide by the Settlement Agreement that Intervenor consented to. What Intervenor actually said was



[redacted]

*See* Adelman Decl., Ex. 2, pp. 45:25-47:10 (emphasis added).[3] Intervenor's newly made up version of her statements at the 3/28/18 Settlement Conference simply did not happen.

Intervenor's letter and the emails exchanged by counsel for Plaintiff and Defendants after March 28th, also do not evidence a reservation of an intent not to be bound absent a written agreement. As an initial matter, any exchange that took place after the 3/28/18 Settlement Conference cannot demonstrate such a reservation—the 3/28/18 Settlement Agreement was agreed to at the conference that day. For a reservation to be considered it would need to have been made on that record. The whole point of distinguishing between such a reservation and an intent to incorporate the terms of a settlement into a writing, is that in the latter event when there is an agreement on principal terms[4] Courts will enforce the terms even if a party changes their mind after the settlement and before it is reduced to writing. *Powell*, 497 F.3d at 129. Furthermore, [redacted]

---

[3] [redacted] While Defendants' believe the transcript is clear on its face, in the event the Court wishes to listen to the recording of the hearing we have submitted it with this reply. *See* Adelman Decl., Ex. 12. Defendants do not believe this is new evidence, as it is merely another form of the transcript which was already submitted with their motion papers. However, even if it were, new evidence is properly submitted on reply to address new issues raised in the opposition. *See e.g. Bayway Ref. Co. v Oxygenated Mktg. and Trading A.G.*, 215 F3d 219, 226–27 (2d Cir. 2000) ("reply papers may properly address new material issues raised in the opposition papers so as to avoid giving unfair advantage to the answering party."). As Intervenor is trying to change the transcript by claiming in opposition she said things that she did not, the recording can be properly considered on reply.

[4] Despite her attempts to resist enforcement, Intervenor has repeatedly acknowledged that the parties have a "settlement in principal", including in her opposition. *See* Adelman Decl., Ex. 9; Intervenor Br. pp. 5 (arguing that the settlement was a "settlement in principal"). Agreement on the principal terms is all that is required for a settlement agreement to be enforceable. "'Preliminary agreements' that address all negotiated terms are enforceable, even if they are oral, and contemplate a subsequent memorialization in an executed document". *Pullman v Alpha Media Pub., Inc.*, 2014 WL 5043319, at *6 (S.D.N.Y. Mar. 14, 2014), *report and recommendation adopted as mod sub nom. Pullman v Alpha Media Publ., Inc.*, 2014 WL 5042250 (S.D.N.Y. Sept. 10, 2014), *affd sub nom. Pullman v Alpha Media Pub., Inc.*, 624 Fed Appx 774 (2d Cir. 2015).



[redacted][5] *See* Adelman Decl., Ex. 3; Ex. 4 [redacted].

There was no expectation that the parties would not be bound absent a written agreement, and under well settled law, such an expectation would need to have be stated on the record as part of the agreement at the 3/28/10 Settlement Conference, which it was not. [redacted] *See* Adelman Decl., Ex. 2, 3/28/18 Tr. Pp. 37:18-25. As such this factor favors enforcement.

**B. Defendants Have Partially Performed Under the Settlement Agreement**

The evidence also shows that there was partial performance of the Settlement Agreement.

As an initial matter Intervenor ignores the well settled authority, that where parties intended to incorporate the terms of an oral agreement to a written agreement, the mere drafting and negotiating of the written agreement, regardless of whether it is signed, constitutes partial performance of an

---

[5] To the contrary, Plaintiff, who is the party Intervenor derives any rights she claims to have here from, has also confirmed that they believe they are bound by the 3/28/18 Settlement Agreement, as set forth in the 3/28/18 Transcript. *See* Adelman Decl., Ex. 6; Dckt. No. 142. Intervenor's argument that there could not have been a settlement on March 28th, because the parties participated in the May 4, 2018 conference is also without merit. Nothing precludes the parties from *agreeing to modify* their prior 3/28/18 Settlement Agreement, which is precisely what the parties did on May 4, 2018 with respect to one issue –the cure period to remove disparaging posts. *See* Adelman Decl., Ex. 8, 5/4/18 Tr. Pp. 4:5-15:5.

[6] Nor does the Court's conditional dismissal order utilizing the word "consummated" imply that a written document had to be signed for the Settlement Agreement to be consummated.

[7] Intervenor's second new claim that she was frightened into agreeing to the settlement is also a disingenuous attempt to avoid being bound by her agreement. [redacted] *See* Adelman Decl., Ex. 2, 3/28/18 Tr. Pp. 17:19-19:2. [redacted] *See* Adelman Decl., Ex. 2, 3/28/18 Tr. Pp. 30:8-32:19. Intervenor's new argument is further belied by the fact that at the May 4th Conference it was clear she just wanted to avoid being bound by her prior agreement. Adelman Decl., Ex. 8 5/4/18 Tr. Pp. 38:1-24.

enforceable oral settlement agreement. *See e.g. Wesley v. Correction Officer Badge No. 9417*, No. 05 CIV. 5912, 2008 WL 41129, at *3 (S.D.N.Y. Jan. 2, 2008) (enforcing oral settlement agreement, holding that the defendants had partially performed when counsel for the defendants prepared the paperwork and mailed it to the plaintiff); *N. Fork Country, LLC v. Baker Publ'ns, Inc.*, 436 F.Supp.2d 441, 445 (E.D.N.Y., 2006) (plaintiffs satisfied this factor by submitting a proposed stipulation to defendants for their review and signature with other documents required to be sent).

Plaintiff and Defendants partially performed by exchanging drafts of the written settlement agreement. *See* Adelman Decl., Exs. 3, 4. Intervenor's claim that she repudiated the Settlement Agreement before performance is also irrelevant and meritless. Intervenor did not try to repudiate the agreement before the drafts were exchanged and even if she had that would not invalidate the enforceable agreement reached at the 3/28/18 Settlement Conference. A repudiation i.e. "indicat[ing] an intention not to perform (a contract)" [8] does not void the agreement, to the contrary it is a breach.

In addition, Defendants performed by removing social media posts regarding Intervenor's husband's performances in Australia. Intervenor argues that Defendants removal of the Australia posts are a "sham" and that they are not all gone. In addition to the lack of evidence supporting her argument, [redacted] *See* Adelman Decl., Ex. 2, 3/28/18 Tr. Pp. 30:8-32:19, 36:11-37:25, and 40:21-42:15.

Furthermore, Intervenor offers no argument opposing that partial performance is also evidenced where, as here, "both sides, relying on apparent settlement, did not resume active litigation of the case." *See e.g. Lopez v City of New York*, 242 F Supp 2d 392, 393–94 (S.D.N.Y. 2003) (*citing Alvarez v. City of New York*, 146 F.Supp.2d 327, 336 (S.D.N.Y. 2001)). Here, Defendants did not

[8] "To reject or renounce (a duty or obligation); esp., to indicate an intention not to perform (a contract)." REPUDIATE, Black's Law Dictionary (10th ed. 2014). Furthermore, repudiation is the rejection of a duty, which implies the existence of an agreement. "An anticipatory repudiation occurs when a party to a contract declares its intention not to comply with its duties under that contract before the time for performance of those duties has expired." *MBIA Ins. Corp. v. Patriarch Partners VIII, LLC*, 950 F. Supp. 2d 568, 619 (S.D.N.Y. 2013).

pursue their appeal, and *neither Plaintiff or Intervenor* moved to restore this case to the calendar to pursue active litigation. As such this factor also favors enforcement of the Settlement Agreement.

**C. The Parties Assented to the Terms of The Settlement Agreement**

The parties in this action also assented to the terms of the Settlement Agreement. Intervenor's single sentence addressing this factor, arguing that because there were later negotiations, there was no agreement is without merit. It is well settled that "[j]ust because parties subsequently attempt to add terms to a written document, or disagree over language in drafting a written agreement, does not mean that their oral agreement is not enforceable . . ." *Aguiar v. New York*, 2008 WL 4386761, at *7 (S.D.N.Y. Sept. 25, 2008), *aff'd as modified*, 356 F. App'x 523 (2d Cir. 2009).

It is clear that the only later negotiations of the written draft were to make the language reflect the 3/28/18 Transcript, and then a good faith effort to listen to Intervenor's complaints. None of these however invalidate the enforceability of the 3/28/18 Settlement Agreement or the terms agreed to that day. Intervenor cites no authority to support her argument, she has not pointed to *any* material term that was not agreed to on March 28th, nor has she pointed to *any* provision of the written draft that does not reflect the 3/28/18 Settlement Agreement—because there are none. Intervenor is just trying to go back on her agreement because she wants to be able to change her mind.

*See e.g.* Adelman Decl., Ex. 8, 5/4/18 Tr. Pp. 15:10-18 (emphasis added); pp. 2:10-13 ; pp. 31-32 ; pp. 35:6-9

[redacted]; *see also* Adelman Decl., Ex. 8 5/4/18 Tr. Pp. 38:1-2 [redacted].

Intervenor has failed to proffer any evidence that she did not assent to the material terms of the Settlement Agreement, because she knows she did. *See also* Adelman Decl., Ex. 2, 3/28/18 Tr. Pp. 37:18-25 [redacted]. As such, the third Winston factor weighs in favor of enforcing the Settlement Agreement.

**D. Intervenor's Argument the Settlement Agreement is the Type of Agreement that is Usually Committed to Writing is Unpersuasive**

The fourth Winston factor also favors the enforcement of the Settlement Agreement.

Courts in the Second Circuit have held that analysis of this factor weighs in favor of enforcement once a written draft is created. *See e.g. Alvarez*, 146 F Supp. 2d at 337 (finding factor weighed in favor of enforcement where draft was prepared, even though "written agreement was not signed, the terms of the agreement had been largely reduced to writing"); *Mone v. Park E. Sports Med. & Rehab., P.C.*, 2001 WL 1518263, at *3 (S.D.N.Y. Nov. 29, 2001) (same). Here, it is undisputed that a written draft that reflected the 3/28/18 Settlement Agreement was created, circulated and revised to reflect the 3/28/18 Transcript.

The case Intervenor cites to, *Grgurev v. Licul*, 2016 WL 6652741, (S.D.N.Y. Nov. 10, 2016) is inapposite here, as the sum of money being paid i.e. 5 million dollars over a period of time, which is "a significant amount of money by any measure", and post-closing assumption of liabilities, are not at issue here. Here, the Settlement Agreement is very straight forward, and involves a one-time payment. [redacted] This factor favors enforcement.

At worst, this factor is neutral, and does not preclude enforcement. Where, as here, settlements are on the record, the in "court announcement . . function[s] in a manner akin to that of a memorializing writing" and even viewed in a light favorable to the non-moving party, makes this factor neutral. *See Powell*, 497 F3d at 131. For this reason, "[t]he intent to reduce a valid oral settlement agreement to writing...does not prevent that oral agreement from being enforced." *Francis v Home Box Off., Inc.*, 2005 WL 1020863, at *4 (S.D.N.Y. Apr. 28, 2005) (Cote, J.).

The bottom line here is that when a party makes a deliberate, strategic choice to settle, which the parties, including Intervenor, did here, a court cannot relieve a party of that choice simply because its assessment of the consequences was incorrect or because it had a change of mind. *United States v. Bank of New York,* 14 F.3d 756, 759 (2d Cir.1994). These principles apply equally to a pro se litigant. *See, e.g., Little v Greyhound Lines, Inc.*, 04 CIV. 6735 (RCC), 2005 WL 2429437 (S.D.N.Y. Sept. 30, 2005) (granting defendants' motion to enforce settlement agreement with *pro se* plaintiff). As such, the Court can and should find that the Settlement Agreement is valid and enforceable.[9]

## II. THIS COURT HAS JURISDICTION OVER THE SETTLEMENT AGREEMENT

This Court has Jurisdiction over this motion to enforce the Settlement Agreement. *See* Adelman Decl., Ex. 2, 3/28/18 Tr. pp. 34, 40, 47 Moreover, Defendants were expressly given authority to file this motion by Judge Smith. *See* Adelman Decl., Ex. 8, 5/4/18 Tr. Pp. 17:10-24

[9] There is no dispute that the draft of the Settlement Agreement sent to the Court (Adelman Decl. Ex. 7) reflected the terms agreed to on the record of the 3/28/18 Settlement Conference. As such, as in *Mone v. Park E. Sports Med. & Rehab., P.C.*, No. 99 CIV. 4990(DFE), 2001 WL 1518263, at *3 (S.D.N.Y. Nov. 29, 2001), the Court may, if it chooses, use the draft setting forth the terms of the Settlement Agreement in an Order to enforce the Settlement Agreement, with . *See* Adelman Decl., Ex. 7, ¶ 10(a) and (b), ¶15; *See* Adelman Decl., Ex. 2, 3/28/18 Tr. pp. 34, 40, 47 .

[redacted] and Adelman Decl., Ex. 8, 5/4/18 Tr. Pp. 46:24-47:3 [redacted]

Furthermore, this Court's conditional order of dismissal was not final, it contemplated that if the settlement agreement was not consummated, that the action might be restored to the calendar. *See* Dckt. No. 140. In the event that this Court determines that it needs to restore this action to the calendar in order to enforce the Settlement Agreement it should do so, as Defendants have already made a timely application to do so, as it was part of Defendants' motion. *See* Def. Brief, Section II.

Courts in this district routinely enforce settlement agreements where they have issued a conditional dismissal. *See e.g. Alvarez*, 146 F. Supp. 2d 327, fn 5 (holding that the Court had jurisdiction and enforced a settlement agreement after application to restore the case was made where "the Court issued an order dismissing the case with prejudice, subject to reinstatement by any party within thirty days if settlement was not consummated [,and in] addition, the Court memorialized the settlement agreement on the record during a subsequent conference[.]"); *Searles v. Pompilio*, 2010 WL 11507379, at *3 (S.D.N.Y. Jan. 28, 2010). Here, in the event there is any question as to jurisdiction the Court should restore the action to the calendar and issue an order enforcing the Settlement Agreement, incorporating the terms of the Settlement Agreement on the record, and retaining jurisdiction over future disputes, as contemplated by the parties.[10]

## CONCLUSION

For the reasons set forth herein, Defendants respectfully request that the Court enforce the Settlement Agreement as requested.

---

[10] In accordance with Fed. R. Civ. P. 1, the rules should be administered to secure the just, speedy and inexpensive determination of every action and proceeding. There would be no reason to re-submit these motions after restoring this action to the calendar, as all parties have had an opportunity to submit substantive arguments on the motion and re-submission would only prolong the resolution of this issue.

Dated: New York, New York
June 15, 2018

Respectfully submitted,
ADELMAN MATZ P.C.

By: _*/s/ Sarah M. Matz*_____

Sarah M. Matz, Esq.
Gary Adelman, Esq.
1173A Second Avenue, Suite 153
New York, New York 10065
T: (646) 650-2207
F: (646) 650-2108
sarah@adelmanmatz.com
g@adelmanmatz.com
*Attorneys for Defendants*