Karen L. Willis, J.D.
220 West G Street, Suite E.
San Diego, CA. 92101
(619) 206-5311


November 9, 2018

The Hon. Judge Cathy Seibel
300 Quarropas St., Courtroom 621
White Plains, NY 10601-4150


## LETTER MOTION FOR RECUSAL OR TO BIFURCATE

Dear Hon. Judge Seibel:

Please see below, a letter motion for recusal of Magistrate Smith from deciding the Sixuvus motion to enforce, or in the alternative, to bifurcate the issue from the motion.


## INTRODUCTION

I am the Intervenor in the case of Can't Stop v. Sixuvus, Ltd. I bring this motion for recusal of Magistrate Lisa Smith on the grounds that her impartiality might reasonably be questioned in deciding a motion wherein the Magistrate is the subject of an accusation that she essentially coerced Intervenor into agreeing to certain statements made by the court as to whether or not Intervenor agreed to settle.

It is important to note that before your Honor stated on the record, in response to Intervenor's letter of inquiry (dated October 26, 2018) that Judge Smith would be deciding the motion to enforce; Intervenor as well as Can't Stop's counsel was under the impression that your honor would be deciding the motion, not Magistrate Smith as was

1 of 4

represented to me by Can't Stop's counsel.  Therefore, in intervenor's mind, if Judge

Seibel was deciding the motion, there was no need for her to seek recusal related to the

issue set forth herein.  That is the reason Intervenor did not seek recusal sooner.

### MAGISTRATE SMITH MUST BE RECUSED FROM DECIDING THE MOTION

Intervenor made the following allegation against Judge Smith in her opposition

to the  Sixuvus Motion to Enforce:

"During the contentious hearing, all parties, and the court as well, seemed

frustrated and annoyed that Intervenor steadfastly refused a settlement unless on

terms she could live with. So much so, that at one point, the Magistrate referred to

Intervenor as an "obstructionist" and threaten to inform Judge Seibel of such

characterization, including that Intervenor was the lone holdout; unless Intervenor

agreed to go along with the court. This put undue stress and burden on Intervenor to

agree to a settlement, or else be reported to Judge Seibel as an "obstructionist" for

which Intervenor believed would subject her to bias unless she agreed to settle.  From

that point on, nothing that Intervenor agreed to during the settlement hearing could be

reasonably considered of as her own free-will because she was frightened into simply

going along.  Nonetheless, Intervenor remains respectful of the Magistrate." *See foot

note, page 5, Intervenor's Opposition to Enforce Settlement.*

Because intervenor didn't want the magistrate to report to your Honor that she

was the lone holdout ("an Obstructionist") which might have subjected her to bias and

disdain if the case continued, Intervenor answered in the affirmative when Magistrate

Smith asked her after the threat, if she was agreeing to a settlement.  However,

Magistrate Smith threat to inform your Honor that she was the lone holdout and obstructionist, was the real reason Intervenor answered in the affirmative but only after being wrongfully coerced her into a settlement for which she had steadfastly refused but suddenly became fearful of the consequences of continuing her position not to settle.

The allegations, if given credit by the transcript, would clearly constitute coercion, and at minimum, excessive zeal on behalf of the Magistrate resulting in a forced settlement against Intervenor true wishes for fear of repercussion or retribution by the court.

Coercion is a bona fide defense against the Sixuvus motion to enforce that cannot be ignored as alleged in the footnote to Intervenor's opposition. This further supports Intervenor's opposition to the Sixuvus motion that **no** settlement could be had by her under the circumstances. *See Intervenor's Opposition, p. 5, footnote 1.*

The following relevant portions of the transcript demonstrates browbeating, intimidation and over zealousness by the court resulting in Intervenor being coerced into a change of heart and submission to the court's desire for a settlement against Intervenor's true interests:

**THE COURT:** I think it's quite clear, Ms. Willis, that you are intent on being an obstructionist. I don't see--- I have not heard one word from you in any of the times that you've been before me that indicates to me you have any desire to settle this case. You really just want everything your way and that's --- settlement doesn't work that way. Settlement means everybody gives a little bit and nobody gets precisely what they

want. *(See Exhibit A, Court Transcript dated March 28, 2018, p. 13, lines 22-25; p. 14, lines 1-4)*

**MS. WILLIS:** Well, your honor, I don't understand that characterization, and Judge Seibel made it very clear to me... along with Mr. Levy was being very fair here with respect to a settlement. So I don't know what your honor is trying to say here. All I'm saying to everyone is that look, I don't quite understand yet how they want to use it. We talked about a tribute to the Village People, meaning that it has to be made clear as part of the show that they're simply paying homage to the Village People. *(p. 14, lines 6-14)*

**THE COURT:** So if they call it homage is that better, Ms. Willis? *(p. 15, line 25; p. 16, line 1)*

**MS. WILLIS:** Again, it has to be made clear that the Kings of Disco is not ... themselves as some version of Village People. *(p. 16, lines 2-4)*

**THE COURT:** And how do you perceive that happening? Are they suppose to have a great, big, giant sign saying "Not the Village People"? *(p. 16, line 5-7)*

**MS WILLIS:** Yes, your honor. *(p. 16, line 8)*

**THE COURT:** That's a little silly *(p. 16, line 9)*

**MS. WILLIS:** Well, former member means that you are no longer dressing like Village People. *(p. 16, lines 12-14)*

**MR. ADELMAN:** That's not what former means, your honor. *(p. 16, lines 15-16)*

**MS WILLIS:** No, if you're a former member, you're no longer the Village People and you're not dressing like Village People.  Now look, you can dress like Village People as an individual, but once you start to combine them....  (p. 16, lines 17-21).

**THE COURT:** Okay, you know, Ms. Willis, Ms. Willis... Ms. Willis, I'm done. I'm done.  I'm telling Judge Seibel that you are not negotiating in good faith. That although the other two parties could reach a reasonable settlement, you are unable to do so and that I can't do anything to convince you. *(p. 16 lines 22-25, p. 17, lines 1-3)*

**MS WILLIS:** Your honor. *(p. 17, line 4)*

**THE COURT:** There's noting for me to do here. (p. 17, line 5)

**MS WILLIS:** Your honor. *(p. 17, line 6)*

**THE COURT:** You want to micromanage every--- Ms. Willis either you listen to me or we're done.  I'm going to tell Judge Siebel that you want to micromanage every detail of the Sixuvus performance, that that's not manageable, it's not possible, that you want things that even at the end of the day if Mr. Levy wins every detail of the case, you still couldn't get and therefore I am unable despite my best efforts, to reach a settlement. *(p. 18, lines 7-14)*

**MS WILLIS:** Your honor, well, when judge Seibel looks at the transcript, she's going to see that I simply was attempting to clarify and trying to understand exactly what it is that they're trying to do here. *(p. 17, lines 15-18).*

**THE COURT:** They made it clear.  They made it clear what they're trying to do here. *(p. 17, line).*

**MS WILLIS:** Maybe they're making it clear to you, and I would ask your honor to please just if you could calm down, its not --- I have to understand. They had a conversation face to face here, I'm simply being brought up to speed on this, is that maybe then I should talk to Mr. Levy between he and I, because I'm trying to under stand this in real time. Okay? *(p. 17, lines 21-25, p. 18, lines 1-2).*

Immediately following Intervenor's request to speak to Mr. Levy, the court recessed for about 45 minutes, the Intervenor returned, and under extreme duress agreed to agree to a settlement against her will.

Accordingly, this question must be asked…. if what the Magistrate frustratingly stated on the record is true (and it is), that she had not heard a word from the Intervenor in any of the times the Intervenor has been before her, that Intervenor had any desire to settle the case, why is it that within minutes of the Magistrate's threats to impugn Intervenor's character to Judge Seibel (for which Intervenor was outright terrified of) would Intervenor suddenly have a change of heart, if not through coercion as a direct result of the Magistrate stating that either the Intervenor "listen to [her] or we're done," and that she's going to then tell Judge Siebel that the Intervenor is acting in bad faith. (p. 17, line 9-14). Intervenor wanted desperately to prevent the Magistrate from characterizing her that way to your Honor for fear it would place her in a bad light with the judge presiding over the case which could subject her to bias.

Exactly what did the Magistrate want Intervenor to listen to? That the Sixuvus could dress in Village People attire, that's what. Something the Intervenor had made clear she would not go along with. This entrenched position resulted in the Magistrate

threating to shut down settlement talks and impugning Intervenor's character to Judge

Seibel if intervenor maintained that position. *(See p. 16, lines 17-25; p. 17, lines 1-3)*

The threat resulted in negotiated efforts by the Intervenor to prevent the

impugning of her character to Judge Seibel from happening by simply going along with

the Magistrate's desire that the Sixuvus be allowed to dress in Village People attire

although Intervenor's true desire was that they **not** be allowed to do so. *(See p. 16, lines*

*17-23).*

The Magistrate's behavior amounted to coercion.  Although the law favors the

voluntary settlement of civil suits, ABKCO Music, Inc. v. Harrisongs Music, Ltd., 722 F.2d

988, 997 (2d Cir. 1983), it does not sanction efforts by trial judges to effect settlements

through coercion. Del Rio v. Northern Blower Co., 574 F.2d 23, 26 (1st Cir. 1978) (citing

Wolff v. Laverne, Inc., 17 A.D.2d 213, 233 N.Y.S.2d 555 (1962)); see MacLeod v. D.C.

Transit System, Inc., 283 F.2d 194, 195 n. 1 (D.C. Cir. 1960); 89 C.J.S., Trial, Sec. 577 at

355.   Likewise, the law does not favor the use of browbeating or degrading references

to the Intervenor as an "obstructionist," or other excessive zeal.  See Kothe v. Smith, 771

F.2d 667 (2d Cir. 1985).

Simply put, if the court finds that Intervenor was coerced into going along with a

settlement under threat or duress, or the Magistrate used excessive zeal, there can be

no enforceable settlement, and the Sixuvus motion to enforce must be **denied**.

This issue is inextricably intertwined with any decision on the motion to enforce

and cannot be divorced from it, nor decided by Judge Smith because she cannot be seen

as deciding whether or not she committed judicial indiscretion or whether the motion should be denied as a direct result of her behavior.

Title 28, United States Code, section 455(a) provides that "[a]ny justice, judge, or magistrate judge of the United States shall disqualify himself in any proceeding in which [her] impartiality might reasonably be questioned." This statute embodies the principle that "to perform its high function in the best way justice must satisfy the appearance of justice." The goal of section 455(a) is to avoid not only partiality but also the appearance of partiality. *SEC v. Drexel Burnham Lambert Inc. (In re Drexel Burnham Lambert Inc.)*, 861 F.2d 1307, 1313 (2d Cir. 1988) (quoting H.R. Rep. No. 1453, *reprinted in* 1974 U.S.C.C.A.N. 6351, 6354-55).

## CONCLUSION

As set forth herein, Magistrate Smith must be recused from deciding the Sixuvus motion to enforce the alleged settlement. In the alternative, the court should bifurcate the issue and stay the motion until the issue of coercion and excessive zeal is decided.

Respectfully submitted,

Karen L. Willis

# EXHIBIT A

SEALED PROCEEDINGS

1  their image is going to be other than them simply stating that

2  they're trying to look like Village People.  That's all I'm

3  saying.  I know that I have, I can't control how they dress, I

4  can't (indiscernable).  I can tell them they can't be Village

5  People.  And I don't know why now that is not -- is not what

6  they're choosing to do.  So that's all I'm saying.  I'm

7  confused.

8       THE COURT:  Do you want to be their manager?  Do you

9  want to volunteer to be their manager to be able to choose

10  whether the officer wears a star or a gun belt?

11       MS. WILLIS:  Well, I think Judge Seibel made it very

12  clear that they can't use a police officer in any respect.  For

13  example, she said you can't --

14       THE COURT:  What happened to headwear?

15       What happened to the discussion of headwear?  I

16  thought we were in agreement to that yesterday.

17       MS. WILLIS:  No, no.  You were in agreement that they

18  can wear the headwear only with respect to (indiscernable) sort

19  of an homage to the Village People.  It seems to me that they

20  seem to want to just use this throughout the show.

21       MR. ADELMAN:  Your Honor, we --

22       THE COURT:  I think it's quite clear, Ms. Willis,

23  that you are intent on being obstructionist.  I don't see -- I

24  have not heard one word from you in any of the times that

25  you've been before me that indicates to me you have any desire

SEALED PROCEEDINGS

1   to settle this case.  You really just want everything your way

2   and that's -- settlement doesn't work that way.  Settlement

3   means everybody gives a little bit and nobody gets precisely

4   what they want.

5          MS. WILLIS:  Well, your Honor, I don't understand

6   that characterization, and Judge Seibel made it very clear and

7   (indiscernable) my (indiscernable) along with Mr. Levy was

8   being very, very fair here with respect to settlement.  So I

9   don't know what your Honor is (indiscernable) here.

10          All I'm saying to you and to everyone there is that,

11   look, I don't quite understand yet how you want to use it.  We

12   talked about a tribute to the Village People, meaning that it

13   has to be made clear as a part of the show that they're simply

14   paying homage to the Village People.

15          THE COURT:  There was a conference you attended,

16   Ms. Willis, but that wasn't what was discussed.  You kept on

17   saying tribute, homage, but that was never the subject of the

18   conversation.  Mr. Adelman made clear, and it seemed to me

19   Mr. Levy agreed, that they would be doing approximately

20   50 percent of their songs as Village People songs but only

21   during a brief period which we've defined as approximately ten

22   minutes in the longer shows, they would be permitted to wear an

23   approximation of the costumes that once had reflected the

24   Village People.  You're telling me now that none of that is

25   acceptable.

SEALED PROCEEDINGS

1       MS. WILLIS:  Your Honor, first of all, you've

2   incorrectly characterize it.  Mr. Levy got into the discussion

3   over whether or not Mr. Adelman was agreeing to it being homage

4   or whether or not or tribute.  Okay?

5       Now, I agreed with Mr. Levy on that, because we had

6   discussed it.  Okay?  Now, and as I stated to the Court, if in

7   fact we are (indiscernable) dress this way in the context of an

8   homage and Mr. Adelman (indiscernable) okay?  Which side are

9   you going to go with?  There has to be some sort of a happy

10  medium.  I'm not going to simply roll over and say, okay,

11  Mr. Adelman, sure, we agree that it could be an homage,

12  (indiscernable) tribute to the group clearly (indiscernable) --

13  you know, come on, it's two sides of the coin here, your Honor.

14  And so, it appears that, if I'm saying, no, you could only use

15  this in the context of a clear tribute to Village People and

16  Mr. Adelman is saying, no, no, (indiscernable) guess what, we

17  don't have to do anything.

18      MR. ADELMAN:  This is not what I said at all.  My

19  objection was to the word "homage."  It's ten minutes in the

20  agreed-upon costumed.  That's it.  If you want -- that actually

21  could be characterized as an homage.  The other 50 minutes are

22  not in the agreed-upon costume and they're doing songs.

23      MR. LEVY:  Gary, I agreed to that.

24      MR. ADELMAN:  Yeah, I know.  We both agreed.

25      THE COURT:  So if they called it homage, is that

SEALED PROCEEDINGS

1  better, Ms. Willis?

2         MS. WILLIS:  Again, it has to be made clear that the

3  Kings of Disco is not a (indiscernable) themselves as some

4  version of Village People.

5         THE COURT:  And how perceive that happening?

6         Are they supposed to have a great, big, giant sign

7  saying "Not the Village People"?

8         MS. WILLIS:  Yes, your Honor.

9         THE COURT:  That's a little silly.

10        MR. ADELMAN:  We're actually billing ourselves as

11  formerly members.  That couldn't be clearer.

12        MS. WILLIS:  Well, former member means that you're no

13  longer you're dressing like Village People.  (Indiscernible)

14  means you're dressing like Village People.

15        MR. ADELMAN:  That's not what former members means,

16  your Honor.

17        MS. WILLIS:  No, if you're a former member, you're no

18  longer the Village People and you're not dressing like Village

19  People.

20        Now, look, you can dress like Village People as an

21  individual but once you start to combine them --

22        THE COURT:  Okay, you know, Ms. Willis --

23        ms. wilis:  (Indiscernible).

24        THE COURT:  -- Ms. Willis.  I'm done.  I'm done.  I'm

25  telling Judge Seibel that you are not negotiating in good

SEALED PROCEEDINGS

1  faith.  That although the other two parties could reach a

2  reasonable settlement, you are unable to do so and that I can't

3  do anything to convince you.

4       MS. WILLIS:  Your Honor.

5       THE COURT:  There's nothing for me to do here.

6       MS. WILLIS:  Your Honor.

7       THE COURT:  You want to micromanage every --

8  Ms. Willis, either you listen to me or we're done.

9       I'm going to tell Judge Seibel that you want to

10  micromanage every detail of the Sixuvus performance, that

11  that's not manageable, it's not possible, that you want things

12  that even at the end of the day if Mr. Levy wins every detail

13  of this case, you still couldn't get and therefore I am unable,

14  despite my best efforts, to reach a settlement.

15       MS. WILLIS:  Your Honor, well, when Judge Seibel

16  looks at the transcript, she's going to see that I simply was

17  attempting to clarify and trying to understand exactly what it

18  is that they're trying to do here.

19       THE COURT:  They made it clear.  They made it clear

20  what they're trying to do here.

21       MS. WILLIS:  Maybe they're making it clear to you,

22  and I would ask your Honor to please just if you could calm

23  down, it's not -- I have to understand.  They had a

24  conversation face-to-face here.  I'm simply being brought up to

25  speed on this, is that maybe then I should talk to Mr. Levy

Angela O'Donnell, RPR, 914-390-4025

SEALED PROCEEDINGS

1    between he and I, because I'm trying to understand this in real

2    time.  Okay?

3        MR. ADELMAN:  That's a good idea, your Honor.  Why

4    doesn't she talk to Mr. Levy offsite, we could take a

5    ten-minute break.

6        MS. WILLIS:  Yes.  Because I have to understand what

7    it is here.  I'm trying to do this in real time and it's not

8    working.

9        MR. ADELMAN:  Maybe Mr. Levy can explain to her --

10        MS. WILLIS:  Your Honor, wants to (indiscernable) and

11    she's getting frustrated (indiscernable) I should need to

12    understand what it is I'm settling then.

13        THE COURT:  Well, I have to tell you, I think it's a

14    great idea for you to talk to Mr. Levy, to take a few minutes

15    to see if he can explain it to you more effectively than I

16    think it's already been explained.  I'm a tad concerned that

17    we're going to be in a situation where we are together again

18    repeatedly on motions made by the intervenor, but I'm happy to

19    take a break to give you an opportunity to discuss the matter

20    with Mr. Levy to see if perhaps we can come to a meeting of the

21    minds.  We'll take ten or 15 minutes.

22        MR. ADELMAN:  Thank you, your Honor.

23        THE COURT:  Thank you.

24        (Recess)

25        THE CLERK:  Ms. Willis, can you hear me?