Karen L. Willis, J.D.
220 West G Street, Suite E.
San Diego, CA. 92101
(619) 206-5311

November 23, 2018

The Hon. Judge Lisa M. Smith
300 Quarropas St.,
White Plains, NY 10601-4150

## LETTER MOTION FOR RECUSAL OR TO BIFURCATE

Dear Judge Smith:

In efforts to remove all doubt as to whether I have directly requested your recusal in the first instance, as a opposed to making a premature filing with Judge Siebel, please see below, a letter motion for your recusal from deciding the Sixuvus motion to enforce, or in the alternative, to bifurcate the issue from the motion.

### INTRODUCTION

I am the Intervenor in the case of Can't Stop v. Sixuvus, Ltd. I bring this motion for recusal of Magistrate Lisa Smith on the grounds that her impartiality might reasonably be questioned in deciding a motion wherein the Magistrate is the subject of an accusation that she essentially coerced Intervenor into agreeing to certain statements made by the court as to whether or not Intervenor agreed to settle.

It is important to note that before your Judge Seibel stated on the record, in response to Intervenor's letter of inquiry (dated October 26, 2018) that Judge Smith

would be deciding the motion to enforce; Intervenor as well as Can't Stop's counsel was under the impression that your honor would be deciding the motion, not Magistrate Smith as was represented to me by Can't Stop's counsel. Therefore, in intervenor's mind, if Judge Seibel was deciding the motion, there was no need for her to seek recusal related to the issue set forth herein. That is the reason Intervenor did not seek recusal sooner.

### MAGISTRATE SMITH MUST BE RECUSED FROM DECIDING THE MOTION

Intervenor made the following allegation against Judge Smith in her opposition to the Sixuvus Motion to Enforce:

"During the contentious hearing, all parties, and the court as well, seemed frustrated and annoyed that Intervenor steadfastly refused a settlement unless on terms she could live with. So much so, that at one point, the Magistrate referred to Intervenor as an "obstructionist" and threatens to inform Judge Seibel of such characterization, including that Intervenor was the lone holdout; unless Intervenor agreed to go along with the court. This put undue stress and burden on Intervenor to agree to a settlement, or else be reported to Judge Seibel as an "obstructionist" for which Intervenor believed would subject her to bias unless she agreed to settle. From that point on, nothing that Intervenor agreed to during the settlement hearing could be reasonably considered of as her own free-will because she was frightened into simply going along. Nonetheless, Intervenor remains respectful of the Magistrate." *See foot note, page 5, Intervenor's Opposition to Enforce Settlement.*

Because intervenor didn't want the magistrate to report to Judge Seibel that she was the lone holdout ("an Obstructionist") which might have subjected her to bias and disdain if the case continued, Intervenor answered in the affirmative when Magistrate Smith asked her after the threat, if she was agreeing to a settlement. However, Magistrate Smith threat to inform your Honor that she was the lone holdout and obstructionist, was the real reason Intervenor answered in the affirmative but only after being wrongfully coerced her into a settlement for which she had steadfastly refused but suddenly became fearful of the consequences of continuing her position not to settle.

The allegations, if given credit by the transcript, would clearly constitute coercion, and at minimum, excessive zeal on behalf of the Magistrate resulting in a forced settlement against Intervenor true wishes for fear of repercussion or retribution by the court.

Coercion is a bona fide defense against the Sixuvus motion to enforce that cannot be ignored as alleged in the footnote to Intervenor's opposition. This further supports Intervenor's opposition to the Sixuvus motion that **no** settlement could be had by her under the circumstances. *See Intervenor's Opposition, p. 5, footnote 1.*

The following relevant portions of the transcript demonstrates browbeating, intimidation and over zealousness by the court resulting in Intervenor being coerced into a change of heart and submission to the court's desire for a settlement against Intervenor's true interests:

**THE COURT:** I think it's quite clear, Ms. Willis, that you are intent on being an obstructionist. I don't see--- I have not heard one word from you in any of the times that you've been before me that indicates to me you have any desire to settle this case. You really just want everything your way and that's --- settlement doesn't work that way. Settlement means everybody gives a little bit and nobody gets precisely what they want. *(See Exhibit A, Court Transcript dated March 28, 2018, p. 13, lines 22-25; p. 14, lines 1-4)*

**MS. WILLIS:** Well, your honor, I don't understand that characterization, and Judge Seibel made it very clear to me... along with Mr. Levy was being very fair here with respect to a settlement. So I don't know what your honor is trying to say here. All I'm saying to everyone is that look, I don't quite understand yet how they want to use it. We talked about a tribute to the Village People, meaning that it has to be made clear as part of the show that they're simply paying homage to the Village People. *(p. 14, lines 6-14)*

**THE COURT:** So if they call it homage is that better, Ms. Willis? *(p. 15, line 25; p. 16, line 1)*

**MS. WILLIS:** Again, it has to be made clear that the Kings of Disco is not ... themselves as some version of Village People. *(p. 16, lines 2-4)*

**THE COURT:** And how do you perceive that happening? Are they suppose to have a great, big, giant sign saying "Not the Village People"? *(p. 16, line 5-7)*

**MS WILLIS:** Yes, your honor. *(p. 16, line 8)*

**THE COURT:** That's a little silly *(p. 16, line 9)*

**MS. WILLIS:** Well, former member means that you are no longer dressing like Village People. *(p. 16, lines 12-14)*

**MR. ADELMAN:** That's not what former means, your honor. *(p. 16, lines 15-16)*

**MS WILLIS:** No, if you're a former member, you're no longer the Village People and you're not dressing like Village People. Now look, you can dress like Village People as an individual, but once you start to combine them.... (p. 16, lines 17-21).

**THE COURT:** Okay, you know, Ms. Willis, Ms. Willis... Ms. Willis, I'm done. I'm done. I'm telling Judge Seibel that you are not negotiating in good faith. That although the other two parties could reach a reasonable settlement, you are unable to do so and that I can't do anything to convince you. *(p. 16 lines 22-25, p. 17, lines 1-3)*

**MS WILLIS:** Your honor. *(p. 17, line 4)*

**THE COURT:** There's noting for me to do here. (p. 17, line 5)

**MS WILLIS:** Your honor. *(p. 17, line 6)*

**THE COURT:** You want to micromanage every--- Ms. Willis either you listen to me or we're done. I'm going to tell Judge Siebel that you want to micromanage every detail of the Sixuvus performance, that that's not manageable, it's not possible, that you want things that even at the end of the day if Mr. Levy wins every detail of the case, you still couldn't get and therefore I am unable despite my best efforts, to reach a settlement. *(p. 18, lines 7-14)*

**MS WILLIS:** Your honor, well, when judge Seibel looks at the transcript, she's going to see that I simply was attempting to clarify and trying to understand exactly what it is that they're trying to do here. *(p. 17, lines 15-18).*

**THE COURT:** They made it clear. They made it clear what they're trying to do here. *(p. 17, line).*

**MS WILLIS:** Maybe they're making it clear to you, and I would ask your honor to please just if you could calm down, its not --- I have to understand. They had a conversation face to face here, I'm simply being brought up to speed on this, is that maybe then I should talk to Mr. Levy between he and I, because I'm trying to under stand this in real time. Okay? *(p. 17, lines 21-25, p. 18, lines 1-2).*

Immediately following Intervenor's request to speak to Mr. Levy, the court recessed for about 45 minutes, the Intervenor returned, and under extreme duress agreed to agree to a settlement against her will.

Accordingly, this question must be asked.... if what the Magistrate frustratingly stated on the record is true (and it is), that she had not heard a word from the Intervenor in any of the times the Intervenor has been before her, that Intervenor had any desire to settle the case, why is it that within minutes of the Magistrate's threats to impugn Intervenor's character to Judge Seibel (for which Intervenor was outright terrified of) would Intervenor suddenly have a change of heart, if not through coercion as a direct result of the Magistrate stating that either the Intervenor "listen to [her] or we're done," and that she's going to then tell Judge Siebel that the Intervenor is acting in bad faith. (p. 17, line 9-14). Intervenor wanted desperately to prevent the Magistrate from characterizing her that way to your Honor for fear it would place her in a bad light with the judge presiding over the case which could subject her to bias.

Exactly what did the Magistrate want Intervenor to listen to? That the Sixuvus could dress in Village People attire, that's what. Something the Intervenor had made clear she would not go along with. This entrenched position resulted in the Magistrate threating to shut down settlement talks and impugning Intervenor's character to Judge Seibel if intervenor maintained that position. *(See p. 16, lines 17-25; p. 17, lines 1-3)*

The threat resulted in negotiated efforts by the Intervenor to prevent the impugning of her character to Judge Seibel from happening by simply going along with the Magistrate's desire that the Sixuvus be allowed to dress in Village People attire although Intervenor's true desire was that they **not** be allowed to do so. *(See p. 16, lines 17-23).*

The Magistrate's behavior amounted to coercion. Although the law favors the voluntary settlement of civil suits, ABKCO Music, Inc. v. Harrisongs Music, Ltd., 722 F.2d 988, 997 (2d Cir. 1983), it does not sanction efforts by trial judges to effect settlements through coercion. Del Rio v. Northern Blower Co., 574 F.2d 23, 26 (1st Cir. 1978) (citing Wolff v. Laverne, Inc., 17 A.D.2d 213, 233 N.Y.S.2d 555 (1962)); see MacLeod v. D.C. Transit System, Inc., 283 F.2d 194, 195 n. 1 (D.C. Cir. 1960); 89 C.J.S., Trial, Sec. 577 at 355. Likewise, the law does not favor the use of browbeating or degrading references to the Intervenor as an "obstructionist," or other excessive zeal. See Kothe v. Smith, 771 F.2d 667 (2d Cir. 1985).

Simply put, if the court finds that Intervenor was coerced into going along with a settlement under threat or duress, or the Magistrate used excessive zeal, there can be no enforceable settlement, and the Sixuvus motion to enforce must be **denied**.

This issue is inextricably intertwined with any decision on the motion to enforce and cannot be divorced from it, nor decided by Judge Smith because she cannot be seen as deciding whether or not she committed judicial indiscretion or whether the motion should be denied as a direct result of her behavior.

Title 28, United States Code, section 455(a) provides that "[a]ny justice, judge, or magistrate judge of the United States shall disqualify himself in any proceeding in which [her] impartiality might reasonably be questioned." This statute embodies the principle that "to perform its high function in the best way justice must satisfy the appearance of justice." The goal of section 455(a) is to avoid not only partiality but also the appearance of partiality. *SEC v. Drexel Burnham Lambert Inc. (In re Drexel Burnham Lambert Inc.)*, 861 F.2d 1307, 1313 (2d Cir. 1988) (quoting H.R. Rep. No. 1453, *reprinted in* 1974 U.S.C.C.A.N. 6351, 6354-55).

## CONCLUSION

As set forth herein, Magistrate Smith must be recused from deciding the Sixuvus motion to enforce the alleged settlement. In the alternative, the court should bifurcate the issue and stay the motion until the issue of coercion and excessive zeal is decided.

Respectfully submitted,

Karen L. Willis

# EXHIBIT A

# EXHIBIT A

1  their image is going to be other than them simply stating that
2  they're trying to look like Village People. That's all I'm
3  saying. I know that I have, I can't control how they dress, I
4  can't (indiscernable). I can tell them they can't be Village
5  People. And I don't know why now that is not -- is not what
6  they're choosing to do. So that's all I'm saying. I'm
7  confused.
8           THE COURT: Do you want to be their manager? Do you
9  want to volunteer to be their manager to be able to choose
10 whether the officer wears a star or a gun belt?
11          MS. WILLIS: Well, I think Judge Seibel made it very
12 clear that they can't use a police officer in any respect. For
13 example, she said you can't --
14          THE COURT: What happened to headwear?
15          What happened to the discussion of headwear? I
16 thought we were in agreement to that yesterday.
17          MS. WILLIS: No, no. You were in agreement that they
18 can wear the headwear only with respect to (indiscernable) sort
19 of an homage to the Village People. It seems to me that they
20 seem to want to just use this throughout the show.
21          MR. ADELMAN: Your Honor, we --
22          THE COURT: I think it's quite clear, Ms. Willis,
23 that you are intent on being obstructionist. I don't see -- I
24 have not heard one word from you in any of the times that
25 you've been before me that indicates to me you have any desire

1  to settle this case. You really just want everything your way
2  and that's -- settlement doesn't work that way. Settlement
3  means everybody gives a little bit and nobody gets precisely
4  what they want.
5      MS. WILLIS: Well, your Honor, I don't understand
6  that characterization, and Judge Seibel made it very clear and
7  (indiscernable) my (indiscernable) along with Mr. Levy was
8  being very, very fair here with respect to settlement. So I
9  don't know what your Honor is (indiscernable) here.
10     All I'm saying to you and to everyone there is that,
11 look, I don't quite understand yet how you want to use it. We
12 talked about a tribute to the Village People, meaning that it
13 has to be made clear as a part of the show that they're simply
14 paying homage to the Village People.
15     THE COURT: There was a conference you attended,
16 Ms. Willis, but that wasn't what was discussed. You kept on
17 saying tribute, homage, but that was never the subject of the
18 conversation. Mr. Adelman made clear, and it seemed to me
19 Mr. Levy agreed, that they would be doing approximately
20 50 percent of their songs as Village People songs but only
21 during a brief period which we've defined as approximately ten
22 minutes in the longer shows, they would be permitted to wear an
23 approximation of the costumes that once had reflected the
24 Village People. You're telling me now that none of that is
25 acceptable.

SEALED PROCEEDINGS

1    MS. WILLIS: Your Honor, first of all, you've
2  incorrectly characterize it. Mr. Levy got into the discussion
3  over whether or not Mr. Adelman was agreeing to it being homage
4  or whether or not or tribute. Okay?
5       Now, I agreed with Mr. Levy on that, because we had
6  discussed it. Okay? Now, and as I stated to the Court, if in
7  fact we are (indiscernable) dress this way in the context of an
8  homage and Mr. Adelman (indiscernable) okay? Which side are
9  you going to go with? There has to be some sort of a happy
10 medium. I'm not going to simply roll over and say, okay,
11 Mr. Adelman, sure, we agree that it could be an homage,
12 (indiscernable) tribute to the group clearly (indiscernable) --
13 you know, come on, it's two sides of the coin here, your Honor.
14 And so, it appears that, if I'm saying, no, you could only use
15 this in the context of a clear tribute to Village People and
16 Mr. Adelman is saying, no, no, (indiscernable) guess what, we
17 don't have to do anything.
18      MR. ADELMAN: This is not what I said at all. My
19 objection was to the word "homage." It's ten minutes in the
20 agreed-upon costumed. That's it. If you want -- that actually
21 could be characterized as an homage. The other 50 minutes are
22 not in the agreed-upon costume and they're doing songs.
23      MR. LEVY: Gary, I agreed to that.
24      MR. ADELMAN: Yeah, I know. We both agreed.
25      THE COURT: So if they called it homage, is that

Angela O'Donnell, RPR, 914-390-4025

SEALED PROCEEDINGS

1 better, Ms. Willis?

2     MS. WILLIS: Again, it has to be made clear that the

3 Kings of Disco is not a (indiscernable) themselves as some

4 version of Village People.

5     THE COURT: And how perceive that happening?

6     Are they supposed to have a great, big, giant sign

7 saying "Not the Village People"?

8     MS. WILLIS: Yes, your Honor.

9     THE COURT: That's a little silly.

10     MR. ADELMAN: We're actually billing ourselves as

11 formerly members. That couldn't be clearer.

12     MS. WILLIS: Well, former member means that you're no

13 longer you're dressing like Village People. (Indiscernible)

14 means you're dressing like Village People.

15     MR. ADELMAN: That's not what former members means,

16 your Honor.

17     MS. WILLIS: No, if you're a former member, you're no

18 longer the Village People and you're not dressing like Village

19 People.

20     Now, look, you can dress like Village People as an

21 individual but once you start to combine them --

22     THE COURT: Okay, you know, Ms. Willis --

23     ms. wilis: (Indiscernible).

24     THE COURT: -- Ms. Willis. I'm done. I'm done. I'm

25 telling Judge Seibel that you are not negotiating in good

SEALED PROCEEDINGS

1  faith. That although the other two parties could reach a
2  reasonable settlement, you are unable to do so and that I can't
3  do anything to convince you.
4          MS. WILLIS: Your Honor.
5          THE COURT: There's nothing for me to do here.
6          MS. WILLIS: Your Honor.
7          THE COURT: You want to micromanage every --
8  Ms. Willis, either you listen to me or we're done.
9          I'm going to tell Judge Seibel that you want to
10 micromanage every detail of the Sixuvus performance, that
11 that's not manageable, it's not possible, that you want things
12 that even at the end of the day if Mr. Levy wins every detail
13 of this case, you still couldn't get and therefore I am unable,
14 despite my best efforts, to reach a settlement.
15         MS. WILLIS: Your Honor, well, when Judge Seibel
16 looks at the transcript, she's going to see that I simply was
17 attempting to clarify and trying to understand exactly what it
18 is that they're trying to do here.
19         THE COURT: They made it clear. They made it clear
20 what they're trying to do here.
21         MS. WILLIS: Maybe they're making it clear to you,
22 and I would ask your Honor to please just if you could calm
23 down, it's not -- I have to understand. They had a
24 conversation face-to-face here. I'm simply being brought up to
25 speed on this, is that maybe then I should talk to Mr. Levy

SEALED PROCEEDINGS

1  between he and I, because I'm trying to understand this in real
2  time. Okay?
3         MR. ADELMAN: That's a good idea, your Honor. Why
4  doesn't she talk to Mr. Levy offsite, we could take a
5  ten-minute break.
6         MS. WILLIS: Yes. Because I have to understand what
7  it is here. I'm trying to do this in real time and it's not
8  working.
9         MR. ADELMAN: Maybe Mr. Levy can explain to her --
10        MS. WILLIS: Your Honor, wants to (indiscernable) and
11 she's getting frustrated (indiscernable) I should need to
12 understand what it is I'm settling then.
13        THE COURT: Well, I have to tell you, I think it's a
14 great idea for you to talk to Mr. Levy, to take a few minutes
15 to see if he can explain it to you more effectively than I
16 think it's already been explained. I'm a tad concerned that
17 we're going to be in a situation where we are together again
18 repeatedly on motions made by the intervenor, but I'm happy to
19 take a break to give you an opportunity to discuss the matter
20 with Mr. Levy to see if perhaps we can come to a meeting of the
21 minds. We'll take ten or 15 minutes.
22        MR. ADELMAN: Thank you, your Honor.
23        THE COURT: Thank you.
24        (Recess)
25        THE CLERK: Ms. Willis, can you hear me?