Karen L. Willis, J.D.
220 West G Street, Suite E.
San Diego, CA. 92101
(619) 206-5311

December 19, 2018

The Hon. Judge Lisa M. Smith
300 Quarropas St.,
White Plains, NY 10601-4150

## REPLY TO LETTER MOTION FOR RECUSAL

Dear Hon. Judge Smith:

In reply to the Sixuvus opposition to the motion for recusal, Intervenor offers the following response:

(1) Nowhere in the Sixuvus opposition do they deny or challenge Intervenor's contention that **coercion** is a bona fide defense to their motion to enforce a settlement.

(2) Nowhere in the Sixuvus opposition do they deny or challenge the fact that a judge whose very actions are the subject of a defense, could decide such a defense without the appearance of impartiality.

Intervenor stated the following in her opposition to the motion to enforce: "[T]he Magistrate referred to Intervenor as an "obstructionist" and threatened to inform Judge Seibel of such characterization, including that Intervenor was the lone holdout; unless Intervenor agreed to go along with the court. This put undue stress and burden on Intervenor to agree to a settlement, or else be reported to Judge Seibel as an

"obstructionist" for which Intervenor believed would subject her to bias unless she agreed to settle. From that point on, nothing that Intervenor agreed to during the settlement hearing could reasonably be considered as her own free-will because she was frightened into simply going along." (See Opposition to Motion to Enforce, p.5, footnote 1).

The allegations in Intervenor's opposition to the motion to enforce and the evidenced proffered in support thereof, states a prima facie case of coercion against the magistrate because Intervenor alleges her agreement to settle was made under extreme duress and under threat by the magistrate. Simply put, if there was coercion involved in the settlement, the settlement is null and void. The record is clear however that the magistrate does not want the settlement to be null and void. Therefore, recusal is required because of the appearance of impartiality in that the magistrate must decide whether her actions constitute coercion in terms of Intervenor's defense of the motion to enforce.

After Intervenor was coerced into a settlement she was afraid to openly confront the magistrate on the issue of coercion for fear the magistrate might follow through on her threats, and things might get worse. So Intervenor remained silent on the issue before the magistrate, and instead introduced other reasons why the settlement is likely not valid.

As for the Sixuvus, their opposition against recusal is fraught with irrelevant points and straw grasping as they consistently harp on the issue of bias. However, nowhere in Intervenor's motion to recuse does she suggest that your Honor is bias. To the contrary,

as suggested above, Intervenor alleges she was coerced by your Honor into a settlement. As such, there's at least the appearance of impartiality in deciding a motion where your Honor's acts constitutes a defense that could prove dispositive of the motion. Even if your Honor failed to recuse, your Honor would still have to decide whether or not your Honor coerced Intervenor into a settlement which could subject your Honor to an admission of wrongdoing in contravention to your Honor's Fifth Amendment privilege. It's an awkward position where the Magistrate would, regardless of the evidence, likely to draw only one conclusion... that she did not coerce Intervenor. The evidence however suggests otherwise. That is why recusal is in order.

Here, no objective, disinterested observer fully informed of the underlying facts could reasonably entertain anything other than significant doubt that justice would be done absent recusal, because the magistrate cannot reasonably be expected to admit coercion in deciding the motion. Yet, the magistrate is called, if she decides the motion to enforce, to consider doing so as part of Intervenor's defense.

In determining whether Section 455(a) requires recusal, the appropriate standard is objective reasonableness—whether "an objective, disinterested observer fully informed of the underlying facts, [would] entertain significant doubt that justice would be done absent recusal." Diamondstone v. Macaluso, 148 F.3d 113, 121 (2d Cir. 1998) (quoting United States v. Lovaglia, 954 F.2d 811, 815 (2d Cir. 1992) (citations omitted)).

What is particularly galling, however, is the Sixuvus suggesting that we are here because of Intervenor. To the contrary, we're here because the Sixuvus as well as your Honor have always known that Intervenor had no interest in a settlement. Therefore,

the Sixuvus through their motion is attempting to force a settlement by hook or crook because they as well as your Honor are very much aware that no settlement involving Intervenor could occur, as currently constituted, by any means other than hook or crook. And that's why we're really here.

However, a forced or coerced settlement is not a legal or legitimate settlement. Although the law favors the voluntary settlement of civil suits, ABKCO Music, Inc. v. Harrisongs Music, Ltd., 722 F.2d 988, 997 (2d Cir. 1983), it does not sanction efforts by trial judges to effect settlements through coercion. Del Rio v. Northern Blower Co., 574 F.2d 23, 26 (1st Cir. 1978) (citing Wolff v. Laverne, Inc., 17 A.D.2d 213, 233 N.Y.S.2d 555 (1962)); see MacLeod v. D.C. Transit System, Inc., 283 F.2d 194, 195 n. 1 (D.C. Cir. 1960); 89 C.J.S., Trial, Sec. 577 at 355.

It seems the Sixuvus relish (and your Honor as well) in the fact that for a fleeting moment, Intervenor agreed to settle, while ignoring the threat which caused that fleeting moment. Indeed, the motivating factor in Intervenor's decision to come forward and seek recusal is the fact that your Honor continued to taunt her with the fact that Intervenor had agreed, at least for a moment, and then changed her mind. But each time your Honor reminded Intervernor of her agreement to settle, as if to taunt her, Intervenor wanted to loudly exclaim to the court that she would never had agreed, not even for a second, had your Honor not coerced her into doing so with threats of telling Judge Siebel that Intervenor was an "obstructionist" and "not negotiating in good faith," therein, impugning Intervenor's character; so Intervenor "had better listen." Therefore, under threat, Interveor did listen, and agreed to settle. And out of fear of

possible additional threats, Intervenor always remained silent on the issue in your Honor's presence.

If your Honor had simply gone no further than to insult Intervenor by calling her an "obstructionist," Intervenor would have no complaint. However, your Honor crossed a line when your Honor threaten to malign Intervenor (if she didn't listen to your Honor) by telling Judge Seibel that Intervenor wanted to micromanage every detail of the Sixuvus performance, and that, that's not manageable, not possible. That Intervenor wanted things that even at the end of the day, if Mr. Levy wins every aspect to the case, Intervenor still could not get. *See Motion for Recusal, p. 5.* Intervenor believed and still believes the magistrate's statement to be false, and damaging to her reputation before Judge Siebel.

Certainly, the things your Honor threatened to tell Judge Sieble about Intervenor if she didn't listen, would malign and impugn anyone's character and likewise caused Intervenor, under duress, to do anything to prevent her from being maligned including going along with a settlement that she really wanted no part of, but for the threats, and coercion.

The reason being, Intervenor believed that if the magistrate said those things about her to Judge Siebel, Judge Siebel would dislike her or even become biased against her for continuing the case. So, shaken and under duress, Intervenor conference with Stuart Levy in efforts to be brought up to speed on what had transpired between Mr. Levy and Gary Adelman and concluded that it would be in her best interest to listen to the magistrate, and agree to a settlement though Intervenor really didn't want to settle.

Having said that, Intervenor is still willing to settle but it must be on terms she would (by her own free will) agree to. Not by way of force, or attempts to sway her by having the Court apply pressure when the Sixuvus says to the Court….. look, your Honor, Can't Stop has already agreed to a settlement with us, but it's that "evil" Karen Willis that's not going along with the program. This has been the Sixuvus strategy from day one and has not been helpful because it only antagonizes Intervenor into not wanting to settle.

Finally, the Sixuvus admit that there's no statute of limitation as to recusal but suggests that Intervenor is somehow time barred and "failed to excuse why her motion was filed months after the relevant events took place." *See Sixuvus Opposition to Motion for Recusal.* First, Intervenor did offer a legitimate reason for the delay as follows: "before Judge Seibel stated on the record, in response to Intervenor's letter of inquiry (dated October 26, 2018) that Judge Smith would be deciding the motion to enforce; Intervenor as well as Can't Stop's counsel was under the impression that your honor would be deciding the motion, not Magistrate Smith as was represented to me by Can't Stop's counsel. Therefore, in intervenor's mind, if Judge Seibel was deciding the motion, there was no need for her to seek recusal related to the issue set forth herein. That is the reason Intervenor did not seek recusal sooner." *See Motion for Recusal, p.1.*

Intervenor filed her motion for recusal within a reasonable time after Judge Siebel's notification that Magistrate Smith, not her, would be deciding the motion. Therefore, Intervenor renews her call for recusal in deciding the motion to enforce.

Respectfully submitted,

Karen L. Willis