UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK



CAN'T STOP PRODUCTIONS, INC.,

Plaintiff,

*- against -*

SIXUVUS, LTD., ERIC ANZALONE, ALEXANDER
BRILEY, FELIPE ROSE, JAMES F. NEWMAN,
RAYMOND SIMPSON, and WILLIAM WHITEFIELD,

Defendants.

KAREN L. WILLIS d/b/a HARLEM WEST
ENTERTAINMENT,

Intervenor.

17CV6513 (CS)(LMS)

**REPORT AND
RECOMMENDATION**

TO: THE HONORABLE CATHY SEIBEL, U.S.D.J.[1]

Plaintiff Can't Stop Productions, Inc. ("Can't Stop") commenced this action against

Defendants Sixuvus, Ltd., Eric Anzalone, Alexander Briley, Felipe Rose, James F. Newman,

Raymond Simpson, and William Whitefield (collectively, the "Sixuvus Defendants"), asserting

one claim for trademark infringement and one claim for declaratory judgment in connection with

the alleged unauthorized use of certain trademarks owned by Can't Stop and related to the

musical group known as the "Village People." Docket # 1 ("Complaint"). Intervenor Karen L.

Willis d/b/a Harlem West Entertainment ("Willis") has been temporarily allowed to intervene in

this action. Docket # 52.

Currently before the Court is the Sixuvus Defendants' motion to enforce the settlement,

Docket # 149, and Willis' motion for recusal, Docket ## 175, 178. The motion to enforce the

settlement shall be addressed by this Report and Recommendation. The motion for recusal shall

---

[1]Your Honor referred this case to me for settlement on December 1, 2017. Docket # 38.

be addressed in a separate Decision and Order issued on this same date.

For the reasons that follow, I conclude and respectfully recommend that Your Honor should conclude, that the motion to enforce the settlement, to the extent that it seeks restoration of the action to the calendar, should be **granted** and, to the extent that it seeks enforcement of the settlement, should be **denied**.

## BACKGROUND

Can't Stop commenced this action on August 25, 2017, with the filing of the Complaint. Docket # 1. On November 30, 2017, the Sixuvus Defendants filed an Answer in which they asserted counterclaims for, among other things, naked licensing, breach of contract, breach of contract implied in fact/promissory estoppel, tortious interference with contractual relations, and tortious interference with prospective contractual relations/prospective economic advantage. Docket # 32. That same day, the Sixuvus Defendants moved for a temporary restraining order ("TRO") and preliminary injunction, Docket ## 41-46, and Your Honor issued a TRO, ordering, among other things, that the Sixuvus Defendants were allowed to "perform as 'The Legendary Village People' provided that the words 'Sixuvus Presents' are either on top of or to the left of 'The Legendary Village People', and at least fifty percent (50%) of the size as 'The Legendary Village People' on any billings and advertisements"; the parties were to proceed to mediation with the undersigned "as soon as possible," during which time "the hearing for the preliminary injunction is on hold"; and the Sixuvus Defendants were to file with the Clerk of the Court, by no later than December 5, 2017, a $50,000 undertaking in the form of a bond or cash. Docket # 37.

On December 8, 2017, Willis filed a motion to intervene and to vacate the TRO. Docket # 110. On December 14, 2017, Your Honor issued a modified TRO which temporarily allowed

Willis to intervene in the action as a preliminary plaintiff and preliminary counterclaim

defendant. Docket # 52 ("Modified TRO"). The Modified TRO placed restrictions on the

Sixuvus Defendants and Willis regarding live performances of Village People and how same are

advertised, as well as all other advertising, and Internet and social media URLs and postings.

See id. It ordered that the Sixuvus Defendants were to book performances as "Village People*

featuring" followed by the name of an individual group member or members of the Sixuvus

Defendants' choosing, and Willis and her licensees, including Victor Willis, were to book

performances as "Village People* featuring Victor Willis" followed by the names of any other

individuals who Willis and her licensees, including Victor Willis, chose to feature. Id. at 2. The

Modified TRO stayed the preliminary injunction proceedings until after the parties appeared for

mediation before the undersigned. Id. at 7-8.

An unsuccessful settlement conference was held before the undersigned on January 25,

2018. See Docket Sheet, Minute Entry for 01/25/2018. Thereafter, a preliminary injunction

hearing was held before Your Honor on January 29, through February 1, 2018, and again on

February 6, 2018. Docket # 118 at 3-4. On February 16, 2018, Your Honor denied the Sixuvus

Defendants' motion for a preliminary injunction and lifted the Modified TRO, Docket # 115, and

the Court stated its reasons for the decision in a memorandum decision and order issued on

March 6, 2018. Docket # 118 ("March 6 D&O").

Following the issuance of the March 6 D&O, Willis filed a motion for a TRO, and on

March 16, 2018, Your Honor issued an Order granting that motion and, among other things,

placing restrictions on the Sixuvus Defendants regarding the names under which they could

advertise themselves and book performances, as well as the appearance of their pages on Twitter

3

and Facebook, and ordering Willis to file with the Clerk of the Court an undertaking in the form of a bond or cash in the amount of $1,500 by March 19, 2018. Docket # 127. The parties were once again ordered to proceed to mediation before the undersigned. Id.

On March 19, 2018, the Sixuvus Defendants filed a Notice of Appeal, seeking to appeal to the Second Circuit the Orders denying their motion for a preliminary injunction. Docket # 131. In addition, on March 26, 2018, Your Honor issued an Order in response to the Sixuvus Defendants' letter motion, setting a schedule for the filing of opposition and reply papers in connection with Willis' motion to intervene, and granting the Sixuvus Defendants an extension of time in which to file their Answer to Willis' Intervenor Complaint until 14 days after the Court decides the motion to intervene. Docket # 137.

That same day, March 26, 2018, the undersigned conducted an initial settlement conference with the parties. See Docket Sheet, Minute Entry for 03/26/2018. The settlement conference was continued on March 28, 2018. See Docket Sheet, Minute Entry for 03/28/2018. After lengthy discussions, during which settlement terms were discussed in detail, the undersigned reported to Your Honor that the parties had reached a settlement, and Your Honor issued an Order on March 28, 2018, which stated "this action is discontinued with prejudice but without costs; provided, however, that if settlement is not consummated within thirty days of the date of this order, Plaintiff may apply by letter within the thirty-day period for restoration of the action to the calendar of the undersigned, in which event the action will be restored." Docket # 140 ("30-Day Order").

Then, on April 27, 2018, counsel for Can't Stop sent a letter to Your Honor, stating:

The Action was settled on March 28, 2018, at a mediation session held

that day before Magistrate Judge Smith and its terms are memorialized in
the transcript of the proceedings (the "Transcript").  Magistrate Judge
Smith instructed the parties to incorporate the terms set forth in the
Transcript into a written settlement agreement and noted that "If there are
a few details which remain potentially unresolved [in the course of
drafting a written document], then you call me, you come back and we will
iron out those details." . . .

This Court, having received the report of Magistrate Judge Smith that
the claims in the Action had been settled, on March 28, 2018 ordered that
the Action, subject to one proviso, be "discontinued with prejudice but
without costs."  That proviso was that the Court gave Can't Stop . . . the
right to restore the Action to the Court's calendar upon letter application
submitted within the thirty-day period for restoration. . . .

Can't Stop does **not** wish to restore the Action to the calendar.  In fact,
Can't Stop and the Sixuvus Defendants have agreed on a written settlement
document which memorializes the terms agreed upon at the March 28th
mediation session and which appear in the Transcript.  It is my
understanding, however, that the Intervenor in the Action, Karen Willis,
doing business as Harlem West Entertainment, has a dispute over Internet
usage which has prevented the full execution of the written settlement
agreement.

Under the circumstances, Can't Stop requests that the Court clarify that
the terms of the settlement are those set forth in the Transcript, that the
Action has been discontinued with prejudice, and that any disputes among
the parties are to be brought to the attention of the Court (Smith,
Magistrate Judge) which retains continuing jurisdiction over any disputes
concerning the provisions of the settlement.

. . . [t]he attorneys for the Sixuvus Defendants[] join in this request.

Docket # 142 ("April 27 Letter") (emphasis in original).  Thereafter, on April 27, 2018, Your

Honor issued a memo endorsement on the Court's 30-Day Order, extending the thirty-day period

for restoration of the action by fourteen days, to May 11, 2018, and directing the parties to

"contact Judge Smith about resolving the open issues."  Docket # 143.

The undersigned conducted a conference on May 4, 2018, to address the "open issues."

Willis expressed her dissatisfaction with a few items that had been addressed during the March 28 conference.

REDACTED

REDACTED

## DISCUSSION

### I.    Subject Matter Jurisdiction

The Court must first address Willis' contention that the Court lacks subject matter jurisdiction over the issue of enforceability of the settlement agreement.  The Supreme Court has held that federal courts "are courts of limited jurisdiction," and that a motion for enforcement of a settlement agreement brought after a case has been dismissed "requires its own basis for jurisdiction." Kokkonen v. Guardian Life Ins. Co. of Am., 511 U.S. 375, 377-78 (1994).

Here, the 30-Day Order dismissing the case, which was issued on March 28, 2018, states that "if settlement is not consummated within thirty days of the date of this order, Plaintiff may apply by letter within the thirty-day period for restoration of the action to the calendar . . . in which event the action will be restored." Id.  The thirty-day period was thereafter extended twice, to May 11 and then to May 25.  Docket ## 143, 147.  In addition, the minute entry for the conference held on May 4, 2018, states, "If no settlement agreement is consummated by 5/25/2018, Defendants' counsel may make a motion to Judge Smith to enforce the settlement agreement or any party may make a motion to Judge Smith restore [sic] this matter to the calendar." Docket Sheet, Minute Entry for 05/04/2018.

The motion to enforce was filed by the Sixuvus Defendants on May 25, 2018.  Docket # 149.  In the motion, they ask, in the alternative, for the action to be restored to the calendar.  Mem. of Law in Supp. (Docket # 150) at 17-18.  Willis joined in this request.  See Intervenor's Opp'n (Docket # 156) at 8 ("Intervenor does however join defendants['] alternative request that the action be immediately restored to calendar [sic].").  Accordingly, I conclude, and respectfully recommend that Your Honor should conclude, that the action should be restored to the calendar

so that the Court may exercise its jurisdiction to determine whether there is an enforceable

settlement agreement.  See Alvarez v. City of New York, 146 F. Supp. 2d 327, 334 n.5 (S.D.N.Y.

2001) (where the plaintiff applied to restore cases to the calendar "within the appropriate time

period, and the cases were thus reinstated to the Court's calendar," the court determined it had

jurisdiction over the defendants' motion to enforce the settlement).

Assuming arguendo that Your Honor will restore this action to the calendar so that the

undersigned may consider the motion to enforce the settlement, I turn to the merits of that

motion.[3]

## II.    Motion to Enforce the Settlement

### A.    Applicable Legal Standard

"A trial court has inherent power to enforce summarily a settlement agreement when the

terms of the agreement are clear and unambiguous." Omega Eng'g, Inc. v. Omega, S.A., 432

F.3d 437, 444 (2d Cir. 2005) (internal quotation marks and citation omitted).  "Such power is

especially clear where the settlement is reported to the court during the course of a trial or other

significant courtroom proceedings." Id. (internal quotation marks and citation omitted).

"A settlement agreement is a 'contract that is interpreted according to general principles of

contract law.' " Oparah v. The New York City Dep't of Educ., No. 12 Cv. 8347 (JGK)(SN), 2015

WL 4240733, at *4 (S.D.N.Y. July 10, 2015) (quoting Omega Eng'g, 432 F.3d at 443).  "Once a

court finds that parties reached a settlement agreement, the prevailing view is that such

agreement is binding on all parties, even if a party has a change of heart between the time of the

---

[3]As noted at the outset of this Report and Recommendation, and likewise assuming restoration of
this action to the calendar, I shall address the motion for recusal in a separate decision issued
simultaneously herewith.

agreement and the time it is reduced to writing." Id. (internal quotation marks, ellipsis, and

citation omitted).

As this Court has previously stated,

> Where a party has entered into an oral agreement to settle, the party cannot avoid the settlement by refusing to sign the papers that would memorialize the terms of the agreement that were reported to the court. "When a party makes a deliberate, strategic choice to settle, [he or] she cannot be relieved of such a choice merely because [his or] her assessment of the consequences was incorrect." United States v. Bank of New York, 14 F.3d 756, 759 (2d Cir. 1994). Even if parties to an oral settlement agreement contemplate memorializing that agreement in a formal written document that is intended to be subsequently executed, they will still be bound by the oral agreement. See V'Soske v. Barwick, 404 F.2d 495, 499 (2d Cir. 1968). See also Acot v. New York Med. Coll., 99 Fed. App'x 317, 317-18 (2d Cir. 2004) (decision by summary order without precedential effect ).

U.S. Fire Ins. Co. v. Pierson & Smith, Inc., No. 06 Civ. 382 (CM)(LMS), 2007 WL 4403545, at

*3 (S.D.N.Y. Dec. 17, 2007). However, "if either party communicates an intent not to be bound

until he [or she] achieves a fully executed document, no amount of negotiation or oral agreement

to specific terms will result in the formation of a binding contract." Winston v. Mediafare Entm't

Corp., 777 F.2d 78, 80 (2d Cir. 1985) (citation omitted). "In any given case it is the intent of the

parties that will determine the time of contract formation. To discern that intent a court must

look to the words and deeds of the parties which constitute objective signs in a given set of

circumstances." Id. (internal quotation marks, brackets, and citation omitted).

"To determine under federal common law whether the parties intended to be bound to an

oral or unsigned settlement agreement, courts in this Circuit apply the four-factor Winston test,

which asks whether: (i) there has been an express reservation of the right not to be bound in the

absence of a writing; (ii) there has been partial performance of the contract; (iii) all of the terms

of the alleged contract have been agreed upon; (iv) the agreement at issue is the type of contract that is usually committed to writing." Meltzer v. Stier, 15 Civ. 6184 (KPF), 2017 WL 5032991, at *4 (S.D.N.Y. Nov. 2, 2017) (citing Winston, 777 F.2d at 80). "No one factor is decisive; each informs the analysis." Id. (citation omitted). "The factors may be shown by oral testimony or by correspondence or other preliminary or partially complete writings." Oparah, 2015 WL 4240733, at *6 (internal quotation marks and citation omitted).

Although "[t]his Circuit has not resolved the question of whether a district court should apply federal or state law to decide a motion to enforce a settlement, where the jurisdiction of the district court rests on a federal question . . . the Court of Appeals [has] noted that there [is] no material difference between New York law and federal common law on this issue[,] . . . [and] [t]he majority of district courts have applied only federal common law in federal question cases when a motion is filed to enforce an oral settlement agreement." Id., at *5. Nonetheless, because the Second Circuit has not directly decided this issue, this Court, like other district courts, will consider the enforceability of the settlement agreement under both federal common law and New York law. See id.; see also Meltzer, 2017 WL 5032991, at *4 (considering enforceability of settlement agreement under both federal common law and New York state law). New York's Civil Practice Law and Rules 2104 states, "An agreement between parties or their attorneys relating to any matter in an action, other than one made between counsel in open court, is not binding upon a party unless it is in a writing subscribed by him [or her] or his [or her] attorney or reduced to the form of an order and entered." N.Y. C.P.L.R. 2104 ("Rule 2104"). Thus, New York law "requires that a settlement agreement be set forth in writing or entered into the record by counsel in open court." Meltzer, 2017 WL 5032991, at *4 (citing Rule 2104).

12

B.    **Application of Legal Standard**

In this case, the dispute surrounding the enforceability of the parties' settlement agreement is between the Sixuvus Defendants and Willis.  In the context of this motion, Can't Stop essentially takes no position with respect to this issue.  Rather, Can't Stop states that when Your Honor issued her decision on March 6, 2018, denying the Sixuvus Defendants' motion for a preliminary injunction and affirming Can't Stop's ownership rights in the Village People trademarks, its "aim in commencing the litigation, to protect its trademark ownership, had been met, and Can't Stop was receptive to concluding the proceedings."  Levy Decl. (Docket # 158) ¶¶ 3-4.  According to Can't Stop, the "focus" of the discussions at the March 28 conference "was the dispute between Defendants and Willis concerning certain issues relevant to them and whether a settlement agreement had been entered into binding upon the parties."  Id. ¶ 6.  Can't Stop asserts only that it "shall abide by the decision of this Court concerning this matter."  Id. ¶ 8.

1.    **The Winston factors**

As set forth above, courts apply the four-factor Winston test in trying to determine whether parties have intended to be bound by an oral settlement agreement.  The Court addresses each of these factors in turn.

a.    **Express reservation of the right not to
be bound in the absence of a writing**

"Parties may enter into a binding contract orally, and the intention to commit an agreement to writing, standing alone, will not prevent contract formation."  Powell v. Omnicom, 497 F.3d 124, 129 (2d Cir. 2007) (citing Winston, 777 F.2d at 80).  This factor "concerns whether the parties intended to consent to a binding agreement in the absence of a signed

13

writing." <u>Pullman v. Alpha Media Publ'g, Inc.</u>, No. 12–CV–01924 (PAC)(SN), 2014 WL
5043319, at *10 (S.D.N.Y. Mar. 14, 2014), <u>adopted as modified</u>, 2014 WL 5042250 (S.D.N.Y.
Sept. 10, 2014), <u>aff'd</u>, 624 F. App'x 774 (2d Cir. 2015).  "This factor looks to the 'language of the
agreement' and is thus 'the most important' consideration." <u>Id.</u> (quoting <u>Adjustrite Sys., Inc. v.
GAB Bus. Servs., Inc.</u>, 145 F.3d 543, 549 (2d Cir. 1998) (internal quotation marks omitted)).
"Even if the parties agreed to the settlement in open court with the intent to draft and sign a
written settlement agreement and general release, this does not satisfy the express reservation
requirement to find an oral settlement agreement not enforceable." <u>Id.</u> (internal quotation marks,
brackets, and citation omitted).  But "[a]lthough this factor is phrased in terms of 'express'
reservations, courts—including the court in <u>Winston</u>—also analyze whether the particular facts
and circumstances of the case—such as the nature of the negotiations or the language of any draft
agreements—demonstrate an implied reservation of the right not to be bound until the execution
of a written agreement." <u>Lindner v. Am. Express Corp.</u>, No. 06 Civ. 3834 (JGK), 2007 WL
1623119, at *6 (S.D.N.Y. June 5, 2007).

     Here, the parties went over the terms of their settlement agreement in open court during
the March 28 conference, and no one, not even Willis, made an express reservation to be bound
only by a writing.  Nonetheless, the discussions, as set forth in the transcript, were hardly a model
of clarity, and there were some statements made regarding conditions that would not be fulfilled
until a settlement agreement had been signed. ████████████████████████████
████████████████████████████████████████████████████
████████████████████████████████████████████████████
████████████████████████████████████████████████████

 Later during the conference, after

further discussion of settlement terms, the Court stated

Orders of dismissal like the

30-Day Order entered in this case, which allow for restoration of the action to the Court's

calendar upon application, have been considered evidence that a binding agreement has not yet

been reached.  See Johnson v. Fordham Univ., 1:11-cv-04670 (ALC), 2016 WL 450424, at *3

(S.D.N.Y. Feb. 4, 2016) ("[T]he Second Circuit has made clear that the restoration provision

weighs in favor of finding that any agreement is not yet binding.").

    As will be discussed in more detail below, with respect to the language in the draft

agreements exchanged by the parties following the March 28 conference—exchanged by Can't

Stop and the Sixuvus Defendants, with counsel for Can't Stop sharing the various drafts with

Willis[4]—there is language that can be read to imply a desire not to be bound in the absence of a signed written agreement. The initial draft agreement sent by Can't Stop to the Sixuvus Defendants had first been shared with, and approved by, Willis. ████████████████████ ████████████████████████████████████████████████████████████ ████████████████████████████████████████████

Although it is unclear from the record, it appears that following the exchange of drafts by Can't Stop and the Sixuvus Defendants on April 12 and April 21, Willis somehow became disenchanted with the settlement agreement. ████████████████████████ ████████████████████████████████████████████████████████████ ████████████████████████████████████████████████ ████████ At that point in time, Can't Stop and the Sixuvus Defendants were in agreement with respect to settlement, ████████████████████████████████████ ████████████████████████████████████████████████████████████ ████████████████████████████████████████████████████████ ████████████████████ Thus, Can't Stop filed the April 27 Letter, which stated that "Can't Stop and the Sixuvus Defendants have agreed on a written settlement document which memorializes the terms agreed upon at the March 28[th] mediation session and which appear in the Transcript." Nonetheless, Can't Stop knew by that point that Willis was not in agreement,

████████████████████████████████████████████████████████████
████████████████████████████████████████████████████████████
████████████████████████████████████████████████████████████

noting that "the Intervenor in the Action, Karen Willis, doing business as Harlem West Entertainment, has a dispute over Internet usage which has prevented the full execution of the written settlement agreement." Id. Thus, on April 27, Your Honor extended the period for consummating the settlement by fourteen days, to May 11, 2018, and directed the parties to contact the undersigned about "resolving the open issues." Docket # 143.

On May 1, 2018, the Sixuvus Defendants forwarded to the undersigned, in preparation for the conference which took place on May 4, the final draft of the settlement agreement upon which Can't Stop and the Sixuvus Defendants had agreed prior to the filing of the instant motion to enforce. See Adelman Decl. ¶ 8; Defs.' Ex. 7. There is no evidence that Willis agreed to this version of the document; ████████████████████████████████████████████ ████████████████████████████████████████████████████████ ██████████ Moreover, it appears from a review of the final draft, and a comparison of this draft to the prior versions, that some of the revisions are intended to eliminate language that can be read to imply a desire not to be bound in the absence of a signed written agreement and to overcome any contention by Willis that the parties are not bound until the execution of a written agreement.



REDACTED

REDACTED



When looking at the record in its totality, particularly with respect to the language

included in the draft settlement agreements, there is sufficient evidence to undercut the Sixuvus

Defendants' argument that the parties intended to be bound in the absence of a signed written

agreement. ████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████

██████████████████████████. See CAC Grp. Inc. v. Maxim Grp. LLC, 523 F.

App'x 802, 804 (2d Cir. 2013) (intent not to be bound prior to execution of a document was

"reinforced by language in the draft agreement indicating 'that the parties contemplated the

moment of signing as the point when the [contract] would become binding[.]' ") (quoting

Ciaramella v. Reader's Digest Ass'n, Inc., 131 F.3d 320, 324 (2d Cir. 1997)); Meltzer, 2017 WL

5032991, at *5 ("To enforce the unexecuted Stipulation would render the language requiring

execution a nullity, and this result cannot stand. Olin Corp. v. Am. Home Assurance Co., 704

F.3d 89, 99 (2d Cir. 2012) ('Any interpretation of a contract that has the effect of rendering at

least one clause superfluous or meaningless is not preferred and will be avoided if possible.'

(internal quotation marks omitted)."); see also Smith v. Haag, No. 08–CV–6360 CJS, 2015 WL 866893, at *5 (W.D.N.Y. Mar. 2, 2015) (finding no enforceable agreement where "the written stipulation drafted by Defendants indicates that they have no obligation to pay Plaintiff until after the stipulation is 'fully executed [and] so ordered' and approved by 'all appropriate New York State officials.' ").

On balance, the first Winston factor, which courts consider to be the "most important," see, e.g., Scheinmann v. Dykstra, 16 Civ. 5446 (AJP), 2017 WL 1422972, at *4 (S.D.N.Y. Apr. 21, 2017), militates against a finding that the parties' oral agreement is binding.

**b.    Partial performance**

"The second factor under the Winston test is met when one party has partially performed its obligations under the settlement, and that performance has been accepted by the other party." North Fork Country, LLC v. Baker Publ'ns, Inc., 436 F. Supp. 2d 441, 446 (E.D.N.Y. 2006) (citations omitted).  The Sixuvus Defendants present several arguments for why there has been partial performance under the settlement agreement.  First, they claim that partial performance of the settlement may be found where, as here, "both sides, relying on apparent settlement, did not resume active litigation of the case." Lopez v. City of New York , 242 F. Supp. 2d 392, 393-94 (S.D.N.Y. 2003) (internal quotation marks and citation omitted).  "However, courts within this circuit have found that this fact does not weigh for or against settlement." Id. at 394 (citations omitted).  In other words, the facts that (1) the Sixuvus Defendants did not pursue their appeal, see Docket # 148, and (2) neither Can't Stop nor Willis moved to restore the case to the

calendar,[6] are neutral with respect to the enforceability of the settlement.

Second, the Sixuvus Defendants claim there has been partial performance in 

The Sixuvus Defendants contend that this is similar to North Fork Country, LLC, "where the court found that this factor was satisfied upon the serving of a proposed stipulation." Mem. of Law in Supp. at 14; see North Fork Country, LLC, 436 F. Supp. 2d at 445-46 ("[A]fter the terms of the agreement had been placed on the record in open court, . . . Plaintiffs' counsel stated that the plaintiffs would prepare a stipulation discontinuing the action under the terms of the agreement recited on the record, with the Court retaining jurisdiction to enforce the settlement. . . . In this case, the plaintiffs performed their obligations under the settlement by . . . submitt[ing] a proposed stipulation to defendants for their review and signature."). However, one party's drafting of a written agreement does not constitute partial performance where the parties did not agree that one of them was responsible for drafting such document. See Johnson, 2016 WL 450424, at *4 ("Because the parties did not agree on all material terms and there was no provision of the oral agreement by which one party was obligated to draft an agreement, the Court agrees with Judge Dolinger's finding that the drafting of the settlement agreement did not constitute partial performance."); see also Stewart v. City of New York, 15 Civ. 7652 (AT)

---

[6]It should be noted that the 30-Day Order only allowed for Can't Stop to apply to restore the case to the calendar. See id. (". . . if settlement is not consummated within thirty days . . . Plaintiff may apply by letter . . . for restoration of the action to the calendar . . .").

(JCF), 2017 WL 4769396, at *3 (S.D.N.Y. Oct. 20, 2017) ("I respectfully disagree that drafting paperwork constitutes partial performance of a bargained-for contract, especially where, as here, drafting the settlement agreement was not a term of the oral agreement. This factor is neutral at best."), adopted by 2017 WL 5897442 (S.D.N.Y. Nov. 29, 2017).

      Third, the Sixuvus Defendants claim  Willis claims that she "repudiated the settlement agreement long before defendants attempted any partial performance of the purported agreement," and that she "had already repudiated the agreement well before the May 4, 2018 hearing." Intervenor's Opp'n at 6. But there is no evidence of such repudiation.[7] Willis additionally avers that "Defendants attempted only partial compliance two days before the filing of their motion to enforce the settlement agreement. This was simply a sham to demonstrate a false and contrived compliance. Indeed, numerous postings about the Village People performance in Australia and in general, remain, and defendants continues [sic] to allow new negative postings." Id. Again, Willis provides no evidentiary support for these assertions. To the extent that this factor takes into consideration "whether one party has partially performed, and **that performance has been accepted by the party disclaiming the existence of an agreement**," Ciaramella, 131 F.3d at 325 (emphasis added), it is evident that the Sixuvus

---

[7]Moreover, repudiation would be more consistent with the existence of a binding agreement, see Reply Mem. of Law (Docket # 159) at 6 n.8, which Willis disputes.

Defendants and Willis are in disagreement on the Sixuvus Defendants' partial performance.[8]

On balance the second <u>Winston</u> factor is neutral at best with respect to the existence of a binding settlement agreement.

### c.    All the terms have been agreed upon

"The actual drafting of a written instrument will frequently reveal points of disagreement, ambiguity, or omission which must be worked out prior to execution," <u>Winston</u>, 777 F.2d at 82 (internal quotation marks and citation omitted), and "even 'minor' or 'technical' changes arising from negotiations over the written language of an agreement can weigh against a conclusion that the parties intended to be bound absent a formal writing." <u>Powell</u>, 497 F.3d at 130 (citing <u>Winston</u>, 777 F.2d at 82-83). "Such changes are relevant, however, only if they show that there were points remaining to be negotiated such that the parties would not wish to be bound until they synthesized a writing satisfactory to both sides in every respect." <u>Id.</u> (internal quotation marks and citation omitted). "More generally, in analyzing this factor, courts have focused on whether the parties reached an agreement with respect to all material or essential terms." <u>Galanis v. Harmonie Club of the City of New York</u>, No. 1:13–cv–4344–GHW, 2014 WL 4928962, at *10 (S.D.N.Y. Oct. 2, 2014) (citing cases). "A factor is whether there was literally nothing left to negotiate or settle, so that all that remained to be done was to sign what had already been fully agreed to." <u>Johnson</u>, 2016 WL 450424, at *5 (internal quotation marks, brackets, and citations

---

[8]Although the copies of screenshots of the Kings of Disco Facebook page from May 25, 2018, show that there are no posts concerning the Village People performance in Australia, there is one post, presumably from a fan, which states, "Sorry, Victor Willis! You're a legend, but the 'real' VP resembles a Bogus Deep Purple in 1980! (sorry for my bad english, im brazilian)[.]" Defs.' Ex. 10 at 2 (comment under Kings of Disco post dated December 4, 2017). This comment arguably should have been deleted ███████████████████████████

omitted).

In this case, although the main terms of the settlement agreement had been discussed

during the March 28 conference related to

REDACTED

REDACTED

Earlier in the conference, the Court had stated,

REDACTED

Moreover, the draft settlement agreements exchanged following the conference differed

significantly with respect to this term.      REDACTED

REDACTED

26



In sum, these seemingly " 'minor' or 'technical' changes" in the different iterations of the draft settlement agreement related to a term of material importance to Willis "weigh against a conclusion that the parties intended to be bound absent a formal writing." Powell, 497 F.3d at 130; see Winston, 777 F.2d at 82 ("That these 'unnoticed' or 'passed by' points of disagreement may in the long view be fairly characterized as minor or technical does not mean that a binding contract was formed prior to the time that they were finally worked out."). Accordingly, the third Winston factor weighs against a finding that the oral agreement is binding.

>    d.    **Agreement at issue is the type usually reduced to writing**

"Settlements of any claim are generally required to be in writing or, at a minimum, made on the record in open court." Ciaramella, 131 F.3d at 326. "[A]greements of the sort committed to writing are generally ones that involve complex terms or have long-term effects." Britto v. Salius, 360 F. App'x 196, 198-99 (2d Cir. 2010) (citing Ciaramella, 131 F.3d at 326 (eleven-page agreement containing numerous provisions applying into perpetuity); Winston, 777 F.2d at 83 (four-page settlement agreement containing obligations lasting several years)). Willis argues that

the settlement terms in this case "are sufficiently complex, dealing with issues of trademark compliance and licensing, with partial use of trade dress for a limited period of time per performance. The amount of money involved surpasses $100,000[10]; the terms carry into perpetuity, and the length and complexity of the agreement it self [sic] all support the conclusion that the settlement in principle is complex to say the least." Intervenor's Opp'n at 6.

However, "[t]he significance of announcing the terms of an agreement on the record in open court is to ensure that there are at least some formal entries to memorialize the critical litigation events, and to perform a cautionary function whereby the parties' acceptance is considered and deliberate." <u>Powell</u>, 497 F.3d at 131 (internal quotation marks, ellipsis, and citations omitted). As noted above, the discussions at the March 28 conference, as set forth in the transcript, were not entirely clear; ███████████████████████████████ ██████████████████████████████████████████████████████████ ████████████████████ It cannot be said that the "in-court announcement here functioned in a manner akin to that of a memorializing writing." <u>Id.</u> Furthermore, the settlement agreement is sufficiently complex that it is the kind typically reduced to writing.██ ██████████████████████████████████████████████████████████ ██████████████████████████████████████████████████████████ ████████████████████████████████████████████. Thus, the fourth <u>Winston</u> factor weighs against a finding that the oral agreement is binding.

In sum, with three factors weighing against enforceability and one factor neutral with



---

[10]The Court has no idea how Willis came up with this dollar figure. ████████████████ ██████████████████████████████████████████████

respect to enforceability, I conclude, and respectfully recommend that Your Honor should

conclude, that the Winston factors fail to support a finding that the parties intended to be bound

by the oral agreement reached during the March 28 settlement conference.

2.    **New York Law**

Under Rule 2104, "An agreement between parties or their attorneys relating to any matter

in an action, other than one made between counsel in open court, is not binding upon a party

unless it is in a writing subscribed by him [or her] or his [or her] attorney or reduced to the form

of an order and entered." N.Y. C.P.L.R. 2104. Because, as explained above, the recitation of the

parties' agreement in open court was insufficient to satisfy the fourth Winston factor, it does not

satisfy Rule 2104 either. See Ciaramella, 131 F.3d at 322 ("there is no material difference

between the applicable state law or federal common law standard").

Accordingly, I conclude, and respectfully recommend that Your Honor should conclude,

that the parties' oral agreement is likewise not enforceable under New York law.[11]

**CONCLUSION**

For the foregoing reasons, I conclude and respectfully recommend that Your Honor

should conclude, that the Sixuvus Defendants' motion to enforce the settlement (Docket # 149),

to the extent that it seeks restoration of the action to the calendar, should be **granted** and, to the

extent that it seeks enforcement of the settlement agreement, should be **denied**.

Accordingly, the case should proceed to the preliminary injunction hearing before Your

Honor that had been anticipated and discussed during the March 16, 2018, conference, see

---

[11]Because I find that the parties did not enter into a binding oral settlement agreement under
either the Winston four-factor test or New York's Rule 2104, I need not address the parties'
arguments over the impact of Felipe Rose's departure from Sixuvus, Ltd.

Docket # 139 (Transcript of 3/16/2018 conference), and a new schedule should be set for the motion to intervene and for the Sixuvus Defendants' time to respond to the Intervenor's Complaint. See Docket # 137 (Order setting schedule on motion to intervene and response to Intervenor's Complaint).[12]

## NOTICE

Pursuant to 28 U.S.C. § 636(b)(1), as amended, and Fed. R. Civ. P. 72(b), the parties shall have fourteen (14) days, plus an additional three (3) days, pursuant to Fed. R. Civ. P. 6(d), or a total of seventeen (17) days, see Fed. R. Civ. P. 6(a), from the date hereof, to file written objections to this Report and Recommendation. Such objections, if any, shall be filed with the Clerk of the Court, with extra copies delivered to the chambers of the Honorable Cathy Seibel, at the United States District Court, Southern District of New York, 300 Quarropas Street, White Plains, New York, 10601, and to the chambers of the undersigned at the same address.

Failure to file timely objections to this Report and Recommendation will preclude later appellate review of any order of judgment that will be entered.

---

[12]Under the circumstances, the undersigned declines to address the issues raised in Can't Stop's letter dated October 25, 2018, related to two performances by the Sixuvus Defendants in Germany, which Can't Stop alleges involved the "misuse of Village People marks," Docket # 170, and which were discussed during a November 9, 2018, court conference.

Requests for extensions of time to file objections must be made to Judge Seibel.

Dated: January 18 2019
     White Plains, New York

**Respectfully submitted,**

Lisa Margaret Smith
United States Magistrate Judge
Southern District of New York