UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
X----------------------------------------------------------------X
CAN'T STOP PRODUCTIONS, INC.,

                               Plaintiffs,                          Case No.: 7:17-cv-06513
                                                                        (CS) (LMS)
-against-

SIXUVUS, LTD., ERIC ANZALONE, ALEXANDER
BRILEY, FELIPE ROSE, JAMES F. NEWMAN,
RAYMOND SIMPSON, and WILLIAM WHITEFIELD,

                               Defendants.
X----------------------------------------------------------------X


**THE SIXUVUS DEFENDANTS' OBJECTIONS TO THE REPORT AND
RECOMMENDATION OF THE HONORABLE LISA M. SMITH**

## TABLE OF CONTENTS

TABLE OF AUTHORITIES ................................................................................................. iii

PRELIMINARY STATEMENT ........................................................................................... 1

STATEMENT OF FACTS .................................................................................................... 1

STANDARD OF REVIEW ................................................................................................... 8

OBJECTIONS........................................................................................................................ 8

POINT I THE SIXUVUS DEFENDANTS OBJECT TO JUDGE SMITH'S
RECOMMENDATION THAT THE WINSTON FACTORS FAIL TO SUPPORT A
FINDING THAT THE PARTIES INTENDED TO BE BOUND BY THE
SETTLEMENT AGREEMENT ............................................................................................ 8

   I.    FIRST *WINSTON* FACTOR WEIGHS IN FAVOR OF ENFORCEMENT ..................... 9

      A.    The Sixuvus Defendants Object to Judge Smith's Finding that Certain Statements
      Made During the 3/28/18 Settlement Conference Created an Express Reservation of the
      Right Not to be Bound Absent a Written Agreement ............................................................ 9

      B.    The Sixuvus Defendants Object to Judge Smith's Finding that Language in the
      Exchanged Drafts Supports an Express Reservation ........................................................... 12

      C.    Judge Smith's Recommendation Does Not Give Sufficient Weight to the Fact that No
      Party Made Any Express Reservation Not to be Bound in the Absence of a Written
      Agreement and All Parties Acknowledged That an Agreement Was Reached ................... 15

   II.    THERE WAS WITHOUT QUESTION PARTIAL PERFORMANCE ........................ 16

      A.    Failure to Resume Active Litigation Supports Enforcement...................................... 16

      B.    The Sixuvus Defendants Performed Under the Settlement Agreement ..................... 17

      C.    The Circulation of the Draft Agreements Supports Enforceability............................ 18

   III.    THE PARTIES AGREED TO THE MATERIAL TERMS OF THE AGREEMENT .. 19

      A.    The Parties Agreed to a Non-Disparagement Clause at the 3/28/2018 Settlement
      Conference ........................................................................................................................... 20

IV.    THE TERMS OF THE SETTLEMENT AGREEMENT WERE NOT SUFFICIENTLY COMPLEX TO REQUIRE THEM TO BE IN WRITING ...................................................... 22

  A.    The Terms Were Not Complex .................................................................... 22

  B.    The Terms of the Settlement Agreement Were Sufficiently Explained.................... 23

V.    NEW YORK LAW IS INAPPLICABLE TO THIS MATTER..................................... 24

CONCLUSION................................................................................................................ 25

# TABLE OF AUTHORITIES

**Page(s)**

## Cases

*Aguiar v. New York*,
  2008 WL 4386761 (S.D.N.Y. Sept. 25, 2008), *aff'd as modified*, 356 F. App'x 523 (2d Cir.
  2009) ................................................................................................................ 20, 21

*CAC Grp. Inc. v. Maxim Grp. LLC*,
  523 F. App'x 802 (2d Cir. 2013) ............................................................................. 13

*Ciaramella v. Reader's Digest Ass'n, Inc.*,
  131 F.3d 320 (2d Cir. 1997) .................................................................................... 18

*Figueroa v. City of New York*,
  2011 WL 309061 (S.D.N.Y. Feb. 1, 2011), *aff'd sub nom. Figueroa v. New York City Dep't of
  Sanitation*, 475 F. App'x 365 (2d Cir. 2012) ......................................................... 24

*Bluelink Mktg. LLC v. Carney*,
  2017 WL 4083602 (S.D.N.Y. Sept. 15, 2017) .................................................... 17, 18

*Delgrosso v. City of New York*,
  2013 WL 5202581 (E.D.N.Y. Sept. 13, 2013) ..................................................... 10, 11

*Gordon v. City of New York*,
  2015 WL 1514359 (E.D.N.Y. Apr. 3, 2015) ............................................................. 10

*H&R Block Tax Servs., LLC v. Strauss*,
  2016 WL 5107114 (N.D.N.Y. Sept. 20, 2016) ......................................................... 17

*Hostcentric Techs., Inc. v. Republic Thunderbolt, LLC*,
  2005 WL 1377853 (S.D.N.Y. June 9, 2005) ......................................................... 11, 15

*In re Lehman Bros. Holdings Inc.*,
  No. 17 CIV. 03424(DLC), 2017 WL 3278933 (S.D.N.Y. Aug. 2, 2017), aff'd, 739 F. App'x 55
  (2d Cir. 2018) ........................................................................................................... 13

*Jacobs v. Jacobs*,
  229 A.D.2d 712, 645 N.Y.S.2d 342 (3d Dep't 1996) .............................................. 25

*Jericho Grp. Ltd. v. Mid-Town Dev. Ltd. P'ship*,
  2016 WL 11263660 (E.D.N.Y. Dec. 5, 2016), report and recommendation adopted, No.
  14CV2329DLIVMS, 2017 WL 4221068 (E.D.N.Y. Sept. 22, 2017)...................................... 19

*Johnson v. Fordham Univ.*,
   2016 WL 450424 (S.D.N.Y. Feb. 4, 2016) ................................................................... 19

*Kalomiris v. County of Nassau*,
   121 A.D.2d 367, 503 N.Y.S.2d 83 (2d Dep't 1986) .................................................... 25

*Kalra v. Kalra*,
   170 A.D.2d 579, 566 N.Y.S.2d 356 (2d Dep't 1991) .................................................. 25

*Lopez v. City of New York*,
   242 F. Supp. 2d 392 (S.D.N.Y. 2003) ......................................................................... 16

*Lyman v. New York & Presbyterian Hosp.*,
   2012 WL 6135354 (S.D.N.Y. Dec. 11, 2012), *report and recommendation adopted sub nom.*
     *Lyman v. New York Presbyterian Hosp.*, No. 11 CIV. 3889 AJN JCF, 2013 WL 427178
     (S.D.N.Y. Feb. 1, 2013) .......................................................................................... 17

*Medinol Ltd. v. Guidant Corp.*,
   500 F. Supp. 2d 345 (S.D.N.Y. 2007) ......................................................................... 21

*Meltzer v. Stier*,
   2017 WL 5032991 (S.D.N.Y. Nov. 2, 2017) ............................................................... 13

*Nelson v. Smith*,
   618 F. Supp. 1186 (S.D.N.Y. 1985) ............................................................................... 8

*Neroni v. Grannis*,
   2016 WL 4386009 (N.D.N.Y. Aug. 17, 2016) ........................................................... 14

*Lindner v. Am. Exp. Corp.*,
   2007 WL 1623119 (S.D.N.Y. June 5, 2007) ............................................................... 12

*Olin Corp. v. Am. Home Assur. Co.*,
   704 F.3d 89 (2d Cir. 2012) ......................................................................................... 14

*P.A. Bergner & Co. v. Martinez*,
   823 F. Supp. 151 (S.D.N.Y. 1993) ............................................................................. 17

*Powell v. Omnicom*,
   497 F.3d 124 (2d Cir. 2007) .......................................................................... 13, 14, 20, 23

*Sears. Roebuck & Co. v. Sears Realty Co.*,
   932 F. Supp. 392 (N.D.N.Y 1996) ............................................................................. 23

*Smith v. Haag*,
   2015 WL 866893 (W.D.N.Y. Mar. 2, 2015) ............................................................. 14

*Sprint Commc'ns Co. L.P. v. Jasco Trading, Inc.*,
  5 F. Supp. 3d 323 (E.D.N.Y. 2014) ......................................................................... 16

*Tracy v. Freshwater*,
  623 F.3d 90 (2d Cir. 2010) .................................................................................... 14

*Walker v. City of New York*,
  2006 WL 1662702 (E.D.N.Y. June 15, 2006) ........................................................ 22

*Willgerodt on Behalf of Majority Peoples' Fund for the 21st Century, Inc. v. Hohri*,
  953 F. Supp. 557 (S.D.N.Y. 1997), *aff'd sub nom. Majority Peoples' Fund for 21st Century,
  Inc. v. Hohri*, 159 F.3d 1347 (2d Cir. 1998) ......................................................... 25

**Statutes**

28 U.S.C. 636(b)(1) ...................................................................................................... 8

**Rules**

Rule 72(b) of the Federal Rules of Civil Procedure .................................................... 8
CPLR 2104 ............................................................................................................ 24, 25

## PRELIMINARY STATEMENT

Defendants Sixuvus, Ltd. ("Sixuvus"), Eric Anzalone ("Anzalone"), Alexander Briley ("Briley"), James F. Newman ("Newman"), Raymond Simpson ("Simpson"), and William Whitefield (Whitefield") (collectively the "Sixuvus Defendants") respectfully submit the following objections to the Report and Recommendation dated January 18, 2019, by the Honorable Lisa M. Smith, United States Magistrate Judge for the Southern District of New York, recommending that Defendants' Motion to Enforce the Settlement Agreement be denied.[1]  [Dckt. No. 183] (the "Report and Recommendation").

As set forth herein, the Sixuvus Defendants respectfully object to Judge Smith's findings in the Report and Recommendation that led to the recommendation that the Sixuvus Defendants Motion to Enforce the Settlement Agreement be denied.  The Sixuvus Defendants respectfully submit that the Court should reject the portions of the Report and Recommendation that are the basis for finding that the Settlement Agreement should not be enforced and grant the Sixuvus Defendants' Motion to Enforce the Settlement Agreement in its entirety.

## STATEMENT OF FACTS

This action was commenced on August 25, 2017 by plaintiff Can't Stop Productions, Inc. ("Can't Stop" or "Plaintiff").  The Complaint filed by Plaintiff asserts two claims, one claim for Trademark Infringement, and one for Declaratory Relief against Defendants' in connection with alleged unauthorized usage of certain of Plaintiff's trademarks associated with the disco group "Village People", as set forth in the Complaint, including the wordmark "Village People" and a design mark.  [Dckt. No. 1].

---

[1] The Sixuvus Defendants' moving papers submitted in support of its Motion to Enforce the Settlement Agreement are referred to herein, and as such are expressly incorporated herein by reference.  The Sixuvus Defendants' Memorandum of Law in Support of Defendants' Motion to Enforce the Settlement Agreement [Dckt. No 150] shall be referred to herein as the "Sixuvus MOL"; the Declaration of Gary Adelman in Support of Defendants' Motion to Enforce the Settlement Agreement dated May 25, 2017 [Dckt. No 151] shall be referred to herein as the "Adelman Decl."; the Memorandum of Law in Further Support of Defendants' Motion to Enforce the Settlement Agreement shall be referred to as [Dckt. No 159] shall be referred to herein as the "Sixuvus Reply MOL"; and the Declaration of Gary Adelman in Further Support of Defendants' Motion to Enforce the Settlement Agreement dated June 15, 2018 [Dckt. No 160] shall be referred to herein as the "Adelman Reply Decl."

On November 30, 2017, Defendants filed their answer with affirmative defenses and counterclaims.  [Dckt. No. 32].  On that same day, Defendants filed an application for a Temporary Restraining Order and Preliminary Injunction.  [Dckt. Nos. 41-46].  Following a hearing in front of the Honorable Cathy Seibel on November 30, 2017, [Dckt. No. 36], Judge Seibel issued an Order (the "12/1/17 Order") allowing Sixuvus to perform as "The Legendary Village People" with certain conditions as set forth therein.  [Dckt. No. 32].

On December 8, 2017, Intervenor, through her prior counsel, filed an Order to Show Cause requesting permission to intervene in this action and to vacate or dissolve the 12/1/17 Order.  [Dckt. No. 110].  Following a hearing on December 8, 2017, the District Court issued a Temporary Restraining Order dated December 14, 2017 (the "12/14/17 TRO").  The 12/14/17 TRO *inter alia* provided that Intervenor was temporarily allowed to intervene in the action as a plaintiff and counterclaim defendant and that Sixuvus shall book performances as "Village People* featuring" followed by the name of an individual group member or members of Sixuvus' choosing and Intervenor (and her licensees, including Victor Willis) shall  to book performances as "Village People* featuring Victor Willis" followed by the names of any other individuals that Willis (and her licensees, including Victor Willis) chose to feature."  [Dckt. No. 52].

On December 21, 2017, Intervenor's prior counsel submitted a request to withdraw as counsel for Intervenor, on the grounds that Intervenor "prefer[red] to represent herself in his matter and proceed *pro se.*"  [Dckt. No. 60].  On December 22, 2017, the Court So Ordered the Stipulation and Order for Withdrawal.  [Dckt. No. 62].  Intervenor is a lawyer who has represented to the Court that although she is "not in practice . . . has been certified in the past to practice."  [Dckt. No. 71].  On January 3, 2018, Intervenor applied to the Court for permission for Electronic Case Filing, representing that she is very experienced with the system and has been approved in other districts where she has litigated.  [Dckt. No. 76].

Following an unsuccessful settlement conference on January 25, 2018, a hearing on Defendants' motion for a preliminary injunction was held on January 29, 2018 through February 1,

2018, and on February 6, 2018, in front of Judge Seibel. On February 16, 2018, Judge Seibel issued an Order denying Defendants' motion for a preliminary injunction and lifting the 12/14/17 TRO, which was followed by a Memorandum Decision and Order on March 6, 2018, with the reasons for the denial. [Dckt. Nos. 115, 118].

On March 6, 2018, Intervenor filed counterclaims in intervention against Defendants for trademark infringement and unfair competition. [Dckt. No. 117]. Shortly thereafter, on March 12, 2018, Intervenor advised the Court that she planned to file an application for a TRO on Friday, March 16, 2018. [Dckt. No. 122]. On March 16, 2018, Intervenor's application for a temporary restraining order was heard and following oral argument on same the Court entered the March 16, 2018 Temporary Restraining Order. [Dckt. No. 127]. *See also* Adelman Decl., Ex. 1. The March 16, 2018 Temporary Restraining Order, *inter alia,* allowed Defendants to "use, advertise and book performances under the name 'Kings of Disco,' 'Kings of Disco former members of Village People,' or 'Kings of Disco formerly members of Village People,' provided that all words in 'former members of Village People' and 'formerly members of Village People' are in the same size font and that font is not larger than the fort size of 'Kings of Disco'". *See* 3/16/18 TRO [Dckt. No. 127], pp. 1. The Court further ordered with reference to disabling or freezing to the maximum extent possible, that the obligation "may be satisfied by the transfer of the content of that Twitter account and Facebook page to different URLs that do not employ the term 'Village People' except as part of 'Kings of Disco formerly members of Village People' or 'Kings of Disco former members of Village People'". *See* 3/16/18 TRO [Dckt. No. 127], pp. 3.

Thereafter, Intervenor made an application to modify the March 16, 2018 TRO and for an imposition of sanctions, which was denied by the Court on March 20, 2018. [Dckt. Nos. 129-130, 132-134, 135].



*See* Adelman Decl., Ex.

2. "3/28/18 Transcript"

*See* 3/28/18 Transcript.

. *See id.* Pp. 1-27

. *See e.g. id.* pp. 27-37

. *See id.* Pp. 30-32:17-19

*See* 3/28/18 Transcript Pp. 37:18-21.

." *See* 3/28/18 Transcript Pp. 38:25.

. *See* 3/28/18 Transcript Pp. 38:24-39:1



*. See also* 3/28/18 Transcript Pp. 47-50 ███████████████

███████████████ That same day, on March 28, 2018, Judge Seibel entered an Order discontinuing the action with prejudice.  [Dckt. No. 140] (the "3/28/2018 Order").

*See* Adelman Decl., Ex. 3.

*. See* Adelman Decl., Ex. 4.

*See* Adelman Decl., Ex. 5.

*See* Adelman Decl., Ex. 6.

*See* Adelman Decl., Ex. 7.  *See also* [Dckt. No. 142]. On or around April 26, 2018 Mr. Levy was advised that Intervenor had some issues with Defendants' internet usage that he was told was preventing execution of the written draft. [Dckt. No. 142].  On April 27, 2018, Plaintiff filed a letter motion with the Court confirming that the parties reached a settlement and requesting that the Court clarify that the terms of the settlement "are those set forth in the [3/28/18] Transcript, that the Action has been discontinued with prejudice, and that any disputes among the parties are to be brought to the attention of the Court (Smith, Magistrate Judge) which retains continuing jurisdiction over any disputes concerning the provisions of the settlement".  [Dckt. No. 142].



*See* Adelman Decl., Ex. 8.

*See* Adelman Decl., Ex. 8, 5/4/18 Tr. Pp. 14:10-14; 15:3-4; 48:25-49:1.

*See* Adelman Decl., Ex. 11; *See also* Adelman Decl., Ex. 10 (Sixuvus' Facebook page ).

. *See e.g.* Adelman Decl., Ex. 8, 5/4/18 Tr. Pp. 15:10-18

pp. 2:10-13

; pp. 31-32

pp. 35:6-9

*See* Adelman Decl., Ex. 8 5/4/18 Tr. Pp. 38:1-2

pp. 38:3-15:



*See* Adelman Decl., Ex. 9.  In addition, Intervenor, as part of her opposition to Defendants' motion to

enforce the settlement agreement, implicitly admitted to having agreed to the Settlement Agreement,

by stating that she repudiated the Settlement Agreement, i.e. that she had accepted the Settlement

Agreement, but was now rejecting such. *See* Dckt. No. 156 P. 6 ("…Intervenor repudiated the

settlement agreement long before defendants attempted any partial performance of the purported

agreement...).                                                                  *See* Adelman Decl., Ex.

11.

      On May 25, 2018, Defendants moved the Honorable Lisa M. Smith to enforce the Settlement

Agreement.  On January 18, 2019, the Honorable Lisa M. Smith issued a Report and

Recommendation recommending that Defendants' Motion to Enforce the Settlement Agreement be

denied. *See* Dckt. No 183.

      The Sixuvus Defendants submit that the parties reached a valid and fair settlement agreement

and that the terms of the agreement are not in dispute.  The Sixuvus Defendants further submit that

Plaintiff and Intervenor are bound by the terms to which they agreed on March 28, 2018, and that,

*inter alia*, contrary to the conclusion reached by Magistrate Judge Smith, the parties did agree to the

terms of the Settlement Agreement, and did not express a reservation not to be bound by the oral

agreement in absence of a formal writing.  As such the Sixuvus Defendants seek enforcement of the

Settlement Agreement and that this Court enter an order as follows:



## STANDARD OF REVIEW

In evaluating a Magistrate Judge's Order with respect to a pretrial matter that is dispositive of a claim or defense of a party, a district court shall, pursuant to Rule 72(b) of the Federal Rules of Civil Procedure and the Federal Magistrates Act, 28 U.S.C. 636(b)(1), review the recommendation *de novo*. Rule 72(b)(3) instructs the district judge to "determine de novo any part of the magistrate judge's disposition that has been properly objected to." *see also Nelson v. Smith*, 618 F. Supp. 1186, 1190 (S.D.N.Y. 1985). The district judge's review may be based on the entire record. Fed. R. Civ. P. 72(b). Further, Rule 72 states that the "the district judge may accept, reject, or modify the recommended disposition; receive further evidence; or return the matter to the magistrate judge with instructions." Fed. R. Civ. P. 72(b)(3).

## OBJECTIONS

## POINT I

### THE SIXUVUS DEFENDANTS OBJECT TO JUDGE SMITH'S RECOMMENDATION THAT THE WINSTON FACTORS FAIL TO SUPPORT A FINDING THAT THE PARTIES

**INTENDED TO BE BOUND BY THE SETTLEMENT AGREEMENT**

The Sixuvus Defendants object to Judge Smith's analysis of the application of the *Winston* factors to these facts, and following conclusion and recommendation that the *Winston* factors fail to support a finding that the parties intended to be bound by the Settlement Agreement.

## I.    FIRST *WINSTON* FACTOR WEIGHS IN FAVOR OF ENFORCEMENT

For the reasons that follow, the Sixuvus Defendants respectfully object to Judge Smith's overall finding that "[o]n balance, the first Winston factor […] militates against a finding that the parties' oral agreement is binding." *See* Dckt. No 183 P. 21 (Internal citations omitted).  Similarly, the Sixuvus Defendants respectfully object to Judge Smith's related finding that "[w]hen looking at the record in its totality, particularly with respect to the language included in the draft settlement agreements, there is sufficient evidence to undercut the Sixuvus Defendants' argument that the parties intended to be bound in the absence of a signed written agreement." *See* Dckt. No 183 P. 20.

### A.  The Sixuvus Defendants Object to Judge Smith's Finding that Certain Statements Made During the 3/28/18 Settlement Conference Created an Express Reservation of the Right Not to be Bound Absent a Written Agreement

The Sixuvus Defendants respectfully object to Judge Smith's finding that certain statements made during the 3/28/2018 Settlement Conference supported a finding that there was a reservation not to be bound in the absence of a written agreement.  In particular, the Sixuvus Defendants object to Judge Smith's finding that: "discussions, as set forth in the transcript, were hardly a model of clarity, and there were some statements made regarding conditions that would not be fulfilled until a settlement agreement had been signed." *See* Dckt. No 183 P. 14.  Similarly, the Sixuvus Defendants object to Judge Smith's finding that there was ambiguity on the record and that ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ *See* Dckt. No 183 P. 18.

Judge Smith's findings do not consider the entirety of the 3/28/18 Settlement Conference, where the statements demonstrate the parties assenting to an agreement, as, when agreeing on a payment, as "is often contemplated in settlement agreements, particularly those placed on the record

in court, that the delivery of a release and similar documents will occur subsequently." *Delgrosso v. City of New York*, No. 11-CV-4876 MKB, 2013 WL 5202581, at *8 (E.D.N.Y. Sept. 13, 2013). Moreover, courts in this circuit have held that an "agreement" requiring a party to sign a release "as a condition of receiving payment does not prove that the parties did not intend to be bound in the absence of a fully executed written agreement." *Gordon v. City of New York*, No. 09-CV-04577 ERK, 2015 WL 1514359, at *6 (E.D.N.Y. Apr. 3, 2015). Moreover, the agreement to "pay [a] plaintiff [...] and the plaintiff's agreement to execute and deliver documents to [defendant], including a general release and an affidavit of status of liens" was held to be "simply one of the various mutual obligations that the parties have undertaken to perform as part of the settlement, not a reservation of the right not to be bound in the absence of a signed settlement document." Delgrosso, 2013 WL 5202581, at *8.

The statements made at the 3/28/18 Settlement Conference which Judge Smith relies on as evidence that the parties did not intend to be bound outside of a written settlement agree do not support that conclusion. Despite acknowledging that no reservations had been made by any parties[2], Judge Smith cited to at least two statements made by Judge Smith, not the parties, on the record to support the finding that there were "statements made regarding conditions that would not be fulfilled until a settlement agreement had been signed." *See* Dckt. No 183 P. 14.

First, Judge Smith pointed out that: "[l]ater during the conference, after further discussion of settlement terms, the Court stated that 

*See* Dckt. No 183 P. 15. In addition, Judge Smith pointed out that:

---

[2] Judge Smith's acknowledged that "the parties went over the terms of their settlement agreement in open court during the March 28 conference, and no one, not even Willis, made an express reservation to be bound only by a writing." *See* Dckt. No 183 P. 14.

[redacted] *See* Dckt. No 183 P. 15. However, neither of these statements were made by the parties, but instead, were made by the Judge Smith.

First, those two statements Judge Smith cites to do not show a reservation not to be bound absent a written agreement by a party, as they were made by Judge Smith. Second, none of the language of the statements made during the conference, [redacted] cited by Judge Smith is sufficient to reflect an express reservation not to be bound absent a written agreement.

"A preliminary agreement is binding, despite the desire for a later formal document, when the parties have reached complete agreement (including the agreement to be bound) on all the issues perceived to require negotiation. Such an agreement is preliminary only in form-only in the sense that the parties desire a more elaborate formalization of the agreement. The second stage is not necessary; it is merely considered desirable." *Hostcentric Techs., Inc. v. Republic Thunderbolt, LLC*, No. 04 CIV. 1621 (KMW) (A, 2005 WL 1377853, at *5 (S.D.N.Y. June 9, 2005) (Internal citations and quotations omitted). Moreover, the statement Judge Smith cited to that was actually used by the parties is unavailing: [redacted] *See* Dckt. No 183 Pp. 14-15. When agreeing on a payment, as "is often contemplated in settlement agreements, particularly those placed on the record in court, that the delivery of a release and similar documents will occur subsequently." Delgrosso, 2013 WL 5202581, at *8. Here, where the parties clearly read their settlement into the record, and concluded the conference with an agreement, there can be no dispute that the agreement to write the terms of the Settlement Agreement is not equivalent to the express reservation not to be bound by in the absence of a written agreement. [redacted]

████████████████████████████████████████████

██████████████████████████████. *See* Adelman Decl., Ex. 6.

In addition, the authority cited by Judge Smith on this point is distinguishable as those cases contained express reservations on the record, and as such the Sixuvus Defendants object to reliance upon it. By way of example, in *Lindner v. Am. Exp. Corp.*, "[p]laintiff's counsel twice repeated he reserved the right to modify the agreement." No. 06 CIV. 3834 (JGK), 2007 WL 1623119, at *5 (S.D.N.Y. June 5, 2007). In addition, the court in *Linder* found that there was a serious question as to whether the agreement between the parties would include a revocation clause. *See Lindner v. Am. Exp. Corp.*, No. 06 CIV. 3834 (JGK), 2007 WL 1623119, at *7 (S.D.N.Y. June 5, 2007).

Based upon the foregoing, it is clear that none of the parties statements made during the 3/28/18 Settlement Conference are tantamount to an express reservation of an intent not to be bound absent a written agreement. To the contrary, the entirety of the 3/28/18 Transcript makes clear that the parties came to an agreement, which favors enforcement of the Settlement Agreement under the first Winston factor.

### B. The Sixuvus Defendants Object to Judge Smith's Finding that Language in the Exchanged Drafts Supports an Express Reservation

The Sixuvus Defendants respectfully object to Judge Smith's reliance on and finding that "it appears from a review of the final draft, and a comparison of this draft to the prior versions, that some of the revisions are intended to eliminate language that can be read to imply a desire not to be bound in the absence of a signed written agreement and to overcome any contention by Willis that the parties are not bound until the execution of a written agreement." *See* Dckt. No 183 P. 17. Judge Smith's Report and Recommendation finding ignores that the Settlement Agreement had been agreed to prior to the sending of any draft settlement agreements, and further ignores that the draft settlement agreements mirrored the Settlement Agreement and the revisions to the drafts were minor points and technicalities rather than changes to the key terms of the agreement.

The settlement drafts do not show any disagreement as to whether the material terms of the Settlement Agreement had been agreed upon—because they had been. Moreover, the exchange of

drafts of a written settlement agreement that occurred after the parties reached the Settlement

Agreement, is outside of the scope of the first *Winston* factor. Such changes, which are usually

considered as part of the third *Winston* factor, which looks at whether all material terms were agreed

upon, are relevant, "only if they show that there were material points remaining to be negotiated such

that the parties would not wish to be bound until they synthesized a writing satisfactory to both sides

in every respect." *Powell v. Omnicom*, 497 F.3d 124, 130 (2d Cir. 2007) (Internal citations omitted).

In this matter, there were no material terms left to be negotiated. The differences in the draft

agreements are limited to minor and technical changes, that are not material.

      Moreover, in analyzing language that is similar to the language that Judge Smith refers to

being in some of the drafts that were exchanged, and then taken out of later drafts, other Courts in

this district have found such language not to be sufficient to support an express or implied reservation

of right not to be bound. By way of example, in *In re Lehman Bros. Holdings Inc*., the Court held

that a provision in a draft settlement agreement stating "This Release Agreement shall become

effective upon execution hereof by each of the Parties and the payment" was "not relevant when a

settlement has already been agreed to", No. 17 CIV. 03424(DLC), 2017 WL 3278933, at *3

(S.D.N.Y. Aug. 2, 2017), aff'd, 739 F. App'x 55 (2d Cir. 2018).

      The Sixuvus Defendants also object to Judge Smith's reliance on authority, as many of the

cases she cited are factually distinguishable on this point. By way of example, in *CAC Grp. Inc. v.*

*Maxim Grp. LLC*, the court found that both parties reserved the right not to be bound absent a written

agreement where "[plaintiff's] counsel acknowledged that his client had yet to approve the terms of

the agreement, and [defendant's general counsel] suggested that the agreement might not be

consummated if the documents were not signed within a few days" 523 F. App'x 802, 804 (2d Cir.

2013). Here, no party expressed the need for subsequent approval of any terms once the Settlement

Agreement had been agreed to—to the contrary all parties consented on the record. In *Meltzer v.*

*Stier*, No. 15 CIV. 6184 (KPF), 2017 WL 5032991, at *5 (S.D.N.Y. Nov. 2, 2017), there was a

stipulation between the parties read "It is hereby stipulated and agreed that the above-captioned

action is settled in accordance with the following" and the party to be charged was a pro se[3] had

never explicitly stated that she agreed to the settlement agreement.  This contrasts to this matter,

where Intervenor, a lawyer, repeatedly stated that she was in agreement at the 3/28/2018 Settlement

Conference.  In *Smith v. Haag*, No. 08-CV-6360 CJS, 2015 WL 866893, at *2 (W.D.N.Y. Mar. 2,

2015), counsel for defendants, the party seeking to enforce the settlement agreement, purported to

accept the settlement offer by letter, not in open court, and enclosed a stipulation that added

significant new terms, which the court held evidenced an intent not to be bound in the "absence of a

fully-executed written settlement agreement."  *See Smith v. Haag*, No. 08-CV-6360 CJS, 2015 WL

866893, at *5 (W.D.N.Y. Mar. 2, 2015).  As set forth below, all of the material terms were agreed

upon on the record and there are no later additional terms that the Sixuvus Defendants are trying to

enforce by virtue of this motion.

       The Sixuvus Defendants also object to Judge Smith's reliance on *Olin Corp. v. Am. Home

Assur. Co.*, 704 F.3d 89 (2d Cir. 2012).  First, the Sixuvus Defendants are seeking to enforce the oral

Settlement Agreement made on the record in open court – not the written drafts.  Furthermore, *Olin*

was not an analysis of the *Winston* factors.  While as a matter of general contract principle, the

Sixuvus Defendants acknowledge *Olin's* premise, as noted above Courts analyzing *Winston* factors,

have held that statements that support that the parties contemplated they would formalize the

agreement in principal into a written document, the oral agreement can still be enforced where neither

party made an express reservation to be bound only by a writing, which Judge Smith correctly

acknowledges no party did here.  *See e.g. Powell v. Omnicom*, 497 F.3d 124, 130 (2d Cir. 2007)

---

[3] Intervenor, who graduated law school, and has litigated several matters, can hardly be afford the same considerations afforded to pro se litigants. Intervenor is a lawyer who has represented to the Court that although she is "not in practice . . . has been certified in the past to practice."  [Dckt. No. 71].  "In some circumstances, such as when a particular pro se litigant is familiar with the procedural setting as a result of prior experience such that it is appropriate to charge [her] with knowledge of particular requirements[.]" *Tracy v. Freshwater*, 623 F.3d 90, 102 (2d Cir. 2010) (Internal citations and punctuation omitted) *see also Neroni v. Grannis*, No. 311CV1485LEKDEP, 2016 WL 4386009, at *2 (N.D.N.Y. Aug. 17, 2016) ("Here, while Plaintiff is representing herself pro se, she graduated from law school and practiced as an attorney, so the Court will construe Plaintiff's pleadings less liberally than a traditional pro se plaintiff.")

Furthermore, "Once reached, a settlement agreement constitutes a contract that is binding and conclusive and the parties are bound to the terms of the contract even if a party has a change of heart between the time of the agreement to the terms of the settlement and the time it is reduced to writing." *Hostcentric Techs., Inc. v. Republic Thunderbolt, LLC*, No. 04 CIV. 1621 (KMW)(2005 WL 1377853, at *4 (S.D.N.Y. June 9, 2005) (Internal citations omitted.)  In the matter at hand, the Sixuvus Defendants seek to enforce Settlement Agreement that all parties agreed to in open court, and not any subsequent agreements.  For the reasons set forth above, the language that Judge Smith notes was removed from drafts is irrelevant, as the parties had already reached an oral agreement.

**C.  Judge Smith's Recommendation Does Not Give Sufficient Weight to the Fact that No Party Made Any Express Reservation Not to be Bound in the Absence of a Written Agreement and All Parties Acknowledged That an Agreement Was Reached**

The Sixuvus Defendants respectfully object to Judge Smith's Report and Recommendation as it does not give appropriate weight to the finding that no party made any express reservation not to be bound absent a written agreement at the 3/28/2018 Settlement Conference.  Judge Smith found that "the parties went over the terms of their settlement agreement in open court during the March 28 conference, and no one, not even Willis, made an express reservation to be bound only by a writing." *See* Dckt. No 183 P. 14.  Moreover, the Sixuvus Defendants respectfully object to Judge Smith not giving appropriate weight to the fact that Plaintiff and Intervenor have acknowledged that there was an agreement at the 3/28/18 Conference.  Specifically, Judge Smith was correct in finding that when Intervenor claimed that she repudiated the Settlement Agreement that "repudiation would be more consistent with the existence of a binding agreement". *See* Dckt. No 183 FN. 7.  Additionally, the Sixuvus Defendants respectfully object to Judge Smith, having given no weight to (i) Intervenor's quote stating: " ███████████████████████████████████████████████████████ ██████████████████████████████████████████████████████████████████ (emphasis added) *See* Dckt. No 183 P. 8; and (ii) ███████████████████████████████ ████████████████████████████. *See* Adelman Decl., Ex. 6 .  In this case, both of the above can be construed as statements that demonstrate unequivocally that all parties understood the 3/28/18

Settlement Agreement to be an agreement, and after entering into same Intervenor wanted to change her mind.

As set forth above, the weight of the evidence demonstrates that the Settlement Agreement was in fact agreed to by the parties, and that the first *Winston* factor weighs in favor of enforcement.

## II.    THERE WAS WITHOUT QUESTION PARTIAL PERFORMANCE

The Sixuvus Defendants respectfully object to Judge Smith's findings that "[o]n balance the second Winston factor is neutral at best with respect to the existence of a binding settlement agreement.  *See* Dckt. No 183 P. 24.

### A.  Failure to Resume Active Litigation Supports Enforcement

Judge Smith erred in failing to consider that failure to resume active litigation coupled with a party's performance, favors a finding of the enforcement of the Settlement Agreement.  As such, the Sixuvus Defendants respectfully object to Judge Smith's finding that "the facts that (1) the Sixuvus Defendants did not pursue their appeal, […] and (2) neither Can't Stop nor Willis moved to restore the case to the calendar, are neutral with respect to the enforceability of the settlement." *See* Dckt. No 183 Pp. 21-22.

Judge Smith's reliance on *Lopez v. City of New York*, 242 F. Supp. 2d 392, 393-94 (S.D.N.Y. 2003) to find that the parties had not performed by not actively resuming litigation is "neutral with respect to the enforceability of the settlement" is misplaced, as it fails to consider that not resuming active litigation coupled with a party's performance does support partial performance.  *See* Dckt. No 183 P. 22.  Indeed Courts generally only find the fact that the parties have refrained from further litigation to be neutral where there is an absence of evidence of partial performance of any of the terms of a settlement. *See e.g. Sprint Commc'ns Co. L.P. v. Jasco Trading, Inc.*, 5 F. Supp. 3d 323, 336 (E.D.N.Y. 2014).  As set forth in Point II.B below, the Sixuvus Defendants did perform under the Settlement Agreement.  As such, the fact that none of the parties, including Intervenor who is the one who is trying to avoid the Settlement Agreement, resumed active litigation, supports the finding of the Settlement Agreement being enforceable under the second *Winston* factor.

### B.  The Sixuvus Defendants Performed Under the Settlement Agreement

The Sixuvus Defendants respectfully object to Judge Smith's finding that "it is evident that the Sixuvus Defendants and Willis are in disagreement on the Sixuvus Defendants' partial performance" as a reason to disregard Sixuvus' performance under the terms of the Settlement Agreement. *See* Dckt. No 183 Pp. 23-24.

"'Partial performance requires some actual performance of the contract,' and the party attempting to enforce the agreement must have conferred something of value on the party disclaiming the agreement." *H&R Block Tax Servs., LLC v. Strauss*, No. 115CV0085LEKCFH, 2016 WL 5107114, at *5 (N.D.N.Y. Sept. 20, 2016) *citing P.A. Bergner & Co. v. Martinez*, 823 F. Supp. 151, 157 (S.D.N.Y. 1993) ("Partial performance requires some actual performance of the contract, and the test is therefore the same as for unjust enrichment: [plaintiff] must have conferred something of value upon [defendant] which [defendant] accepted.)  "When analyzing partial performance, courts look to whether any of the terms agreed to in settlement discussions have been performed." *Lyman v. New York & Presbyterian Hosp.*, No. 11 CIV. 3889 AJN JCF, 2012 WL 6135354, at *7 (S.D.N.Y. Dec. 11, 2012), *report and recommendation adopted sub nom. Lyman v. New York Presbyterian Hosp.*, No. 11 CIV. 3889 AJN JCF, 2013 WL 427178 (S.D.N.Y. Feb. 1, 2013).

The ███████████████████████████████████████████ shows performance by the Sixuvus Defendants, which supports the second *Winston* factor.  The Sixuvus Defendants object to Judge Smith's finding that Intervenor did not accept the Sixuvus Defendants' performance. *See* Dckt. No 183 P. 23.

█████████████████████████████████████████████████
█████████████████████████████████████████████████
████████ the Sixuvus Defendants ████████████████ Intervenor cannot simply say she does not accept the performance, as there is nothing for her to accept, the benefit that she bargained for ████████████████████████████. An example of performance not being accepted is found in *Bluelink Mktg. LLC v. Carney*, No. 16-CV-7151 (JLC), 2017 WL 4083602, at *7 (S.D.N.Y. Sept. 15, 2017) where the court found that by plaintiff refusing funds placed in an escrow

17

account by defendant as part of what defendant believed to be the first installment payment, that plaintiff had not accepted defendant's performance.  In *Carney*, the performance consisted of the deliverance of a tangible asset, money, which can be refused.  This is distinguishable from the facts of this case, where the performance is an action, which once done confers the benefit bargained for.

For the same reason, Judge Smith's reliance on *Ciaramella v. Reader's Digest Ass'n, Inc.*, which holds that the "second factor for consideration is whether one party has partially performed, and that performance has been accepted by the party disclaiming the existence of an agreement" 131 F.3d 320, 325 (2d Cir. 1997) is not applicable here, as there was nothing for Intervenor to accept or reject.  Moreover, in *Ciaramella* there was no contention that either party had performed.  Here the

████████████████████████████████████████████████

████████████████████████████████████████████

██████████████████████████████████████████████████

██████████████████████████████████████

Furthermore, Judge Smith should not have given any weight to Intervenor's unsubstantiated argument that the Sixuvus Defendants did not perform under the Settlement Agreement.  Judge Smith correctly acknowledged that Intervenor's claims in her opposition as it regards the second factor lacked "evidentiary support".  *See* Dckt. No 183 P. 23.  As such the conclusion that "the Sixuvus Defendants and Willis are in disagreement on the Sixuvus Defendants' partial performance," (*See* Dckt. No 183 Pp. 23-24) is unfounded.  Intervenor's unsupported contentions should not form the basis of Judge Smith's findings that the Sixuvus Defendants did not perform.  As such, the second Winston factor favors enforcement of the settlement agreement.

### C.  The Circulation of the Draft Agreements Supports Enforceability

The Sixuvus Defendants respectfully object to Judge Smith's finding that ████████

████████████████████████████████████████████████

████████████████████████████████████████████████

[…] is neutral at best.'"  *See* Dckt. No 183 Pp. 22-23.  Relatedly, the Sixuvus Defendants respectfully

object to Judge Smith's finding that "one party's drafting of a written agreement does not constitute partial performance where the parties did not agree that one of them was responsible for drafting such document" as well as Judge Smith's findings that: ██████████████████████████ ████████████████████████████████████ ██████████████████████████ […] but that "one party's drafting of a written agreement does not constitute partial performance where the parties did not agree that one of them was responsible for drafting such document" is 'neutral at best'".  (*See* Dckt. No 183 P. 22-23)

These findings are distinguishable from the holdings in both cases Judge Smith cited to as authority.  Judge Smith first cites to *Johnson v. Fordham Univ.*, No. 1:11-CV-04670 (ALC), 2016 WL 450424, at *4 (S.D.N.Y. Feb. 4, 2016), which is distinguishable from the case here.  In *Johnson* the Court noted that, "the parties did not agree as to all material terms. Further, the parties did not agree that one side would draft a written instrument embodying the terms; **while the parties did agree that the settlement was contingent on it being reduced to writing."** (emphasis added).  As set forth above, there was no contingency placed on the Settlement Agreement being reduced to writing here.  Moreover, not all courts are in agreement as to this factor, as "[s]everal courts have found partial performance where the settlement paperwork was drafted subsequent to the oral agreement." *Jericho Grp. Ltd. v. Mid-Town Dev. Ltd. P'ship*, No. 14CIV2329DLIVMS, 2016 WL 11263660, at *9 (E.D.N.Y. Dec. 5, 2016), report and recommendation adopted, No. 14CV2329DLIVMS, 2017 WL 4221068 (E.D.N.Y. Sept. 22, 2017).  For all of the above reasons, the Sixuvus Defendants respectfully submit that this Court should find that the second Winston factor weighs in favor of enforcement.

III.    **THE PARTIES AGREED TO THE MATERIAL TERMS OF THE AGREEMENT**

The Sixuvus Defendants respectfully object to Judge Smith's finding that "the third Winston factor weighs against a finding that the oral agreement is binding." *See* Dckt. No 183 P. 27.  Judge Smith's findings that the parties did not agree to all material terms at the 3/28/2018 Settlement Conference is not borne out by the facts in this matter.  To the contrary, at the 3/28/2018 Settlement

19

Conference, after all of the material terms were discussed, Intervenor repeatedly agreed to the

3/28/18 Settlement Agreement, which contained the agreement on all material terms including:[4]



*See* Dckt. No 183 P. 25.

### A.  The Parties Agreed to a Non-Disparagement Clause at the 3/28/2018 Settlement Conference

The Sixuvus Defendants object to Judge Smith's ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

▮▮▮▮▮▮▮▮▮▮▮▮▮ at the 3/28/2018 Settlement Conference.  The Sixuvus Defendants also

respectfully disagree with Judge Smith's finding that ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

▮▮▮▮▮▮▮▮▮▮▮ *See* Dckt. No 183 P. 25 and that "these seemingly "'minor' or

'technical' changes'" in the different iterations of the draft settlement agreement related to a term of

material importance to Willis 'weigh against a conclusion that the parties intended to be bound absent

a formal writing.'" *See* Dckt. No 183 P. 27. *Citing Powell v. Omnicom*, 497 F.3d 124, 130 (2d Cir.

2007).

Courts in this district have held that an oral statement of a settlement is inherently incomplete,

and as such, does not render such agreement unenforceable.  As the Sixuvus Defendants pointed out,

but Judge Smith overlooked, "[j]ust because parties subsequently attempt to add terms to a written

document, or disagree over language in drafting a written agreement, does not mean that their oral

agreement is not enforceable, particularly where the oral agreement is clear and unambiguous. *Aguiar*

*v. New York*, No. 06 CIV. 03334 (THK), 2008 WL 4386761, at *7 (S.D.N.Y. Sept. 25, 2008), *aff'd as*

*modified*, 356 F. App'x 523 (2d Cir. 2009).

---

[4]

It almost goes without saying that an oral statement of a settlement is not fully integrated and complete. It is, by definition, an outline of terms that the parties later intend to flesh out and reduce to writing. A trial court's inherent power to enforce summarily a settlement agreement where the terms of the agreement are clear and unambiguous is especially clear where the settlement is reported to the court during the course of a trial or other significant courtroom proceedings.

*Medinol Ltd. v. Guidant Corp.*, 500 F. Supp. 2d 345, 353 (S.D.N.Y. 2007) (Internal citations and punctuation omitted)

Indeed, "[i]t is of little consequence what the parties attempted to do after-the-fact in drafting a written agreement, since the agreement placed on the record was clear and did not leave any material matters to be negotiated." *Aguiar v. New York*, No. 06 CIV. 03334 (THK), 2008 WL 4386761, at *8 (S.D.N.Y. Sept. 25, 2008), *aff'd as modified*, 356 F. App'x 523 (2d Cir. 2009) ("When the oral settlement agreement was placed on the record, both parties had an opportunity to be heard and to clarify or correct any term of their agreement. Again, neither party expressed any reservations or confusion, or conditioned his agreement on approval of the language in a written document.").



Here all of the material terms were agreed to on the record, ███████████ ███████████████████████████████ was proposed, Intervenor stated she did not want to get caught up in that, and went back to ███████████ ██████████████████████ (3/28/18 Transcript, pp. 34-35), ████ █████████████████████████████████ to which Ms. Willis ██████ ███████████ 3/28/18 Transcript, p. 37:2.  Clearly ████████████████ ████████████████████████████████████████████ ███████████████████████████████████ Furthermore, courts have held that "the absence of a specific time-period for advance notice did not render the agreement unenforceable." *Aguiar v. New York*, No. 06 CIV. 03334 (THK), 2008 WL 4386761, at *8 (S.D.N.Y. Sept. 25, 2008), aff'd as modified, 356 F. App'x 523 (2d Cir. 2009).

As set forth above, Intervenor acquiesced to the Settlement Agreement set forth at the 3/28/18 Settlement Conference.  Intervenor's sudden ███████████ or regret regarding the Settlement

Agreement, does not impact the fact that when presented with an opportunity to, reject, add, or alter any terms, Intervenor declined to do so, and instead expressly agreed to the terms of the 3/28/18 Settlement Agreement.  As such, the third *Winston* factor, which weighs whether the parties have agreed to the material terms, weighs in favor of enforcing the Settlement Agreement.

## IV.    THE TERMS OF THE SETTLEMENT AGREEMENT WERE NOT SUFFICIENTLY COMPLEX TO REQUIRE THEM TO BE IN WRITING

The Sixuvus Defendants respectfully object to Judge Smith's finding that "the fourth Winston factor weighs against a finding that the oral agreement is binding." *See* Dckt. No 183 P. 28.  This finding belies the fact that counsel present at the 3/28/18 Settlement Conference, and Intervenor all had agreed to the deal without the need for any additional specifics needed to be explained.

### A.  The Terms Were Not Complex

Case law and the transcript of the 3/28/2018 Settlement Conference do not support Judge Smith's finding that the Settlement Agreement was so complex as to require a writing.  The Sixuvus Defendants respectfully object to Judge Smith's finding that the agreement was complex as it included ███████████████████████████████████████████████████ ████████████████████████████████████████████████████████ ██████████████████████████████████████████ *See* Dckt. No 183 P. 28.

In *Walker v. City of New York, et al*., the Court stated that *Winston* "would be a strange test if the fourth factor always favored finding no agreement on the ground that settlement agreements usually are written." No. 05-CV-0004(JBW)(JMA), 2006 WL 1662702, at *9 (E.D.N.Y. June 15, 2006) (Internal citations omitted).  The *Winston* Court had found the agreement therein to be one usually requiring committed to writing because the contract would have required "payment over several years based on a percentage of earning ... [and] because the complexity of the agreement required several drafts." *Walker v. City of New York*, No. 05-CV-0004(JBW)(JMA), 2006 WL 1662702, at *9 (E.D.N.Y. June 15, 2006) Similarly, in *Sears. Roebuck & Co. v. Sears Realty Co.*, the Court inferred that the parties did not intend to be bound to an oral agreement because the agreement was "substantially complex" where it encompassed a "wide variety of commercial activities, called

for significant limitations on the geographic area in which those activities could be conducted, and
[...] affected a substantial amount of sales revenue for both parties." 932 F. Supp. 392, 405 (N.D.N.Y
1996). ███████████████████████████████████████████████████████████

███████████████████████████████

     Here, the Settlement Agreement is not complex to the point where it would need to be

reduced to writing. While it does contain specific provisions ████████████████████

████████████████████████████ the parties were perfectly capable of articulating those on the

record, and indeed, they did not change in the draft agreements that were exchanged later, they

remained how the parties had articulated them originally which demonstrates that they did not need to

be reduced to writing. Here the agreements ████████████████████████████████

████████████████████████, all of which were understood and agreed to by all of the parties in

this matter, are not so complex that a writing was needed. Case law has held that agreements such as

the Settlement Agreement, which contain ██████████████████████████████████████, are not the

kind of agreement which would normally require a writing. Indeed, like in *Powell v. Omnicom*, 497

F.3d 124, 127 (2d Cir. 2007), which was cited by Judge Smith, the Court enforced an oral agreement

with similarly uncomplex terms as the one here, including non-disparagement, future references, a

lump sum payment, confidentiality etc. As such, the fourth Winston factor favors enforcement of the

Settlement Agreement.

    **B. The Terms of the Settlement Agreement Were Sufficiently Explained**

    The parties sufficiently explained and understood the terms of the Settlement Agreement at

the 3/28/2018 Settlement Conference. The Sixuvus Defendants respectfully object to Judge Smith's

finding that the terms of the Settlement Agreement at the 3/28/2018 "were not entirely clear ██████

████████████████████████████████████████████████████████████████████

███████████████████████████████████████████████████ It

cannot be said that the 'in-court announcement here functioned in a manner akin to that of a

memorializing writing.'" (*See* Dckt. No 183 P. 28 citing *Powell v. Omnicom*, 497 F.3d 124, 131 (2d

Cir. 2007)).  There is no question that the terms were clear here.  Indeed, Judge Smith was able to find the material terms of the Settlement Agreement and enumerate them in her decision.  *See* Dckt. No 183 P. 25.

There is little reason that an agreement, which all parties agreed to, as well as an agreement which Judge Smith was able to enumerate its key provisions, should be now considered unclear, nor have any of the parties even made this argument.  To the contrary, Intervenor has only argued that she should be allowed to change her mind.  As the *Winston* factors all focus on the parties actions, there is no reason to weigh Judge Smith's reasoning that the 3/28/2018 Settlement Conference was hardly a model of clarity when the parties, as well as Judge Smith, were able to sufficiently understand it.  As such, the fourth *Winston* factor favors enforcement of the Settlement Agreement.

## V.    NEW YORK LAW IS INAPPLICABLE TO THIS MATTER

The Sixuvus Defendants object to Judge Smith's finding that the Settlement Agreement would not be enforceable under New York law.  *See* Dckt. No 183 P. 29.  CPLR 2104 is not applicable to this instant matter as this is an action based on federal trademark law.  CPLR 2104 was weighed by the court in *Figueroa v. City of New York*,  which that "[w]here an action is based on federal law […] an attorney's authority to settle the action is a federal question, and hence federal law applies." No. 05 CIV. 9594 JGK, 2011 WL 309061, at *5 (S.D.N.Y. Feb. 1, 2011), aff'd sub nom. *Figueroa v. New York City Dep't of Sanitation*, 475 F. App'x 365 (2d Cir. 2012).  Moreover, the court in *Figueroa* held that  "Under common law principles adopted by the federal courts, parties are free to enter into settlement without memorializing their agreement in a fully executed document, and such agreements are as enforceable as any other oral contract." As a result, the United States district courts within the state of New York have repeatedly enforced oral settlement agreements." *Figueroa v. City of New York*, No. 05 CIV. 9594 JGK, 2011 WL 309061, at *5 (S.D.N.Y. Feb. 1, 2011), aff'd sub nom. Figueroa v. New York City Dep't of Sanitation, 475 F. App'x 365 (2d Cir. 2012) (Internal citations omitted.)

Moreover, to the extent Intervenor can be consider a *pro se* litigant (*see* Footnote 5, Supra), The court in *Willgerodt on Behalf of Majority Peoples' Fund for the 21st Century, Inc. v. Hohri*, when weighing CPLR 2104 held "[a]n agreement entered into by a pro se plaintiff in open court is likewise binding." 953 F. Supp. 557, 560 (S.D.N.Y. 1997), *aff'd sub nom. Majority Peoples' Fund for 21st Century, Inc. v. Hohri*, 159 F.3d 1347 (2d Cir. 1998) *citing Jacobs v. Jacobs*, 229 A.D.2d 712, 645 N.Y.S.2d 342 (3d Dep't 1996); *Kalomiris v. County of Nassau*, 121 A.D.2d 367, 503 N.Y.S.2d 83 (2d Dep't 1986); *Kalra v. Kalra*, 170 A.D.2d 579, 566 N.Y.S.2d 356 (2d Dep't 1991).

As such, under New York law, the Settlement Agreement is also enforceable.

## <u>CONCLUSION</u>

For the reasons set forth herein, as well as the reasons set forth in the Sixuvus Defendants' prior moving papers, the Sixuvus Defendants respectfully request that the Court reject the Report and Recommendation and grant Defendants' Motion to Enforce the Settlement Agreement, together with such other and further relief as this Court may deem just and proper.

Dated: New York, New York
      February 4, 2019

Respectfully submitted,
ADELMAN MATZ P.C.

By: _____
    Sarah M. Matz, Esq.
    Gary Adelman, Esq.
1173A Second Avenue, Suite 153
New York, New York 10065
T: (646) 650-2207
F: (646) 650-2108
sarah@adelmanmatz.com
g@adelmanmatz.com
*Attorneys for the Sixuvus Defendants*