UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-----------------------------------------------------------------------x
CAN'T STOP PRODUCTIONS, INC.,

                        Plaintiff,

- against -

SIXUVUS, LTD., ERIC ANZALONE, ALEXANDER
BRILEY, FELIPE ROSE, JAMES F. NEWMAN,
RAYMOND SIMPSON and WILLIAM WHITEFIELD,

                        Defendants.
-----------------------------------------------------------------------x

**OPINION & ORDER
ADOPTING REPORT &
RECOMMENDATION**

No. 17-CV-6513 (CS)

Appearances:

Stewart L. Levy
Eisenberg Tanchum & Levy
White Plains, New York
*Counsel for Plaintiff*

Karen L. Willis d/b/a Harlem West Entertainment
San Diego, California
*Plaintiff-Intervenor Pro Se*

Sarah M. Matz
Gary Adelman
Adelman Matz P.C.
New York, New York
*Counsel for Defendants Sixuvus, Ltd., Eric Anzalone, Alexander Briley,
James F. Newman, Raymond Simpson and William Whitefield*

Eric I. Abraham
Hill Wallack LLP
Princeton, New Jersey
*Counsel for Defendant Felipe Rose*

Seibel, J.

      Before the Court are the objections of Sixuvus, Ltd., Eric Anzalone, Alexander Briley, James Newman, Raymond Simpson, William Whitefield (collectively the "Sixuvus Defendants"), (Doc. 185), and Felipe Rose, (Doc. 189), (collectively "Defendants") to

Magistrate Judge Lisa Margaret Smith's Report and Recommendation, (Doc. 183 ("R&R")), recommending that this Court deny Defendants' motion to enforce a settlement agreement, (Doc. 149). The parties' familiarity with prior proceedings is presumed.

## I. LEGAL STANDARD

A district court reviewing a report and recommendation "may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge." 28 U.S.C. § 636(b)(1)(C). The district court "may adopt those portions of the report to which no 'specific, written objection' is made, as long as the factual and legal bases supporting the findings and conclusions set forth in those sections are not clearly erroneous or contrary to law." *Adams v. N.Y. State Dep't of Educ.*, 855 F. Supp. 2d 205, 206 (S.D.N.Y. 2012) (quoting Fed. R. Civ. P. 72(b)) (citing *Thomas v. Arn*, 474 U.S. 140, 149 (1985)). "A party that objects to a report and recommendation must point out the specific portions of the report and recommendation to which they [*sic*] object." *J.P.T. Auto., Inc. v. Toyota Motor Sales, U.S.A., Inc.*, 659 F. Supp. 2d 350, 352 (E.D.N.Y. 2009). If a party fails to object to a particular portion of a report and recommendation, further review thereof is generally precluded. *See Mario v. P & C Food Mkts., Inc.*, 313 F.3d 758, 766 (2d Cir. 2002). The Court must review *de novo* any portion of the report to which a specific objection is made. *See* 28 U.S.C. § 636(b)(1)(C); *United States v. Male Juvenile*, 121 F.3d 34, 38 (2d Cir. 1997). When a party makes only conclusory or general objections, or simply reiterates the original arguments made below, a court will review the report only for clear error. *Alaimo v. Bd. of Educ.*, 650 F. Supp. 2d 289, 291 (S.D.N.Y. 2009). "Furthermore, [even] on *de novo* review, the Court generally does not consider arguments or

evidence which could have been, but were not, presented to the Magistrate Judge." *United States v. Vega*, 386 F. Supp. 2d 161, 163 (W.D.N.Y. 2005).[1]

## II.  DISCUSSION

Defendants contend that the parties reached a binding oral agreement during a settlement conference before Judge Smith on March 28, 2018.  Karen Willis d/b/a Harlem West Entertainment ("Intervenor"), however, asserts that the oral agreement is not enforceable.

"A trial court has inherent power to enforce summarily a settlement agreement when the terms of the agreement are clear and unambiguous." *Omega Eng'g, Inc. v. Omega, S.A.*, 432 F.3d 437, 444 (2d Cir. 2005) (internal quotation marks omitted).  "Such power is especially clear where the settlement is reported to the court during the course of a trial or other significant courtroom proceedings." *Id.* (internal quotation marks omitted).

"A settlement agreement is a contract that is interpreted according to general principles of contract law." *Powell v. Omnicom*, 497 F.3d 124, 128 (2d Cir. 2007).  "Once entered into, the contract is binding and conclusive." *Id.*  Indeed, "[w]hen a party makes a deliberate, strategic choice to settle, a court cannot relieve him of that [] choice simply because his assessment of the consequences was incorrect." *Id.*; *see Oparah v. N.Y.C. Dep't of Educ.*, No. 12-CV-8347, 2015 WL 4240733, at *4 (S.D.N.Y. July 10, 2015) ("Once a court finds that parties reached a settlement agreement, the prevailing view is that such agreement is binding on all parties, even if a party has a change of heart between the time of the agreement . . . and the time it is reduced to writing.") (internal quotation marks omitted) (alteration in original) (collecting cases).[2]

---

[1] No party objects to Judge Smith's conclusion that the case should be restored to the calendar, thereby establishing the Court's jurisdiction over Defendants' motion to enforce the settlement agreement.  Because the factual and legal bases supporting this conclusion are neither clearly erroneous nor contrary to law, I adopt Judge Smith's recommendation and direct the Clerk to restore the action to the calendar.

[2] While there is some evidence that Intervenor here had a change of heart, that fact is not relevant to the antecedent question of whether there was a binding agreement in the first place.

3

A.  Federal Common Law

"To determine under federal common law whether the parties intended to be bound to an oral . . . settlement agreement, courts in this Circuit apply the four-factor . . . test" announced in *Winston v. Mediafare Entertainment Corp.*, 777 F.2d 78 (2d Cir. 1985). *Meltzer v. Stier*, No. 15-CV-6184, 2017 WL 5032991, at *4 (S.D.N.Y. Nov. 2, 2017); *see Oparah*, 2015 WL 4240733, at *6. Those four factors include "(1) whether there has been an express reservation of the right not to be bound in the absence of a writing; (2) whether there has been partial performance of the contract; (3) whether all of the terms of the alleged contract have been agreed upon; and (4) whether the agreement at issue is the type of contract that is usually committed to writing." *Winston*, 777 F.2d at 80. "No single factor is decisive, but each provides significant guidance." *Ciaramella v. Reader's Digest Ass'n*, 131 F.3d 320, 323 (2d Cir. 1997). Here, Defendants object to Judge Smith's application of each of the *Winston* factors to the facts of this case and object to her recommendation that this Court conclude that the *Winston* factors fail to support a finding that the parties intended to be bound by the oral agreement reached during the March 28, 2018 settlement conference.

1.  *Express Reservation*

After weighing the statements the parties made (and did not make) at the March 28, 2018 settlement conference, as well as the draft agreements exchanged between the parties following the March 28 conference, Judge Smith concluded that the first *Winston* factor militates against a finding that the parties' oral agreement is binding.

Defendants first object to Judge Smith's findings that the March 28 discussions "were hardly a model of clarity" and included "statements . . . regarding conditions that would not be fulfilled until a settlement agreement had been signed." (R&R at 14.) She noted, for example,

4

that counsel for the Sixuvus Defendants said that Plaintiff and Sixuvus had agreed that Plaintiff would remit a financial payment to Sixuvus "upon signing" or "within five days thereof." (Doc. 151 ("Adelman Decl.") Ex. 2 ("Tr.") at 6.) Additionally, Judge Smith, in summarizing the terms, stated that "with regard to the main photograph on social media sites[,] within 30 days of signing the agreement, Sixuvus would produce one or more photos to defendant [*sic*] and the intervenor for approval," (*id.* at 27), and that "upon signing of the settlement agreement, the bonds [posted by Intervenor and Defendants] should be released unconditionally," (*id.* at 39).

Defendants argue that Judge Smith failed to consider the entirety of the March 28 conference. But the aforementioned statements suggest that the parties contemplated that the moment of signing, and not the March 28 oral agreement, would be the point when the settlement would become binding. *See, e.g.*, *Ciaramella*, 131 F.3d at 324 (provisions that indicate the parties contemplated moment of signing as point when settlement would become binding suggests no intent to be bound absent executed writing); *Winston*, 877 F.2d at 81 (contingency of payment on execution of agreement indicated parties were not bound until written contract was executed). Although it is true that two of the three statements were made by Judge Smith and not the parties themselves, given her instrumental role in facilitating the settlement discussions, her comments concerning the settlement terms likely reflect (and cannot be said to conflict with) the parties' intentions, because no party objected or even questioned why the signing of a written agreement was necessary to trigger the obligation(s) of any party.

Other statements during the settlement talks confirm that the parties did not intend the oral negotiation to be binding. As Judge Smith noted, at the conclusion of the conference, counsel for the Sixuvus Defendants stated, "I'd like a *conditional* order of dismissal." (Tr. at 49 (emphasis added).) This statement suggests that counsel (the same counsel who now seeks to

5

show that a binding oral agreement had been reached) understood that the settlement agreement was not binding as of March 28, 2018. *See Winston*, 777 F.2d at 81; *see also Johnson v. Fordham Univ.*, No. 11-CV-4670, 2016 WL 450424, at *3 (S.D.N.Y. Feb. 4, 2016) ("[T]he Second Circuit has made clear that the restoration provision weighs in favor of finding that any agreement is not yet binding."). Additionally, after the parties ostensibly had a deal, they continued to discuss settlement terms, which further suggests that the parties did not intend for the oral agreement to be binding. Indeed, after counsel for the Sixuvus Defendants received authorization from his clients to agree to the settlement, the parties continued to discuss certain terms – namely, the non-disparagement provision (including the time period for Defendants to delete social media posts that disparage Village People featuring Victor Willis as well as the extension of the provision to the social media pages operated by the individual members of Sixuvus, not just the "Kings of Disco" social media pages) and the confidentiality of the agreement (which, evidently, had not yet been discussed). (Tr. at 37-45, 47-49.) This discussion was prompted by Intervenor, and neither Plaintiff nor Defendants suggested, let alone expressed, that the deal was done and negotiations were over.

Although the desire to memorialize an oral contract in a formal writing, without more, does not demonstrate that an oral agreement is non-binding, and no party here made an express reservation not to be bound prior to the execution of a written document, the absence of an express reservation is not dispositive. *Brown v. Cara*, 420 F.3d 148, 154 (2d Cir. 2005); *Winston*, 777 F.2d at 81. "[A] reservation of right not to be bound presumes that there is some expression of commitment . . . . Where there is no language that may be read to bind the parties to the ultimate goal, an explicit reservation would serve no purpose." *Brown*, 420 F.3d at 154 (internal quotation marks and citation omitted).

6

Here, neither the parties nor Judge Smith expressly addressed whether the oral agreement was binding or enforceable, and I discern no clear agreement by any of the parties to be bound by the terms discussed on the record at the March 28 conference. *See Adjustrite Sys., Inc. v. GAB Bus. Servs., Inc.*, 145 F.3d 543, 549 (2d Cir. 1998) (absence of express statement that preliminary agreement is binding and absence of express manifestation to be bound support conclusion that agreement was not binding); *Pullman v. Alpha Media Publ'g, Inc.*, No. 12-CV-1924, 2014 WL 5043319, at *10 (S.D.N.Y. Mar. 14, 2014) (clear that all parties intended to be bound by terms stated on record where court explained that agreement was oral but enforceable and no party indicated desire not to be bound absent signed writing), *adopted as modified*, 2014 WL 5042250 (S.D.N.Y. Sept. 10, 2014), *aff'd*, 624 F. App'x 774 (2d Cir. 2015); *Lindner v. Am. Express Corp.*, No. 06-CV-3834, 2007 WL 1623119, at *8 (S.D.N.Y. June 5, 2007) ("If the defendants intended to establish the existence of a binding oral agreement at the March 29 conference, they should have requested that Judge Katz inquire more fully into the nature of Mr. Lindner's agreement, intent, and understanding, for example, inquiring whether Mr. Lindner[, who was represented by counsel,] understood that by agreeing to the terms of the agreement he was entering into a binding and enforceable agreement at th[at] moment . . . .").

Although Defendants emphasize that none of the parties' statements during the March 28 conference are tantamount to an express reservation of an intention not to be bound absent a written agreement, the first *Winston* factor also "requires the Court to determine whether the language of the contract discloses an intention by the parties to be bound to the ultimate objective." *Brown*, 420 F.3d at 154; *see Adjustrite Sys., Inc.*, 145 F.3d at 548-49. Judge Smith thus properly considered not only the absence of any express reservation not to be bound absent

7

a written agreement, but also whether the parties' statements revealed an intention to be bound by the oral discussion.

Furthermore, near the end of the conference, when the parties discussed obtaining the transcript of the proceeding, Intervenor continued to ask questions about the non-disparagement provision and counsel for the Sixuvus Defendants said, "Everything that we agreed to is in the record. . . . Let's just get the record and we can move[] from there." (Tr. at 46-47.) Intervenor responded, "If they don't do that, I'm not agreeing to this," (*id.* at 47), which further indicates that there were further matters to address and that Intervenor did not assent to be bound by the oral discussion, particularly in the absence of any request by Defendants or Plaintiff that Judge Smith inquire into Intervenor's understanding as to whether the oral agreement was binding.

Defendants further object to Judge Smith's finding that the draft agreements exchanged between the parties implied a desire not to be bound in the absence of a signed, written agreement. They also object to her reliance on that finding. They contend that Judge Smith ignored that the drafts mirror the terms discussed at the March 28 conference.[3] Judge Smith did not err in relying on the parties' conduct after the March 28 conference. "Even where there is no explicit reservation by the parties not to be bound until execution of a written agreement, the parties' language and conduct can nevertheless imply the existence, or absence, of such intent." *In re Motors Liquidation Co.*, 580 B.R. 319, 345 (Bankr. S.D.N.Y. Jan. 18, 2018) (emphasis omitted) (collecting cases); *see Lindner*, 2007 WL 1623119, at *6 ("Although th[e first] factor is phrased in terms of 'express' reservations, courts – including the court in *Winston* – also analyze whether the particular facts and circumstances of the case – such as the nature of the negotiations

---

[3] Defendants also argue Judge Smith ignored that the settlement was already binding before any draft agreements were exchanged and assert that any revisions to the drafts were merely minor or technical. The first argument begs the question and therefore is rejected. The second argument will be addressed in connection with the third *Winston* factor.

8

or the language of any draft agreements – demonstrate an implied reservation of the right not to be bound until the execution of a written agreement.").

I agree with Judge Smith that there is evidence suggesting a desire not to be bound in the absence of a signed written agreement. For example, the first two drafts of the payment provision of the agreement condition payment "[u]pon full execution of this Agreement." (Adelman Decl. Ex. 3 ¶ 8; *id.* Ex. 4 ¶ 9.) Drafts of other provisions, including the provisions pertaining to the return of bonds, the filing of dismissal papers, and the main photograph to be displayed on the Sixuvus Defendants' social media sites likewise are expressly conditioned on the execution of a written agreement. Additionally, in emails exchanged between the parties, Plaintiff's counsel twice reserved the right to make further changes and comments on behalf of Plaintiff and/or Intervenor. (*Id.* Ex. 3 at 1; *id.* Ex. 5 at 1.) Although these reservations were made after the March 28 conference, they nevertheless are consistent with an understanding that the agreement was not yet binding. *See Lindner*, 2007 WL 1623119, at *7 ("Implicit in the reservation of the right to modify the language of the agreement is the reservation of the right not to be bound until all of the terms of the agreement, including any minor or technical details, are fully resolved."). Accordingly, I conclude that the parties' post-March 28 negotiations reinforce the conclusion that the parties contemplated the moment of signing as the point when the settlement agreement would become binding. *See CAC Grp. Inc. v. Maxim Grp. LLC*, 523 F. App'x 802, 804 (2d Cir. 2013) (summary order) (citing *Ciaramella*, 131 F.3d at 324).[4]

---

[4] Defendants also object to Judge Smith's reliance on certain cases that they contend are factually distinguishable. But Judge Smith cited those cases for general legal propositions, none of which Defendants appear to dispute. It is entirely unclear why factual distinctions would render erroneous Judge Smith's reliance on those cases for those propositions.

The first *Winston* factor, which is the most important, *Adjustrite Sys., Inc.*, 145 F.3d at 549, therefore supports the conclusion that the March 28, 2018 oral agreement was not a fully binding agreement.

2.  *Partial Performance*

Judge Smith found that the second *Winston* factor was neutral at best with respect to the existence of a binding settlement because (1) the drafting of a written settlement agreement does not constitute partial performance where, as here, there was no agreement among the parties that one of them would be responsible for drafting such a document, (2) the fact that the parties did not resume active litigation was a neutral consideration, and (3) the parties disagree over whether the Sixuvus Defendants partially performed their obligation to delete posts concerning Victor Willis's 2017 Australia tour from their Facebook account. (*See* R&R at 21-24.) Defendants object to each of Judge Smith's findings.

"'Partial performance is an unmistakable signal that one party believes there is a contract; and the party who accepts the performance signals, by the act, that it also understands a contract to be in effect.'" *Goldstein v. Solucorp Indus., Ltd.*, No. 11-CV-6227, 2017 WL 1078739, at *8 (S.D.N.Y. Feb. 10, 2017) (alteration omitted) (quoting *R. G. Grp., Inc. v. Horn & Hardart Co.*, 751 F.2d 69, 75-76 (2d Cir. 1984)). "When analyzing partial performance, courts look to whether any of the terms agreed to in settlement discussions have been performed." *Id.*

Defendants contend that the circulation of draft agreements supports enforceability. But as Judge Smith correctly stated, one party's drafting of a written agreement does not constitute partial performance where one party's drafting of the settlement was not a term of the oral agreement. *See Stewart v. City of N.Y.*, No. 15-CV-7652, 2017 WL 4769396, at *3 (S.D.N.Y. Oct. 20, 2017), *report and recommendation adopted*, 2017 WL 5897442 (S.D.N.Y. Nov. 29,

2017); *Johnson*, 2016 WL 450424, at *4. Here, the discussion on March 28 did not address drafting. That the parties thereafter circulated drafts therefore does not demonstrate partial performance.

Defendants further argue that the failure to resume active litigation is a neutral consideration only where there is an absence of evidence of partial performance of any terms of the settlement. Thus, Defendants' objections to the second and third rationales articulated by Judge Smith rise and fall with the determination of whether Defendants have partially performed their obligations under the contract. They contend that they have partially performed by removing social media posts regarding Village People featuring Victor Willis, especially those concerning their 2017 tour in Australia.

Defendants have adduced some evidence of partial performance of their obligation to remove disparaging posts concerning Village People featuring Victor Willis and the Australia tour. At the March 28 conference, Intervenor represented that the Sixuvus Defendants had published disparaging posts about that tour on their Facebook page and that Intervenor wanted them removed. (*See* Tr. at 30-31.) Although her references to these posts did not include many details, at one point she referenced posts made in September 2017. (*See id.* at 36.) The Sixuvus Defendants have submitted screenshots from May 2018 of their Facebook posts published between August 25 and December 4, 2017, and none of their posts disparage or otherwise mention Village People featuring Victor Willis or the Australia tour. (Adelman Decl. Ex. 10.)[5] Sixuvus's posts from early August 2017, which Intervenor submitted to the Court in connection

---

[5] Although there are no disparaging posts by the Sixuvus Defendants, I agree with Judge Smith that there does appear to be a comment on one of Sixuvus's posts (presumably from a fan) about Victor Willis that at least arguably should have been deleted. (Adelman Decl. Ex. 10 at 2-3.) I further note that the screenshots indicate that there exist other comments to many of Sixuvus's posts. The content and authors of those posts have not been provided to the Court.

11

with another motion in December 2017, (Docs. 110-3, 110-4), also no longer appear on Sixuvus's site.[6] Further, although Defendants' evidence would have been more compelling had they included with their submission screenshots of the posts to which Intervenor was referring, Intervenor has not submitted screenshots of posts by the Sixuvus Defendants that she contends are disparaging.

Accordingly, I conclude that there is evidence that the Sixuvus Defendants have partially performed. I note, however, that this factor has "the least sway," *United States v. U.S. Currency in the Sum of Six Hundred Sixty Thousand, Two Hundred Dollars ($660,200.00), More or Less*, 423 F. Supp. 2d 14, 28 (E.D.N.Y.), *adhered to in part on reconsideration*, 429 F. Supp. 2d 577 (E.D.N.Y. 2006), *aff'd*, 242 F. App'x 750 (2d Cir. 2007), particularly where, as here, the evidence demonstrates partial performance only on the part of the party seeking enforcement of the oral agreement and the partial performance at issue did not, as Defendants acknowledge, require acceptance on the part of Intervenor. *See Ciaramella*, 131 F.3d at 325 (second *Winston* factor "is whether one party has partially performed, *and that performance has been accepted by the party disclaiming the existence of an agreement*") (emphasis added).

### 3. *Terms Remaining to Be Negotiated*

Upon finding that the parties had not agreed on a time period for providing notice and an opportunity to cure with respect to the non-disparagement provision of the agreement and that the different iterations of the written settlement evinced more than just minor or technical changes to that provision, Judge Smith determined that the third *Winston* factor weighs against a conclusion that the oral agreement is binding. (*See* R&R at 24-27.) Defendants object, arguing that the parties agreed to all of the material terms, including a non-disparagement clause, at the

---

[6] *See* Kings of Disco (@OfficialKingsOfDisco), Facebook, https://www.facebook.com/OfficialKingsOfDisco (last visited Mar. 11, 2019).

March 28 conference, that the specific time for notice and an opportunity to cure was not a material provision, and that Intervenor's sudden change of heart does not affect the enforceability of the oral agreement.

The Second Circuit has "held that even 'minor' or 'technical' changes arising from negotiations over the written language of an agreement can weigh against a conclusion that the parties intended to be bound absent a formal writing." *Powell*, 497 F.3d at 130 (quoting *Winston,* 777 F.2d at 82-83). "Such changes are relevant, however, only if they show that there were points remaining to be negotiated such that the parties would not wish to be bound until they synthesized a writing 'satisfactory to both sides in every respect.'" *Id.* (quoting *Winston*, 777 F.3d at 81); *see Shinhan Bank v. Lehman Bros. Holdings Inc.* (*In re Lehman Bros. Holdings Inc.*), 739 F. App'x 55, 57 (2d Cir. 2018) (summary order) ("The third prong of the *Winston* framework asks whether there was literally nothing left to negotiate or settle, so that all that remained to be done was to sign what had already been fully agreed to.") (internal quotation marks omitted).

For substantially the reasons articulated by Judge Smith, I agree that the March 28 discussions left open for negotiation the time period for providing notice and an opportunity to cure with respect to the deletion of disparaging posts from social media. In their objections, Defendants mischaracterize Intervenor's statements. They contend that "after the 10-15 day time frame was proposed, Intervenor stated she did not want to get caught up in that." (Doc. 185 at 21.) But Intervenor actually stated, "I don't want to get caught in (indiscern[i]ble) disparaging," after Judge Smith provided a lengthy discussion of how it can be difficult to determine what constitutes disparagement. (Tr. at 34.) The Court understands Intervenor to have stated that she did not want to get caught in what it means to be disparaging. As further evidence that

13

Intervenor "[c]learly . . . agreed to the time frame proposed," Defendants point to a back-and-forth between them and Intervenor during which Intervenor demanded that Defendants remove all posts related to Village People featuring Victor Willis or the Australia tour, counsel for the Sixuvus Defendants said his clients would agree to that provided that the obligation was reciprocal, and Intervenor responded, "I will agree to that. Absolutely." (Tr. at 34-37.) But her assent was clearly to the reciprocal nature of the obligation, not to any timeframe. That provision remained open, as further illustrated by Intervenor's subsequent statements:

> [T]hey're going to agree that they're not going to allow any future posts. And then I say the best way to do this is just to say, look, we're not going to allow critiquing of their performance, they're not – they're going to delete it. So I just want to make sure that th[e] deletions is [*sic*] *going to occur right away*.

(Tr. at 42 (emphasis added).) That the draft settlement agreements exchanged following the conference differed significantly with respect to this term, (*compare* Adelman Decl. Ex. 3 ¶ 7(b) (Plaintiff and Intervenor proposing two days to cure), *with id.* Ex. 4 ¶ 8(b) (Defendants proposing ten days to cure)), further confirms that the parties had not reached agreement on all terms of the settlement at the March 28 conference. *See Ciaramella*, 131 F.3d at 325.

In light of the foregoing, it is apparent that the parties never agreed to a timeframe and that that term was material to the agreement. "That these . . . 'passed by' points of disagreement may in the long view be fairly characterized as minor or technical does not mean that a binding contract was formed prior to the time that they were finally worked out." *Winston*, 777 F.2d at 82. Accordingly, the third *Winston* factor weighs against a finding that the oral agreement is binding.

4. *Typicality of Written Agreement*

Judge Smith further determined that the fourth factor weighed against a finding that the oral agreement is binding because some terms were not to be fulfilled until a settlement agreement had been signed, at least one term was not agreed upon by the parties, and the agreement is sufficiently complex that it is the kind typically reduced to writing. (R&R at 27-29.) In objecting to these findings, Defendants contend that the terms of the agreement were not complex and were sufficiently explained, which weighs in favor of enforceability of the oral agreement.

Defendants' objections are without merit. Although the oral agreement was not the most complex that can be imagined, it was sufficiently complicated and detailed that it is of the kind typically reduced to a writing. For example, it included specific conditions concerning the incorporation of Village People songs into Sixuvus's performances that varied depending on the length of the performance; requirements for costuming for live performances and for marketing and promotion; and other provisions, including social media and non-disparagement stipulations, all of which last in perpetuity. The parties also expressly contemplated that issues might arise in the future and thus that court intervention might be required. That the issues negotiated as a whole are not overly complex is not dispositive. *See Ciaramella*, 131 F.3d at 326 (fourth *Winston* factor weighed against a finding that an agreement was binding where the agreement was not complicated but spanned eleven pages of text and contained a non-disparagement condition as well as numerous provisions that applied in perpetuity); *Winston*, 777 F.2d at 83 (absence of complexity does not mean the agreement was not the type that generally requires written contract). But in any event this agreement is far more complex than the typical settlement placed on the record, where the defendant agrees to pay X dollars and the plaintiff

15

agrees to discontinue the case and execute a general release. Additionally, as discussed above, at least one material term was not agreed upon by all the parties and thus the settlement discussions on the record did not function in a manner akin to that of a memorialized writing, which counsels against a finding that the parties intended to be bound by the oral agreement. *See Powell*, 497 F.3d at 131. Consequently, the fourth factor weighs against a finding that the oral agreement is binding.

* * *

In sum, three factors, including the first factor (which is the most important), weigh against enforceability and the second factor (which is the least important) weighs in favor of enforceability. In light of the foregoing, and on balance, having considered the *Winston* factors, I conclude on *de novo* review that the parties did not intend to be bound by the oral agreement reached at the March 28 settlement conference, and that the settlement therefore cannot be enforced.

### B. New York Law

Judge Smith also considered the enforceability of the oral agreement under New York law and found that the recitation of the terms in open court was insufficient to bind the parties. (R&R at 12, 29.) Defendants object on the ground that New York law does not apply where the action is based on federal trademark law. Defendants also contend that the agreement is enforceable under New York law, although their argument on this point is not entirely clear. For substantially the same reasons articulated by Judge Smith, I conclude that even if New York law applies, the parties' oral agreement is not enforceable under New York law. *See Ciaramella*, 131 F.3d at 322 ("[T]here is no material difference between the applicable state law or federal common law standard").

### III. CONCLUSION

Accordingly, Judge Smith's Report and Recommendation is ADOPTED in all respects except her application of the second *Winston* factor. The Clerk of Court is respectfully directed to restore this action to the calendar and terminate the pending motion. (Doc. 149.)

The parties are directed to appear for a status conference on April 17, 2019, at 10:00 a.m. By April 12, 2019, they should submit a joint status letter stating their views as to next steps.

**SO ORDERED.**

Dated: March 13, 2019
      White Plains, New York

                                                CATHY SEIBEL, U.S.D.J.