UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------------------x
CAN'T STOP PRODUCTIONS, INC.,

Plaintiff,

     -against-

SIXUVUS, LTD., ERIC ANZALONE,
ALEXANDER BRILEY, FELIPE ROSE,
JAMES F. NEWMAN, RAYMOND SIMPSON,
and WILLIAM WHITEFIELD,
           Defendants,

KAREN L. WILLIS dba HARLEM WEST
ENTERTAINMENT
          Intervenor,

     -against-

SIXUVUS, LTD., ERIC ANZALONE,
ALEXANDER BRILEY, FELIPE ROSE,
JAMES F. NEWMAN, RAYMOND SIMPSON,
WILLIAM WHITEFIELD, and ANDREW
PACHO; RED ENTERTAINMENT AGENCY;
UNIVERSAL ATTRACTIONS AGENCY,
INC; MEWES ENTERTAINMENT GROUP
(GmbH); FACEBOOK, INC;
PENNSYLVANIA HORTICULTURAL
SOCIETY; TEXAN THEATER, CELEBRITY
DIRECT ENTERTAINMENT.
          Defendants

-------------------------------------------------------------x

7:17-cv-06513-CS

AMENDED COMPLAINT IN
INTERVENTION FOR
ENFORCEMENT OF
REGISTRANT'S PROPRIETARY
RIGHTS RE INFRINGEMENT;
COMPLAINT FOR DECLARATORY
JUDGMENT, INTERFERENCE,
CONSPIRACY; INJUNCTION

Demand for Jury Trial

Karen L. Willis, J.D.
220 West G Street, Suite E.
San Diego, CA.  92101
(619) 206-5311
Intervenor/Plaintiff

Through the following allegations, KAREN L. WILLIS d/b/a HARLEM WEST

ENTERTAINMENT ("Intervenor") bring claims against Defendants Sixuvus, Ltd., Eric

Anzalone, Alex Briley, Felipe Rose-Ortiz, Raymond Simpson, William Whitefield, Jim Newman

and Andrew Pacho (collectively, the "Sixuvus Defendants"); Red Entertainment ("Red"), The

Texan Theater, Universal Attractions ("UA"), Mewes Entertainment Group ("Mewes"),

Facebook, Inc. ("Facebook"), and Celebrity Direct Entertainment.

## **NATURE OF THE ACTION**

1.  This complaint in intervention is to enforce Can't Stop Productions, Inc.,

("Registrant") proprietary rights in and to the Village People marks for specific instances of

trademark infringement, trademark dilution, confusion, passing-off; and unfair competition.

Included in this action is a request for declaratory judgment or petition for cancellation of "The

Kings of Disco," mark, in addition to conspiracy and interference.  Defendants' use of the

federally registered trademark VILLAGE PEOPLE (the "Mark"), constitutes a violation of

Registrant's rights under the Lanham Act (15 U.S.C. § 1114); (15 U.S.C. § 1125(a), (15 U.S.C. §

1125(c), Section 43 (a), Section 43 (c), and under New York law, as more fully set forth below.

2.  Intervenor, by application for a Temporary Restraining Order ("TRO") and

Preliminary Injunction filed contemporaneously herewith, seeks to enjoin defendants, and each

of them, from interfering with Intervenor's group's (professionally known as Village People) live

performances by passing off the Kings of Disco ("KOD") as Village People through a multitude

of schemes, including but not limited to, social media, the booking of live performances, the

passing off of the KOD live performances as Village People, and passing the KOD in general, as

simply being Village People by another name.

1

## THE PARTIES

3. Plaintiff Karen L. Willis, Intervenor, is an individual doing business as Harlem West Entertainment who resides in San Diego, California.

4. On information and belief, Defendant Sixuvus Ltd. is a New York corporation.

5. On information and belief, Defendant Eric Anzalone is an individual who resides in Monroe Township, New Jersey.

6. On information and belief, Defendant Felipe Rose-Ortiz is an individual who resides in Asbury Park, New Jersey.

7. On information and belief, Defendant Alex Briley is an individual who resides in Mt. Vernon, New York.

8. On information and belief, Defendant William Whitefield is an individual who resides in Asbury Park, New Jersey.

9. On information and belief, Defendant Jim Newman is an individual who resides in New York, New York.

10. On information and belief, Defendant Raymond Simpson is an individual who resides in Englewood, New Jersey.

11. On information and belief, Andrew Pacho is an individual who resides in the city of New York

12. On information and belief, Defendant Red Entertainment Agency is a New York corporation.

13. On information and belief, Defendant Facebook, Inc., is a Delaware corporation.

14. On information and belief, Defendant, Mewes Entertainment Group, is a German limited liability company.

2

15. On information and belief, Defendant Universal Attractions, Inc., is a New York corporation doing business in California as Universal Attractions Agency, Inc.

16. On information and belief, The Pennsylvania Horticultural Society is a not for profit Pennsylvania corporation.

17. On information and belief, Texan Theatre is a company operating in the state of Texas.

18. On information and belief, Celebrity Direct Entertainment is a Florida corporation.

## JURISDICTION AND VENUE

19. This Court has subject matter jurisdiction over Plaintiff's claims under and pursuant to 15 U.S.C. § 1125(a) and (c), and 15 U.S.C. § 1114. Declaratory relief pursuant to 28 U.S.C. Section 2201 and Rule 57 of the Federal Rules of Civil Procedure.

20. Venue is proper in this district pursuant to 15 U.S.C. § 1125(a) and (c), and 15 U.S.C. § 1114 because Defendant Sixuvus, et al are defendants and cross-complainants. All others are so related

## FACTS

21. As recited in the Complaint in this action filed by Can't Stop Productions, Inc., Registrant is the owner of three U.S. federal trademark registrations for the mark VILLAGE PEOPLE for goods and services in the music industry, including without limitation Reg. No. 1,101,013 for live performances by a musical group, issued on or about August 28, 1978.

22. On or about May 19, 2017, in a written agreement, Registrant granted Intervenor the exclusive right to use the Village People mark and trade dress for purposes of live performances (the "Exclusive License")

23. On May 30, 2017, Registrant terminated an oral license agreement it had previously

3

granted the Sixuvus for live performances and for use of the Village People trade dress, leaving

Intervenor the only authorized licensee of the mark and trade dress for purposes of live

performances.

24.   In the notice of termination, Registrant allowed the Sixuvus to honor the dates and

contracts it had already signed but asked that the Sixuvus not accept any further bookings under

the VILLAGE PEOPLE name after June 1, 2017.

25.   As the exclusive licensee, Intervenor has standing to assert claims seeking

to enforce Registrant's proprietary rights against parties for infringement of exclusive rights

under the License agreement.

## The Nature and Quality of the Mark

**26.** The mark is well-recognized within the relevant public of pop music consumers and

concertgoers.   The mark is inherently distinctive when used in connection with live musical

performances and six characters because prospective purchasers are likely to perceive it as a

designation that identifies the business of a particular source, namely Village People, or of its

authorized licensees.   The federal registration of the mark has become incontestable.

27. As a result of the use, advertisement and promotion of the mark, and the resulting

goodwill which has inured to the benefit of the mark's owner of record,   it has become highly

distinctive and is well and favorably known amongst the relevant public throughout the nation

and the world as identifying Village People.

**Kings of Disco**

28. The term "The Kings of Disco," or interchangeably 'kings of disco," is a well-known and is widely used term or nickname to describe the world famous Village People. In fact, the term or mark has acquired a secondary meaning to the Village People mark. On information and belief, amongst the first to describe Village People as the kings of disco was Rolling Stone Magazine, dating back to 1979.

29. Since that time, numerous newspapers, magazines and other publications consistently described Village People as the kings of disco for over 40 years now. As such, any goodwill related to the kings of disco acquired during the term of the former licensee's agreement, inure to the benefit of Registrant.

30. Moreover, the term kings of disco identifies a particular source of goods and services specific to Village People. Therefore, the kings of disco have, over the years, become distinctive of Registrant's goods and services.

31. Nonetheless, the Sixuvus Defendants, in response to the termination of their license agreement, suddenly started referring to themselves as The Kings of Disco" and subsequently filed an intent to use application for exclusive use of the term for live performances. By virtue of the trademark application, the Sixuvus Defendants admit they had not made prior use the term for purposes of live performances prior to the filing of their 2017 trademark application.

32. However, the Sixuvus defendants knew the term kings of disco was already associated with, and descriptive of, Village People. But despite their prior knowledge, the Sivuvus Defendants directed their counsel to file a false and fraudulent trademark application stating that no other party is entitled to use the Kings of Disco mark and that the mark is not confusingly similar to another mark. All false.

33. Intervenor is harmed by the Sixuvus Defendants trademark application and any subsequent registration and/or use of the mark because it ordinarily causes public confusion, and is actually causing public confusion as who are the kings of disco as constituted by the Sixuvus Defendants, if not Village People by another name.

34. Moreover, Intervenor is harmed by the application and registration of the kings of disco mark because the Sixuvus Defendants would seek to suddenly, after over 40 years, refrain Registrant and Intervenor as well as promoters and media organizations from referring to VILLAGE PEOPLE as the kings of disco, which is absolutely absurd under the circumstances since Village People has always been described as the kings of disco in the media and by promoters worldwide.

35. In fact, on information and belief, the Sixuvus defendants have already made contact with one or more VILLAGE PEOPLE promoters demanding they cease and desist referring to VILLAGE PEOPLE as the kings of disco.  Moreover, the Sixuvus counsel objected in open court to the use of the kings of disco at a Village People related social media site.  The Sixuvus Defendants use of the kings of disco causes public confusion in that promoters, fans, as well as, the media, are confused as to why VILLAGE PEOPLE could no longer, after over 40 years, be described as the kings of disco without being asked to cease and desist.

36. Public confusion and interference however is exactly the intent of the Sixuvus Defendants in an obvious scheme to pass themselves off as Village People by another term, while attempting to interfere with Intervenor's actual VILLAGE PEOPLE use of the descriptive term kings of disco.

6

37. The Sixuvus Defendants however are **not** entitled to seek registration of the mark under the circumstances. Registrant however is entitled to registration or use of the kings of disco in association with VILLAGE PEOPLE as the term is synonymous with VILLAGE PEOPLE, not the Sixuvus Defendants. The Sixuvus Defendants knew this to be the case prior to applying to trademark of the term.

38. All of the above allegations constitute fraud on the trademark office in that the Sixuvus Defendants knew their application to trademark the Kings of Disco was and remains fraudulent made for the sole purpose of causing public confusion, passing themselves off as Village People, and infringing on the VILLAGE PEOPLE mark. Moreover, the Sixuvus Defendants knew the term kings of disco were already associated with, and descriptive of, VILLAGE PEOPLE. In addition, the Sixuvus Defendants knew, as the former licensee of the Village People mark (and by agreement), that they are not entitled to use confusingly similar terms to pass off the Village People mark.

39. Finally, the Sixuvus Defendants knew such use was in violation of the Lanham Act, and/or in violation of general trademark law. Yet in efforts to defraud the trademark office, and to pass themselves off as Village People by another name, to interfere with Intervenor's exclusive license, to cause public confusion, and in efforts to cause the trademark office to issue registration of The Kings of Disco mark, the Sixuvus Defendants directed their counsel to make fraudulent filings with the trademark office in order to mislead the Trademark Office into issuing an allowance to register.

### Infringement and Passing Off The Kings of Disco as Village People

40. This Court dissolved the TRO allowing the Sixuvus provisional use of the mark, well

7

after the their TRO was dissolved but the Sixuvus Defendants continued to exploit, the Village People mark therein resulting in infringement, confusion, deception, false description, dilution, and passing off.  Since the entry of the Order dissolving Defendants' TRO and denying Defendants' preliminary injunction, the Sixuvus Defendants and their cohorts, made unauthorized use of the Mark and continue to make unauthorized use of the mark as follows:

41. On or about February 27, 2018, the Sixuvus Defendants announced at various official Village People social media and website, including but not limited to Facebook, Twitter, VillagePeople.Band, and subsequently TheKingsof Disco.net, that they are now performing "The Kings of Disco" former members of Village People."  They subsequently updated the social media and website to reflect or identify themselves as "The Kings of Disco formerly Village People." This revelation was very damaging to the Village People mark and brand.

42. As of the date of the filing of this complaint, the Sixuvus Defendants are actively promoting themselves as the "Kings of Disco former members of Village People."  In addition, the Sixuvus Defendants uploaded photos used by them as a former licensee that shows them dressed as the world famous Village People characters.  These photographs are currently displayed by the Sixuvus Defendants at various social media sites, and the website "VillagePeople.band" and "TheKingsofDisco.net" as part of a scheme to aid the Sixuvus Defendants passing the "Kings of Disco" off as Village People, and for no other purpose.

43. Defendants used official Village People social media and the unauthorized website (VillagePeople.band), and now, TheKingsofDisco.net to promote "The Kings of Disco" live performances in a manner that infringes and/or pass off the Kings of Disco as Village People. On at least 14 occasions, after the TRO was dissolved, the Sixuvus Defendants infringed the

8

Village People mark, design of characters, and trade dress including but not limited to the following shows which are **not** meant to be an exhaustive list of performances:

- Pennsylvania Flower Show (March 3, 2018)

- The Texan Theatre (February 10, 2018)

- King Center for the Performing Arts (April 27, 2018)

- Grand Rapids Pride (June 16, 2018)

- Kumble Theatres (June 28, 2018)

- Barnstable County Fair (July 28, 2018)

- Georgsmarienhutte, Germany (August 4, 2018)

- Hamburg, Germany (August 11, 2018)

- NDR Sommertour, Alsterdorf, Germany (May 15, 2018)

- NDR Sommertour, GMhutte, Germany (August 11, 2018)

- Yacht Club, Monaco (September 28, 2018)

- Las Vegas, NV. w/Salt n Pepa (October 2, 2018)

- Schlagerboom 2018, Television Appearance, Dortmund, Germany (October 20, 2018)

- New Year's Eve celebration Brandenburg Gate, Germany (December 31, 2018)

44. On information and belief, all of the shows were booked for the Sixuvus Defendants

by Red Entertainment; Universal Attractions; Mewes Entertainment Group; and Celebrity Direct Entertainment. The Pennsylvania Horticultural Society, and Texan Theatre hosted performances at their venue or special event. Moreover, defendants aided and abetted the passing off of the Kings of Disco as Village People, and infringed the Village People mark for purposes of performances.

9

45. Each of the defendants knew the Sixuvus had no right to perform as Village People or to pass themselves off as village People by another name. Intervenor will amend this complaint, as it becomes necessary, to join any and all other promoters and venues not listed above. As an example of the passing off by promoters and agencies, defendant The Pennsylvania Horticultural Society's Flower Show continued to promote and sell tickets for the Sixuvus live appearance as *Village People featuring Ray Simpson well after being notified to cease and desist. Defendants Pennsylvania Horticultural Society, Texan Theatre, and Celebrity Direct Entertainment knew a live performances at their event or in their facility billed and/or promoted as *Village People featuring Ray Simpson or other knock-off version constituted unauthorized use and trading on the Village People mark and brand. Moreover, defendants Texan Theatre, Celebrity Direct, The Pennsylvania Horticultural Society (and all other defendants) knew that any live performance at their event or facility with use of Village People trade dress would likewise constitute passing-off of the group as Village People. Defendants infringing acts were designed to deceive the public and cause public confusion.

46. Defendants, and each of them, including, Mewes, Universal Attractions, Red Entertainment, Texan Theater, and Celebrity Direct Entertainment, infringed the Village People trademark by billing and promoting the Sixuvus Defendants appearance at the Flower Show and Texan Theater as *Village People featuring Ray Simpson, and subsequently Kings of Disco former members of Village People. Defendants then passed-off the Sixuvus appearance by representing to the public that except for a name change, "The Kings of Disco" and Village People are one and the same. Each individual Sixuvus defendants also made these representations. The passing-off was accomplished by defendants, and each of them, representing to the public that the "Kings of Disco [are] formerly Village People," therein

10

passing off "The Kings of Disco" as Village People, with use of a mark not owned by any of the Defendants.

47. The intent of the Sixuvus Defendants and their cohorts was to interfere, sow dissent, and public confusion, in efforts to harm Interevenor's group's business relations and to bring harm to numerous concerts already booked worldwide by Intervenor for Village People .

## Facebook's Aiding and Abetting

48. Facebook aided and abetted the Sixuvus Defendants, Kings of Disco ("KOD") with a bait and switch or transfer of official Village People Facebook page **LIKES** to the KOD Facebook page in an attempt to pass the KOD off, to all who **LIKED** Village People, as being one and the same as Village People, or actually VILLAGE PEOPLE by another name.  This passing off by Facebook and the Sixuvus Defendants made it appear to Village People fans who had actually **LIKED** VILLAGE PEOPLE (not the KOD), that the KOD is Village People by another name.  In flipping the **LIKES** to the KOD, Facebook falsely implied to the public that Village People had simply changed its name or had become to the KOD, and/or that it's proper that the Sixuvus Defendants gain access to Village People **LIKES**.  It is not.

49. Essentially, Facebook wrongfully transferred official Village People **LIKES**, to the newly formed KOD.  Facebook had prior knowledge said **LIKES** belongs to Village People because Facebook represented to the public that the page is verified as the official Village People Facebook page.  Moreover, Intervenor informed Facebook (through an official takedown request) that it, along with the Sixuvus Defendants was infringing the Village People trademark by continuing to allow use of OfficialVillagePeople at Facebook by the Sixuvus Defendants. Intervenor demanded that Facebook takedown OfficialVillagePeople.  Facebook quickly obliged by taking down OfficialVillagePeople.

11

50. However, on information and belief, the Sixuvus Defendants filed a counter notice informing Facebook that they, not Registrant or Intervenor, had a right to use OfficialVillagePeople because Village People had simply changed its name to the KOD or that there's pending litigation. In any event, the Sixuvus Defendants actions amounted to a concerted effort to frustrate Registrant and Intervenor's right to exploit the Village People mark.

51. Soon afterward, Intervenor was granted a TRO preventing further use of the Village People mark by the Sixuvus Defendants pending a ruling on her preliminary injunction. Included in the TRO was an order to the Sixuvus Defendants to shut down OfficialVillagePeople at Facebook and all other social media sites operated by them as Village People. Intervenor uploaded a copy of the Order to Facebook and once again asked Facebook to shutdown down the page pursuant to the court order. Intervenor received no response from Facebook.

52. During the pendency of the court's shutdown Order, the Sixuvus Defendants cohort (and wife of defendant Raymond Simpson) Leslie Simpson ("Mrs. Simpson") made a public post at her official personal Facebook page, asking if anyone out there knew anyone who works (employed) at Facebook.

53. On information and belief, Mrs. Simpson, found an employee at Facebook and convinced that employee to convert or merge over the OfficialVillagePeople page and **LIKES**, including the verified status to the newly formed KOD Facebook page.

54. Accordingly, Facebook passed off the KOD as one and the same as Village People therein frustrating and interfering with the Court's Order to shutdown OfficialVillagePeople. Instead, the Sixuvus Defendants with the aid of Facebook, commandeered the OfficialVillagePeople page and **LIKES** for the benefit of the KOD by allowing the KOD to instantly gain over 40,000 official Village People page **LIKES**, causing tremendous public

12

confusion in the process.

55. Facebook, in order to maintain the public trust of its VERIFIED page representations, had an obligation to preserve, transfer or maintain OfficialVillagePeople **LIKES** for the rightful owner of the page which is Registrant and Intervenor, not the so called KOD.

56. Facebook was and remains negligent in its action which aided and abetted the Sixuvus Defendants scheme to damage the Village People brand with use of the Village People fan base at Facebook. Facebook and the Sixuvus Defendants caused irreparable harm to the Intervenor, and Village People.

57. Indeed many of Village People fans, commandeered by the KOD though Village People **LIKES** (with the aid of Facebook) suddenly turned against the Village People after the KOD wrongful and unauthorized communications with Village People fans through posts by the KOD promoting their twisted side of things regarding the termination of their right to perform as Village People. However, these fans all **LIKED** Village People before the KOD wrongful takeover of the **LIKES** with the aid of Facebook.

58. On information and belief, the Sixuvus Defendants caused Facebook to flip the official Village People page over to the Kings of Disco including the transfer of official Village People **LIKES** and verification.

59. These acts by Facebook and the Sixuvus Defendants caused substantial monetary damage to Village People as the Sixuvus defendants caused Google and other search engines to direct Village People searches to the KOD Facebook page. Moreover, substantial public confusion resulted from Facebook's aiding and abetted the passing off of the KOD at Facebook as Village People by another name.

60. Simply put, fans at Facebook **LIKED** Village People, **not** the KOD, so the KOD

have no right to these **LIKES**/fans, and Facebook knew it, and continue to be aware of this.  Nor does the KOD have any right to access or communicate with Village People fans as if they're Village People by another name.

61. Essentially, Facebook turned-over bona fide Village People Facebook **LIKES** to the KOD which amounts to a breach of the public trust, or Facebook's own community standards that **LIKES** related to a VERIFIED page will be respected and attributed to the artist they choose to **LIKE**.  Not unilaterally transferred to unrelated pages for purposes of passing off, or without express permission from Facebook community members.  Think of the scandal that could result, if the public were to discover that Facebook is commandeering **LIKES** and attributing those **LIKES** in efforts to falsely increase LIKES of an unrelated page.  In this case, Facebook's credibility could easily be questioned.  is not repeFacebook conspired and/or aided the KOD with a scheme to pass the KOD off as Village People at Facebook by flipping official Village People **LIKES** to the KOD.

### Trademark Dilution and Unfair Competition

62. Intervenor is the owner of an exclusive license for the Village People mark and trade dress which qualifies as a famous mark and trade dress.  The Village People is world famous and denotes six characters: Cop Cowboy, Native American, G.I., Leather Man, and Construction Worker. When combined, whether in photo or in person, this image is immediately recognizable as Village People. The trade dress is equally distinctive in that any group of six individuals dressed in the attire is immediately recognizable as the Village People. Defendants knew the mark was famous prior to them engaging in their scheme to dilute.

63. Defendants made use of the mark and trade dress for purposes of live performances

14

and/or for the purposes of the promotion of live performances at social media sites and websites and continue to make unauthorized use of the mark and trade dress for live performances in interstate commerce including the Pennsylvania Flower Show, and Texan Theatre.

64. Village People is a very iconic group wherein all of its hits featured original lead singer Victor Willis. The music of the group remains relevant more than 40 years later with sales exceeding 100 million units. Moreover, its associated YMCA dance is still performed worldwide after 40 years. Products bearing the Village People logo are widely distributed in the United States and worldwide on everything from slot machines to tooth brushes to Hallmark greeting cards.

65. Defendants use began after the mark gained fame and is likely to cause dilution by lessening the capacity of Intervenor's mark and trade dress to identify and distinguish her goods and services by representing to the public that the "The Kings of Disco [is] formerly Village People" because the only thing that has changed in the name. Everything else remains the same including trade dress, and music. Essentially, "The Kings of Disco" according to the Sixuvus and their co-conspirators, is simply an incarnation of Village People. Therefore, Defendants intended to create an association with the "The Kings of Disco" and Village People.

66. The services with which Defendants used, namely live musical performances, are identical to the services covered by the incontestable registration of the registered Mark.

67. On information and belief, the class of purchasers to whom defendants offered live musical performances under the mark are identical to the class of purchasers to whom Intervenor is exclusively licensed to offer live musical performances under the Mark.

68. On information and belief, the buyers of pop music concert tickets are not highly

sophisticated consumers who perform extensive research before making a purchase, but instead buy tickets based on very limited information, principally the name or association with the featured performer(s), not the name of the promoter or presenter.

69. On information and belief, the Defendants intend to cause confusion or mistake among buyers of music concert tickets by using the Mark in association with "The Kings of Disco."

70. In fact, the degree of similarity between "The Kings of Disco" and Village People famous mark and trade dress is stunning. Intervenor's group consistently performs as Village People with shows currently booked worldwide into 2020. Defendants' use of "The Kings of Disco" in association with the Village People mark has caused dilution of the Village People mark and continue to dilute the mark as several of Intervenor's Village People performances have already been negatively impacted and diluted by the shows identified above. For example, several if not all the shows above would likely have been booked by Intervenor's agent for Village People had Defendants not booked their shows with use of the Village People mark, and by passing off, all of which constitutes unfair competition under the Lanham Act, and New York law.

## Conspiracy

71. Defendants, and each of them, conspired individually and/or as an organization or organized effort, with the Sixuvus and agreed to do the things alleged in the complaint with respect to each of them, including making posts at personal social media pages and websites, company, agency, or organization social media and/or websites, and/or advancing other activities suggestive of a conspiracy to advance the narrative that "The Kings of Disco" are formerly Village People, or that "The Kings of Disco" are simply an incarnation of Village People,

16

including the promotion of "The Kings of Disco" concerts as simply being a Village People performance by another name.

72. These acts were in furtherance of the scheme's purpose, which is, and continues to be, to injure Intervenor and Village People by their agreement to do the acts set forth herein.

73. Defendants Red Entertainment, The Pennsylvania Horticultural Association, Universal Attractions, Mewes Entertainment Group, Facebook, Texan Theatre, and Celebrity Direct, specifically conspired with the Sixuvus Defendants to do the things alleged in the complaint with respect to each of them, including making posts at their respective company's social media pages and websites and/or advancing other activities suggestive of a conspiracy to advance the narrative that "The Kings of Disco" is formerly Village People, or that "The Kings of Disco" is simply an incarnation of Village People, including the promotion of "The Kings of Disco" as simply being Village People by another name.

74. The Defendants' use of the words VILLAGE PEOPLE in connection with "The Kings of Disco" is likely to cause confusion among the relevant public and trade, and in fact, has caused confusion.

75. The Defendants' use of the words, VILLAGE PEOPLE in connection with "The Kings of Disco" is likely to deceive the relevant public and trade as to the affiliation, connection, or association of "The Kings of Disco with VILLAGE PEOPLE or its authorized exclusive licensee.

76. On information and belief, Defendants used the mark and continue to use the mark, in an efforts to trade upon the reputation and goodwill that Registrant and its authorized licensees have established in the mark.

77. By offering their services using the words VILLAGE PEOPLE including *Village

17

People featuring Ray Simpson, Defendants, and each of them, are palming off the services of the KOD as originating from or being endorsed by Registrant, or Intervenor, thereby enhancing the commercial value and reputation of the KOD flawed goods and services with use of karaoke-like prerecorded tracks.

### Interference

78.  Defendants' bad faith in adopting and using the Mark in connection with "The Kings of Disco" and *Village People featuring Ray Simpson, and interfered with Intervenor's business as demonstrated by their actions both before and after the entry of this Court's Order dated February 16, 2018 dissolving the TRO and denying their request for a for preliminary injunction for continued use of the Village People mark.

79.  Defendants failed and refused to return control of official Village People social media accounts to Registrant and Intervenor, despite numerous requests that they do so.

80.  Defendants made use and continue to use official Village People social media accounts including Facebook, Twitter, and Instagram, to interfere with Intervenor's exclusive rights to the accounts and mark and to amplify confusion and cause confusion and dissent among Village People fans.

81.  In particular, Defendants encouraged Village People fans who visit Village People social media accounts to contact promoters to protest the return of Victor Willis as lead singer of Village People and to protest the booking of Village People featuring Victor Willis concerts.

82.  As an additional example, Defendants use official Village People social media accounts to cause major dissent over a Village People featuring Victor Willis Australia tour.  They informed fans with use of Village People official social media that they, the Sixuvus Village

18

People are not performing; therefore fans should request a return of money for the purchase of Village People tickets.

83.   Defendants used official Village People social media to speak with authority that they are the "real" and official Village People.  But that Village People featuring Victor Willis is not; never mind that the Sixuvus Village People are not the singers of any of the Village People hits, but Victor Willis is the singer and co-writer of all the Village People hits.

84.   Defendants then, with use of official Village People social media encouraged attendees en masse to request refunds of tickets purchased to see Village People's Australia Tour featuring Victor Willis. This created a hostile environment for the tour with numerous fans being misled to believe that somehow Village People was illegitimate.

85. As a result, numerous fans in Australia did request refunds in efforts to harm the concert tour there as directed and encouraged by the Sixuvus.  None of this would have been possible and no harm would have come to Intervenor's business relations in Australia had the Sixuvus not continued their unlawful use of official Village People social media for purposes of interference.

86. The same tactics and hallmark of interference by the Sixuvus with use of, and encouragement of a handful of fans, continued well past Australia.  The additional interference included contact with Village People show promoters' social media pages and venues. Causing disturbances such as contrived or staged walk out of shows, and immediately demanding refunds and directed and encouraged by the Sixuvus Defendants with use of certain Sixuvus fans.

87. These staged activates directed by the Sixuvus Defendants also included, the writing campaigns to promoters, venues, and shows wherein a certain number of Sixuvus fans, would show up with knowledge and encouragement of the Sixuvus Defendants for the sole purpose of

19

interfering with Village People live performances, including but not limited to the following performances and shows that was interfered with by the Sixuvus Defendants and their cohorts:

- The Streamy Awards;

- Westfield Century City;

- Ultimate Disco Cruise;

- Disney World Orlando;

- Beau Rivage Casino;

- Resorts Atlantic City;

- Golden Nugget Lake Charles;

- Seminole Casino Coconut Creek,

88. All of the above constituted interference by the Sixuvus Defendants and their cohorts which cause disruptions to shows and caused harm to the Intervenor's business relations with these organizations.

89. The Sixuvus Defendants, and each of them, knew that contractual relationships existed between Intervenor and the business or organizations listed above. Yet defendants sought to disrupt the relationship and intended to disrupt, and cause harm to Intervernor and her shows. Defendants actually did interfere and caused out right disruption of certain shows including the Texan Theatre show that, with the urging of defendants, breached their fully executed agreement with Intervenor. The Texan Theatre subsequently booked defendants group therein allowing *Village People featuring Ray Simpson to financially benefit and causing financial harm to Intervenor.

90.  None of this interference and damage would have been possible without the Sixuvus

Defendants unauthorized use and access to official Village People social media and/or without unauthorized access to Village People verified Facebook page. Moreover, none of the interference and damage would have occurred without the aiding and abetting of the Sixuvus Defendants by Facebook.

91. Simply put, the Sixuvus Defendants and their cohorts made unauthorized use and access to Village People social media accounts for which they had no right for purposes of association. The Sixuvus Defendants commandeered verified Village People social media accounts for the sole purpose of bring harm to the Village People brand through the airing of grievances with Village People fans over the termination of their Village People license. Some of whom were persuaded by the Sixuvus Defendants to be sympathetic to the Sixuvus Defendants plight.

92. Indeed, the Sixuvus Defendants used official Village People social media to badger and create false impressions, and to direct fans to interfere with Intervenor's business relations by contacting venues to complain about booking, and to stage walk-outs at concerts while demanding refunds claiming they didn't like the show.

93. This elaborate **ruse** and campaign of interference was conducted, and will continue to be conducted by the Sixuvus Defendants and their co-conspirators, absent restraint by the court. Intervenor will suffer irreparable harm unless the Sixuvus defendants are restrained by the court.

**FIRST CAUSE OF ACTION**
**PASSING-OFF**
**(AGAINST ALL DEFENDANTS)**

94. Intervenor repeats and re-alleges the allegations of Paragraphs 1 through 92, inclusive, as if set forth fully herein.

95. Defendants have no right to use the Village People mark and/or trade dress in

connection with the Kings of Disco for purposes of live performances because the term is widely known by the public to be associated with the Village People mark.

Defendants have no right to use *Village People featuring Ray Simpson in connection with live performances in interstate commerce, yet they did so.

96.   Defendants' actions constitute use in commerce of a word, term, name or device and false designation of origin which is likely to cause confusion, or to cause mistake, or to deceive as to the origin, sponsorship, or approval of Defendants' services in violation of 15 U.S.C. § 1125(a).

97.   Intervenor and/or Registrant are damaged by the action of Defendants.

98.   By virtue of the foregoing, Intervenor and/or Registrant is entitled to a judgment that Defendants' use of the Mark in connection with "The Kings of Disco" or otherwise, infringed Registrant's exclusive rights in the mark justifying an injunction restraining future violations, and award of monetary damages, and attorney's fees if any incurred.

### SECOND CAUSE OF ACTION
### TRADEMARK INFRINGEMENT
### (AGAINST ALL DEFENDANTS)

99.   Plaintiff repeats and re-alleges the allegations of Paragraphs 1 through 97 inclusive, as if set forth fully herein.

100.      The Defendants' use of the mark, and trade dress, in the connection with "The Kings of Disco" and as *Village People featuring Ray Simpson, or otherwise, is likely to cause confusion as to the source of origin of such services, and in fact caused confusion.

101.      Defendants' use of the mark in the connection with "The Kings of Disco" and as *Village People featuring Ray Simpson, or otherwise is likely to cause mistake as to the source of origin of such services.

102.     The Defendants' use of the mark in connection with "The Kings of Disco" and as *Village People featuring Ray Simpson or otherwise is likely to deceive as to the source of origin of such services.

103.     The Defendants' use of the mark in connection with "The Kings of Disco" and as *Village People featuring Ray Simpson, or otherwise is likely to cause confusion as to the sponsorship of such services and suggestive of endorsement by Registrant and Intervenor.

104.     The foregoing acts constitute a violation of 15 U.S.C. § 1114, Intervenor, as exclusive licensee of the mark, and or Registrant, has been injured and is likely to continue to be injured by Defendants' actions.

105.     By virtue of the foregoing, Intervenor and/or Registrant is entitled to a judgment that Defendants' use of the mark in connection with "The Kings of Disco" and as *Village People featuring Ray Simpson, or otherwise, infringed Registrant's exclusive rights in the mark justifying an injunction restraining future violations, and an award monetary damages and attorney's fees if incurred.

## THIRD CAUSE OF ACTION
## UNFAIR COMPETITION
## (AGAINST THE SIXUVUS DEFENDANTS)

106.     Intervenor repeats and re-alleges the allegations of Paragraphs 1 through 104, inclusive, as if set forth fully herein.

107.     Defendants' actions constitute unlawful and/or unfair acts, and therefore constitute an unfair method of competition in violation of the common law of the State of New York and New York General Business Law section 349.

108.     Defendants' actions constitute passing-off of its services as those of

Registrant's exclusive licensee, when in fact, they are not. As such, constitutes an unfair method of competition in violation of the common law of the State of New York and New York General Business Law section 349.

109.    By virtue of the foregoing, Intervenor and/or Registrant is entitled to a judgment that Defendants' use of the mark in connection with "The Kings of Disco" and as *Village People featuring Ray Simpson, or otherwise infringed Registrant's exclusive rights in the mark justifying an injunction restraining future violations, and an award of attorney's fees if incurred.

**FOURTH CAUSE OF ACTION**
**CONSPIRACY**
**(AGAINST ALL DEFENDANTS)**

110.    Intervenor repeats and re-alleges the allegations of Paragraphs 1 through 108, inclusive, as if set forth fully herein.

111.    The Defendants' actions constitute civil conspiracy to injury Intervenor by agreeing to do the things set forth herein. The Defendants, and each of them, agreed to participate and do the acts alleged in the complaint including the unlawful act of trademark infringement with use of live performances under the auspices of *Village People featuring Ray Simpson, and/or passing-off "The Kings of Disco" as Village People.

112.    Intervenor and/or Registrant was injured by the acts pursuant to and in furtherance of a scheme.

113.    By virtue of the foregoing, Intervenor and/or Registrant is entitled to a judgment that Defendants' conspired to use the Mark in connection with "The Kings of Disco" and as *Village People featuring Ray Simpson, or otherwise conspired to infringe and pass-off Registrant's exclusive rights in the mark justifying an injunction restraining future violations, and an award of punitive damages, and attorney's fees if incurred.

24

### FIFTH CAUSE OF ACTION
### DECLARATORY RELIEF
### (AGAINST THE SIXUVUS DEFENDANTS)
### PURSUANT TO TRADEMARK ACT § 14(3), 15 U.S.C. § 1064(3)

114.    Willis repeats and re-alleges each and every allegation in paragraphs 1 through

112 above as if fully set forth herein.  By reason of the foregoing, an actual and justiciable

controversy of sufficient immediacy and reality has arisen and now exists between Intervenor

and the Sixuvus Defendants under federal Trademark Act § 14(3), 15, U.S.C. § 1064(3)

which allows for cancellation of a mark at anytime on the grounds that the registration was

obtained by, including, Fraud, the mark is generic, the mark falsely suggests a connection

with a person's name or identity.

115.    As outlined herein, Intervenor is harmed by the application and subsequent

allowance of the Kings of Disco due to the likelihood of confusion with the Village People mark,

and dilution by blurring or dilution by tarnishment under section 43(c).  Moreover, the

application for the mark is fraudulent.

116.    Declaratory relief from this Court is necessary pursuant to the Declaratory

Judgment Act, 28 U.S.C. §§2201 *et seq.*, because the Sixuvus Defendants are purposefully

stalling registration of the mark in efforts to delay and frustrate Intervenor's efforts to bring forth

a petition for cancelation with the USTPO Trademark Trial and Appeals Board ("TTAB").

117.    The hold-up of the actual registration of the mark is the Sixuvus filings of what is

now, a second requests for an extension of time to file a **Statement of Use**.  Surely the Sixuvus

Defendants know how they've used the mark thus far, and they intend to use the mark in the

future. Either way, such use is in contravention to the law. They know it, so they are delaying the inevitable that will surely be damaging to their right to use the mark.

118.    By reason of the foregoing, Intervenor is entitled to a declaratory judgment and related relief, declaring that The Kings of Disco mark is void ab initio as a result of fraud on the trademark office, and/or the mark is generic, and/or the mark suggest a false connection to Village People.

## PRAYER FOR RELIEF

WHEREFORE, Intervenor requests that judgment be entered as follows:

(a) That Defendants, and each of their directors, officers, agents, employees, licensees, affiliates, members, any parent and subsidiary companies, attorneys and representatives and all those in privity with or acting under their direction and/or pursuant to their control, be enjoined and restrained, preliminarily and permanently from directly or indirectly:

(b) Using the Mark VILLAGE PEOPLE, or marks confusingly similar to VILLAGE PEOPLE or suggest Village People such as The Kings of Disco, in connection with live musical performances;

(c) Performing any acts or using any service marks, trademarks, names, words or phrases that are likely to cause confusion, to cause mistake, to deceive or otherwise mislead the trade or public into believing that Village People and The Kings of Disco are one and the same, or are in some way connected, or that Sixuvus Defendants are in some manner affiliated or associated with or under the supervision or control of or licensed by Registrant, or that the services of the Sixuvus Defendants are authorized by Registrant, or that "The Kings of Disco" is connected with Village People; and

26

(d) Using any trade practice whatsoever, including those complained of herein, which tends to unfairly compete with or injure Intervenor, her business or the goodwill appertaining thereto as embodied in the mark, and to cease use of the Village People trade dress;

(e) That Defendants, and each of their officers, directors, agents, employees, licensees, affiliates, members, any parent and subsidiary companies, attorneys and representatives and all those in privity with or acting under their direction and/or pursuant to their control, be required to deliver up for destruction all merchandise, labels, signs, cartons, tags, boxes, papers, statements, invoices, advertising, promotional and any other materials bearing the Kings of Disco, and *Village People featuring Ray Simpson, together with all plates, molds, matrices, and other means and materials for making and reproducing the same;

(f) That Defendants be required to pay to Intervenor compensatory damages for the injury sustained by Intervenor, trebled pursuant to statute;

(g) That the Defendants be required to account to Intervenor and/or Registrant for any and all gains, profits and advantages derived by them from the activities complained of herein, trebled pursuant to statute;

(h) That Defendant be required to pay to Intervenor the costs incurred by Intervenor in this action, together with her reasonable attorney's fees if any;

(i) That the Court instruct the USPTO to cancel the kings of disco mark;

(j) That Intervenor and/or Registrant receive punitive damages in an amount sufficient to deter future similar acts; and such other and further relief as this Court shall deem just and proper, and;

(k) Award Intervenor and Registrant such other and further equitable and legal relief as

27

this Court may deem necessary, just and proper.

**Dated:** April 18, 2019

KAREN L. WILLIS

_____
INTERVENOR/PLAINTIFF