1    18b9canMS

2    UNITED STATES DISTRICT COURT
     SOUTHERN DISTRICT OF NEW YORK
3    ------------------------------x

4    CAN'T STOP PRODUCTIONS, INC.,

5                  Plaintiff,

6              v.                        17 Civ. 6513(CS)(LMS)
                                         Status Conference
7    SIXUVUS, LTD., et al.,

8                  Defendants.

9    ------------------------------x

10                                       White Plains, New York
                                         November 9, 2018
11
     Before:
12
                    THE HONORABLE LISA MARGARET SMITH,
13
                                         Magistrate Judge
14
                           APPEARANCES
15
     EISENBERG TANCHUM & LEVY
16        Attorneys for Plaintiff
     STEWART L. LEVY
17

18   ADELMAN MATZ P.C.
          Attorneys for Defendants except Felipe Rose
19   GARY P. ADELMAN

20

21   HILL WALLACK
          Attorneys for Defendant Felipe Rose
     ERIC I. ABRAHAM
22   RICHARD A. CATALINA, JR.

23

     KAREN WILLIS, Intervenor
24

25

1    Digital recording.

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

1                THE DEPUTY CLERK:   In the matter of Can't Stop

2    Productions, Inc., versus Sixuvus, Limited, et al.

3                Counsel, please note your appearance for the record.

4                MR. LEVY:   I'm Stewart Levy, of the firm Eisenberg,

5    Tanchum & Levy, with Can't Stop, the plaintiff.

6                MR. ADELMAN:   Gary Adelman for all of the defendants,

7    except Felipe Rose.

8                And sitting with me is non-admitted, but passed the

9    bar, Briana Thomas, who will not be speaking today.

10               Thank you.

11               MS. WILLIS:   Karen Willis, intervenor.

12               THE COURT:   Mr. Abraham, can you hear us?

13               MR. ABRAHAM:   Yes, I can.

14               Thank you very much.

15               THE COURT:   All right.   You need to state your

16   appearance.

17               MR. ABRAHAM:   Thank you.

18               This is Eric Abraham, on behalf of Felipe Rose.   I'm

19   from the law firm Hill Wallack, in Princeton, New Jersey.

20               And with me on the phone is Richard Catalina from my

21   firm.

22               And I'd like to thank the Court for accommodating us

23   by allowing us to call in.

24               THE COURT:   All right.   As you know, there's a motion

25   pending before the Court for a determination of whether there's

1    an enforceable settlement.  An issue has arisen about an

2    alleged violation of at least the spirit of that prospective

3    settlement.

4              I need to tell you right up front, I only have a

5    limited amount of time today.  I'm not intending to spend all

6    day on this matter.  So I'm willing to hear all of you.

7              The one, frankly, major concern that I have is that

8    even if there were to have been a violation of the settlement,

9    I don't see that there's any element of the settlement

10   agreement which identifies what the consequences of such a

11   breach would be, which, of course, is something of a concern.

12             But I don't know who wants to be heard first.

13             MR. LEVY:  Well, your Honor, if I may, I wrote the

14   letter to get this started.

15             I just thought I would take advantage of the fact that

16   because the motion is pending, there's continuing jurisdiction

17   of the Court.  And we obviously want this to end and

18   (unintelligible) as possible.  And it just seems to me that

19   whether the Court finds there's a binding settlement agreement

20   or if there isn't, we're still going to have issues come up.

21   And I'd like it that when we have -- when this case is finally

22   over, it's finally over.  So I thought -- when we saw these two

23   concerts, we didn't write -- Ken Starr didn't write into the

24   Court and say -- seek an order to show cause or a stay or ask

25   for damages.  We don't ask for damages or anything in the

1    letter.

2            But what I ask in the letter is, maybe, since we

3    see -- here's -- here is the Sixuvus group in practice --

4    giving them the benefit, they are trying to comply with what

5    they think are the terms of the settlement.  And in practice,

6    this is what it looks like.  And there may be things, for

7    example, on the second TV show where the announcers introduce

8    them as the Village People, and they don't -- so they would

9    say, "Hey, we can't stop that."  You know, it can all be both

10   ways.  There's a ten-minute speech in German which he explains

11   on the first concert that the name was taken away, and maybe

12   that should be part of the act in English, too.

13           All I was thinking was:  Hey, this is a great

14   opportunity, while we have continuing jurisdiction is, put

15   aside for today the legality.  Is there a settlement agreement

16   or there isn't.  Or if there's a settlement agreement, we still

17   have issues, as you just appointed out:  What are the damages?

18   What do we do?  What, we go to court every week?

19           So I thought:  Okay.  Here are two (unintelligible)

20   instances.  If Ms. Willis has instances of anything else, bring

21   it to everyone's attention now and say maybe we should deal

22   with this now.  We might facilitate this (unintelligible)

23   issue.

24           So that's -- our point was just to throw ourselves on

25   the Court and say maybe this is a good opportunity and bring us

1   close to a settlement.

2          THE COURT:  Mr. Levy -- Mr. Adelman.  I'm sorry.

3          MR. ADELMAN:  Thank you, your Honor.

4          So I agree with Mr. Levy that I'd like this to end.

5          I would like to say that my clients worked hard as

6   hard.  And of two videos that were presented by Mr. Levy, which

7   only represent a portion of the shows that they've done, I

8   would like to address the first video briefly, which is, if you

9   go through the settlement transcript, not only did my clients

10  comply with it, but they over-complied with it.  They wore the

11  costumes that they're allowed to for less time than they're

12  allowed to.  They sung less than 50 percent of the songs that

13  they're allowed to.  They're allowed to sing 55 percent.  And

14  they came up with an act that does not open with Village People

15  anything.  In fact, I think they did it quite creatively.

16          There's no violation of the settlement agreement

17  there.  There's no iota of it.  It's within the spirit, and

18  it's within the terms.

19          I just think that when the intervenor saw the video,

20  she didn't like it.  She's the only person here that did not --

21  that opposed the settlement agreement being signed.

22          I'm not sure -- I haven't read the whole settlement

23  agreement.  I'm not sure what the consequences are if either

24  side violates the settlement agreement.  And the other side can

25  violate it, as well, I might add.

1    I will say that I thought, since this was the first

2    couple of months of my client's putting their show together,

3    that if either party had an objection to anything that they

4    were doing, that I would get a call or a letter describing what

5    their objections were.  In fact, even the letter that Mr. Levy

6    sent doesn't even accurately -- I mean, doesn't specifically

7    describe what the problem is.

8         That's the first thing.

9         Just to quickly address the announcers, if you watch

10   the video, the last thing -- I mean -- and I don't speak

11   German, so I don't know what they were saying prior to that.

12   But the last thing they did say were -- was, "The Kings of

13   Disco, former members of Village People," exactly the way

14   they're supposed to.

15        If there are some issues that need to be resolved,

16   that's what I'm here to do.  But I think putting aside whether

17   the settlement agreement, the legal issues, as far as the

18   settlement agreement -- settlement transcript is enforceable or

19   not, in Mr. Levy's letter, he said, either the settlement

20   transcript is enforceable and therefore is a violation -- we

21   don't believe there's any violations -- or the settlement

22   agreement is not enforceable and it's an infringement.  For

23   that, you don't even believe that it's an infringement.

24        So I'm happy to discuss the issues, but at the same

25   time, I'm very well versed in the trademark law.  I understand

1    what my clients can and cannot do.  Their sole purpose is to

2    follow the spirit and the guidelines of the settlement

3    agreement, and have done so.

4            And you know, adding to that, I'm not -- again, I

5    don't speak German, and I don't pretend to know German law.  So

6    I will end on that.  But I am amenable to hearing if the -- you

7    know, if there are issues, and I'll happily respond to them one

8    by one.

9            I also have my own issues with the intervenor's group

10   and things that they have done, though I thought over the last

11   four months that she was so quiet, why make a big deal about

12   this; everybody's doing what they're supposed to do.

13           Thank you, your Honor.

14           THE COURT:  Mr. Abraham, do you want to be heard?

15           MR. ABRAHAM:  Only to speak, your Honor, what I think

16   all parties know, which is that Mr. Rose has resigned from

17   Sixuvus.  He's informed Kings of Disco that he no longer will

18   be continuing as a member.  So you know, I hate to say we don't

19   really take a position, but in many respects, Judge, we don't

20   take a position.

21           THE COURT:  All right.  Ms. Willis?

22           MS. WILLIS:  Your Honor, here's why I've never agreed

23   to go along with this is because --

24           THE COURT:  That's just wrong.  Numerous places in the

25   transcript, you agreed to the various portions of the

1    agreement.  So I grant you that since then, you have declined

2    to sign off on any agreement, but in the settlement transcript,

3    there are repeated instances where you affirmatively said, "We

4    have an agreement."

5    So I'm just correcting what you just said.  I know

6    you're not happy now, and that's what I want to hear about,

7    what's your position now.

8    MS. WILLIS:  Well, I must correct your Honor.  Your

9    Honor, in the transcript, time and time again, you hear an

10   agreement to agree.  And the Second Circuit has made it very

11   clear that an agreement to agree is just not enforceable.  But

12   I don't -- you know, I don't want to get caught up in this

13   right now.

14   But yes, there's an agreement to agree.  That's where

15   we are.  Your Honor, begging, this is why I really have not

16   gone along with this, because who's interested in coming here?

17   I'm not interested in having to come into the court and argue

18   about whether or not they've gone beyond.  I don't want them

19   doing it.  They can't do it, and they're out there blatantly

20   dressing as Village People.  Nowhere in the settlement did I

21   agree that they can even do television shows, by the way.  In

22   fact, that was something that was discussed, that they could

23   not.  We would not grant them that right.

24   But not only on the television show, your Honor, where

25   they were introduced as Village People, when the show closed,

1    they again stated, "Village People."

2            I have seen their show, and it's not something that

3    we've agreed to at all, because what they've done is, as a part

4    of their show, your Honor, they simply say, "You know, look.

5    We're doing a couple of songs here, but now let's get down to

6    who we really are.  And here's who we are.  We're the original

7    boy band who is the Village People."  And that's what they've

8    been doing.  And that's completely passing off themselves as

9    Village People.

10           They also do it all over their Facebook pages.  They

11   make these statements about, you know, that they are, you know,

12   Village People.

13           So this is blatant trademark infringement.  It is not

14   covered under their -- under the settlement that they believe

15   they had.  And nowhere in the language of the alleged agreement

16   did we say they could actually decide to simply pick a portion

17   of the show and present it.  Well, guess what portion of their

18   show that they've selected?  For the television show, they

19   selected the Village People portion.  Okay?  They performed as

20   Village People, and nothing else.  They performed all the

21   Village People songs.  They do the YMCA dance.

22           Your Honor, I'm just not going to tolerate it.  I'm

23   not putting up with this.  No, this is -- I don't want to be

24   here.  These are the games they like to play.  I'm not

25   interested.  This is a blatant violation even of the agreement

1    that they say we have, which we don't.  If I was, what are we

2    doing here?  They're no longer the Village People.  They want

3    to present themselves that way.  They can't accept reality,

4    that they must move on.

5          And so that's where we are.  They have blatantly

6    violated it, even the agreement that they propose to have.

7          THE COURT:  Mr. Levy -- Mr. Adelman.

8          MR. ADELMAN:  Okay.  I mean, as far as I'm concerned,

9    that's just talk.  If you look at the video, you will see

10   exactly what they did.  They don't dress -- they do exactly

11   what the settlement transcript asks them to do, the way the

12   settlement transcript is set up to do.  They clearly -- they

13   make it very clear that they are not the Village People

14   anymore.  No one, if you compare --

15         Can I have the pictures?

16         If you compare the side-by-side of the modified

17   outfits that were agreed upon and what Ms. Willis's Village

18   People group wear, you will see a great distinction.

19         I must add that, again, the intervenor doesn't come

20   into court with entirely clean hands.  If you look on the front

21   page of her Facebook page, underneath a picture of her group

22   performing, Victor Willis says, "Village People show why they

23   are truly the Kings of Disco, Capital 'K,' Capital 'D,' and

24   always have been."  That's very recent:  October 22nd,

25   12:46 p.m.

1          That, I might add, is a violation of my client's

2     trademark rights, "Capital 'K,' Capital 'D,'" and "Kings of

3     Disco."

4          The sole purpose of Ms. Willis's goal here is to shut

5     down my client.  And my client has gone through great strides.

6     And I could take the video from their first German show with

7     you and go through it screen by screen and show you exactly why

8     it fits within the settlement transcript and the spirit of the

9     agreement.  I doubt that the intervenor or the plaintiff has

10    even attempted to do that.

11         As for what the folks that introduced them and called

12    them out said, we're right.  While we tell them, and they said,

13    "Kings of Disco, former members of the Village People," we

14    can't stop them in mid-sentence.  What we can tell them -- but

15    I don't think anybody at that show thought that they were the

16    Village People.

17         The second point I might add is, I noticed that in

18    Mr. Levy's letter, he doesn't say anything about how my clients

19    have been marketed or, you know, how they put themselves out

20    there, which is the real key to this whole thing, to a certain

21    degree.  Because the fans are coming to see Kings of Disco,

22    former members of Village People.  The show they put on is

23    Kings of Disco, former members of Village People.

24         I might add, since -- I mean, I don't know where any

25    of this is going, but I believe, under current U.S. law, that

1    my clients are actually agreeing in their transcript to less

2    than what they could actually do.  They have happily been doing

3    it the way they're doing it so they can move past their prior

4    role as the Village People and their new role as the Kings of

5    Disco.

6            You know, like I said, any issue that the plaintiff or

7    the intervenor has, I am prepared to address.  If there is

8    something that deviates from the settlement transcript, we can

9    fix it.

10           For instance, very happy for my clients, when they go

11   on stage, to announce that they are the Kings of Disco.  Seems

12   like a very easy fix, no matter what the announcers say.

13   That's the first thing.

14           The second thing is, I don't see anything in the

15   transcript agreement that limits their rights to appear on TV,

16   which, by the way, that TV program was three hours long and had

17   multiple, multiple acts.  And the plaintiff has just cut out --

18   and it was -- my client's performance was five minutes and

19   twenty -- less than five minutes, I think, which, you know, is

20   maybe something we can talk about, because we never talked

21   about shows that are less than five minutes.  What we talked

22   about is three-song shows.  This TV appearance, in particular,

23   actually starts with them in track suits singing a non-Village

24   People song for, I think, a little bit of time.  And then they

25   go into the modified uniforms and sing a medley of three

1    Village People songs.

2              If that has to be addressed or modified because the

3    parties can agree it does or does not fit within the settlement

4    agreement, then we should have a conversation about it, not a

5    court appearance or an order to show cause.

6              MS. WILLIS:  Your Honor, in response --

7              MR. ADELMAN:  That's how I -- that's my personal

8    opinion.

9              MS. WILLIS:  Your Honor, in response to Mr. Adelman's

10   point, first of all, his clients don't have a valid trademark

11   of Kings of Disco, and never will.

12             THE COURT:  That's not an issue here.

13             MS. WILLIS:  No.  Your Honor, he brought it up, so I'm

14   responding.  Is that okay?

15             THE COURT:  All right.

16             MS. WILLIS:  Thank you, your Honor.

17             Now --

18             THE COURT:  You know, Ms. Willis, I appreciate that

19   Mr. Levy has a bad knee.  But I haven't heard that you do.

20   Mr. Adelman stood up.  It's the appropriate way to show respect

21   for the Court.  Is there a reason why you can't stand up?

22             MS. WILLIS:  Well, I was really trying to show respect

23   for Mr. Levy.  We're on the same table here.  But I'll stand,

24   your Honor.

25             THE COURT:  Thank you.

1              MS. WILLIS:  No problem.

2              Your Honor, there is no valid Kings of Disco

3     trademark, and there should not be, if I have anything to do

4     with it, number one.

5              Number two, is Mr. Adelman here with a straight face

6     to say that the "Kings of Disco" is not a moniker of the

7     Village People?  It is.  We can prove it.

8              So the Village People --

9              THE COURT:  I'm completely boggled, Ms. Willis.  The

10    previous discussion that went on for a very long time on

11    March 28th of this year at length discussed the Kings of Disco

12    as an alternative entity.  And I didn't hear any of this from

13    you then at all.  I've re-read the entire transcript this

14    morning.  There's no discussion on your part of, "They can't

15    use 'Kings of Disco.'"  In fact, that was precisely what was

16    agreed to.

17             MS. WILLIS:  Well, your Honor, you need to only read

18    my complaint in intervention.  It's there.  And I invite your

19    Honor to review it.  Okay?

20             It was two things we talked about that I made clear.

21    We were not going to cover any rights to copyright -- okay? --

22    to music.  And also, nowhere in the settlement did I ever

23    agree, or Mr. Levy or Can't Stop agree, that we are saying,

24    "You know, it's a valid name.  You can -- you know, we're not

25    going to ever challenge it.  It's valid."  No.  Nowhere.  But

1      what does stand on record for the Court -- and again, I invite

2      your Honor to take a look at it -- is what I simply stated a

3      moment ago, and that is that they have no valid trademark right

4      to the "Kings of Disco," which, your Honor, is a totally

5      separate, independent issue here.

6              So having said that, again, the Village People, you

7      can't say to the Village People, "Oh, we know that you've been

8      referred to as the 'Kings of Disco,' you know, forever,

9      including in Rolling Stone Magazine."  I can provide the Court

10     with a hundred references to Village People being the Kings of

11     Disco.  The only purpose of Mr. Adelman's clients to want to

12     use that term, your Honor, is to attempt to pass themselves off

13     as Village People.

14              Now, that has been my position with this Court.  And

15     if you take a look at, again, my complaint in intervention, it

16     is there.  Nowhere have I ever agreed that I'm going to go

17     along with that name.

18              So I just wanted to make that clear to the Court.

19              MR. LEVY:  Your Honor, can I just say something?

20              MR. ADELMAN:  Let me just address two things.

21              One is, it's perfectly -- since you read the

22     transcript, your Honor, I'm not going to even go there.  But

23     nevertheless, I just want to make this small point, which is,

24     trademark rights are very particular.  My client has been using

25     the name prior to this lawsuit.  Village People never used the

1    name in the trademark context.

2            But it does seem to me that what is happening here is,

3    Ms. Willis just threatened my clients.  She just said, "They

4    will never use the 'Kings of Disco' as long as I have something

5    to say about it."  That goes against everything that this

6    settlement transcript was entered into in good faith and agreed

7    to by everyone, including the rights holders themselves.

8            Ms. Willis is an intervenor.  She's solely here at

9    Judge Seibel's behest -- or agreement.  She has no rights

10   whatsoever of enforcement in the license agreement itself.  The

11   licensor is the one that has those rights.  And as they have

12   made plain -- I mean, now they're saying they take no position,

13   but they helped us draft the settlement agreement based on the

14   settlement transcript, and there are e-mails with Ms. Willis,

15   in which she makes comments to it, and does seem to agree on

16   things.

17           Nevertheless, the motion's before you.

18           That's all I have to say on that.

19           MS. WILLIS:  Your Honor, I will say what I did say.

20           THE COURT:  Wait.  Wait.  Mr. Levy's turn.

21           MR. LEVY:  Your Honor, I know my letter was

22   (unintelligible).  But years ago, when I was starting out, I

23   had a case with Judge Chin when he was a District Court Judge.

24   And the other -- I asked -- I wrote a letter to the judge about

25   something.  The other side said, "It doesn't fit any motion.

1    What's he doing?"  And Judge Chin said, "You know, I think what

2    Mr. Levy's doing is, he's bringing in a situation which is

3    awkward, where everyone is entrenched in fighting and

4    everything else.  And he knows that this thing should be

5    resolved, and what he's hoping for is, he could find somebody

6    who is a neutral person in good faith who will say, 'You know

7    what?  We have to have some common sense in here, and we're

8    going to get this thing resolved.'"  And we did.

9              And I go back to that.  It doesn't happen all the

10   time, but I guess, in writing my letter to the Court, that's my

11   hope.  We do not -- this case should have been over a long time

12   ago.  I don't disagree with the attorney for Sixuvus.  You

13   know, we worked on the settlement agreement.  But then we get

14   rip-sawed by the intervenor.

15             So we have a licensee who's complaining and

16   threatening that we're not protecting the license rights.  We

17   have the former members of the group, who were certainly

18   entitled to make reference to what they did in the past.

19             We're sitting here going like this is insane.  And

20   what we we're looking at is, no matter what the Court rules --

21   and you've heard Ms. Willis speak now, and you've heard

22   (unintelligible) -- they're going to keep suing each other, and

23   we're going to keep being brought in.

24             THE COURT:  Oh, yes, there's no question about that.

25             MR. LEVY:  And we don't want that.

1    THE COURT:  No matter what the Court rules, there's no

2  question that, at the very least, looking at past behavior,

3  Ms. Willis, on behalf her client, is going to pursue the matter

4  in court.  So I don't for a second believe that anything that I

5  do is going to conclude the matter.

6    MR. ADELMAN:  Actually, your Honor, I disagree with

7  that.  I think that it -- while we're hoping that you find for

8  us, since there was no real opposition to the transcript, as

9  far as based under the law, if you do find that the settlement

10  agreement is enforced and the settlement agreement becomes

11  enforced, that will narrow -- and you've retained jurisdiction,

12  that will narrow the field of scope that Ms. Willis can

13  continue to try to barrage us with court filings and what-not.

14  And that has a finite -- that will end.  It's finite.  There's

15  appeals court that she could go to, but after that, that's it.

16  And at some point --

17    Well, a long time ago, I was involved in a case in

18  which the plaintiff -- the Court -- actually, the Southern

19  District Court -- ordered the plaintiff to stop suing my client

20  without their permission.  Not suggesting that that's a

21  necessity today.  I'm just saying that I don't think the fear

22  that Ms. Willis is trying to put into this Court, that she's

23  going to sue us all into oblivion, should prevent us from

24  concluding the matter in a fair and equitable manner, either

25  today or with your decision.

1          Thank you.

2          MS. WILLIS:  First of all, your Honor, I've not sued

3     them, not once, not even one time.  And nowhere near in any of

4     the transcript where you see me talk about suing.  But I can

5     tell you this.  Their concern is their concern.  Their concern

6     is that I'm not going to allow them to do -- continue to do

7     what they're doing, and they're correct on that.

8          Now, I want to correct something Mr. Adelman --

9          THE COURT:  How would you do that, other than suing

10    them?  I don't understand.  You just said, "I'm not suing them,

11    I haven't sued them, and I'm not threatening to sue them."  And

12    then in the next sentence, you said, "But I'm not going to let

13    them continue to do it."

14         I mean, other than you walking onto the stage and

15    tearing their costumes off, what other method do you have to

16    stop them than to sue them?  To say that you're not threatening

17    to sue them and then say, "But I'm going to stop them," seems a

18    little self-contradictory.

19         MS. WILLIS:  What I said, your Honor, was that I have

20    not sued them.  Okay?  Not once.  That's what I said on the

21    record.  And your Honor can go and read the transcript.  You'll

22    see that.

23         All I'm saying here is that Mr. Adelman stated on the

24    record that, "Oh, Ms. Willis is suing."

25         What are you talking about?  I've not sued your client

1  yet.

2          You know, I'm hoping if this continues -- I mean,

3  they've sued Can't Stop.  They're way ahead of me.  And Can't

4  Stop sued them.  So why aren't we talking about that?  Their

5  concern that -- again, that I'm defending against them.  Okay?

6  That's it.  That's all they're concerned about.  They don't

7  want me to defend against them.  Well, I'm here to let the

8  Court know that I will, if I feel that they've stepped on my

9  rights as the licensee.  Okay?  However, I've not done so.

10 They make it appear that I have.  I haven't.  I've not got

11 started yet on them.  Okay?  That's where we are.  We're trying

12 to get past this issue right now, so . . .

13         And he twisted my words on -- what I said with respect

14 to the use of the name is that they have no valid trademark

15 rights, your Honor, in that name.  Okay?  And I believe that

16 the Trademark Trial and Appeals Board will agree with that.

17         But again, that's a separate issue.  They're seeking

18 the trademark.  I've never agreed to go along with their name,

19 not once, and I never will.

20         MR. ADELMAN:  Just for the record, there is a valid

21 trademark filed, and it has cleared on B.  So I would disagree.

22 Plus, we've used it in commerce at this point.

23         MS. WILLIS:  Doesn't mean that it is valid.

24         MR. ADELMAN:  It is a valid trademark.

25         THE COURT:  Ms. Willis, I will give you lots of

1    opportunity to speak, but please don't interrupt each other.

2    MR. ADELMAN:  Thank you, your Honor.

3    MS. WILLIS:  It doesn't mean that it is valid, your

4    Honor.  And it certainly does not mean that it is

5    incontestable.  So come on.

6    MR. ADELMAN:  Your Honor --

7    THE COURT:  But it is not in contest here.  And in the

8    settlement conference in this case, the agreement, not with

9    regard to trademark or copyright, but the agreement to settle

10   this case included that Sixuvus could advertise, book

11   performances under, commercially exploit or otherwise use, the

12   name Kings of Disco, but without saying "Kings of Disco,

13   formerly Village People."  They could say, "Kings of Disco,"

14   "Kings of Disco, former members of Village People," "Kings of

15   Disco, formerly members of Village People."  That was discussed

16   at length.

17   But this case is not intended to decide the trademark

18   issue in that regard.

19   I'm not so sure that we came to an agreement,

20   Mr. Adelman, about Mr. Willis using "Kings of Disco."  I'm not

21   so sure that that part of the agreement was reciprocal.  There

22   were certain parts of the agreement that clearly were

23   reciprocal.

24   MR. ADELMAN:  Whether it is or not in the transcript,

25   we have the superior trademark law.

1          THE COURT:  I think it's a separate trademark issue.

2          MR. ADELMAN:  Yes.  It may be.  I'm just saying --

3          THE COURT:  It wouldn't be resolved in settlement

4    here.

5          MR. ADELMAN:  I'm just saying that -- first of all, I

6    think that's a disparagement under the settlement transcript.

7    And you know, I think we have superior trademark rights, and

8    they use "Capital 'K,' Capital 'D.'"  It just shows the

9    purposeful nature of the intervenor, that they're -- you know,

10   again, here with my hands saying that there's issues.  Tell me

11   what they are.  I'm here to help resolve them.  You've heard

12   the intervenor saying, "No matter what happens in the world, I

13   am going to stop them."

14         MS. WILLIS:  That's not what I said, your Honor.

15         MR. ADELMAN:  That's my characterization of it.

16         MS. WILLIS:  Well, thank you.

17         MR. ADELMAN:  That's what I hear.

18         MS. WILLIS:  Your Honor, look.  If they lack the

19   trademark, and if they're saying they'd like to do -- go along

20   with the spirit of the settlement, why not amend the trademark

21   to state "Kings of Disco, former members of Village People"?

22   That's what we talked about there, and they know it.  They're

23   attempting to get to the broad tag of just simply "Kings of

24   Disco."  And that's why it would never stand in the trademark

25   office.

1              THE COURT:  Well, I have to disagree.  The transcript

2    reflects that the discussion was that they could use "Kings of

3    Disco" standing alone, or "Kings of Disco, former members of

4    Village People," or "Kings of Disco, formerly members of

5    Village People."  So long as the "Kings of Disco" was at least

6    as large as anything else or potentially larger than the

7    reference to the Village People, that was discussed at length,

8    and agreed to.  So I'm not quite sure that I can agree with

9    you.

10             I think what I'm going to need to do, unfortunately --

11   and it's not something that I want to do, but I think, in

12   response to Mr. Levy's letter to the Court, I do need to see

13   whatever recordings there are that are relevant to this issue;

14   essentially, to make sure that any concerns about performance,

15   if they are touched upon in the transcript of the settlement

16   discussion, are incorporated into what may be a final and

17   enforceable settlement document.  I haven't come to a complete

18   decision on that, but we are working toward that.  But I don't

19   want to do it here in open court.

20             Is it possible, Mr. Adelman, for you to make those

21   available for us?

22             MR. ADELMAN:  Not only would I be happy to make them

23   available for you, I would like to send -- we have compiled,

24   though it's not in judge form, as I would call it, we would

25   like to send you the breakdown and the explanations that we had

1    prepared to discuss in court, if Mr. Levy had been allowed to

2    bring his projector.  So I would like to present both of those

3    things to you.  And I think that's -- yes, that's fine.

4            THE COURT:  Of course, with service on Ms. Willis --

5            MR. ADELMAN:  Yes.

6            THE COURT:  -- and Mr. Levy --

7            MR. ADELMAN:  Absolutely.

8            THE COURT:  -- and they can respond in any way that

9    they'd like.

10           MR. LEVY:  No objection on our part.  Maybe there's

11   other concerts.

12           You know, when we --

13           THE COURT:  I don't mean to interrupt, but I really

14   don't want to have to watch more concerts than are absolutely

15   necessary.

16           MR. LEVY:  Okay.  So then just those two.

17           MR. ADELMAN:  Yes.

18           MR. LEVY:  When we brought the lawsuit, I remember

19   Judge Seibel (unintelligible) one, we terminate the contract

20   after all these years so abruptly.  And at the trial -- like my

21   client's son runs the company now, spoke, I think, very

22   practically about your clients.  And we all felt bad about it,

23   but we said, "Look.  My client is an 85-year-old man who's been

24   in litigation for almost a decade with the Willises, and he

25   just couldn't take it anymore."  And the idea was that we just

1    said, "Okay.  Sixuvus had their run.  We'll give it to the

2    willises now.  Just leave us alone.  Eighty-five; I have a

3    couple of good years left of my life.  Leave me alone."

4           And we find ourselves in a situation where we just --

5    they should all live and be well and play to their own

6    audiences, and it's fine.  But this constant fighting -- and we

7    keep getting dragged into it, because like well, we're the

8    licensor.  What are we supposed to do?  What we're supposed to

9    do is, can't you guys work it out?  I mean, and they never do,

10   and we want out of the case already.

11          MR. ADELMAN:  We actually did work it out.  We have a

12   settlement transcript.

13          I appreciate what Mr. Levy said, but he's standing

14   there going, "Boo-hoo, poor me," when he's not controlling his

15   own licensee.  He knows that we came to an agreement.  He has

16   control of the licensee.  That's their agreement.  So I just

17   want to add that I don't think it's -- I don't think that he's

18   being dragged into the middle.  I think he's being dragged one

19   way.  I have my --

20          I'm just going to say this.  I don't think Mr. Levy

21   wrote this letter.

22          MR. LEVY:  No, that's not true.

23          MR. ADELMAN:  I could be wrong about that.

24          MS. WILLIS:  We have an agreement to agree, and the

25   Second Circuit will have a lot to say about that.  That's all I

 1    can say on that.

 2            But I can tell you this.  Again, I don't know what

 3    Mr. Adelman is talking about, because there hasn't been

 4    anything from me.  I haven't communicated with him.  I haven't

 5    filed anything with the Court since the time of -- what are

 6    they talking about?  Is he afraid of something?  But there has

 7    been a letter from Mr. Levy here on this.  And there's been

 8    plenty from their side.  So where's the beef? as they used to

 9    say.  I don't know what he's talking about.  He's afraid of

10    what's about to happen.

11            THE COURT:  Look.  Look.  Let me just --

12            MR. ADELMAN:  Yes, your Honor.

13            THE COURT:  I do want to comment, Ms. Willis.

14            You had sent a letter to Judge Seibel about -- saying

15    something about if a decision isn't made within a certain

16    period of time that -- I don't even know -- that somebody wins.

17    But we don't know where that comes from, because there's no

18    such rule in the federal courts.  There are certain

19    consequences in criminal cases if decisions aren't rendered in

20    30 days, the passage of the speedy trial clock, for instance.

21    But it doesn't apply in civil cases.  So I don't want you to

22    think we ignored your letter to that effect.

23            MS. WILLIS:  Oh, absolutely.  I agree, your Honor.

24    And in other words, that was my communication.  That's it.  I

25    wanted to get clarification, but I've not done anything.

1              THE COURT:  Okay.  Mr. Adelman, your turn.

2              MR. ADELMAN:  No, actually, your Honor, I just wanted

3     to say that I'm not going to make any comment in response,

4     because I think your Honor sees right through it.

5              But nevertheless, I would like clarification on one

6     item, and that is, I'm going to send you the videos.  How would

7     you like them?

8              THE COURT:  On regular readable disks.

9              MR. ADELMAN:  That's fine.

10             THE COURT:  And what we will do is, we will have our

11    IT staff just confirm that there's no bad stuff in it before we

12    watch it.

13             MR. ADELMAN:  No.  Absolutely.  That's why I asked.

14    And we'll have that delivered to you.

15             THE COURT:  Good.

16             MR. ADELMAN:  I'd like to ask, due to my schedule --

17    and I want to put this together properly -- if we could have a

18    week to get that to you.

19             THE COURT:  Sure.

20             MR. ADELMAN:  Thank you, your Honor.

21             THE COURT:  Sure.

22             MS. WILLIS:  Your Honor, why -- it was -- your Honor,

23    it was the plaintiff's side that requested this hearing, and

24    wanted to introduce the evidence.  Why should we trust this

25    edited video from them?  We have the unedited.  So I would like

```
 1    to provide that to have Mr. Levy --
 2            THE COURT:  You may send whatever you'd like,
 3    Ms. Willis.
 4            MS. WILLIS:  Thank you.
 5            THE COURT:  And Mr. Levy can send whatever he'd like.
 6            I'm not -- he had offered at the outset to send it.
 7    So I was just taking him up on that offer.  But I'm certainly
 8    not going to prevent you from sending it.  Lord knows we've
 9    been seeing on the news about what happens with edited videos.
10            MR. ADELMAN:  Yes, your Honor.
11            THE COURT:  So I wouldn't want to be looking at
12    something that wasn't complete and accurate.  On the other
13    hand, I'm not going to pretend that I'm going to be watching
14    hours and hours of this concert.  No disrespect, but it's not
15    my favorite music in the world.
16            MR. ADELMAN:  The way that I'm -- the way that we've
17    set up what I'm going to call the "dialogue" is that we're
18    going to give you time stamp numbers.  So the hour-long video,
19    you know, to the extent you want to watch whatever you want,
20    you could probably get through it in under ten minutes.  And
21    the five-minute video, you could probably get finished in under
22    five minutes.
23            THE COURT:  Yes.
24            MR. ADELMAN:  So we're cognizant of the Court's time,
25    and we want to make this is as easy as possible.
```

1              THE COURT:  All right.  And you may send me whatever

2    you'd like.  If you want it to be just portions for whatever

3    reason, just identify what you're sending.  All right?  Fair?

4              Very good.

5              Thank you, everyone.

6              We will try to get you something as soon as possible.

7              MR. ADELMAN:  Appreciate that, your Honor.

8              THE COURT:  Have a nice holiday on Monday.

9              ALL COUNSEL:  Thank you.

10                           -   -   -

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25