

SARAH M. MATZ
PARTNER
SARAH@ADELMANMATZ.COM
DIR: (646) 650-2213

July 15, 2019
**VIA ECF AND E-MAIL**

The Hon. Judge Cathy Seibel
The Hon. Charles L. Brieant Jr.
Federal Building and United States Courthouse
300 Quarropas St., Courtroom: 621
White Plains, NY 10601-4150
chambersnysdseibel@nysd.uscourts.gov

Re: *Can't Stop Productions, Inc. v. Sixuvus, Ltd. et al*. 7:17-cv-06513-CS

Hon. Judge Seibel:

We represent the Sixuvus Defendants in the above referenced action. We write, pursuant to Rule 1.A of Your Honor's Individual Practices and the July 1, 2019 Order of the Court [Dckt. No. 224], to state our position as to Intervenor Karen Willis' ("Intervenor") motion for recovery from bond ("Bond Recovery Motion") [Dckt. No. 218] and motion to dissolve TRO ("TRO Dissolution Motion") [Dckt. No. 219] (collectively the "Intervenor Motions").

On June 24, 2019, Intervenor filed the Bond Recovery Motion to recover from the fifty thousand dollar ($50,000.00) bond (the "Bond") posted by Sixuvus. As the Court will recall Sixuvus initially filed a motion for a TRO and preliminary injunction on November 30, 2017, which the Court granted by the December 1, 2017 Order [Dckt. No. 37] (the "12/1 TRO"), which required Sixuvus to post the Bond. The 12/1 TRO was not issued against Intervenor and did not restrain her from engaging in any conduct. *See* 12/1 TRO; 11/30/17 Tr. Thereafter on December 8, 2019, Intervenor voluntarily chose to file a motion to intervene and to vacate or modify the 12/1 TRO. *See* 12/8/17 Intervenor Motion [Dckt. Nos.: 110]. On December 14, 2017, the Court issued a modified TRO (the "12/14 TRO"), which modified the 12/1 TRO in part and *inter alia* (i) temporarily allowed Intervenor to intervene; (ii) ordered Intervenor to advertise her group as "Village People* featuring Victor Willis" which was how Intervenor's then current tour was already being advertised; and (iii) enjoined Intervenor from disparaging Defendants or interfering with Defendants' booking of live performances. *See* Dckt. No. 52. Intervenor also filed the TRO Dissolution Motion[1] in connection with the March 16, 2018 TRO issued by the Court (the "March TRO"). *See* Dckt. Nos. 127 and 219. Following the Sixuvus Defendants' letter to the Court requesting Your Honor's guidance [Dckt. No. 221], the Court issued a July 1, 2019 Order requiring Intervenor to clarify, with respect to the TRO Dissolution Motion, "if she is seeking any relief beyond the dissolution of the TRO, and state the rule or other basis under which she is moving". *See* Dckt. No. 222. The Court required Intervenor to do so by July 9, 2019 by letter, and ordered that the Sixuvus Defendants "state their positions as to both motions" by July 15, 2019. *See id.* The Sixuvus Defendants reserve their rights to more fully argue their positions in formal opposition briefings, which we presume will be set at the upcoming

[1] Intervenor, through a July 2, 2019 letter to the Court, later clarified that the motion was an emergency motion for clarification and enforcement of order. *See* Dckt. No. 223.

conference.

**I. Intervenor is Not Entitled to Any Damages Requested in the Bond Recovery Motion.** While it is wholly unclear which of the December TRO's Intervenor is moving under, in either scenario, it is the Sixuvus Defendants' position that Intervenor may not recover any part of the Bond for the expenses she allegedly incurred as set forth in her Bond Recovery Motion.

"The only damages recoverable from an injunction bond are those arising from the operation of the injunction itself and not from damages occasioned by the suit independently of the injunction, [] and the injunction must be the proximate cause of the damages." *Medafrica Line, S.P.A. v. Am. W. African Freight Conference*, 654 F. Supp. 155, 156 (S.D.N.Y. 1987) (internal citations omitted). "[T]he wrongfully enjoined party must first demonstrate that the damages sought were proximately caused by the wrongful injunction." *Nokia Corp. v. InterDigital, Inc.*, 645 F.3d 553, 559 (2d Cir. 2011) (*citing Blumenthal v. Merrill Lynch, Pierce, Fenner & Smith, Inc.*, 910 F.2d 1049, 1056 (2d Cir. 1990) ("[Wrongfully enjoined parties] are entitled to damages as may be shown to have been proximately caused by the injunction, up to the amount of the bond." (citation omitted)); *see also Nintendo of Am., Inc. v. Lewis Galoob Toys, Inc.*, 16 F.3d 1032, 1038 (9th Cir. 1994) (requiring that party seeking recovery "establish [ ] with reasonable certainty that it was damaged by the issuance of the injunction")).

Here, none of Intervenor's alleged damages resulted from any allegedly wrongfully issued TRO. The Bond Recovery Motion claims that Intervenor incurred "over $55,000 (Fifty Five Thousand Dollars) in expenses" (the "Alleged Expenses"). These Alleged Expenses purportedly include, attorneys' fees, travel expenses, and miscellaneous costs. However, the Alleged Expenses should not be recovered from the Bond for multiple reasons.

First, none of these expenses were caused by a wrongful injunction and Sixuvus does not concede that either the 12/1 or 12/14 TRO's were 'wrongful injunctions'. More importantly, even if they should not have been issued, they did not wrongfully enjoin Intervenor from anything that has caused damage. The 12/1 TRO did not enjoin Intervenor at all. The 12/14 TRO had her advertise shows using a name that she was already using prior to the 12/14 TRO and provided an exception for compliance if doing so would breach a contract or require re-printing of items already printed. The only behavior Intervenor was enjoined from engaging in was defaming Sixuvus and interfering with their bookings, and Intervenor has not alleged that this caused any of the Alleged Expenses.

Intervenor is not entitled to any outside attorneys' fees requested in the Bond Recovery Motion. Intervenor claims that she was "preparing to head to Australia at the time" presumably after hearing of the 12/1 TRO, and was "forced to hire outside counsel to defend her in compliance with the Sixuvus TRO". *See* Dckt. No. 218. A review of the bills submitted with her motion show that none of those alleged fees were the result of Intervenor's compliance with the 12/14 TRO. The vast majority of fees were for preparing Intervenor's motion to intervene, her pleading that she chose to file and her own motion to modify or vacate the 12/1 TRO, all of which were incurred prior to the 12/14 TRO. *See* ECF Dckt. Nos. 110 and 218-1. Intervenor is also seeking to recover fees for her prior counsel's motion to be relieved. None of these were proximately caused by the 12/1 or 12/14 TRO. Regardless, Intervenor cannot recover attorneys' fees incurred in connection with litigating the motion for the TRO or preliminary injunction "it has long been established that a prevailing party may not generally collect as damages against an injunction bond attorneys' fees expended in litigating the injunction." *IDG USA, LLC v. Schupp*, No. 10-CV-76S F, 2012 WL 5217223, at *8 (W.D.N.Y. Oct. 22, 2012) (*quoting Nokia Corp.*, 645 F.3d at 560). Moreover, the "federal rules of procedure … do not allow recovery of attorneys' fees from bonds posted to secure claims of damages from injunctions." *Almoss, Ltd. v. Furman*, No. 06 CIV 8234 LLS, 2007 WL 1975571, at *1 (S.D.N.Y. July 6, 2007).

Intervenor has not provided any other recoverable expenses in the Bond Recovery Motion. Here, Intervenor has failed to provide any evidence that the other Alleged Expenses were proximately caused by the issuance either of the TRO's at issue. In fact, she has only provided evidence to the

contrary. In her Bond Recovery Motion, Intervenor states that the remainder of the Alleged Expenses were "related to airline travel, hotel, and miscellaneous costs … while defending against the Sixuvus preliminary injunction hearing." *See* Dckt. No. 218. These costs could not have been proximately caused by the issuance of the 12/1 or 12/14 TRO, as the preliminary injunction hearing would have occurred regardless of whether the Court granted temporary relief. It should also be noted that some costs included in Intervenor's Bond Recovery Motion, such as the $8.59 charge for "Mix Bar Dinner – Beer" included in Exhibit B to the Bond Recovery Motion, cannot in any way be deemed recoverable. *Id.*

Furthermore, Intervenor has failed to properly substantiate her Alleged Damages. A "wrongfully enjoined party must … properly substantiate the damages sought." *Nokia Corp.*, 645 F.3d at 559. Not only has Intervenor not itemized the Alleged Expenses or specified a total amount for them, she has not even provided complete documentation to substantiate such expenses. For example, Intervenor has alleged that she has incurred "approximately $1,200 in airfare" expenses, yet she did not include any documentation or receipts to support this statement. *See* Dckt. No. 218.

As such, it is the Sixuvus Defendants' position that as Intervenor is not entitled to any of the Alleged Expenses requested in her Bond Recovery Motion, that the motion should be denied, and the Bond should be returned to the Sixuvus Defendants.

**II. The Sixuvus Defendants Have Complied with the March TRO.** It is also the Sixuvus Defendants' position that they are in compliance with the March TRO and that Intervenor's TRO Dissolution Motion is meritless.

As an initial matter, Intervenor has failed to provide the clarity required by the Court to submit a letter stating "if she is seeking any relief beyond the dissolution of the TRO, and state the rule or other basis under which she is moving." *See* Dckt. No. 222. While Intervenor filed a letter on July 2 and 3, and said she was moving under Rule 7(b)(1), she has not stated with particularity the grounds for the order or the relief sought as required by the Court and Rule 7(b). Indeed, Intervenor seems to continue to seek relief beyond what the March TRO provided for, including what Sixuvus Defendants maintain is permanent injunctive relief, that cannot be granted.

First, it is the Sixuvus Defendants' position that they have complied with the March TRO. Pursuant to the March TRO, the Sixuvus Defendants were required to "disable or freeze to the maximum extent possible . . . their verified Facebook page 'Official Village People,' which obligation may be satisfied by the transfer of the content of that . . . Facebook page to different URLs that do not employ the term 'Village People' except as part of 'Kings of Disco formerly members of Village People' or 'Kings of Disco former members of Village People.'" *See* Dckt. No. 127. The Sixuvus Defendants complied with and Sixuvus is now using its 'Official Kings of Disco' Facebook page (the "KOD Facebook Page"). Defendants have complied with the March TRO as the content that was previously at the Facebook page "Official Village People," is now under different URL's that does not employ the term "Village People"—the KOD Facebook Page is https://www.facebook.com/OfficialKingsOfDisco/, the display name for the page is "Kings Of Disco", and the username for the page is "@OfficialKingsOfDisco". *Id.* As such, Sixuvus fully complied with the March TRO. The KOD Facebook Page has even been verified as 'authentic' by Facebook, as evidenced by the blue checkmark next to the "Kings of Disco" name. *See* **Exhibit 1**. Furthermore, the Sixuvus Defendants no longer operate a Facebook page under the name or URL that contain 'Official Village People' or 'Village People', and as the Court correctly noted in its July 2, 2019 Order, "[o]ne cannot presently access such a page." *See* Dckt. No. 224. Intervenor has not provided any evidence to the contrary or that Defendants have violated the March TRO.

Intervenor herself has conceded that Sixuvus transferred the content to different URL's as she has alleged that Facebook "aided and abetted the Sixuvus Defendant, Kings of Disco ("KOD") with a . . . **transfer** of . . . page likes to the KOD Facebook page". *See* Proposed Amended Complaint [Dckt. No. 207], ¶48 (emphasis added). Intervenor further alleged that "Facebook wrongfully

**transferred** . . . **LIKES**, to the newly formed KOD." *See id.* ¶49 (emphasis added).[2] A true and correct copy of a screenshot taken from the verified KOD Facebook Page is annexed hereto as **Exhibit 1**. Furthermore, the March TRO should not be construed as requiring Sixuvus to have employed a mechanism that Facebook labels "transfer", provided compliance was achieved. There is no distinction between using a mechanism called "transfer" or changing the name and URL so that the content is only available on a new URL that complies with the March TRO. Any argument that there is such a difference, willfully ignores the oral argument that led to the March TRO. During the oral argument, there was extensive argument about the difference between the content and the URL's/visible User Names, and effectuating an order where the URL's/visible User Names no longer contained Village People, but allowing Sixuvus to keep the associated information, data and content. *See* 3/16/18 Conf. Tr. Pp. 17-21, 35-38, 47-48 ("if in that seven days we are able to effectuate a transfer, I'm assuming that would be allowable by this order. THE COURT: Yes, as long as Official Village People and @villagepeople are out of commission."); pp.60-61 ("something along the lines of it wouldn't be a violation if they are able to transfer to a new URL; that they're able to change it, essentially"). Here Sixuvus is not presenting themselves to the public on a Facebook page that purports to be that of Village People, and as such are in compliance with the March TRO. *Id.* Intervenor's argument has no support and indeed contradicts her own judicial admissions that the content was **transferred.**

In addition to the above, it is the Sixuvus' understanding that Intervenor is seeking relief beyond the dissolution of the March TRO. In her TRO Dissolution Motion, Intervenor appears to be requesting that the Sixuvus Defendants be required to turn over the KOD Facebook Page. Such relief is not proper on a motion for clarification—nor has Intervenor filed a TRO motion or for a preliminary injunction supported by evidence that would allow her to request such relief, nor has she presented such evidence here. Even if she did, such relief would not be appropriate on a preliminary basis, as the relief is permanent in nature. Intervenor should also be estopped from re-arguing this issue, now for a third time, as allowing her to do so would be prejudicial to the Sixuvus. As this Court will remember, on June 5, 2019 Intervenor filed an emergency application for a temporary restraining order in the second litigation, *Willis v. Sixuvus, Ltd. et al.* 7:19-cv-04354-CS (the "Willis Action"), where she similarly argued that the manner in which the content was transferred from the verified Facebook page 'Official Village People' to the KOD Facebook Page was impermissible. *See* Dckt. No. 9. After having her day in Court regarding this issue, she voluntarily dismissed the Willis Action after she was unable to demonstrate her entitlement to relief during a full TRO hearing. *See* Dckt. No. 45. This TRO Dissolution Motion came less than ten days after the Willis Action was dismissed. It is extremely unfair and prejudicial to the Sixuvus to have to continuously litigate this issue over and over, as it is a waste of the resources of Sixuvus and this Court.

It is Sixuvus' position that to the extent we understand what Intervenor is seeking, that her requests should be denied.[3] As to Intervenor's additional request to amend her pleading in her July 2, 2019 letter to the Court [Dckt. No.223], the Sixuvus would like to see the proposed amendment prior to it being filed, but in any event believe it should be dealt with in tandem with Intervenor's motion to intervene as the claims she may assert will be affected by the outcome of that motion.

We appreciate the Court's time and consideration, and should Your Honor need any further information, we are available at the Court's convenience.

---

[2] Intervenor made identical allegations in her complaint in *Willis v. Sixuvus, Ltd. et al.* 7:19-cv-04354-CS [Dckt. No. 5], which function as judicial admissions against her.

[3] Sixuvus has not addressed the new arguments and new allegations that Intervenor included with her July 9, 2019 letter replying to Sixuvus' response to the July 2, 2019 Order. Intervenor was not given leave to reply, nor was this information included in Intervenor's three-page letter allegedly clarifying the relief she seeks filed in response to the July 1, 2019 Order. Dckt. No. 223. The letter allowing clarification, was limited to three pages and Sixuvus' response was limited to 4 pages. *See* 7/1 Order. It would be prejudicial for the Court to consider Intervenor's July 9, 2019 four-page letter with additional evidence, which she was not given leave to file, and expect Sixuvus to respond here. Thus, while Sixuvus disputes Intervenor's new allegations, it will not respond to them point by point here.

Respectfully Submitted,

ADELMAN MATZ P.C.

Sarah M. Matz, Esq.

Cc. (*Via ECF*)
All Counsel of Record
Karen Willis *Pro Se*