UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
X----------------------------------------------------------------X
CAN'T STOP PRODUCTIONS, INC.,

                Plaintiff,

    -against-

SIXUVUS, LTD., ERIC ANZALONE, ALEXANDER BRILEY, FELIPE ROSE, JAMES F. NEWMAN, RAYMOND SIMPSON, and WILLIAM WHITEFIELD,

                Defendants.
X----------------------------------------------------------------X

Case No.: 7:17-cv-06513-CS

**MEMORANDUM OF LAW IN OPPOSITION TO INTERVENOR'S MOTION FOR RECOVERY ON SIXUVUS, LTD.'S TRO BOND**

**ADELMAN MATZ P.C.**
*Attorneys for Defendants*
**1173A Second Avenue, Suite 153**
**New York, New York 10065**
**Telephone: (646) 650-2207**

# **TABLE OF CONTENTS**

TABLE OF CONTENTS ............................................................................................................. i

TABLE OF AUTHORITIES ...................................................................................................... ii

PRELIMINARY STATEMENT ................................................................................................. 1

STATEMENT OF FACTS .......................................................................................................... 1

STANDARD OF REVIEW ......................................................................................................... 4

ARGUMENT ............................................................................................................................... 4

   I.   INTERVENOR HAS FAILED TO PROPERLY SUBSTANTIATE HER ALLEGED EXPENSES ................................................................................................ 5

   II.   INTERVENOR HAS FAILED TO DEMONSTRATE THAT SHE SUFFERED DAMAGES THAT WERE PROXIMATELY CAUSED BY EITHER OF THE DECEMBER TROS ............................................................................................................ 6

      A.   The Attorneys' Fees Incurred By Intervenor Are Not Recoverable ............................ 7

      B.   The Remainder Of The Alleged Expenses Requested By Intervenor Are Not Recoverable From The TRO Bond ................................................................................. 9

   III.   INTERVENOR HAS NOT BEEN 'WRONGFULLY ENJOINED' BY EITHER OF THE DECEMBER TROS ................................................................................................. 10

      A.   It Cannot Be Determined That Intervenor Has Been 'Wrongfully Enjoined' Until There Is A Final Adjudication On The Merits ............................................... 11

      B.   The December TROs Did Not Wrongfully Enjoin Intervenor From Any Conduct That She Had The Right To Engage In ...................................................... 12

   IV.   GOOD REASON EXISTS TO DENY INTERVENOR'S BOND RECOVERY MOTION ................................................................................................... 13

   V.   THE TRO BOND SHOULD BE DISCHARGED ...................................................... 15

CONCLUSION .......................................................................................................................... 15

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Almoss, Ltd. v. Furman*,
  2007 WL 1975571 (S.D.N.Y. July 6, 2007) ............................................................................. 7

*Arista Records LLC v. Lime Group LLC*,
  784 F. Supp. 2d 398 (S.D.N.Y. 2011) ...................................................................................... 5

*Blumenthal v. Merrill Lynch, Pierce, Fenner & Smith, Inc.*,
  910 F.2d 1049 (2d Cir. 1990) ............................................................................................ 4, 12

*Chevron Corp. v. Donziger*,
  2012 WL 1080288 (S.D.N.Y. Apr. 2, 2012) .......................................................................... 15

*Int'l Bus. Machs. Corp. v. Johnson*,
  2009 WL 2356430 (S.D.N.Y. July 30, 2009) ........................................................................ 15

*Kirby v. Wildenstein*,
  784 F. Supp. 1112 (S.D.N.Y. 1992) ...................................................................................... 13

*Kirch v. Liberty Media Corp.*,
  449 F.3d 388 (2d Cir. 2006) .................................................................................................. 13

*Medafrica Line, S.P.A. v. Am. W. African Freight Conference*,
  654 F. Supp. 155 (S.D.N.Y. 1987) ...................................................................................... 8, 9

*Nintendo of Am., Inc. v. Lewis Galoob Toys, Inc.*,
  16 F.3d 1032 (9th Cir. 1994) ............................................................................................... 8, 9

*Nokia Corp. v. Interdigital, Inc.*,
  645 F.3d 553 (2d Cir. 2011) ..................................................................................... 4, 5, 7, 14

*Tetra Techs., Inc. v. Harter*,
  823 F. Supp. 1116 (S.D.N.Y. 1993) ........................................................................................ 6

*Tilcon Minerals, Inc. v. Orange & Rockland Utils., Inc.*,
  851 F. Supp. 529 (S.D.N.Y. 1994) ........................................................................................ 15

*U.S. D.I.D. Corp. v. Windstream Commc'ns, Inc.*,
  775 F.3d 128 (2d Cir. 2014) ............................................................................................ 11, 12

*United States v. Pluta*,
  176 F.3d 43 (2d Cir. 1999) ...................................................................................................... 5

*Univ. of Tex. v. Camenisch*,
  451 U.S. 390 (1981) ............................................................................................................... 11, 12

**Rules**

Fed.R.Evid. 901(a) ............................................................................................................................ 5

**Other Authorities**

James Wm. Moore et al., Moore's Federal Practice § 65.50[3] (3d ed.2011) ................................. 7

Defendants, through their attorneys, respectfully submit this memorandum of law in opposition to Intervenor Karen L. Willis' ("Intervenor") motion for recovery on Sixuvus, Ltd.'s ("Sixuvus") TRO Bond.

## PRELIMINARY STATEMENT

This instant motion is a baseless attempt by Intervenor to recover costs from Sixuvus' TRO Bond that Intervenor is not entitled to. Not only has intervenor failed to support her motion with admissible evidence or an itemization of costs, as required, Intervenor's motion utterly fails to make any showing that the fees and costs sought are a direct result of a wrongfully issued injunction. Indeed, as there has been no final adjudication on the merits, the Court cannot find that the injunction was wrongfully issued as a matter of law.

As more fully set forth herein, Intervenor's failure to make any of the showings required to be entitled to recover from the Sixuvus' TRO Bond mandates a denial of Intervenor's motion and the discharge of Sixuvus' TRO Bond.

## STATEMENT OF FACTS

Following Can't Stop Productions, Inc.'s ("Plaintiff" or "Can't Stop") abrupt, and wrongful attempt to terminate Sixuvus' long standing license to the "Village People" trademark, in order to preserve the *status quo* during the pendency of this dispute, Defendants filed for an Order to Show Cause to obtain a temporary restraining order and a preliminary injunction to obtain immediate injunctive relief to stop Can't Stop from taking any action that would disrupt or prevent any live performance or public appearance of Sixuvus performing as Village People. *See* Dckt. Nos. 41-46. Following a hearing on the Order to Show Cause in front of the Honorable Cathy Seibel on November 30, 2017 (Dckt. No. 36), Judge Seibel issued an Order dated December 1, 2017 (the "12/1/17 TRO") allowing Sixuvus to perform as "The Legendary

Village People" with certain conditions as set forth therein until the preliminary injunction hearing.  *See* Dckt. No. 37.  In connection therewith, Defendants were required to post a fifty thousand dollar ($50,000.00) bond (the "TRO Bond"), which was posted on December 4, 2017.  *See* Dckt. on 12/04/2017.  As discussed and determined during the November 30, 2017 hearing, the 12/1/17 TRO was not issued against Intervenor, who was not a named party to the action at that time, and as specifically discussed at the November 30, 2017 hearing, the 12/1/17 TRO would not apply to her or restrain her from engaging in any conduct. *See* Dckt. No. 37; *see also* 11/30/17 Tr. 15:3-10; 22:4-23:5.

On December 8, 2017, upon her own volition, Intervenor chose to attempt to intervene in this action by filing an Order to Show Cause requesting permission to intervene and to vacate or dissolve the 12/1/17 TRO.[1]  Following a hearing on December 8, 2017 on Intervenor's application, the District Court issued an Order dated December 14, 2017 (the "12/14/17 TRO") that modified the 12/1/17 TRO. *See* Dckt. No. 52.

The 12/14/17 TRO, which was also conditioned upon maintaining the TRO Bond, permitted Intervenor's group to continue booking performances as "'Village People* featuring Victor Willis'", which was the name Intervenor's group had already been using prior to the 12/14/17 TRO.[2]  *See* Dckt. No. 52; *see also* Dckt. No. 46-7.  The 12/14/17 TRO also allowed Sixuvus to book performances as "'Village People* featuring' followed by the name of an

---

[1] Intervenor's Order to Show Cause and supporting papers were not filed on ECF at the time they were brought before the Court on December 8, 2016.  Pursuant to a later oral direction by the Court, Intervenor's Order to Show Cause with supporting papers were electronically filed by Intervenor on February 12, 2018.  *See* Dckt. No. 110.

[2] Intervenor was also given the option to have that name "followed by the names of any other individuals that Willis (and her licensees, including Victor Willis) chooses to feature".  *See* Dckt. No. 52.

2

individual group member or members of Sixuvus' choosing", and required that the parties utilize the following disclaimer "language: '*The trademark "Village People' is the subject of litigation. There are two groups performing under the name 'Village People.'" *See* Dckt. No. 52.  At Intervenor's counsel's request, the 12/14/17 TRO carved out an exception for instances where the above mentioned language would not be feasible by specifically not requiring the usage of the language when using it would result in the "breach a contract and a modification with the other party cannot be reasonably achieved."  *See* Dckt. No. 52.

Even though it established all of the foregoing conditions, the 12/14/17 TRO only actually enjoined Intervenor from "(i) disparaging any of the Defendants; and (ii) interfering with or preventing Defendants from booking live performances, advertising live performances, accepting live engagements, performing live … and/or taking other necessary actions in connection with the foregoing". *See* Dckt. No. 52.

A preliminary injunction hearing was held in connection with Defendants' motion on January 29 through February 1, 2018, and February 6, 2018.  On February 12, 2018, the parties submitted proposed findings of fact and conclusions of law. *See* Dckt. Nos. 104-106.  Thereafter the Court issued an Order dated February 16, 2018, which denied Defendants' motion for a preliminary injunction and vacated the 12/14/17 TRO, which was followed by an Order, dated March 6, 2018, that explained the Court's reasoning. *See* Dckt. 115; s*ee also* Dckt. 118.

On June 24, 2019, Intervenor filed this motion for recovery on the TRO Bond (the "Bond Recovery Motion"). *See* Dckt. No. 218.  The Bond Recovery Motion claims that Intervenor incurred "over $55,000 (Fifty Five Thousand Dollars) in expenses", which included "attorneys' fees, travel expenses, and miscellaneous costs" (the "Alleged Expenses"), and seeks recovery of same from the TRO Bond. *See* Dckt. No. 218.

## STANDARD OF REVIEW

"Under Fed.R.Civ.P. 65(c), a party subjected to a preliminary injunction in district court who is later found to have been 'wrongfully enjoined' may recover against the security bond damages suffered as a result of the injunction." *Blumenthal v. Merrill Lynch, Pierce, Fenner & Smith, Inc.*, 910 F.2d 1049, 1051 (2d Cir. 1990). In order to recover from such a bond, it must be found that the moving party was "wrongfully enjoined" and therefore "had at all times the right to do the enjoined act." *Id.* at 1054. In addition to this, the 'wrongfully enjoined' party must: (i) "demonstrate that the damages sought were proximately caused by the wrongful injunction"; and (ii) "properly substantiate the damages sought." *See Nokia Corp. v. Interdigital, Inc.*, 645 F.3d 553, 559 (2d Cir. 2011). Following an establishment of the foregoing elements, a party "is entitled to a presumption in favor of recovery." *Nokia Corp.*, 645 F.3d at 559. However, such a presumption may be rebutted upon a finding that "good reason" exists to deny recovery from the bond. *Id.*

## ARGUMENT

Despite Intervenor's failure to specify whether the Bond Recovery Motion seeks recovery under the 12/1/17 TRO or the 12/14/17 TRO (collectively the "December TROs")[3], under either scenario, it is clear that Intervenor may not recover the Alleged Expenses from the TRO Bond. Intervenor has failed to properly substantiate the Alleged Expenses she is seeking and has failed to demonstrate that the Alleged Expenses were proximately caused by either of the December TROs. Moreover, Intervenor has not and cannot show that she was 'wrongfully enjoined' by either of the December TROs, because there has been no final adjudication on the

---

[3] Intervenor's Bond Recovery Motion fails to specify the TRO that Intervenor is moving under. *See* Dckt. No. 218.

merits. Further, 'good reason' exists to deny Intervenor's Bond Recovery Motion, as the Alleged Expenses are unreasonable in amount and Intervenor has further failed to mitigate them.

### I. INTERVENOR HAS FAILED TO PROPERLY SUBSTANTIATE HER ALLEGED EXPENSES

As Intervenor's Bond Recovery Motion is not accompanied by a declaration, Intervenor has failed to present evidence of fees and costs in an admissible form. Even if she had, Intervenor's motion would still be deficient as the Alleged Expenses are not itemized, nor is there documentation to substantiate all of them.

As Intervenor is aware, a "wrongfully enjoined party must … properly substantiate the damages sought." *Nokia Corp.*, 645 F.3d at 559. While "proof of damages d[oes] not need to be to a mathematical certainty", a moving party still has to meet the minimal requirements for substantiating alleged expenses. *Id.*

Despite citing precedent that acknowledges this rule, Intervenor has failed to properly introduce any proof of the Alleged Damages in her Bond Recovery Motion. "Rule 901 of the Federal Rules of Evidence requires evidence to be authenticated or identified before it is admitted." *Arista Records LLC v. Lime Group LLC*, 784 F. Supp. 2d 398, 419 (S.D.N.Y. 2011) (*citing* Fed.R.Evid. 901(a)). "The authentication prerequisite simply requires the proponent to submit 'evidence sufficient to support a finding that the matter in question is what its proponent claims.'" *United States v. Pluta*, 176 F.3d 43, 49 (2d Cir. 1999) (*quoting* Fed.R.Evid. 901(a)). Here, Intervenor's Bond Recovery Motion fails to provide any evidence of her Alleged Expenses in admissible form, such as through a supporting affidavit or declaration, or to authenticate the exhibits submitted in connection therewith. *See* Dckt. Nos. 218, 218-1, 218-2, 218-3, 218-4. Instead, Intervenor's Bond Recovery Motion blindly attaches receipts and invoices for her Alleged Expenses, which have been partially edited by Intervenor, as exhibits to her

5

memorandum of law. *See id*. In so doing, Intervenor has improperly attempted to introduce such documents as exhibits to her Bond Recovery Motion. As such, Exhibits A-D to the Bond Recovery Motion should be deemed inadmissible.

In addition to the foregoing, Intervenor's Bond Recovery Motion has failed to itemize the Alleged Expenses or specify a total amount for them. *See* Dckt. No. 218. As stated above, Intervenor has simply attached receipts and invoices for her Alleged Expenses as exhibits to her Bond Recovery Motion and then claimed that she "incurred over $55,000 … in expenses". *See* Dckt. Nos. 218, 218-1, 218-2, 218-3, 218-4. This failure to even attempt to describe her Alleged Expenses and give reasons why they were proximately caused by the December TROs falls far short of the requirement of proper substantiation.[4]

Furthermore, Intervenor's Bond Recovery Motion does not provide documentary evidence to support all of her Alleged Expenses. By way of example, the Bond Recovery Motion has merely argued that Intervenor has incurred "approximately $1,200 in airfare" expenses, without even an exhibit or a declaration to support such statement. *See* Dckt. No. 218.

Intervenor's Bond Recovery Motion has failed, in multiple respects, to properly substantiate any of her Alleged Expenses. As such, Intervenor should not be allowed to recover the Alleged Expenses from the TRO Bond.

## II. INTERVENOR HAS FAILED TO DEMONSTRATE THAT SHE SUFFERED DAMAGES THAT WERE PROXIMATELY CAUSED BY EITHER OF THE DECEMBER TROS

---

[4] Intervenor should further not be permitted to correct such failures in her reply. *See Tetra Techs., Inc. v. Harter*, 823 F. Supp. 1116, 1120 (S.D.N.Y. 1993) (prohibiting a party from raising "entirely new but foreseeable points" relevant to a motion in its reply affidavit).

In addition to the above, the Alleged Expenses, which purportedly include, attorneys' fees, travel expenses, and miscellaneous costs, are not recoverable because Intervenor has failed to demonstrate that they were proximately caused by either of the December TROs.

A 'wrongfully enjoined' party must "demonstrate that the damages sought were proximately caused by the wrongful injunction." *Nokia Corp.*, 645 F.3d at 559.

### A. The Attorneys' Fees Incurred By Intervenor Are Not Recoverable

The attorneys' fees included in the Alleged Expenses, which include attorneys' fees for generally litigating the December TROs, and other miscellaneous attorneys' fees occasioned by the suit independently of the injunction, are not recoverable from the TRO Bond.

*First,* well settled law precludes Intervenor from recovering the attorneys' fees incurred in connection with the litigation of the December TROs. "[I]t has long been established that a prevailing party may not generally collect as damages against an injunction bond attorneys' fees expended in litigating the injunction." *Nokia Corp.*, 645 F.3d at 560. Moreover, the "federal rules of procedure … do not allow recovery of attorneys' fees from bonds posted to secure claims of damages from injunctions." *Almoss, Ltd. v. Furman*, No. 06 CIV 8234 LLS, 2007 WL 1975571, at *1 (S.D.N.Y. July 6, 2007); *see also* James Wm. Moore et al., Moore's Federal Practice § 65.50[3], at 65–100 (3d ed.2011) ("[T]he proceeds from such a bond may not be applied to compensate for attorney's fees.").

In the Bond Recovery Motion, Intervenor has requested recovery for various attorneys' fees that were incurred in connection with the litigation of the December TROs. *See* Dckt. No. 218-1. For example, Intervenor has requested recovery for her counsel's "[a]ttendance at court in White Plains; oral argument/hearing on TRO" and "[m]eet[ing] with B. Kaplan re: revised TRO." *See id*. It is clear that such fees were incurred in litigating the injunction. Intervenor has

7

even admitted the same, as her Bond Recovery Motion states the fees were incurred because she was "forced to hire outside counsel to defend her in compliance with the Sixuvus TRO". *See* Dckt. No. 218. However, as set forth above, the Second Circuit has generally held that attorney's fees spent in litigating the injunction are not recoverable. As such, Intervenor cannot recover these fees here.

The remainder of the attorneys' fees requested in the Bond Recovery Motion are also not recoverable from the TRO Bond, as they are miscellaneous fees occasioned by the suit itself that are independent of the injunction. Courts in this Circuit have generally held that "[t]he only damages recoverable from an injunction bond are those arising from the operation of the injunction itself and not from damages occasioned by the suit independently of the injunction, [] and the injunction must be the proximate cause of the damages." *Medafrica Line, S.P.A. v. Am. W. African Freight Conference*, 654 F. Supp. 155, 156 (S.D.N.Y. 1987) (internal citations omitted); *see also Nintendo of Am., Inc. v. Lewis Galoob Toys, Inc.*, 16 F.3d 1032, 1038 (9th Cir. 1994) (requiring that party seeking recovery "establish [ ] with reasonable certainty that it was damaged by the issuance of the injunction")).

Contrary to this well settled law, Intervenor is trying to recover attorneys' fees and costs that do not arise from the operation of the December TROs. The remainder of the attorneys' fees that Intervenor's Bond Recovery Motion seeks were independent of the injunction, such as the preparation and submission of Intervenor' motion to intervene and proposed intervenor complaint. *See* Dckt. No. 218-1. The Bond Recovery Motion requests thousands of dollars for services rendered in connection with these independently incurred costs, such as "[r]eview and revise affidavits; draft complaint; memo of law; telephone and emails with Karen; email Levy and Adelman", "[r]esearch/draft brief and counterclaim", and "[d]raft/revise brief and pleading;

8

call with Client". *See id*. It is clear that these charges did not arise in connection with the operation of the December TROs, as neither injunction required her to intervene in the case or make such motions. *See* Dckt. Nos. 32 and 52. In fact, the 12/1/18 TRO did not enjoin Intervenor, as it was entered prior to Intervenor joining this action and solely permitted Sixuvus to perform as "The Legendary Village People" with certain conditions as set forth therein. *See* Dckt. No. 32. Furthermore, all but six of the forty-three itemized attorneys' services detailed in Exhibit A to Intervenor's Bond Recovery Motion were rendered prior to the 12/14/18 TRO. *See* Dckt. No. 218-1. As a result, such attorneys' fees could not have been proximately caused by the December TROs.

As set forth above, Intervenor has failed to demonstrate that the attorneys' fees sought that were proximately caused by the either of the December TROs and, as such, Intervenor cannot recover any of the attorneys' fees requested in the Bond Recovery Motion.

### B. The Remainder Of The Alleged Expenses Requested By Intervenor Are Not Recoverable From The TRO Bond

While perhaps to the contrary of what she intended, Intervenor's Bond Recovery Motion also demonstrates that the remaining costs she seeks were not caused by either of the December TROs and as such cannot be recovered.

As set forth above, "[t]he only damages recoverable from an injunction bond are those arising from the operation of the injunction itself and not from damages occasioned by the suit independently of the injunction, [] and the injunction must be the proximate cause of the damages." *Medafrica Line, S.P.A.*, 654 F. Supp. at 156 (internal citations omitted); *see also Nintendo of Am., Inc.*, 16 F.3d at 1038 (requiring that party seeking recovery "establish [ ] with reasonable certainty that it was damaged by the issuance of the injunction")).

9

The remainder of the Alleged Expenses that Intervenor claims in her Bond Recovery Motion are "related to airline travel, hotel, and miscellaneous costs … while defending against the Sixuvus preliminary injunction hearing". *See* Dckt. No. 218.[5]  Not only has Intervenor failed to demonstrate how these unsubstantiated costs relate to the operation of the December TROs, the evidence she has provided actually shows that they do not.  In stating that such costs were incurred during Intervenor's appearance at the preliminary injunction hearing held on January 29 through February 1, 2018, and February 6, 2018, Intervenor has admitted that such costs could not have been proximately caused by the issuance of the December TROs.  This is because the preliminary injunction hearing would have occurred regardless of whether or not the Court had granted the temporary injunctive relief provided in the December TROs.[6]  As such, the airline expenses, hotel expenses, and other miscellaneous expenses claimed were not a result of the December TROs.  In addition to this, it should also be noted that some of Intervenor's requested expenses, including an eight dollar and fifty-nine cent ($8.59) charge for "Mix Bar Dinner – Beer", could not be deemed recoverable under any circumstances. *See* Dckt. No. 218.

Since Intervenor has failed to provide or request any costs other than the Alleged Expenses identified above, which were not proximately caused by the operation of either of the December TROs, Intervenor cannot recover from the TRO Bond.

**III.   INTERVENOR HAS NOT BEEN 'WRONGFULLY ENJOINED' BY EITHER OF THE DECEMBER TROS**

---

[5] Some of the stated costs appear to have been incurred between January 23 through January 26, 2017, which was long prior to the preliminary injunction hearing. It seems that these costs were actually incurred in connection with the January 25, 2018 mediation in this action, which Intervenor agreed to appear at voluntarily.  *See* Dckt. Nos. 218-2 and 218-3; *see also* 12/8/17 Tr.

[6] This is also the case with the January 25, 2018 mediation, and the costs that appear to have been incurred in connection therewith.

Even if Intervenor had substantiated her Alleged Expenses and demonstrated that they were proximately caused by the December TROs, she would still not be able to recover from the TRO Bond because she cannot demonstrate that she was 'wrongfully enjoined'. Although Defendants "bear[] the burden of establishing that [Intervenor] was not wrongfully restrained", the Court cannot currently make a determination that a wrongful restraint occurred because of the posture of the case. *U.S. D.I.D. Corp. v. Windstream Commc'ns, Inc.*, 775 F.3d 128, 140 (2d Cir. 2014).

### A. It Cannot Be Determined That Intervenor Has Been 'Wrongfully Enjoined' Until There Is A Final Adjudication On The Merits

As an initial matter, the Bond Recovery Motion cannot be granted because there has not been a final adjudication on the merits in this action and therefore it cannot be determined that there was a 'wrongful injunction'.

A determination that a party was 'wrongfully restrained' "generally ... must be resolved by a trial on the merits." *U.S. D.I.D. Corp.*, 775 F.3d at 138 (*quoting Univ. of Tex. v. Camenisch*, 451 U.S. 390, 396 (1981)).[7] "That is because it is the final adjudication on the merits, after the full presentation of the parties' cases, that ordinarily establishes whether the defendant should not have been engaging in the conduct that was enjoined." *Id*. "TRO and preliminary injunction proceedings do not typically give the parties 'the benefit ... of a full opportunity to present their cases [ ]or ... a final judicial decision based on the actual merits of the controversy.'" *Id.* (*quoting Camenisch*, 451 U.S. 390, 396 (1981)).

---

[7] In *U.S. D.I.D. Corp.*, as an exception to this general rule, the Court found that there was no need for a final adjudication on the merits, as the plaintiff voluntarily dismissed the action following the order of temporary relief and thereby "abandoned its right to 'a full opportunity to present [its] case[ ] [or] of a final judicial decision based on the actual merits of the controversy.'" *U.S. D.I.D. Corp.*, 775 F.3d at 138 (*quoting Camenisch*, 451 U.S. at 396). However, that exception to the general standard is inapplicable here.

11

As the Court is aware, Defendants have yet to be given the full opportunity to present their case. The pleadings in this case have yet to be finalized, discovery has yet to take place, and it has not even been determined if Intervenor will be able to remain a party to this action. Without the occurrence of such events, it would be impossible for Defendants to possibly make a full presentation of their case. Until such opportunity is given, the Court cannot make a determination that Intervenor was 'wrongfully enjoined' or permit any recovery from the TRO Bond as a matter of law. As such, the Bond Recovery Motion should be denied.

### B. The December TROs Did Not Wrongfully Enjoin Intervenor From Any Conduct That She Had The Right To Engage In

In addition to the above, Intervenor could not have been 'wrongfully enjoined' by either of the December TROs, as neither enjoined her from any conduct that she had the right to engage in.

"A party has been 'wrongfully enjoined' under Fed.R.Civ.P. 65(c) if it is ultimately found that the enjoined party had at all times the right to do the enjoined act." *Blumenthal*, 910 F.2d at 1054; *see also U.S. D.I.D. Corp.*, 775 F.3d at 140 ("A plaintiff may satisfy [its] burden by showing that the defendant did not have the legal right to engage in the conduct restrained while the TRO was in effect, notwithstanding the denial of the preliminary injunction.")

Here, the December TROs did not enjoin Intervenor from any such conduct. In fact, the 12/1/17 TRO, which was entered prior to Intervenor joining this action, was not issued against Intervenor and was specifically construed so that it would not restrain her from engaging in any conduct. *See* Dckt. No. 37; *see also* 11/30/17 Tr. In addition, the 12/14/17 TRO allowed Intervenor to continue to engage in conduct that she was already engaging in. Specifically, the 12/14/17 TRO permitted Intervenor's group to book performances as "'Village People* featuring Victor Willis' followed by the names of any other individuals that Willis (and her licensees,

12

including Victor Willis) chooses to feature", which was the name that Intervenor's group had already been using in connection with his group's rendition of musical performances. *See* Dckt. No. 46-7 (Screenshots taken from Victor Willis' Facebook and Twitter pages on November 30, 2017, which evidence the utilization of "Village People featuring Victor Willis" prior to the 12/14/17 TRO).  The only conduct that the 12/14/17 TRO enjoined Intervenor from was "(i) disparaging any of the Defendants; and (ii) interfering with or preventing Defendants from booking live performances, advertising live performances, accepting live engagements, performing live … and/or taking other necessary actions in connection with the foregoing".  *See* Dckt. No. 52.  Intervenor has not claimed any damages flowing from the injunctive relief.  Furthermore and regardless of the enjoinment, Intervenor did not have a legal right to engage in either of those enjoined acts, as such actions would have opened Intervenor up to civil liability.  This is because New York recognizes causes of action for both commercial disparagement and tortious interference with contract.  *See Kirby v. Wildenstein*, 784 F. Supp. 1112, 1115 (S.D.N.Y. 1992) (recognizing a commercial disparagement claim and applying New York law); *see also Kirch v. Liberty Media Corp.*, 449 F.3d 388, 400 (2d Cir. 2006) (recognizing a tortious interference with contract claim and applying New York law).  As such it cannot be said that the TRO did enjoined Intervenor from any conduct that she had a legal right to engage in.  Furthermore, the 12/1/17 TRO did not enjoin intervenor from any conduct at all.  Since the December TROs did not 'wrongfully enjoin' Intervenor from any conduct that she had the right to engage in, she has no right to recovery from the TRO Bond.

**IV.     GOOD REASON EXISTS TO DENY INTERVENOR'S BOND RECOVERY MOTION**

13

It is clear that the Bond Recovery Motion has failed to show that Intervenor is entitled to a presumption in favor of recovery. *See* Sections I-III, *supra*. However, even if Intervenor had been able to do so, 'good reason' exists to deny Intervenor's Bond Recovery Motion.

Even if a party has established that it was 'wrongfully enjoined' and that it suffered damages proximately caused by the injunction, the Court may still deny recovery for "good reason." *Nokia Corp.*, 645 F.3d at 559. "Good reasons to deny recovery of all or a portion of the alleged damages would be that the damages sought were unreasonable in amount or that a party failed to mitigate them." *Id.*

Here, the Alleged Expenses requested by Intervenor are unreasonable in amount and Intervenor has failed to mitigate them. This is because Intervenor's Alleged Expenses are all self-imposed. At the time the 12/1/17 TRO was issued, Intervenor was not enjoined by it or even a party to this action. The 12/1/17 TRO simply functioned to preserve the *status quo* between Can't Stop and Defendants, and prevented Can't Stop from taking any action that would disrupt or prevent any live performance or public appearance of Sixuvus performing as "The Legendary Village People". *See* Dckt. No. 37. While Intervenor could have easily permitted Can't Stop, the plaintiff and alleged owner of the Village People trademark, to continue its litigation of this action and thereby have mitigated all of her Alleged Expenses, Intervenor, on her own volition, decided to request permission to intervene in this action and attempted to vacate and/or dissolve the 12/1/17 TRO. In so doing, Intervenor proceeded to incur an unreasonable amount of expenses, which allegedly amount to "over $55,000 (Fifty Five Thousand Dollars)". *See* Dckt. Nos. 218. As such, the attorneys' fees, travel expenses, and miscellaneous costs that she has requested in her Bond Recovery Motion were unnecessarily incurred and could have been completely avoided. As such, 'good reason' exists to deny Intervenor's Bond Recovery Motion.

14

## V.     THE TRO BOND SHOULD BE DISCHARGED

Although it cannot be currently be determined if there was a 'wrongful injunction', the Court may nonetheless order the discharge of the TRO Bond.  It is appropriate for a Court to discharge an injunction bond following a determination that there cannot be any recovery from the bond.  *See Chevron Corp. v. Donziger*, No. 11 CIV. 0691 LAK, 2012 WL 1080288, at *2 (S.D.N.Y. Apr. 2, 2012) (exonerating and discharging a bond following a finding that a preliminary injunction could not have "caused any injury to the defendants for which they are able to recover.")  As shown above, Intervenor's Bond Recovery Motion makes clear that Intervenor will not be able to recover from the TRO Bond, as she has failed to properly substantiate the damages she is seeking or demonstrate that the Alleged Expenses were proximately caused by either of the December TROs.[8]  As such, in addition to denying Intervenor's Bond Recovery Motion, the Court should also discharge the TRO Bond and return it to Sixuvus.

## **CONCLUSION**

Based upon the foregoing, Intervenor should not be allowed to recover any of the Alleged Expenses from the TRO Bond, the Bond Recovery Motion should be denied, and the TRO Bond should be discharged and returned to Sixuvus.

---

[8] Intervenor also cannot submit another motion for recovery from the TRO Bond.  *See Tilcon Minerals, Inc. v. Orange & Rockland Utils., Inc.*, 851 F. Supp. 529, 531 (S.D.N.Y. 1994) ("Separate adjudication of piecemeal motions are not favored under the Federal Rules of Civil Procedure."); *see also Int'l Bus. Machs. Corp. v. Johnson,* No. 09 CIV. 4826 (SCR), 2009 WL 2356430, at *2 (S.D.N.Y. July 30, 2009) (denying request for leave to file a second motion and noting that "parties ought to be held to the requirement that they present their strongest case for [relief] when the matter is first raised") (quotations and citations omitted).

Dated: New York, New York  
      August 19, 2019

Respectfully submitted,  
ADELMAN MATZ P.C.

By: _____  
   Sarah M. Matz, Esq.  
   Gary Adelman, Esq.  
1173A Second Avenue, Suite 153  
New York, New York 10065  
Tel: (646) 650-2207  
Email: sarah@adelmanmatz.com  
Email: g@adelmanmatz.com  
*Attorneys for Defendants*