201952cant c

1  UNITED STATES DISTRICT COURT
   SOUTHERN DISTRICT OF NEW YORK
2  ------------------------------------x

3  CAN'T STOP PRODUCTIONS, INC.,

4                   Plaintiff,

5

6          v.                          17 Civ. 6513(CS)

7                                        CONFERENCE

   SIXUVUS, LTD., et al.,
8
                  Defendants,
9

10         v.

11

   KAREN WILLIS, doing business as
12 Harlem West Entertainment,

13                Intervenor.

14 ------------------------------------x

15

16

17                                    United States Courthouse
                                      White Plains, N.Y.
18                                    May 2, 2019
                                      2:35 p.m.
19

20

21 Before:   THE HONORABLE CATHY SEIBEL,

22                                    District Judge

23

24

25

1                              **APPEARANCES**

2

3    **EISENBERG, TANCHUM & LEVY**
          **Attorneys for Plaintiff**
     **STEWART L. LEVY**

4

5

6    **ADELMAN, MATZ, P.C.**
          **Attorneys for Defendants**
     **GARY PHILIP ADELMAN**
7    **SARAH MICHAL MATZ**

8

9    **KAREN WILLIS, Pro Se Intervenor (via telephone)**

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

```
 1              THE DEPUTY CLERK:  The Honorable Cathy Seibel

 2   presiding.

 3              Can't Stop Productions v. Sixuvus.

 4              THE COURT:  Good afternoon.

 5              Ms. Willis, can you hear me?

 6              MS. WILLIS:  I can, your Honor.

 7              THE COURT:  Very good.

 8              Mr. Levy, good afternoon

 9              MR. LEVY:  Good afternoon.

10              THE COURT:  And Ms. Matz and Mr. Adelman.

11              Everyone can have a seat

12              MR. ADELMAN:  Good afternoon, your Honor.

13              THE COURT:  Don't take this the wrong way, but I'm

14   not that psyched to see you again.  But here we are.

15              I've got letters.  I have the joint letter from

16   Mr. Levy and Ms. Matz, which is dated the 29th.  I have

17   Ms. Willis' response to that letter, also dated the 29th.  I

18   have Ms. Matz' response to that dated the 30th as well as

19   Ms. Willis' April 24th application to file an amended

20   intervenor complaint.

21              There's a few moving parts here.

22              MR. LEVY:  Your Honor, I have an update that might be

23   relevant before you get into it.

24              THE COURT:  Go right ahead.

25              MR. LEVY:  We've reached a -- Can't Stop and Sixuvus
```

1    have reached, about two hours ago, a tentative settlement with

2    the two parties.  It doesn't bind Ms. Willis.  We reached

3    agreement on all the material terms.  I just got approval from

4    my client about 30 minutes ago.  He's in Paris.  And he

5    instructed me to say, look, we agree to the settlement, it's

6    pretty simple, but it's tentative until it's in writing because

7    the last time we tried putting it in writing, everything

8    collapsed.

9              THE COURT:  That was going to be my first question.

10   Are you contemplating a formal writing before you intend to be

11   bound?

12             MR. LEVY:  Yes.  But what we did is, learning from

13   our past mistakes, or my past mistakes, I'll take blame for it,

14   we're going to keep it simple.  I think the last time we tried

15   it, we were in the weeds too much, so we're going to keep it

16   simple.  I think we've agreed on all material terms.

17             Again, I know this is a jury trial and the Court

18   could have more discretion on settlement talks, but I think, at

19   this point, we probably shouldn't divulge anything yet until we

20   get it in writing.

21             The one thing that I think we should say, it does

22   take from the last settlement Magistrate Judge Smith's offer to

23   have continuing jurisdiction, continuing jurisdiction between

24   Can't Stop and Sixuvus, and then Ms. Willis is free to, as a

25   licensee, do whatever she thinks is appropriate.

1          THE COURT:  I am sure Judge Smith would be glad to

2     maintain jurisdiction.  She's always very helpful to me, and

3     that would be helpful to me.

4          Assuming that you paper the agreement, then the only

5     dispute left will be between Ms. Willis and the defendants.  Am

6     I right?

7          MR. LEVY:  Well, there's nothing to intervene in.  We

8     brought the lawsuit against Sixuvus.  The settlement calls for

9     the case and the counterclaim to be dismissed.  So I'm not

10    quite sure what there is to intervene in.

11         MS. WILLIS:  Well, your Honor, your Honor, may I?

12         Well, I'll let you finish.  Go on.

13         THE COURT:  Were you going to say more, Mr. Levy?

14         MR. LEVY:  I would think, if Ms. Willis wants, it's a

15    separate lawsuit, but I don't think there's anything to

16    intervene in.

17         THE COURT:  Well, I've provisionally permitted

18    intervention.  It may well have to be a separate lawsuit.  I

19    don't know how that would work.  If I remember, and you'll

20    correct me if I'm wrong -- I think this was actually in your

21    letter, but I'm not clear if Ms. Willis had made a formal

22    motion to intervene and we had just postponed the opposition or

23    whether that motion had not been made.  And I will confess I

24    didn't go back through this now gigantic docket sheet to find

25    it.

1          MS. MATZ:  Your Honor.

2          MS. WILLIS:  I can answer that, your Honor.

3          THE COURT:  Go ahead.

4          MS. WILLIS:  I actually made a formal motion to

5     intervene, and I also attached the actual complaint.  And so

6     your Honor approved it provisionally, yes.  So I've been in the

7     case since that time.

8          Your Honor, this is sort of -- today this is catching

9     me a bit off guard.  However, I will let the Court know that I

10    am in constant contact with the Belolos in France.  And

11    Jonathan Belolo and I did have a conversation --

12         THE COURT:  Ms. Willis, I'm sorry to interrupt you,

13    but the court reporter is having a hard time with the names on

14    the family and friends.  Belolo?

15         MS. WILLIS:  Belolo, B-E-L-O-L-O.

16         THE COURT:  Belolo.

17         MS. WILLIS:  I'm sorry.  I'll try to --

18         THE COURT:  Belolo.

19         MS. WILLIS:  Yes, in France.

20         And so Jonathan and I have, in fact, discussed a

21    possible -- the idea of a possible settlement with the Sixuvus.

22    However, I was unaware that they had actually, you know, may

23    have come to terms in some respect.  And, of course, Jonathan

24    promised that he would share that with me.  And so it's not

25    been shared with me yet, and so it's catching me a bit off

CHRISTINA M. ARENDS-DIECK, RPR, RMR, CRR
(914)390-4103

1    guard.

2              Your Honor, I am open to this, so I think that we may

3    have to sort of break and let me see what's going on so that I

4    can get caught up, because the idea would be that if I, in

5    fact, agree with the terms and I feel that those terms are not

6    going to harm me as a licensee, there's no reason why I would

7    not, you know, go along with it and we would dismiss

8    everything.  But I need to know what's happening.

9              THE COURT:  Well, I gather from what Mr. Levy said

10   that this just came together in the last hour or two.

11             MR. LEVY:  That's correct.

12             THE COURT:  Is there any reason, Mr. Levy or

13   Ms. Matz, why the terms wouldn't be something you would want to

14   share with Ms. Willis?

15             MR. LEVY:  We will share it with -- Jonathan Belolo

16   has asked -- conferring with Ms. Willis, Jonathan Belolo has

17   spoken, apparently, to Ms. Willis and said we're going to make

18   a separate settlement, but then, out of courtesy to her, when

19   we thought the settlement would be -- she wouldn't have a

20   problem with, we're going to settle -- we want to settle it

21   regardless, but then, as a courtesy to her, once it's papered

22   and it's there, we'll show it to her as a courtesy.  So, yes,

23   he promised he would show it to her.

24             MS. WILLIS:  Well, the problem with that is, for

25   example, we -- right now, it seems like they're trying to

1   change things in the middle of this.

2          The reason why we did not reach a settlement prior,

3   your Honor, in this case -- and they could not dismiss the case

4   unilaterally without me because I am a provisional Intervenor

5   and until that is somehow disposed of, they can't make this

6   settlement independent of me, either.

7          However, having said that, your Honor, I'm excited to

8   hear that maybe there has been some terms here that have been

9   agreed to, and I can't wait to discover what they are, and

10  hopefully I can go along with it.

11         THE COURT:  So let me go back to the question I

12  asked.  Can somebody point me to where the motion to intervene

13  was made.

14         MS. MATZ:  Yes, your Honor, I actually can if you

15  would like me to.

16         THE COURT:  Please.

17         MS. MATZ:  I believe -- and Ms. Willis can correct me

18  if I'm wrong, but I believe it's document number 110 that was

19  filed on February 12th of 2018.  I'm looking at a document

20  called motion to intervene and TRO and motion to vacate.

21         THE COURT:  And then it looks like --

22         MS. MATZ:  Actually, I'm sorry.  It was originally

23  presented to the Court in December, but this was the document

24  that was not actually docketed on ECF until February.

25         THE COURT:  And it looks like, in February, I, on the

1    13th, did something.  Let me see what I did.

2              (Pause)

3              THE COURT:  Oh, yes.  So this is what it says.  On

4    February 12th, at the Court's direction, Intervenor filed on

5    the ECF system certain documents that her then counsel had

6    previously conveyed to chambers.

7              Hold on.  This is actually not what I thought it was.

8    Hold on.

9              (Pause)

10             THE COURT:  It says the motion to intervene and

11   vacate or modify the TRO dated December 7th was granted in part

12   and denied in part from the bench on December 8th.  So let me

13   go back and see what we wrote on December 8th.

14             (Pause)

15             THE COURT:  That's where I said Ms. Willis is

16   temporarily allowed to intervene.

17             It seems to me, without having done the research,

18   that there was a timely motion to intervene.  My memory, and I

19   could be wrong on this, is that we postponed briefing on it

20   because we were having the PI hearing and then it looked like

21   you were going to settle and then we had all the litigation on

22   the settlement.

23             I do think, at this stage of the game, it strikes me

24   as a little bit unfair for the plaintiff and the defendants to

25   take advantage of the fact that, essentially, I punted on the

1    Intervenor motion to settle this case out from under the

2    proposed Intervenor.  So I'm not sure I would -- I'm not sure,

3    if it's a settlement that I have to approve, that I would

4    approve it before deciding the motion to intervene.

5            And the dispute between Ms. Willis and the defendants

6    is going to live one way or another.  Even if I end up

7    approving the settlement and that ends up mooting Ms. Willis'

8    attempt to intervene, there's either going to be another

9    lawsuit or something.

10           And I'm not a Pollyanna here.  I don't expect that,

11   just because Can't Stop and Sixuvus have come to an agreement,

12   that that means Ms. Willis will be satisfied with it, but it

13   may be that it's an important first step.

14           MS. WILLIS:  I agree with that, your Honor.  I would

15   agree with that.  And again, I want to make it clear to the

16   Court that I am very excited to hear that possibly there has

17   been some change.  And I'm sure, when I get off the line, I

18   will talk to Jonathan Belolo right away and maybe even confer

19   with counsel, because counsel here won't get off, when he's

20   done, to see what's going on.  I intend -- as long as it's

21   something that is not going to harm me, and there's no reason

22   why I wouldn't agree.

23           However, the problem we have, your Honor, is that

24   they seem to consistently attempt to come up with an agreement

25   outside of me, and that's why we're here now.  I am an

1    Intervenor, and until we actually brief the issue and the Court

2    rules that I'm no longer, you know, that's when they can make a

3    unilateral settlement without me, and until then, I mean, until

4    the briefing is done, how can they even attempt to do this?

5         But having said that, your Honor, I intend to go

6    along with it if it's something that I can live with, yes.

7         MS. MATZ:  Your Honor.

8         THE COURT:  Yes, Ms. Matz.

9         MS. MATZ:  If I could be heard on the issue just for

10   a moment.

11        THE COURT:  Yes.

12        MS. MATZ:  I respectfully somewhat disagree.

13        First of all, any parties in a lawsuit are free to

14   settle their own claims against one another, and not everybody

15   has to be involved, regardless of Ms. Willis' Intervenor

16   status.  But, also, if you think back to the context, and I

17   don't have the transcript with me, but I do recall when we had

18   the argument on the intervention and you allowed it to happen

19   provisionally, one of the reasons you did that was because the

20   Sixuvus defendants had asserted counterclaims and were bringing

21   a preliminary injunction that challenged the validity of all of

22   the marks, including the mark that Ms. Willis has an exclusive

23   license to.  And if I recall in somewhat sum and substance,

24   what your Honor had said was that the outcome of that, if we

25   successfully challenged the marks and our naked licensing

CHRISTINA M. ARENDS-DIECK, RPR, RMR, CRR
(914)390-4103

1    claims and those, that that would interfere with her license

2    and that that was part of the reason you were considering

3    letting her provisionally intervene.  And there were other

4    questions about whether or not she would be an Intervenor as of

5    right or permissively or even be allowed to intervene

6    permanently.  But if those claims no longer existed, I'm not

7    sure what the -- I'm not sure that the interests would be the

8    same whatsoever.

9              THE COURT:  You may be right.  It may be -- and

10   again, this has been going on for so long and there's so much

11   water under the bridge, I really don't remember the specifics,

12   but what you're saying rings a bell and that sounds right.

13             It may be that the reasons that I thought permissive

14   intervention made sense at that stage no longer apply.  If I

15   remember, the Sixuvus defendants were concerned as to whether

16   the intervention would be as of right or permissive because I

17   forget why.  It was going to make some difference down the

18   road, conceivably.  And I think, at the time, I said I would at

19   least permissively permit it given what the status was and we

20   can fight out later whether it was as of right or not.

21             And it may be that the main reason I thought it made

22   sense for Ms. Willis to intervene was to join Can't Stop in

23   protecting the marks, and if there's no threat to the marks,

24   then maybe it doesn't make sense for Ms. Willis to intervene.

25   On the other hand, maybe it does because she's claiming that

1      there's been infringement by the defendants of her exclusive

2      right to use those marks during the pendency of this

3      litigation.

4              I'm not prejudging it one way or the other.  I just,

5      as I'm sitting here, don't have the benefit of what I'm sure

6      will be briefing from both sides about what makes sense at this

7      stage of the game.  It may be that, back then, the reason I

8      thought intervention, at least provisionally, made sense was so

9      that Ms. Willis could protect the marks, but maybe now it makes

10     sense for another reason.

11             MR. LEVY:  Your Honor --

12             MS. WILLIS:  Well, your Honor, I agree with that.  I

13     absolutely -- in any event, briefing will be required, so they

14     can't escape the fact that they're going to have to brief it.

15     They can't just dump this on the Court today for a --

16             THE COURT:  Ms. Willis, sorry to interrupt you again,

17     but the court reporter is having a very hard time making out

18     what you're saying.

19             MS. WILLIS:  Oh.  I'm sorry.

20             THE COURT:  I heard up to they can't just dump this.

21             MS. WILLIS:  Oh, okay.  I'll start again.

22             Your Honor, whether they like it or not, I'm an

23     Intervenor at this time, and they can't settle this without me.

24     However, if they're able to successfully argue and brief here

25     with my opposition and responses and all that and the Court

1    decides that, okay, fine, there's no -- it's not necessary to

2    intervene, that's down the road.  We're talking today.  And so

3    I think, instead of them attempting to really antagonize me by

4    trying to alienate me and stuff like that, I don't know, maybe

5    say she can't really do this right now, but, yes, I am in.

6              THE COURT:  I've got to interrupt you again because I

7    really -- you're talking so fast, I can't make out what you're

8    saying and the court reporter cannot make out what you're

9    saying.

10             MS. WILLIS:  Okay.

11             THE COURT:  Please slow it down.

12             MS. WILLIS:  I will.

13             THE COURT:  This is why I hate phone conferences.

14             MS. WILLIS:  I will.  I'm sorry.

15             THE COURT:  This is why I hate phone conferences.

16   And I understand you had something come up and couldn't be here

17   in person, but I have to really beseech you to slow it down.

18             MS. WILLIS:  Thank you.  I'll slow it down right now.

19             The bottom line is, your Honor, at this stage, prior

20   to your Honor ordering briefing as to whether or not I am an

21   Intervenor at all or whether or not I am in as a matter of

22   right or -- you know, that's down the road.  We're going to

23   have to brief that.  But, for now, for purposes of the

24   settlement, they cannot escape that I'm a party and they cannot

25   do the settlement.  And Judge Smith made it clear to them, as

1    the magistrate, some time ago that, really, I have to be

2    involved.

3              Now, the bottom line is I would ask that they simply

4    not antagonize me right now with this.  I'm making, you know, a

5    statement to the Court that, look, I would love to go along

6    with it.  I can't wait to talk to Jonathan and also Mr. Levy

7    when this is over so that I can see what's happening.  And I'll

8    likely go along with it as long as it's not going to harm me.

9    But for them to attempt to make this settlement now and say,

10   well, look, we can settle without the Intervenor right now, I

11   think Judge Smith is going to disagree with that, and I believe

12   ultimately your Honor will disagree with that at this stage.

13             THE COURT:  Well, look, I think Judge Smith was doing

14   what she's paid to do, which is try to resolve the entire case.

15             Ms. Matz is correct that there's no barrier to

16   individual parties resolving less than all the claims in the

17   case or making peace with less than all the defendants in the

18   case.  However, to the extent they're doing that without

19   Ms. Willis being part of the agreement, they may find

20   themselves still battling with her.

21             MR. LEVY:  Your Honor.

22             THE COURT:  Let me just finish my thought.

23             It may turn out that I don't agree that the

24   settlement between the plaintiff and the defendant means that

25   Ms. Willis has to go away and start a new case, or it may be,

CHRISTINA M. ARENDS-DIECK, RPR, RMR, CRR
(914)390-4103

1    even if I do agree, that she will go out and start a new case.

2              I have to imagine, and I'm sure someone will correct

3    me if I'm wrong, that neither Can't Stop or Sixuvus would mind

4    if they could wrap things up with Ms. Willis as well.

5              Am I right about that?

6              MR. LEVY:  Well, yes, but the track record's not too

7    good on that, your Honor.

8              THE COURT:  I get it.

9              MR. LEVY:  Talk to Magistrate Judge Smith.

10              MR. ADELMAN:  I just want to add --

11              MR. LEVY:  Just --

12              MR. ADELMAN:  Oh, sorry.  Sorry, Stewart.  Go ahead.

13              MR. LEVY:  The issue here -- and I appreciate the

14    District Court's at a disadvantage because you don't have the

15    settlement proposal, but the key is the continuing

16    jurisdiction.  And if you look at the underlying complaint, we

17    had two claims.  One was for declaratory judgment that we owned

18    the trademarks and the other was that there were certain

19    infringements.  Well, those infringement were two years down

20    the road.  They were mooted out.  We won the preliminary

21    injunction hearing.  We would rather not retry it again at a

22    trial.  So, from our point of view, there's nothing left in our

23    complaint.  It's over with.

24              From their point of view, from Sixuvus' point of

25    view, while they had a lot of claims, the claims that really

affected us was they were contesting our trademark rights for

live performances, which we had a fight, and that protected our

licensee, Ms. Willis.  The settlement deals with that and puts

into place continuing jurisdiction if there's ever a problem.

        The reason we think we can settle without

antagonizing Ms. Willis -- I understand Ms. Willis has already

written a letter to my client asking that I be fired.  So this

is what we're up against, letters to my client saying I should

be fired.  He's not firing me.  The issue here is what

obligation does a licensor have to a licensee.

        Now, when a licensor of a trademark issues a license,

I'll agree it's implicit that the trademark should be

protected, but it's not carte blanche for the licensee, on

anything that bothers the licensee, to go to the licensor and

say, well, I don't care what it costs, I don't care if you have

to spend a hundred million dollars, I want you to go after

this, and if you don't, you're not protecting me.

        Well, the settlement that we've reached says, hey, we

own the trademark.  They acknowledge we own the trademark.  If

there's any dispute, we go to the magistrate judge on the

doctrine of nominative fair use.  If the magistrate judge

thinks it's okay, it's fine; if not, they'll tell them to stop

it.  We're protecting the mark.  But what we want out of the

case, frankly, is their allegations, they may be valid, they

may not be, but that we're not interested in, like are there

1    offshoots of the trademark that they can't use.  Like Kings of

2    Disco.  We have no interest in Kings of Disco.  It's not our

3    trademark.

4              Ms. Willis feels that there are a number of trademark

5    rights, and one of her allegations is to go after them for

6    using it.  Well, my client is sitting as licensor, saying, now,

7    wait a second.  We'll protect the Village People marks, but not

8    this other thing.  And, oh, there's one concert somewhere in

9    Germany on New Year's Eve, one group out of many on a first

10   night thing.  It's not worth it to us to sit there and bring

11   lawsuits against the German promoter.  She wants to sue the

12   Pennsylvania Horticultural Society, the Texas State Fair.  At a

13   certain point, we're the licensor and we don't have an

14   obligation to just be dragged into all these things.

15             What we're saying is we're protecting the mark.  We

16   got continuing jurisdiction.  We got Sixuvus to acknowledge

17   it's our mark.  We're doing everything we reasonably can.  At a

18   certain point, though, it's enough.

19             And I'm sorry if you're antagonized by it,

20   Ms. Willis, but it is enough.

21             MS. WILLIS:  Your Honor, your Honor, first of all, I

22   haven't a clue what Mr. Levy is talking about here.  Again, I

23   have to talk to Jonathan Belolo or both of them or even

24   Mr. Levy and Bob Besser.  So, look, all of this talk and this

25   information that Mr. Levy here is presenting to the Court

1    today, in my mind, is totally irrelevant.

2            I'm not opposed to the settlement because I have no

3    idea what's in it.  You know, he shouldn't attempt to

4    presuppose that I'm going to be saying, oh, the history.  Well,

5    no, the history is that they -- you sued the Sixuvus the and

6    Sixuvus have sued you.  And then I have attempted to bring

7    claims that have not been brought yet, cannot be litigated yet,

8    because of the fact that we stopped for a settlement.

9            So, look, what I would suggest, your Honor, is that I

10   have an opportunity to discuss this with Mr. Belolo and

11   Mr. Levy and Besser, whomever, and then we can take it from

12   here.  And maybe we can continue the hearing.  Because this is

13   all new and I haven't a clue what's happening.  It's not fair

14   to me.

15           THE COURT:  Well, this is what I think.

16           First of all, if -- again, I'm not committing to

17   anything.  I never do until I see briefing.  But I find it

18   unlikely that I'm going to allow Ms. Willis to pursue claims in

19   this case against Facebook or the Pennsylvania Horticultural

20   Society or the German TV show or the agents and all that.  My

21   feeling is that if the intervention motion goes her way, it's

22   going to be just on the dispute between Ms. Willis and Sixuvus.

23   The parties can certainly -- the plaintiff and the defendant

24   can certainly settle.  They need me to go along with the part

25   of the settlement that requires court supervision.  I'm sure

1    I'll be fine with the terms of the settlement.  That's not

2    really my concern.  If the parties are happy, I'm happy.  The

3    only concern I have is whether approving it would work some

4    unfairness to the Intervenor.  And the only reason I have that

5    concern is because the reason that her status is still up in

6    the air is essentially because, with everybody's agreement, I

7    punted the briefing on that issue.

8            So I think two things -- three things should happen.

9    One is, as Ms. Willis just suggested, she should talk to the

10   gentleman in France.  I assume they've agreed to that and

11   they've agreed that Ms. Willis need not go through Mr. Levy.

12           MR. LEVY:  That's fine.

13           THE COURT:  She should speak to Mr. Levy, if she's so

14   advised, and see if this settlement is something that she wants

15   to sign onto.  It sounds like it's very different from the

16   settlement that was before Judge Smith, which had all these

17   conditions in it about the Facebook and the likes on Facebook

18   and how many minutes in which performance can be in which

19   costumes.  It sounds like this is a much more general thing

20   which essentially leaves Judge Smith as the arbitrator if the

21   licensor thinks that the defendants are not respecting its

22   mark.

23           MR. ADELMAN:  And vice versa, your Honor.

24           THE COURT:  And vice versa.

25           So I don't know, Ms. Willis, if that sort of thing is

1    going to satisfy you, something that general, without the

2    specifics.  I don't know if the whole controversy over the

3    websites and what comes up when you put Village People into

4    Google or Facebook, I don't know if all that's calmed down or

5    not.

6         But I agree it is a good idea for Ms. Willis to speak

7    to the principals of Can't Stop and see if they can -- if

8    maybe, with their help, Ms. Willis and Sixuvus can make peace.

9    If not, the plaintiff and the defendant will submit the

10   settlement agreement to me for approval, and what I'll want to

11   know is their positions on what effect, if any, this is going

12   to have on the motion to intervene, and then I'll let

13   Ms. Willis respond to that.

14        MS. WILLIS:  Your Honor, before we --

15        THE COURT:  Just one second, just one second.

16        MS. WILLIS:  I'm sorry, I'm sorry.

17        THE COURT:  And one could say that we could do this

18   in a different order, which is brief the motion to intervene

19   and then I'll consider the settlement, but it sounds like the

20   settlement could be papered a lot more quickly than the motion

21   could be briefed.  But I don't want to approve the settlement

22   without knowing whether or not, by approving it, I'm boxing out

23   Ms. Willis because, as I said, I am reluctant to do that just

24   because I punted the briefing on her status.

25        Now, the other thing that could happen, and this may

1    not be what defendants had in mind, the other thing that could

2    happen is the defendants could agree they'll bury the hatchet

3    with plaintiff and then brief the intervention motion and they

4    won't take the position that the settlement between the

5    plaintiffs and the defendants moots it.  But if that is their

6    position, I'm going to want to know that and figure out if I

7    agree with it.  And if I agree with it, I may sit on the

8    settlement approval until I decide the motion to intervene.

9    And if I do that, then I assume the defendants will want to

10   brief that on a pretty short string because they're going to

11   want to get their settlement with the plaintiff resolved.  So

12   there's a number of moving parts here.

13            Am I right that the plaintiff and the defendants

14   would rather submit the settlement before full briefing on the

15   motion to intervene?

16            MR. ADELMAN:  Yes, your Honor.

17            MR. LEVY:  I agree.

18            MR. ADELMAN:  We would also, actually, like to

19   submit, and we can do it in less than three pages, our thought

20   process on the Intervenor and why we believe that the punting

21   of the intervenor motion was irrelevant in this case.

22            THE COURT:  Well, when you give me the settlement,

23   give me whatever you want to say.  You guys should give me

24   whatever you want to say about why I should go ahead and

25   approve it regardless of its effect on Ms. Willis, and then

```
1    I'll let Ms. Willis respond.  And that should include, first of
2    all, whatever history I don't remember, but, second, either
3    whatever authority you have for the proposition that the
4    settlement between the plaintiff and the defendant leaves
5    nothing for Ms. Willis to intervene in or, even if it does, why
6    I should still go ahead and approve the settlement.
7              MR. ADELMAN:  We don't --
8              MS. WILLIS:  So, your Honor, the -- may I, your
9    Honor?
10             THE COURT:  Yes.
11             MS. WILLIS:  Okay.
12             So, again, I'm simply eager to find out what's in the
13   settlement.  And they may be surprised that I will likely go
14   along with it.  I don't know.  Let's see.  But, your Honor,
15   here's the problem, and I think this is what maybe the
16   defendants are missing here, and maybe even Mr. Levy here, is
17   that the relationship between the Willises, the Belolos and the
18   Moraleses is sort of a very close-knit group here and it's
19   beyond our -- my business with Can't Stop and Scorpio goes well
20   beyond the Village People licensing.  That's just a very small
21   part.  Okay?  We deal with everything from lights to the
22   Village People to movies.  I mean, we just have a lot of other
23   business.  And so, therefore, Jonathan and I and the Belolos,
24   we're always talking because we're not going to allow one
25   aspect of the business to interfere with something else that
```

CHRISTINA M. ARENDS-DIECK, RPR, RMR, CRR
(914)390-4103

```
 1    can be much bigger.  So, therefore, that's why I need time to
 2    talk to Mr. Belolo about this to see whether or not I agree,
 3    because, again, Village People licensing is a very small
 4    percentage of the business relationship that I have with Can't
 5    Stop and Scorpio, which is much bigger than this.
 6             THE COURT:  So maybe it makes sense, Ms. Willis, for
 7    you, even if you could continue to fight this war, if I'm
 8    reading between the lines, what you're saying is you may, in
 9    the interest of the larger relationship, want to just put this
10    case behind you.  I think that's a good idea.  I think you
11    absolutely should have a conversation.
12             I'm not going to do anything until, A, I get the
13    proposed settlement from the plaintiff and the defendants along
14    with their views on why I should -- or I guess, from their
15    point, why I should go ahead and approve it whether you're in
16    it or not, and I'm not going to decide anything until you've
17    had a chance to respond to that.
18             MS. WILLIS:  Thank you, your Honor.
19             THE COURT:  So there's time for you to speak to the
20    Belolos and your other associates.  And if you can get on board
21    with this deal either because you think it's a good deal or
22    because you think, in light of everything else you've got going
23    on, it makes sense to just put this case behind you, great, and
24    if not --
25             MS. WILLIS:  Absolutely.
```

1          THE COURT:  All right.

2          MS. WILLIS:  Absolutely, your Honor.  I agree.

3     Because that's the bottom line and that's what I'm getting at.

4     Because we -- I'm haggling right now.  We're haggling over

5     everything from movie rights to Broadway.  It's not just --

6     they may think that -- the defendants here may think that, oh,

7     that's all Karen Willis is interested in, the Village People.

8     Are you kidding?  There's much more business going on here that

9     I'm dealing with.  But -- so, therefore, again, I'm delighted

10    to hear it.  Let's see what it contains.  I'm hoping to go

11    along with it.  And I'll leave it at that.

12         THE COURT:  Mr. Adelman.

13         MR. ADELMAN:  I just wanted to clarify that the views

14    that we wanted to put forth are not our briefing of the

15    opposition of the Intervenor motion.

16         THE COURT:  Right.  What I want along with the

17    proposed settlement agreement is whatever you want to tell me

18    on why you think I should approve it without having resolved

19    the Intervenor motion.

20         MR. ADELMAN:  Thank you, your Honor.

21         THE COURT:  And whether I do that or not, you'll have

22    an opportunity to brief the motion to intervene.  But I imagine

23    part of the appeal to you if Ms. Willis were to go along is

24    that you wouldn't have to deal with her motion to intervene.

25    And this wouldn't be the first time -- in fact, it's quite

```
1   common that even parties who think they're right decide to

2   settle because it's just costing too much time and energy to

3   fight.  And if we're at that point, that's not the worst thing.

4            So I'm not setting a deadline.  Whenever plaintiff

5   and defendants are ready to submit the settlement, they should

6   submit it along with the -- I'll call it the position letter

7   that I've asked for.  And when that arrives, Ms. Willis should

8   respond to it let's say within two weeks.

9            MS. WILLIS:  Okay.

10           THE COURT:  And we'll take it from there.

11           But, in the meantime, I'm glad to hear that you'll be

12  talking.  And I certainly hope that you can all get on board

13  even if it's not the kind of settlement that was on the table

14  before Judge Smith.  Maybe there's some virtue in the

15  simplicity.

16           And I think, at this point -- well, I'll put it this

17  way.  I know Ms. Willis, at some point, wasn't sure Judge Smith

18  was the best arbiter here, but maybe now, since she's had such

19  success on the most recent motion, she would be content with

20  Judge Smith maintaining jurisdiction.

21           And again, maybe it will be something that, in

22  Ms. Willis' universe of business dealings, has now become such

23  a pest, this case has become such a pest, that she just wants

24  to make it go away to focus on bigger and better things.

25           MS. WILLIS:  Your Honor is very close to being
```

1   correct there.  I have bigger fish to fry.  There's just so

2   much going on that they haven't a clue.  It's not just this.

3   But this is a very important part of it.  This is my husband's

4   legacy.  You know, he co-writed all these hits, the music, he's

5   the actual singer.  So there's just a lot going on, and I want

6   to see it resolved.  However, I would like to see it resolved

7   in a way that is not infringing upon any of my rights.  So

8   let's see what happens here.

9           THE COURT:  All right.  We have a plan for going

10  forward.

11          MR. ADELMAN:  One thing, your Honor.

12          THE COURT:  One more thing?

13          MR. ADELMAN:  Yes.  Administration-wise.

14          We would prefer that the draft of the settlement

15  agreement not be posted on ECF.

16          THE COURT:  You can just e-mail it.

17          MR. ADELMAN:  Thank you, your Honor.

18          But we should post the position letter or -- we're

19  fine with that.

20          THE COURT:  That makes sense, I think.

21          MR. ADELMAN:  Okay.  That was all.  Thank you, your

22  Honor.

23          THE COURT:  All right.  Thank you all.

24          MS. MATZ:  Thank you, your Honor.
                              - - - -
25

CHRISTINA M. ARENDS-DIECK, RPR, RMR, CRR
(914)390-4103