190718cantC                    Conference

1   UNITED STATES DISTRICT COURT
    SOUTHERN DISTRICT OF NEW YORK
2   ------------------------------x

3   CAN'T STOP PRODUCTIONS, INC.,

4               Plaintiff,

5          v.                          17 CV 6513 CS

6   SIXUVUS, LTD., et al.,

7               Defendants.

8   ------------------------------x
                                  United States Courthouse
9                                 White Plains, N.Y.
                                  July 18, 2019
10                                10:00 a.m.
    Before:
11
                    THE HONORABLE CATHY SEIBEL,
12
                                          District Judge
13
                       APPEARANCES
14
    EISENBERG TANCHUM & LEVY
15      Attorney for Plaintiff Can't Stop Productions
    STEWART L. LEVY
16
    ADELMAN MATZ, P.C.
17      Attorneys for Defendants Sixuvus, Ltd., et al.
    GARY P. ADELMAN
18  SARAH MICHAL MATZ

19  KAREN WILLIS, Intervenor (Appearing telephonically)
    *doing business as*
20  Harlem West Entertainment

21

22

23

24

25

            SABRINA A. D'EMIDIO – OFFICIAL COURT REPORTER
                        (914)390-4053

190718cantC                    Conference

1                  (In open court)

2                  THE DEPUTY CLERK:  In the matter of Can't Stop v.

3       Sixuvus.

4                  THE COURT:  Good morning, Mr. Levy, Ms. Matz, and

5       Mr. Adelman.

6                  And Ms. Willis, can you hear me?

7                  MS. WILLIS:  Good morning.

8                  THE COURT:  Everyone can have a seat.

9                  We have a number of things percolating.  Ms. Willis

10      has made an application to recover on the bond that Sixuvus

11      posted.  We'll set a schedule for formal briefing on that.  The

12      motion to intervene was still out there.

13                  Last time we were here on this case, the parties were

14      going to try to settle, which obviously didn't happen because

15      the new lawsuit is filed.  And failing that, the parties were

16      supposed to confer on a briefing schedule for the motion to

17      intervene, which I don't think ever happened.

18                  Separately, there is a letter motion, which

19      originally was to dissolve the March 16 T.R.O., which is now, I

20      guess, an application for me to enforce it in some fashion,

21      either by issuing a new order or contempt.  I'm not really

22      clear.  I'm going to let everybody brief everything, but I want

23      to take up the last one first.

24                  Ms. Willis, I'm sure, is right that I don't

25      understand everything that the parties may understand about

190718cantC                    Conference

1    Facebook, and I certainly don't understand technically how it

2    works, but I do know what I meant when I entered the order, and

3    what I meant was that the Sixuvus had to stop going around

4    acting as though they were still Village People, and it seems

5    to me that they did that.  They aren't running, as far as the

6    public can see, anything relating to the Village People or the

7    Village People website.  Whether, in the bowels of Facebook, in

8    some technical way involving zeros and ones, the Kings of Disco

9    page, in a way invisible to the public, has some technical

10   relationship to the old Village People page is not really my

11   concern.  My concern is what the public can see and whether the

12   public can be confused, and I don't see how that is happening,

13   or can be happening now.  So, I don't see the need for any

14   emergency relief, but I'm going to let everybody brief

15   everything.  I did raise a question about the six hats.  And

16   the defendants, in their response, made the point that that's

17   not covered by the T.R.O.  I'm not saying it is.  This, it

18   seems to me -- whether that's kosher is going to turn on what

19   rights the plaintiff has in the trade dress, and I'm sure I

20   will be hearing from the parties on that as the case proceeds.

21          When we were last here on this case, it looked like

22   at least Can't Stop and the Sixuvus were getting to "yes," and

23   it seemed like Ms. Willis was interested in discussing that,

24   and then obviously everything went down the tubes, or a least a

25   lot went down the tubes because we had the previous -- the

190718cantC                    Conference

1    other lawsuit and the hearing on that in 19 CV 4354.

2            I gather there haven't been any three-way discussions

3    since then.

4            MR. ADELMAN:  Not three way, but Mr. Levy and I have

5    had - and Mr. Besser - have had several conversations since the

6    previous lawsuit was withdrawn.  That reactivated the interest

7    in Can't Stop and Sixuvus to settle this, and we're close.

8            MR. LEVY:  We're close.

9            THE COURT:  I know Mr. Levy doesn't like coming here,

10   but in some respects, he's the voice of reason in this.

11           MR. ADELMAN:  Well, --

12           THE COURT:  I don't mean the other parties are

13   unreasonable.  I just mean that he and his clients, I don't

14   want to say they're caught in the middle because the problem is

15   of their making, but they are in the middle, trying to maintain

16   good relationships with both groups.

17           And it seems, although I can't know what's going on

18   behind the scenes, it seems like Mr. Levy's clients are

19   communicating with Ms. Willis, even if Mr. Levy isn't.  I would

20   just love to get everybody in a room.  I don't know if that's

21   practical given Ms. Willis is in California and Can't Stop is

22   in France and here we are in New York.

23           MR. ADELMAN:  I mean, it's impractical for other

24   reasons, which I'd rather not discuss on the record.

25           MR. LEVY:  We are close.  I sent a draft settlement

190718cantC                    Conference

1  agreement to -- pardon me for not getting up --

2          THE COURT:  That's fine.

3          MR. LEVY:  I sent a draft agreement to Mr. Adelman on

4  June 25th.  His clients are overseas, and he has a lot of

5  clients.  I do speak to Mr. Adelman regularly.  I think we're

6  very close.  He thinks he's close.  But because of his clients

7  being overseas, we had hoped to have this done before today,

8  but it's taking longer.

9          As far as Ms. Willis is concerned, she speaks with my

10  co-counsel, Robert Besser, and we sent over the draft

11  agreement, the proposed draft.  At least initially, it's just

12  between Can't Stop and Sixuvus, but Mr. Besser showed her the

13  prior draft that I agreed to make, gave me her comments.  We

14  incorporated her comments into the draft that I eventually sent

15  on June 25th.

16          So, we think we're pretty close.  We're trying to do

17  it one at a time.  We felt we would try to settle with Sixuvus

18  and then we would go to Ms. Willis, because I think in one of

19  the documents that Ms. Willis submitted in one of these cases,

20  she said we agree with this; that, right now, the issue that

21  she's raising is not so much trademark infringement but

22  confusion by the public.  And that's always our concern, as

23  well.

24          At this stage -- there's a doctrine in the Second

25  Circuit, and I think in every circuit, a doctrine called

190718cantC                    Conference

1  progressive encroachment, which, basically, it does not require

2  us as a licensor to go after every perceived infringement or

3  problem of a junior trademark user.  And right now, we don't

4  see that much happening.  And to the extent that things come

5  up, we're taking that into account, that mechanism, we're

6  taking that into account in the settlement proposal that was

7  made.

8          And without giving all the terms, I think I did

9  mention to the Court previously that a key component is for the

10  Court to have continuing jurisdiction over any disputes that

11  would come up, and that would give everybody a forum without

12  litigation, like a two-page letter, saying the hats are a

13  problem, if we couldn't work it out, and put two pages in,

14  there's a ruling, and that's it.

15          THE COURT:  So I get to live with you guys for as

16  long as I live.  Awesome.

17          MR. LEVY:  We like you so much.

18          THE COURT:  Or Judge Smith.

19          MR. ADELMAN:  Actually, to Mr. Levy's point, we're

20  actually not litigating this case.  What is happening is,

21  Ms. Willis finds something to nitpick on, she sends you a

22  letter, we respond, and now we're briefing three different

23  motions.  We're not actually litigating.  And we don't want to

24  litigate.  We can come to terms.  Can't Stop is the trademark

25  owner.  They don't have a problem with what my clients are

190718cantC                    Conference

1   doing.

2                  THE COURT:  Well, one of the things that we're going

3   to litigate is whether Ms. Willis can intervene and on what

4   basis.

5                  MR. ADELMAN:  Shouldn't that be the only thing we're

6   focusing on at this point?

7                  MS. WILLIS:  I want to make sure I clarify something

8   that he just stated on the record.  Mr. Levy just stated on the

9   record, and this is for clarification, that Can't Stop does not

10  have a problem with what they're doing?

11                 MR. LEVY:  As far as we know, the only thing that's

12  been brought to our attention was that they were performing --

13  the Sixuvus group was performing in Holland at a festival where

14  they were dressed in tuxedos, made no reference that we could

15  see to Village People, and that the only reference that was

16  brought to our attention was a newspaper article in Dutch

17  saying that the Village People might be a surprise guest, and

18  it was from a newspaper clipping.  It didn't come from the

19  Sixuvus group.

20                 So, again, I know Ms. Willis was very riled up by

21  that, but, again, following the doctrine of progressive

22  encroachment, I don't think Can't Stop is obligated to sue on

23  that.  We don't think it rises to that level.  We do want to

24  protect the mark, and if we found there were problems -- I did

25  mention to Mr. Adelman, we did not like the use of the hats,

190718cantC                    Conference

1    but that's something that, when we're talking settlement, I

2    think it gets worked out.  That's all.

3              THE COURT:  Well, look, I think in terms of what

4    order we should do things in --

5              MS. WILLIS:  Your Honor, I want to make sure the

6    record is clear here, and I want to make sure the record is

7    clear with respect to what Mr. Levy is putting on the record in

8    agreement possibly with Mr. Adelman, okay, so I want to make

9    sure that this is clear here.

10             So, Sixuvus has gone around, really for quite a few

11   months now, dressing as the Village People in their

12   performances, and in some of the cases, they've done that

13   subtly.  And they have basically done Village People complete

14   sets, for example, and there's a performing as if they're

15   Village People, okay, they really are, with the exception of

16   them coming on in some, what you call them, jogging suits and

17   then they pull them off, and then they become Village People.

18             Am I to understand, Mr. Levy, you're saying on the

19   record that you don't have a problem with that on behalf of

20   Can't Stop?

21             THE COURT:  He didn't say that.  I didn't hear him

22   say that.

23             MS. WILLIS:  Your Honor, --

24             THE COURT:  Hold on, Ms. Willis.  Let me just finish

25   my sentence.

190718cantC                    Conference

1           What I heard him say was that, what he understands to

2    be going on currently, is the tuxedo show that some newspaper

3    article, which is in Dutch, which I don't read, included the

4    words Village People, and he and his clients don't think it's

5    worth suing over that article.

6           I didn't hear him say anything about it being okay

7    for Sixuvus to do full shows as Village People.  And I assume

8    this settlement that is percolating is going to include some

9    parameters --

10          MR. LEVY:  That's right.

11          MR. ADELMAN:  Yes.

12          THE COURT:  -- about the extent to which the Sixuvus

13   can, in a tribute format or otherwise, include some Village

14   People performance within their larger performance.

15          Look, the record, anybody can order it.  It says what

16   it says.

17          MS. WILLIS:  Okay.

18          THE COURT:  I did not hear anything suggesting that

19   Can't Stop thinks it's fine for Sixuvus to perform as Village

20   People.

21          MS. WILLIS:  Well, Mr. Adelman made the broad

22   statement that Can't Stop does not have a problem with what

23   they're doing, that's why, your Honor.  That's what he said.

24          THE COURT:  Well, that was a present-tense statement.

25          MS. WILLIS:  No, no, no, your Honor, no.  He made it

190718cantC                    Conference

1   broad -- you did not ask him specifically, just deal with this

2   issue.  He meant in general.

3           Now, and I'm simply trying to clarify here, all I'm

4   saying is, for example, I have never, with Mr. Besser nor

5   Jonathan, we've never discussed Can't Stop litigating the issue

6   of them with respect to them performing this maestro wear,

7   never once did that come up.  I don't know where the term

8   mediation comes up.  However, we did actually discuss some

9   concerns over that, okay, of that article purporting that the

10  Village People were actually performing with the maestro when

11  the Village People were not.  That's the extent of it, your

12  Honor.

13          MR. ADELMAN:  That's not the extent, your Honor.

14          MS. WILLIS:  Well, --

15          MR. ADELMAN:  First of all -- excuse me, Ms. Willis,

16  I'm speaking.

17          The article was days before the festival and it

18  conjectured that the Village People might be a surprise guest.

19  It was some reporter making conjecture.  Nothing -- there was

20  no promotion, no marketing.  The contract -- nothing suggested

21  that the Village People were performing at all.  André Rieu,

22  who is very well respected and probably a hero in the

23  Netherlands, made it very clear.  My clients made it very clear

24  on our Facebook page that everybody should reference any videos

25  taken of the show as Kings of Disco, very clear on our Facebook

190718cantC                    Conference

1  page.

2          What Ms. Willis did was she posted on their Facebook

3  page, calling André Rieu a fraud and saying all kinds of

4  disparaging things about him, calling him and saying -- I'm not

5  sure exactly what she said, because, again, I'm speaking to a

6  Dutch lawyer, but it sounded like what she was saying is that

7  she was going to sue them.  So frankly --

8          MS. WILLIS:  Your Honor, --

9          MR. ADELMAN:  Excuse me, ma'am.  I am still speaking.

10         THE COURT:  Ms. Willis, hold on.

11         MS. WILLIS:  Well, finish up.

12         MR. ADELMAN:  What I meant by Can't Stop -- I'll

13  finish when I'm ready.  Jesus.

14         THE COURT:  Take a deep breath, Mr. Adelman.

15         MR. ADELMAN:  Thank you, your Honor.

16         What I meant was two-fold: one is, is that actually

17  Mr. Levy and I discussed it, and I think Mr. Levy is saying

18  exactly what Can't Stop means, is there was no cause for a

19  lawsuit, so why should they bring one.  And I agree.  And what

20  I meant by saying that we have done nothing wrong, is not only

21  present tense, but I am sure if what Ms. Willis is saying about

22  my clients and what they're doing was true, she would have

23  already brought it to the attention of this Court half a dozen

24  times, but my clients have been working with Can't Stop to find

25  a suitable way for them to move forward as Kings of Disco.

190718cantC                    Conference

1              THE COURT:  Look, we don't need to --

2              MS. WILLIS:  Your Honor, --

3              THE COURT:  The whole thing in the Netherlands is a

4    side show, --

5              MR. ADELMAN:  Yes.

6              THE COURT:  -- at least as far as I'm concerned.

7              I understand that one or more of the parties may be

8    worked up about it, but what I do is try to manage a lawsuit.

9    And right now, we have a lawsuit in which Can't Stop is suing

10   Sixuvus, and Ms. Willis has provisionally intervened.

11             If I remember, and you guys will correct me if I'm

12   wrong, she has made a motion to intervene and we have to

13   schedule the other parties' responses.

14             Am I right about that?

15             MS. MATZ:  Yes, your Honor, although -- may I raise

16   one issue.

17             THE COURT:  Yes.

18             MS. MATZ:  If your Honor will indulge me.

19             THE COURT:  As long as it doesn't have to do with the

20   Netherlands.

21             MS. MATZ:  No.  It has nothing to do with the

22   Netherlands.  I promise.

23             I do think one of the issues -- I just want to bring

24   up that Ms. Willis did say in one of her letters that she

25   intends to somehow amend her pleading.  I know that one of the

190718cantC                    Conference

1    issues with respect to whether or not someone is allowed to

2    intervene rests on the types of claims they are asserting.

3            So, only in terms of efficiency, frankly, for my

4    clients and the Court, I think that to the extent Ms. Willis

5    plans on amending her pleading and the Court is going to

6    entertain that application, it would be helpful for that to

7    happen prior to the time that the intervenor motion is briefed,

8    only because if we brief the intervenor motion and then she

9    amends and we have to rebrief it because the change has some

10   impact on it, I think that that would probably not be the most

11   efficient use of anyone's resources.

12           THE COURT:  That's not a bad point.

13           Is it your desire to amend, Ms. Willis?

14           MS. WILLIS:  Yes, it is, your Honor, but however, I

15   must return here back to the Netherlands here.  I can't allow

16   Mr. Adelman to do his hit-and-run statement here without me

17   responding on the record.

18           What actually happened, your Honor, what actually

19   happened in the Netherlands, is that they did all the things

20   that Mr. Adelman states, and André Rieu, by the way, after they

21   fact, after they were called upon it.  The truth of the matter

22   is the newspaper reported it, and I have a print of the article

23   that André Rieu was actually suggesting that the Village People

24   were performing with him.  It wasn't until later, when I

25   actually complained, that they clarified it, much later.

190718cantC                Conference

1          And also, your Honor, he's stating that there was no

2    promotion.  There was, in fact, promotion.  We have a video

3    with André Rieu promoting the fact that Village People were

4    performing with him.  So the truth of the matter is, before I

5    actually complained, it was being widely reported that Village

6    People were performing with André Rieu.

7          THE COURT:  You've put that on the record.  That's

8    fine.  André, whoever he is, is not a party here.  I'm not

9    worried about him.  I'm worried about the parties that are in

10   front of me.  We have a bunch of --

11         MS. WILLIS:  I wish you would tell Mr. Adelman's

12   (inaudible) statement on the record.  I'm simply trying to

13   clarify here.

14         THE COURT:  I've let you clarify.  All I'm saying is,

15   because this gentleman is not a party -- now both sides have

16   put something on the record about what happened in the

17   Netherlands that really doesn't have anything to do with me.

18   So, let's now turn to what is percolating here.

19         We have the application to amend, the application to

20   intervene, the motion to enforce the T.R.O., the motion to

21   collect on the bond.  I do think probably neither Ms. Willis

22   nor the Sixuvus want to brief them all at the same time, and I

23   don't think it would make sense to brief them all at the same

24   time.

25         If you want to amend, Ms. Willis, I think it does

190718cantC                    Conference

1   make sense to do that before we get to the other things.  What

2   would you like to -- give me the "Reader's Digest" version of

3   what amendments you'd like to make.

4            MS. WILLIS:  I think, your Honor, you -- in a prior

5   conference, you had indicated that you were leaning against

6   allowing other parties to be named, for example, and so stuff

7   like that would be, you know, meted out, the other parties, and

8   it would basically mirror Can't Stop's claim with respect --

9   with the exception of a couple of things.

10           MS. MATZ:  If I may, typically when a party requests

11  leave to amend, a proposed amended pleading is provided.  And

12  just so that this isn't as much of a moving target, I think it

13  would be helpful if maybe Ms. Willis provided the proposed

14  amendment, and then -- I don't think there needs to be a full

15  briefing on it, but maybe we can just submit letters with any

16  issues, and your Honor can rule and proceed.

17           MS. WILLIS:  Your Honor, I actually did state that

18  already.  I already -- if you look at my communication, it

19  states the proposed amendment in there.  It did.  And it states

20  exactly what I said.  It even talked about

21  removing (inaudible), so it's been done.

22           THE COURT:  I do remember reading that that was your

23  intention.

24           Did you actually submit the proposed amended

25  complaint?

190718cantC              Conference

1          MS. MATZ:  No, your Honor.

2          MS. WILLIS:  I didn't.  I can certainly submit the

3     proposed complaint.  That's not a problem here.

4          THE COURT:  All right.  So let's do this.  How long

5     would you need to do that?

6          MS. WILLIS:  What is this -- I probably can do that

7     within the next 30 days, 20, 30 days, I can probably do that.

8          THE COURT:  All right.  Today is July 18.  August 18

9     is a Sunday.  So, Monday August 19th, Ms. Willis will submit a

10    proposed amended complaint.

11         And a letter from the defendants stating their

12    position, how long would you want for that?

13         MS. MATZ:  Just the last two weeks of August are a

14    little --

15         THE COURT:  Vacation time?

16         MS. MATZ:  Can we have until the 9th of September?

17    Would that be acceptable to the Court?

18         THE COURT:  Yes.  And then you'll say either say,

19    okay, fine, we don't object or here's why you shouldn't allow

20    amendment.  If there's going to be opposition, then I'll allow

21    Ms. Willis to respond.  Once I rule on that, then opposition to

22    the motion to intervene seems like the next logical step.

23         MS. MATZ:  Yes, your Honor, I would agree.

24         THE COURT:  So, why don't we say that will be 30 days

25    after I rule on the amended complaint --

                SABRINA A. D'EMIDIO - OFFICIAL COURT REPORTER
                              (914)390-4053

190718cantC                    Conference

1              MS. MATZ:  Yes, your Honor.

2              THE COURT:  -- or you tell me that there's no

3    opposition.

4              MS. MATZ:  Yes, your Honor.

5              THE COURT:  And then Ms. Willis, assuming you get

6    opposition to the motion to intervene, how long would you like

7    for your reply?

8              MS. WILLIS:  About 20 days.

9              THE COURT:  Okay, 20 days thereafter.

10             Once I rule on that, I'll schedule briefing on the

11   motion to collect on the bond.  And some day, maybe we'll even

12   get to discovery.

13             MR. ADELMAN:  Thank you.

14             MS. WILLIS:  Your Honor, the motion to collect on

15   bond cannot be withheld pending all of this.  That's something

16   that is already filed and it's supposed to be priority.  It is

17   not contingent on other things here, it's not at all.  And so I

18   object, your Honor, on the record here, if your Honor is

19   stating that she's not prepared to move forward immediately on

20   the briefing on that, because it's just not something that can

21   be trailed.  I have a right to seek that immediately.

22             THE COURT:  Well, Ms. Matz, it does seem like even if

23   I don't allow the intervention, that motion is still going to

24   be out there because the T.R.O. did enjoin Ms. Willis.

25   Ms. Willis, I think, is correct that the motion to collect on

190718cantC                 Conference

1   the bond isn't really contingent on the motion to amend or the

2   motion to intervene, so why can't we have briefing on that on

3   the same schedule --

4           MS. MATZ:  Well, so --

5           THE COURT:  -- as the motion to intervene?

6           MS. MATZ:  First of all, are you taking the papers

7   that she submitted previously as her moving papers on the bond?

8   I was a little unclear about that.

9           THE COURT:  I thought they were intended as such, but

10  let me ask Ms. Willis.

11          Did you plan to make a more formal motion or was that

12  your motion?

13          MS. WILLIS:  No, that's the motion.  All the points

14  are there.

15          THE COURT:  All right.

16          MS. WILLIS:  They have the right to oppose it and of

17  course, I can reply.  And we're already on calendar on it, then

18  I need to have it moved immediately.  I don't want to wait.

19          THE COURT:  I'm addressing your concern.  I just said

20  to Ms. Matz that I think you're right, that that motion is not

21  contingent on the other motions.

22          If you want, Ms. Matz, I'll consider your letter as

23  your opposition if you don't want to do anything more formal,

24  either.  And then it would just be Ms. Willis' reply, and then

25  I can rule.

190718cantC              Conference

1          MS. MATZ:  I'm sorry.  No, I think, your Honor, we

2    would want to do something a little bit more formal.

3          THE COURT:  All right.  I think Ms. Willis has a

4    point.  We don't need to wait until the fall for that.

5          MS. WILLIS:  Your Honor, I believe the Court should

6    use discretion.  If you take a look at -- it was a letter

7    motion, Ms. Matz, the Sixuvus, they have opposed it.  They

8    opposed it, your Honor, in a letter opposition.  In there, they

9    made points, okay, so it's being briefed.  The only thing

10   that's missing, your Honor, is my reply to that.  Instead, they

11   want to go and review this.  And I think your Honor has enough

12   before her.  Your Honor has my actual brief, moving papers.

13   They have opposed it.

14         Now, your Honor, they could have chosen not to oppose

15   it in their letter.  They did.  Look at the points they made.

16   It's there.

17         THE COURT:  Ms. Willis, you need to take a breath,

18   also.

19         I said that opposition to the motions was not

20   required.  I asked for the equivalent of a pre-motion letter.

21   I am not going to preclude formal opposition.  I'm going to let

22   them formally oppose.

23         MS. WILLIS:  Okay.

24         THE COURT:  So, how long, Ms. Matz, would you like

25   for your opposition to the bond motion?

190718cantC                    Conference

1              MS. MATZ:  Well, your Honor, I'm sorry.  I just want

2      to backtrack a moment.  You asked me a question and I said one

3      other thing and then we got a little sidetracked.  And you

4      asked me whether or not I did think it was impacted by the

5      motion to intervene, and I'm just going to be frank with your

6      Honor.  I believe it could be, because you do need to remember

7      also that the bond was posted with respect to the first T.R.O.

8      that was when Ms. Willis was not a party to the case at all.

9              And I also think that because some of the things she

10     has submitted as fees, and I think the law is pretty clear that

11     she's not going to get it anyways, but to the extent your Honor

12     might disagree with me, some of the things she has submitted as

13     fees relate to her application to intervene, they relate to her

14     pleadings and other things.  And to the extent that she's not

15     an intervenor, those things could be affected by those

16     arguments.

17             MS. WILLIS:  No.

18             THE COURT:  I don't think that's so, because, really,

19     the only fees that she would be entitled to collect from the

20     bond would be those occasioned by the injunction, and that's a

21     much narrower set of expenses than everything to do with this

22     lawsuit.

23             So, I think whether or not I ultimately allow

24     permanent intervention and whether it's as of right or

25     discretionary, I still think the issue of whether the

190718cantC                Conference

1  injunction resulted in any harm to Ms. Willis, that she can

2  collect on from the bond, is right.

3          You can put in your opposition why you think that's

4  not correct.

5          MS. MATZ:  That's fair enough.

6          THE COURT:  I think you are correct in your papers

7  when you say that you can only collect from the bond that which

8  was occasioned by the injunction, not that which was occasioned

9  by the lawsuit writ large.

10          MS. MATZ:  Okay.

11          MS. WILLIS:  And I state that.  In my brief, I

12  clearly outline that these fees are all relevant.  I'm not

13  attempting to collect anything broad.  If they want to discuss

14  that, that's a part of their opposition.  It's there.

15          And your Honor, also from the date -- we have to be

16  careful here because there are some statutory times running,

17  time limits here from the time that I actually filed that

18  letter motion for them to respond here on it, so the Court

19  should be concerned, should be wary of that.

20          THE COURT:  I'm sorry.  What statutory time limit are

21  you referring to?

22          MS. WILLIS:  Well, for example, when you file a

23  motion, right, there's a motion that's filed before the Court,

24  there's a certain amount of time allotted for the opposition.

25          THE COURT:  Well, in the absence of an order to the

190718cantC                    Conference

1    contrary, the local rule governs, but I'm about to enter an

2    order to the contrary, but I would like to see it before you go

3    on vacation, Ms. Matz.

4              So, when can you file your opposition to the bond

5    motion?

6              MS. MATZ:  Can we have until the 19th of August?

7    That's about 30 days.

8              THE COURT:  And then how long for your reply,

9    Ms. Willis?

10             MS. WILLIS:  Your Honor, I think 30 days is too long.

11   I oppose that.

12             MS. MATZ:  Your Honor, --

13             THE COURT:  It's within my discretion.  I'm going to

14   allow it.

15             MS. WILLIS:  Okay.

16             THE COURT:  We're all very busy.  I don't know that I

17   would even, if it were filed sooner, that I would get to it any

18   sooner.

19             How long would you like after August 19 for your

20   reply?

21             MS. WILLIS:  I have to look at my schedule here.

22   About 20 days later.

23             THE COURT:  Let's see.  September 9th is 21 days

24   later.

25             MS. WILLIS:  Okay.

190718cantC                 Conference

1         THE COURT:  So, the proposed amended complaint is

2   going to be filed August 19.  September 9, the defendants are

3   either going to say they don't object or they're going to

4   submit a letter brief opposing.

5         If they do that September 9th, and this is one date I

6   haven't set, how long after that date would you like to respond

7   to their opposition of September 9th?

8         MS. WILLIS:  Well -- no, I had to reply on September

9   9th.

10        THE COURT:  You're filing the proposed amended

11  complaint on August 19th.  On September 9th, they're either

12  going to say fine or we oppose for these reasons.  And then

13  you're entitled to reply to that.

14        MS. WILLIS:  Right.

15        THE COURT:  How long after September 9th --

16        MS. WILLIS:  That's generally about 20 days after

17  that.

18        THE COURT:  All right.  So, that would be

19  September 30th.  The 29th is the Saturday.  And the

20  30th -- no, the 29th is a Sunday, so September 30th.

21        And once I rule on that, we've set 30 days for the

22  opposition to the motion to intervene, and the reply 20 days

23  thereafter.

24        In the meantime, the opposition to the bond motion is

25  going to be filed August 19th and the reply will be September

190718cantC                    Conference

1    9th.

2         And once the motion to intervene is decided, if I

3    grant it, then we will move forward with discovery, but we'll

4    need to know who the parties are before we can do that.

5         In the meantime, I feel like a broken record, but it

6    seems crazy that, if there's an agreement floating out there

7    that Can't Stop has proposed which takes into account the

8    concerns that Ms. Willis expressed to Can't Stop, it seems just

9    nuts to me that we can't resolve the whole case.

10        And I think if Ms. Willis wanted to be a full-time

11   lawyer, she would have done that with her degree.  I can't

12   imagine she wants to spend her time briefing motions.  I can't

13   imagine Sixuvus and Can't Stop want to keep paying their

14   lawyers.

15        I really hope that this agreement, which sounds like

16   we're closing in on between Can't Stop and Sixuvus, is

17   something that Ms. Willis will give serious thought to signing

18   onto or signing onto a separate agreement that protects her

19   rights but acknowledges that her rights are limited to her

20   agreement with Can't Stop, and that there are going to be

21   mechanisms in place if Sixuvus or Kings of Disco pushes their

22   luck.

23        MS. WILLIS:  Your Honor, you're absolutely correct.

24   If this is the same reason that was represented to me from

25   Can't Stop from Mr. Belolo, as well as Bob Besser, if this is

190718cantC                Conference

1   the same, I have already given my blessings to it.  It's my

2   understanding it's the Sixuvus who is sort of dragging their

3   feet here.  So, yes, there is something that is before them now

4   that I don't have a problem with.

5            THE COURT:  That would be lovely.  And I know all the

6   performers are travelers, and it's not always easy to get

7   everybody in the same room, but I suspect that Ms. Matz and

8   Mr. Adelman are doing everything they can to wrestle that

9   particular bear to the ground.  And I'm sure the Sixuvus

10  themselves would rather not to have keep paying lawyers if they

11  can help it.

12           So, I'm sure there will be progress made.  And if it

13  can be made in the next four weeks, then all these papers that

14  I've just described don't have to be filed, and that would be a

15  lovely thing for all of you and for me.

16           Anything else we should do today?

17           MS. WILLIS:  Yes.

18           MS. MATZ:  May I ask one clarification question.

19           THE COURT:  Yes.

20           MS. MATZ:  And that is, with respect to Ms. Willis'

21  letters for clarification of the March 16, 2019, T.R.O., your

22  Honor expressed what you intended orally earlier at this

23  conference.  Are we to take that as the order on the

24  clarification?  I don't really believe any further briefing is

25  necessary on this issue.

190718cantC                  Conference

1          THE COURT:  Agreed.  The point is, and I think

2   everybody agrees, that as far as what the public can see, the

3   Sixuvus are not representing themselves to be Village People,

4   and I am unconcerned if, as I said, as a matter of computer

5   science, the page that's now Kings of Disco is what used to be

6   the official Village People.

7          Now, the disposition of the "likes," I think I've

8   said before, this is a new area, and maybe there will be case

9   law that convinces me otherwise or maybe there will be argument

10  that convinces me otherwise when we get to summary judgment,

11  but it seems to me that when somebody "liked" the Village

12  People page in 2016, they were not "liking" the name Village

13  People; they were "liking" the group.

14         So, if those "likes" follow the performers --

15         MS. WILLIS:  Your Honor, --

16         THE COURT:  Ms. Willis, I am talking.

17         MS. WILLIS:  Okay.

18         THE COURT:  If those "likes" follow the performers to

19  a page that now says Kings of Disco, that doesn't seem wrong to

20  me.  However, as I said, there may be case law that I'm not

21  aware of or there may be arguments that haven't yet been made

22  that would convince me otherwise at the appropriate time.  But

23  right now, it seems to me the people who clicked "like" were

24  not saying, oh, I like the words "village" and "people" next to

25  each other; they were saying I like these particular

                SABRINA A. D'EMIDIO – OFFICIAL COURT REPORTER
                              (914)390-4053

190718cantC                Conference

1    performers.  Just like if somebody "likes" Mr. Willis, and

2    whenever the license expires, Can't Stop gives it to a third

3    party, I don't think that third party would be allowed to

4    represent that the people who "liked" Mr. Willis really liked

5    it.  So, I hope that's enough clarification.

6            I'm not going to require any further machinations

7    within Facebook.  I don't see any chance that the confusion

8    that was the reason for the order persists.  And it seems to me

9    the order allowed for the disabling of the account in any

10   number of ways, one of which was specified, but not mandated.

11   So, I don't think anything further is needed on that.

12           MS. MATZ:  So we can --

13           MS. WILLIS:  May I now, your Honor.  First, I want to

14   say, your Honor, I object to each and every aspect of the

15   statement that you put on the record.  Each and every aspect, I

16   object to it.

17           I want to remind the Court that the only way that

18   what your Honor stated could be, I guess, a fact, would be that

19   if, in fact, the Facebook page was that of the Sixuvus, and

20   then the Court can actually argue that, you know what?  They

21   like the Sixuvus.  Who are the Sixuvus?  Oh, they're those

22   individual people that's a part of that corporation.

23           Your Honor here is putting on the record that when

24   the public "liked" Village People, they "liked" the actual

25   individual members who were performing as Village People, and I

190718cantC                Conference

1  object to that.  Just for the record, I don't think that is

2  correct.  I believe that's error, but your Honor, I don't have

3  to argue any further on it, but I put on the record that I

4  object to each and every aspect of your Honor's assessment of

5  this.

6          THE COURT:  When we get to discovery, maybe you'll be

7  able to gather evidence that will convince me I'm wrong, but

8  right now, that's my impression.

9          Also, I think, even if you were correct, I think the

10  party that would be entitled to direct the disposition of those

11  "likes" would be Can't Stop, but in any event, when we get to

12  discovery, anybody can take depositions of the people who

13  "liked" Village People back in 2016 and earlier.  And if they

14  say, Oh, what I liked was the words "village" and "people" next

15  to each other as opposed to the performance of the people who

16  were performing as Village People, maybe there will be

17  something different.  Or if they say, No, it didn't have

18  anything to do with the people, it was just the notion of these

19  six characters -- we'll see.  I'm not ruling anything out.  All

20  I'm saying is, for now, I don't see any need for further papers

21  on that.

22          MS. WILLIS:  Your Honor, --

23          THE COURT:  I understand you object, but that's --

24          MS. WILLIS:  Your Honor, I want to make one other

25  point of clarification here for the Court.

190718cantC                    Conference

1          Your Honor, that would be like saying that if you

2     have a certified page for the Lion King, that they actually --

3     when the people "liked" the Lion King page, they could happen

4     like the particular performers that are in the Lion King at

5     that time.  It does not make sense, your Honor.  I believe your

6     Honor is not correct.  I object, but thank you for putting it

7     on the record, your Honor.  I'm done with that part of it.  I

8     don't want to argue anymore.

9          THE COURT:  All right.  And I will hope that this

10    will all go away for numerous reasons, but if it doesn't, I

11    will look for the various submissions on the dates we have set.

12          Thank you, all.

13          MS. MATZ:  Thank you, your Honor.

14          MS. WILLIS:  Thank you.

15              - - -

16    Certified to be a true and correct

17    transcript of the stenographic record

18    to the best of my ability.

19    _____

      U.S. District Court
20    Official Court Reporter

21

22

23

24

25