# Exhibit 1

# Exhibit 1

# TRADEMARK LICENSE AGREEMENT

This Trademark License Agreement is entered into as of May 19, 2017 (the "*Effective Date*") by and between Can't Stop Productions, Inc., a New York Corp. ("*Licensor*") and Karen Willis d/b/a Harlem West Entertainment ("*Licensee*").

## Introduction

Whereas, Licensor is the owner of all trademark rights in "Village People" and the characters (the "*Trademarks*");

Whereas, Licensor has previously granted a non-exclusive oral, terminable-at-will, license to use the Trademarks to Sixuvus, Ltd. and the individual performers related thereto in connection with live performances (the "*Sixuvus License*");

Whereas, Licensor has not licensed any other person or entity to use the Trademarks for purposes of live performances; and,

Whereas, the parties hereto wish to describe the terms and conditions pursuant to which Licensor shall license to Licensee the Trademarks in connection with live performances, and television appearances and in all other media for the purpose of promoting live performances.

1. On June 1, 2017, Licensor will terminate the Sixuvus License, effective immediately. Licensor will not authorize Sixuvus to do any further performances unless and until it obtains general releases running from Sixuvus to Licensor and Licensee. Licensor will have six (6) months (through December 1, 2017) to negotiate with Sixuvus a resolution of any claims related to the termination. Licensor will use its best efforts to obtain general releases running from Sixuvus to Licensor and Licensee. Under no circumstances will Sixuvus have the right to use the Trademarks beyond December 1, 2017.

2. INTENTIONALLY OMITTED.

3. GRANT OF TRADEMARK LICENSE

    2.1. Licensor grants to Licensee the exclusive world-wide right to use the Trademarks as provided hereunder for the purpose of live performances, and television appearances and in all other media for the purpose of promoting live performances, including, but not limited to merchandising, websites and social media. Such use includes, but is not limited to, the right to state "Village People, featuring Victor Willis" or similar uses.

    2.2. Licensor shall retain the right of approval over the use of the Trademarks in connection with live performances, including, but not limited to, staging and dress of the characters, choice of songs, promotional and marketing material and content and design of the Websites (as defined below), all such approvals not to be unreasonably withheld.

2.3. VillagePeople.com and OfficialVillagePeople.com under Licensor's contract related to Village People (the "*Websites*"). Licensor hereby grants to Licensee all necessary administrative rights to properly maintain and operate the Websites, subject to Licensor's approval, which approval shall not be unreasonably withheld. Licensor will take all steps necessary to effect the grant of administrative rights and control of the Websites to Licensee for the duration of the term of this Agreement.

2.4. Licensee acknowledges and agrees that: (a) as between Licensee and Licensor, Licensor is the sole owner of the Licensed Marks; (b) except for the rights granted to Licensee pursuant to this Agreement, Licensee shall not acquire any rights in the Licensed Marks or any other right adverse to Licensor's interest in the Licensed Marks by virtue of this Agreement or by virtue of Licensee's use of the Licensed Marks; (c) nothing in this Agreement shall be deemed, intended or implied to constitute a sale or assignment of the Licensed Marks to Licensee; (d) Licensee's use of the Licensed Marks under this Agreement and any goodwill derived from such use shall inure to the benefit of Licensor; (e) this Agreement does not confer on Licensee any goodwill or ownership interest in the Licensed Marks; (f) if Licensee acquires any rights in the Licensed Marks, by operation of law or otherwise, such rights shall be deemed and are hereby irrevocably assigned to Licensor without further action by any of the parties, and Licensee shall take all such actions as are reasonably requested by Licensor to effect such assignment; (g) Licensee shall not dispute, challenge or assist any Person in disputing or challenging Licensor's rights in and to the Licensed Marks or the validity of the Licensed Marks; and (h) Licensee shall not grant or attempt to grant a security interest in, or otherwise encumber, the Licensed Marks or record any such security interest or encumbrance against any application or registration regarding the mark in the United States Patent and Trademark Office or elsewhere.

2.5. <u>Social Media.</u> Social media accounts will be administered and managed by a digital PR and marketing firm selected and paid for by Licensor and approved by Licensee, with such approval not to be unreasonably withheld.

4. **LICENSE FEE**

3.1. In consideration of the license, Licensee shall pay Licensor five percent (5%) of gross revenues actually received by Licensee for live performances (less booking agency commission) and ten percent (10%) of merchandising revenues actually received by Licensee (net of all actual direct costs incurred by Licensee) under the Trademarks during the term.

4.2 Licensee shall account to Licensor for all royalties due under paragraph 4.1 above on a semi-annual basis within forty-five days after June 30 and December 31 of each year during the term of this Agreement.

5. **TERM**

4.1. This Agreement commences on the Effective Date and will remain in force for 10 years.

4.2. Upon expiration, all licenses granted hereunder shall cease to be effective and Licensee shall immediately cease all use of the Trademarks, and administrative rights and control of the Websites will revert to Licensor.

6. ASSIGNMENT. Licensor shall have the right to assign its rights or obligations under this Agreement, or any part hereof, subject to Licensee's rights hereunder. Licensee shall not assign its rights or obligations under this Agreement without the prior written consent of Licensor, which consent shall not be unreasonably withheld. Any purported assignment in violation of this provision shall be null and void *ab initio.*

7. NOTICE

5.1. Any notice required or permitted under the terms of this Agreement or required by law must be in writing and must be (a) delivered in person, (b) sent by registered mail, return receipt requested, (c) sent by overnight air courier for priority next-day delivery, or (d) by email, in each case forwarded to the appropriate address set forth below.

Licensor:

    Can't Stop Productions, Inc.
    880 Broadway
    New York, New York 10003
    Attention: Marguerite Decarlo
    E-Mail: m.decarlo@cantstop-productions.com

Licensee:

    Karen Willis
    220 West G Street, Suite E
    San Diego, California 92101
    E-mail: karen@harlemwestentertainment.com

Either party may change its address for notice by written notice to the other party. Notices will be considered to have been given at the time of actual delivery in person, three (3) business days after posting, one day after delivery to an overnight air courier service or the moment of transmission by facsimile or email (with confirmation back of delivery).

8. MISCELLANEOUS

6.1. Neither party will incur any liability to the other on account of any loss or damage resulting from any delay or failure to perform all or any part of this Agreement if such delay or failure is caused, in whole or in part, by events, occurrences, or causes beyond its control and without negligence of the parties. Such events, occurrences or causes will include, without limitation, acts of God, strikes, lockouts, riots, acts of war, earthquakes, fire and explosions, but the ability to meet financial obligations is expressly excluded.

6.2. Any waiver or amendment of the provisions of this Agreement or of a party's rights or remedies under this Agreement must be in writing and executed by both parties hereto to be effective. Failure, neglect or delay by a party to enforce the provisions of this Agreement or its rights or remedies at any time will not be construed to be deemed a waiver of such party's rights under this Agreement and will not in any way affect the validity of the whole or any part of this Agreement or prejudice such party's right to take subsequent action.

6.3. Each party is authorized and has all requisite power and authority, under its charter and by-laws or other articles or agreements of organization and the Laws of the jurisdiction where it is incorporated or otherwise organized, to enter into this Agreement, and this Agreement has been duly and validly executed by it and constitutes a valid and binding obligation of it, subject to any applicable bankruptcy, insolvency, reorganization, moratorium or similar Laws now or hereafter in effect relating to creditors' rights generally or to general principles of equity.

6.4. Licensor warrants and represents that it has full ownership rights to the Trademarks, and there is no obstruction to it being used by Licensee under and in accordance with the terms of this Agreement, free from any claims by third parties.

6.5. Severability. If any term, condition or provision in this Agreement is found to be invalid, unlawful or unenforceable to any extent, the parties shall endeavor in good faith to agree to such amendments that will preserve, as far as possible, the intentions expressed in this Agreement. If the parties fail to agree on such an amendment, such invalid term, condition or provision will be severed from the remaining terms, conditions and provisions, which will continue to be valid and enforceable to the fullest extent permitted by law.

6.6. Entire Agreement. This Agreement contains the entire agreement of the parties with respect to the subject matter of this Agreement and supersedes all previous communications, representations, understandings and agreements, either oral or written, between the parties with respect to said subject matter.

6.7. Counterparts. This Agreement may be executed in counterparts, each of which so executed will be deemed to be an original and such counterparts together will constitute one and the same Agreement.

6.8. Applicable Law. This Agreement will be interpreted and construed pursuant to the laws of the State of California and the United States without regard to conflicts of laws provisions thereof, and the parties hereby consent to exclusive jurisdiction and venue in the courts of San Diego County, California, for the judicial resolution of any dispute arising between them in connection with the subject mater of this Agreement.

IN WITNESS WHEREOF, the authorized representatives of the parties hereby bind the parties by signing below:

CAN'T STOP PRODUCTIONS, INC.

By: _____
Name: JONATHAN GELLO

KAREN WILLIS D/B/A
HARLEM WEST ENTERTAINMENT

By: _____
Name: