Karen L. Willis, J.D.
220 West G Street, Suite E.
San Diego, CA. 92101
(619) 206-5311

June 3, 2020

**VIA EMAIL**

The Hon. Judge Cathy Seibel
300 Quarropas St., Courtroom 621
White Plains, NY 10601-4150

**LETTER MOTION AND RESPONSE TO ORDER**

Dear Hon. Judge Seibel:

**INTRODUCTION**

I am the Intervenor in the case of Can't Stop v. Sixuvus, Ltd. In response to the court's order dated June 1, 2020, I hereby move the court to delay excution of any order allowing the Sixuvus bond to be discharged less $3,520.

The reason for the motion is that when the court considers an overlooked aspect of the matter including but not limited to the declarations of Sal Michaels and Karen Willis which are part of the record, and specifically, an allegation in Intervenor's Amended Complaint that during the TRO, the Sixuvus interfered with the contractural relations between Village People and the Texan Theatre by essentially taking a financial benefit away from Intervenor to enrich themselves, the bond should not be discharged in any amount pending final adjudication of the complaint.

This interference was proximatley caused by the TRO because the Sixuvus used

the TRO to flip a Village People contracted show to their financial benifit. When this overlooked information is considered, intervenor's damages and costs far exceed $3,520.

For this reason, any amount earned by the Sixuvus should be considered for purposes of **restitution** against the TRO bond.

### THE COURT OVERLOOKED RELEVANT DAMAGES ALLEGED IN THE COMPLAINT IN INTERVENTION AS WELL AS MOTIONS WHICH SUPPORTS A DAMAGE CLAIM AGAINST THE TRO BOND

In the Proposed Amended Intervenor Complaint, Intervenor alleges that "[t]he Sixuvus defendants, and each of them, knew that contractural relationships exsisted between Intevenor and the business or organizations listed above. Yet defendants sought to disrupt the relationship and intended to disrupt, and cause harm to Intervenor and her shows including the Texan Theatre that, with the urging of defendants, breached their fully executed agreement with intervenor. The Texan Theatre subsequently booked defendants group therein allowing *Village People featuring Ray Simpson to financially benefit and causing financial harm to Intervenor." *See Exhibit A, p.16.* Therefore, release of the bond is premature.

In addition, several court filings prior to the Proposed Amended Intervenor Complaint, including but not limited to the declarations of Sal Michael and Karen Willis state that the Sixuvus were using the TRO to damage Intervenor and Village People shows. *See Exhibit B, Declaration of Sal Michaels, ¶12; See also Exhibit B. Declaration of Karen Willis, ¶13.*

## RESTITUTION IS A VALID CONSIDERATION FOR RECOVERY ON A TRO BOND

Any amount earned by the Sixuvus with use of the wongfully obtained TRO and/or proximatley caused by the wrongfully obtained TRO is a fair ground for recovery on the TRO bond. "A number of courts and commentators, however, have indicated that restitution can provide an appropriate measure of damages." U.S. D.I.D. Corp., v. Windstream Communications, Inc., See also Middlewest, 433 F.2d at 244 ("Restitution is a proper remedy to return the parties to the position they would have been in had the [defendant], not been judically restrained.").

## CONCLUSION

For the reasons stated, the court should delay its decision on any order to discharge the TRO bond pending, at minimun, the results of a hearing to prove up damages caused by the unjust enrichment of the Sixuvus pursuant to the Proposed Amended Intervenor Complaint and declarations of Sal Michaels and Karen Willis.

Moreover, any money collected by the Sixuvus from the Texan Theatre show and/or any other monies earned from the wrongfully obatined TRO, should be considered restitution for damages and a fair ground for recovery from the Sixuvus TRO bond. And because the damages caused by the TRO are specially alleged in Intervenor's complaint, the bond should be maintained as security against that specific cause of action.

Respectfully submitted,

Karen L. Willis