# EXHIBIT A

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**
------------------------------------------------------------x

CAN'T STOP PRODUCTIONS, INC.,

Plaintiff,

-against-

SIXUVUS, LTD., ERIC ANZALONE,
ALEXANDER BRILEY, FELIPE ROSE, JAMES
F. NEWMAN, RAYMOND SIMPSON, and
WILLIAM WHITEFIELD,
                    Defendants,

KAREN L. WILLIS

                Intervenor,

-against-

SIXUVUS, LTD., ERIC ANZALONE,
ALEXANDER BRILEY, FELIPE ROSE, JAMES
F. NEWMAN, RAYMOND SIMPSON,
WILLIAM WHITEFIELD
                Defendants

------------------------------------------------------------x

**7:17-cv-06513-CS**

[PROPOSED] AMENDED COMPLAINT
IN INTERVENTION FOR
ENFORCEMENT OF REGISTRANT'S
PROPRIETARY RIGHTS UNDER 15
U.S.C. §1114; PASSING OFF/AND OR
INTENTIONAL USE OF
CONFUSINGLY SIMILAR MARK
(15 U.S.C. § 1125); UNFAIR
COMPETITION; CANCELLATION OF
THE KINGS OF DISCO MARK;
INJUNCTION

Demand for Jury Trial

Karen L. Willis, J.D.
220 West G Street, Suite E.
San Diego, CA. 92101
(619) 206-5311
Intervenor/Plaintiff

Through the following allegations, KAREN L. WILLIS ("Intervenor") bring claims against Defendants Sixuvus, Ltd., Eric Anzalone, Alex Briley, Felipe Rose-Ortiz, Raymond Simpson, William Whitefield, Jim Newman (collectively, the "Sixuvus Defendants").

## NATURE OF THE ACTION

1.  This complaint in intervention is to enforce Can't Stop Productions, Inc., ("Registrant") proprietary rights in and to the Village People marks for specific instances of trademark infringement as outline in its complaint against the Sixuvus, Ltd, et al. Intervenor brings additional causes of action in intervention for intentional copying, passing-off; and unfair competition.  The claims are brought pursuant to 15 U.S.C. § 1114; 15 U.S.C. § 1125(a), (15 U.S.C. § 1125(c), Section 43 (a), Section 43 (c), and under New York common law, as more fully set forth below.

2.  Intervenor, by application for a Temporary Restraining Order ("TRO") and Preliminary Injunction filed contemporaneously herewith, seeks to enjoin defendants, and each of them, from associating the Kings of Disco with Village People and interfering with Intervenor's group's (professionally known as Village People) live performances by passing off the Kings of Disco as Village People through a multitude of schemes, including but not limited to, social media, the booking of live performances, the passing off of the Kings of Disco live performances as Village People, and passing the Kings of Disco in general, as simply being Village People by another name.

1

## THE PARTIES

3.   Plaintiff Karen L. Willis, Intervenor, is an individual doing business as Harlem West Entertainment who resides in San Diego, California.

4.   On information and belief, Defendant Sixuvus Ltd. is a New York corporation.

5.   On information and belief, Defendant Eric Anzalone is an individual who resides in Monroe Township, New Jersey.

6.   On information and belief, Defendant Felipe Rose-Ortiz is an individual who resides in Asbury Park, New Jersey.

7.   On information and belief, Defendant Alex Briley is an individual who resides in Mt. Vernon, New York.

8.   On information and belief, Defendant William Whitefield is an individual who resides in Asbury Park, New Jersey.

9.   On information and belief, Defendant Jim Newman is an individual who resides in New York, New York.

10.  On information and belief, Defendant Raymond Simpson is an individual who resides in Englewood, New Jersey.

## JURISDICTION AND VENUE

11.  This Court has subject matter jurisdiction over Plaintiff's claims under and pursuant to 15 U.S.C. § 1125(a) and (c), and 15 U.S.C. § 1114.

12.  Venue is proper in this district pursuant to 15 U.S.C. § 1125(a) and (c), and 15 U.S.C. § 1114 because the Sixuvus defendants are defendants and cross-complainants.

2

## BACKGROUND

13.   As recited in the Complaint in this action filed by Can't Stop Productions, Inc.,

Registrant is the owner of three U.S. federal trademark registrations for the mark VILLAGE

PEOPLE for goods and services in the music industry, including without limitation Reg. No.

1,101,013 for live performances by a musical group, issued on or about August 28, 1978.

14.   On or about May 19, 2017, in a written agreement, Registrant granted Intervenor the

exclusive right to use the Village People mark and trade dress for purposes of live performances

(the "Exclusive License")

15.   On May 30, 2017, Registrant terminated an oral license agreement it had previously

granted the Sixuvus for live performances and for use of the Village People trade dress, leaving

Intervenor the only authorized licensee of the mark and trade dress for purposes of live

performances.

16.   In the notice of termination, Registrant allowed the Sixuvus to honor the dates and

contracts it had already signed but asked that the Sixuvus not accept any further bookings under

the VILLAGE PEOPLE name after June 1, 2017.

17.   As the exclusive licensee, Intervenor has standing to assert claims seeking

to enforce Registrant's proprietary rights against parties for infringement of exclusive rights

under the License agreement.

### Nature and Quality of the Mark

18. The mark is well-recognized within the relevant public of pop music consumers and

concertgoers.   The mark is inherently distinctive when used in connection with live musical

performances and six characters because prospective purchasers are likely to perceive it as a

3

designation that identifies the business of a particular source, namely Village People, or of its authorized licensees. The federal registration of the mark has become incontestable.

19. As a result of the use, advertisement and promotion of the mark, and the resulting goodwill which has inured to the benefit of the mark's owner of record, it has become highly distinctive and is well and favorably known amongst the relevant public throughout the nation and the world as identifying Village People.

### Kings of Disco

20. The term "The Kings of Disco," or interchangeably 'kings of disco," is a well-known and widely used term or nickname to describe the world famous Village People. In fact, the term or mark has acquired a secondary meaning to the Village People mark. On information and belief, amongst the first to describe Village People as the kings of disco was Rolling Stone Magazine, dating back to 1979.

21. Since that time, numerous newspapers, magazines and other publications consistently described Village People as the kings of disco for over 40 years now. As such, any goodwill related to the kings of disco acquired during the term of the former licensee's agreement, inure to the benefit of Registrant.

22. Moreover, the term kings of disco identifies a particular source of goods and services specific to Village People. Therefore, the kings of disco have acquired a secondary meaning to Village People.

23. Nonetheless, the Sixuvus defendants, in response to the termination of their license agreement, suddenly started referring to themselves as The Kings of Disco" and subsequently filed an intent to use application for exclusive use of the term for live performances. By virtue of

4

the trademark application, the Sixuvus defendants admit they had not made prior use the term for purposes of live performances prior to the filing of their 2017 trademark application.

24. However, the Sixuvus defendants knew the term kings of disco was already associated with, and descriptive of, Village People. But despite this prior knowledge, the Sivuvus defendants directed their counsel to file a fraudulent trademark application stating that no other party is entitled to use the Kings of Disco mark and that the mark is not confusingly similar to another mark.

25. Intervenor is harmed by the Sixuvus defendants trademark application and any subsequent registration and/or use of the Kings of Disco because it ordinarily causes public confusion, and is actually causing public confusion as to who are the kings of disco as constituted by the Sixuvus defendants, if not Village People by another name.

26. Moreover, Intervenor is harmed by the application and registration of the kings of disco mark because the Sixuvus defendants would seek to suddenly, after over 40 years, refrain Registrant and Intervenor as well as promoters and media organizations from referring to VILLAGE PEOPLE as the kings of disco, which is absolutely absurd under the circumstances since Village People has been described as the kings of disco in the media and by promoters worldwide for over 40 years.

27. The Sixuvus defendants knew the term Kings of Disco was associated with Village People and became significantly associated during the term of their license agreement. Therefore, the Sixuvus defendants intentionally lifted the term and starting using it for the specific purpose of capitalizing on Registrant's mark after their use was terminated.

**28. An additional purpose was to interfere with Intervenor's contractual relationship by frustrating or making it difficult for Intervenor to use the Kings of Disco when the Sixuvus knew Intervenor was entitled to such use as the exclusive Village People licensee. With this knowledge, the Sixuvus defendants induced Can't Stop through its counsel Stewart Levy to endorse or acknowledge the Sixuvus defendants' exclusive right to use of the term Kings of Disco and to abandon all claims to Village People social media sites controlled by the Sixuvus defendants. Therein, blatantly interfering with Intervenor's benefit to all goodwill pertaining to the Village People mark for purposes of live performances as the exclusive licensee.**

**29. The Sixuvus defendants inducement of Registrant to acknowledge or agree to look the other way with respect to the Sixuvus defendants trading on the Village People mark with use of the Kings of Disco, completely undermined Village People and Intervenor's right to continued use and historical association of Village People with the Kings of Disco, therein damaging Intervenor as the exclusive licensee of the Village People mark. The method of inducement was a non court sanctioned settlement forged by the Sixuvus defendants in efforts to undermine Interveonr's right to intervene to protect her interest in the use of the Kings of Disco as the exclusive Village People licensee.**

30. On information and belief, the Sixuvus defendants have made contact with one or more VILLAGE PEOPLE promoters demanding they cease and desist referring to VILLAGE PEOPLE as the kings of disco. Moreover, the Sixuvus counsel objected in open court to the use of the kings of disco at a Village People related social media site. The Sixuvus defendants use of the kings of disco causes public confusion in that promoters, fans, as well as, the media, are

confused as to why VILLAGE PEOPLE could no longer, after over 40 years, be described as the kings of disco without being asked to cease and desist.

31. Public confusion and interference however is exactly the intent of the Sixuvus defendants in an obvious scheme to pass themselves off as Village People by another name whilst attempting to interfere with Intervenor's VILLAGE PEOPLE use of the descriptive term kings of disco.

32. The Sixuvus defendants however are **not** entitled to seek registration of the mark under the circumstances.  Registrant however is entitled to registration or use of the kings of disco in association with VILLAGE PEOPLE as the term is synonymous with VILLAGE PEOPLE, not the Sixuvus defendants.  The Sixuvus defendants knew this prior to applying to trademark the term.

33. All of the above allegations constitute fraud on the trademark office in that the Sixuvus defendants knew their application to trademark the Kings of Disco was and remains fraudulent made for the sole purpose of causing public confusion, passing themselves off as Village People, and infringing on the VILLAGE PEOPLE mark.  Moreover, the Sixuvus defendants knew the term kings of disco to be already associated with, and descriptive of VILLAGE PEOPLE.  In addition, the Sixuvus defendants knew, as the former licensee of the Village People mark (and by agreement), that they are not entitled to use confusingly similar terms to pass off the Village People mark.

34. Finally, the Sixuvus defendants knew such use was in violation of the Lanham Act, and/or in violation of general trademark law.  Yet in efforts to defraud the trademark office, and to pass themselves off as Village People by another name, to interfere with Intervenor's exclusive license, to cause public confusion, and in efforts to cause the trademark office to issue

7

registration of The Kings of Disco mark, the Sixuvus defendants directed their counsel to make fraudulent filings with the trademark office in order to mislead the Trademark Office into issuing an allowance to register.

**Infringement; Intentional Copying/Passing Off The Kings of Disco as Village People**

35. This Court dissolved the TRO allowing the Sixuvus provisional use of the mark, but well after the TRO was dissolved the Sixuvus defendants continued to exploit the Village People mark therein resulting in infringement, confusion, deception, false description, dilution, and passing off. Since the entry of the Order dissolving Defendants' TRO and denying defendants' preliminary injunction, the Sixuvus defendants and their cohorts, made unauthorized use of the Village People mark and continue to make unauthorized use of the mark as follows:

36. On or about February 27, 2018, the Sixuvus defendants announced at various official Village People social media and website, including but not limited to Facebook, Twitter, VillagePeople.Band, and subsequently TheKingsof Disco.net, that they are now performing "The Kings of Disco" former members of Village People." They subsequently updated the social media and website to reflect or identify themselves as "The Kings of Disco formerly Village People." This revelation was very damaging to the Village People mark and brand.

37. As of the date of the filing of this complaint, the Sixuvus defendants are actively promoting themselves as the "Kings of Disco former members of Village People." In addition, the Sixuvus defendants uploaded photos used by them as a former licensee that shows them dressed as the world famous Village People characters. These photographs are currently displayed by the Sixuvus defendants at various social media sites, and the website "VillagePeople.band" and "TheKingsofDisco.net" as part of a scheme to aid the Sixuvus defendants passing the "Kings of Disco" off as Village People, and for no other purpose.

8

38. Defendants used official Village People social media and the unauthorized website

(VillagePeople.band), and now, TheKingsofDisco.net to promote "The Kings of Disco" live

performances in a manner that infringes and/or pass off the Kings of Disco as Village People.

On at least 14 occasions, after the TRO was dissolved, the Sixuvus defendants infringed the

Village People mark, design of characters, and trade dress including but not limited to the

following shows which are **not** meant to be an exhaustive list of performances:

- Pennsylvania Flower Show (March 3, 2018)

- The Texan Theatre (February 10, 2018)

- King Center for the Performing Arts (April 27, 2018)

- Grand Rapids Pride (June 16, 2018)

- Kumble Theatres (June 28, 2018)

- Barnstable County Fair (July 28, 2018)

- Georgsmarienhutte, Germany (August 4, 2018)

- Hamburg, Germany (August 11, 2018)

- NDR Sommertour, Alsterdorf, Germany (May 15, 2018)

- NDR Sommertour, GMhutte, Germany (August 11, 2018)

- Yacht Club, Monaco (September 28, 2018)

- Las Vegas, NV. w/Salt n Pepa (October 2, 2018)

- Schlagerboom 2018, Television Appearance, Dortmund, Germany (October 20, 2018)

- New Year's Eve celebration Brandenburg Gate, Germany (December 31, 2018)

39. On information and belief, all of the shows were booked for the Sixuvus Defendants

by Red Entertainment; Universal Attractions; Mewes Entertainment Group; and Celebrity

9

Direct Entertainment. The Pennsylvania Horticultural Society, and Texan Theatre hosted performances at their venue or special event. Moreover, defendants aided and abetted the passing off of the Kings of Disco as Village People, and infringed the Village People mark for purposes of live performances.

40. Each of the defendants knew the Sixuvus had no right to perform as Village People or to pass themselves off as village People by another name. Intervenor will amend this complaint, as it becomes necessary, to join any and all other promoters and venues not listed above. As an example of the passing off by promoters and agencies, defendant The Pennsylvania Horticultural Society's Flower Show continued to promote and sell tickets for the Sixuvus live appearance as *Village People featuring Ray Simpson well after being notified to cease and desist. Defendants Pennsylvania Horticultural Society, Texan Theatre, and Celebrity Direct Entertainment knew a live performances at their event or in their facility billed and/or promoted as *Village People featuring Ray Simpson or other knock-off version constituted unauthorized use and trading on the Village People mark and brand. Moreover, defendants Texan Theatre, Celebrity Direct, The Pennsylvania Horticultural Society (and all other defendants) knew that any live performance at their event or facility with use of Village People trade dress would likewise constitute passing-off of the group as Village People. Defendants infringing acts were designed to deceive the public and cause public confusion.

41. Defendants, and each of them, including, Mewes, Universal Attractions, Red Entertainment, Texan Theater, and Celebrity Direct Entertainment, infringed the Village People trademark by billing and promoting the Sixuvus Defendants appearance at the Flower Show and Texan Theater as *Village People featuring Ray Simpson, and subsequently Kings of Disco

former members of Village People. Defendants then passed-off the Sixuvus appearance by

representing to the public that except for a name change, "The Kings of Disco" and Village

People are one and the same. Each individual Sixuvus defendants also made these

representations. The passing-off was accomplished by defendants, and each of them,

representing to the public that the "Kings of Disco [are] formerly Village People," therein

passing off "The Kings of Disco" as Village People, with use of a mark not owned by any of the

Defendants.

42. The intent of the Sixuvus defendants and their cohorts was to interfere, sow dissent, and

public confusion, in efforts to harm Interevenor's group's business relations and to bring harm to

numerous concerts already booked worldwide by Intervenor for Village People. Though several

cohorts are named in this complaint, Intervenor does not seek to action against any of the cohorts

at this time.

43. The Kings of Disco maintains control of official and verified Village People social media

sites such as Facebook, Twitter and Instagram though their right to continued access to the pages

ceased at the time of termination of their license agreement to do so.

44. Their continued administration of Village People social media sites harms Intervenor

in that all Village People social media sites once administered by the Sixuvus defendants as

licensees, as provided for in the license agreement between Intervenor and Registrant, were to be

recovered from the Sixuvus defendants by Registrant and used for the benefit of Intervenor and

VILLAGE PEOPLE.

45. Intervenor is likely to be damaged by the Sixuvus' failure to surrender several major

Village People social media sites, including Facebook, Twitter, and Instagram, to Intervenor and

Registrant because the Sixuvus are using such social media sites to associate the Kings of Disco

11

with Village People. Therefore, pursuant to Section 1125(a), Intervenor seeks relief from the Sixuvus failure to surrender the Village People social media sites.

## Trademark Dilution and Unfair Competition

46. Intervenor is the owner of an exclusive license for the Village People mark and trade dress which qualifies as a famous mark and trade dress. The Village People is world famous and denotes six characters: Cop Cowboy, Native American, G.I., Leather Man, and Construction Worker. When combined, whether in photo or in person, this image is immediately recognizable as Village People. The trade dress is equally distinctive in that any group of six individuals dressed in the attire is immediately recognizable as the Village People. Defendants knew the mark was famous prior to them engaging in their scheme to dilute.

47. Defendants made use of the mark and trade dress for purposes of live performances and/or for the purposes of the promotion of live performances at social media sites and websites and continue to make unauthorized use of the mark and trade dress for live performances in interstate commerce including the Pennsylvania Flower Show, and Texan Theatre.

48. Village People is a very iconic group wherein all of its hits featured original lead singer Victor Willis. The music of the group remains relevant more than 40 years later with sales exceeding 100 million units. Moreover, its associated YMCA dance is still performed worldwide after 40 years. Products bearing the Village People logo are widely distributed in the United States and worldwide on everything from slot machines to tooth brushes to Hallmark greeting cards.

49. Defendants use began after the mark gained fame and is likely to cause dilution by lessening the capacity of Intervenor's mark and trade dress to identify and distinguish her goods and services by associating with the famous Village People mark.

50. The services with which Defendants used, namely live musical performances, are identical to the services covered by the incontestable registration of the registered Mark.

51. The class of purchasers to whom defendants offered live musical performances under the mark are identical to the class of purchasers to whom Intervenor is exclusively licensed to offer live musical performances under the Village Peoople mark.

52. On information and belief, the buyers of pop music concert tickets are not highly sophisticated consumers who perform extensive research before making a purchase, but instead buy tickets based on very limited information, principally the name or association with the featured performer(s), not the name of the promoter or presenter.

53. The Sixuvus defendants intend to cause confusion or mistake among buyers of music concert tickets by associating the Kings of Disco with Village People.

54. In fact, the degree of similarity between "The Kings of Disco" and Village People famous mark and trade dress is stunning.  Intervenor's group consistently performs as Village People with shows currently booked worldwide into 2021.

55. Defendants' use of "The Kings of Disco" in association with the Village People mark has caused dilution of the Village People mark and continue to dilute the mark as several of Intervenor's Village People performances have already been negatively impacted and diluted by the shows identified above.  For example, several if not all the shows above would likely have been booked by Intervenor's agent for Village People had Sixuvus defendants not booked their shows by associating the Kings of Disco with Village People, and by passing off, all of which constitutes unfair competition under the Lanham Act, and New York common law.

**Interference**

56. Defendants' bad faith in adopting, using and associating The Kings of Disco with Village

13

People interfered with Intervenor's business and continue to interfere as demonstrated by their actions both before and after the entry of this Court's Order dated February 16, 2018 dissolving the TRO and denying their request of a preliminary injunction for continued use of the Village People mark.

57. Defendants failed and refused to return control of official Village People social media accounts to Registrant and Intervenor, despite numerous requests that they do so.

58. The Sixuvus knew a contract existed between Intervenor and Registrant for all social media sites they operated and controlled as Village People licensees to be relinquished for the benefit of Intervenor. However, in efforts to make it difficult or frustrate the contract, the Sixuvus through their counsel interfered with the transfer of the social media sites from the Sixuvus that would have benefited Intervenor resulting in substantial damaged to Intervenor.

59. Defendants made use and continue to use official Village People social media accounts including Facebook, Twitter, and Instagram by simply changing the name of the sites in efforts to associate with Village People and to interfere with Intervenor's exclusive rights to the social accounts and to amplify confusion and cause confusion and dissent among Village People fans.

60. In particular, Defendants encouraged Village People fans who visit Village People social media accounts to contact promoters to protest the return of Victor Willis as lead singer of Village People and to protest the booking of Village People featuring Victor Willis concerts.

61. As an additional example, Defendants use official Village People social media accounts to cause major dissent over a Village People featuring Victor Willis Australia tour. They informed fans with use of Village People official social media that they, the Sixuvus Village People are not performing; therefore fans should request a return of money for the purchase of Village People tickets.

14

62. Defendants used official Village People social media to speak with authority that they are the "real" and official Village People. But that Village People featuring Victor Willis is not; never mind that the Sixuvus Village People are not the singers of any of the Village People hits, but Victor Willis is the singer and co-writer of all the Village People hits.

63. Defendants then, with use of official Village People social media encouraged attendees en masse to request refunds of tickets purchased to see Village People's Australia Tour featuring Victor Willis. This created a hostile environment for the tour with numerous fans being misled to believe that somehow Village People was illegitimate.

64. As a result, numerous fans in Australia did request refunds in efforts to harm the concert tour there as directed and encouraged by the Sixuvus. None of this would have been possible and no harm would have come to Intervenor's business relations in Australia had the Sixuvus not continued their unlawful use of official Village People social media for purposes of interference.

65. The same tactics and hallmark of interference by the Sixuvus with use of, and encouragement of a handful of fans, continued well past Australia. The additional interference included contact with Village People show promoters' social media pages and venues, causing disturbances such as contrived or staged walk out of shows, and immediately demanding refunds and directed and encouraged by the Sixuvus defendants with use of certain Sixuvus fans.

66. These staged activates directed by the Sixuvus defendants also included, the writing campaigns to promoters, venues, and shows wherein a certain number of Sixuvus fans, would show up with knowledge and encouragement of the Sixuvus defendants for the sole purpose of interfering with Village People live performances, including but not limited to the following performances and shows that was interfered with by the Sixuvus defendants and their cohorts:

- The Streamy Awards;

15

- Westfield Century City;

- Ultimate Disco Cruise;

- Disney World Orlando;

- Beau Rivage Casino;

- Resorts Atlantic City;

- Golden Nugget Lake Charles;

- Seminole Casino Coconut Creek,

67. All of the above constituted interference by the Sixuvus defendants and their cohorts which cause disruptions to shows and caused harm to the Intervenor's business relations with these organizations.

68. The Sixuvus defendants, and each of them, knew that contractual relationships existed between Intervenor and the business or organizations listed above. Yet defendants sought to disrupt the relationship and intended to disrupt, and cause harm to Intervernor and her shows. Defendants actually did interfere and caused out right disruption of certain shows including the Texan Theatre show that, with the urging of defendants, breached their fully executed agreement with Intervenor. The Texan Theatre subsequently booked defendants group therein allowing *Village People featuring Ray Simpson to financially benefit and causing financial harm to Intervenor.

69. None of this interference and damage would have been possible without the Sixuvus defendants unauthorized use and access to official Village People social media and/or without unauthorized access to Village People verified Facebook page.

70. Simply put, the Sixuvus defendants and their cohorts made unauthorized use and access

16

to Village People social media accounts for which they had no right for purposes of association. The Sixuvus defendants commandeered verified Village People social media accounts for the sole purpose of bringing harm to the Village People brand through the airing of grievances with Village People fans over the termination of their Village People license. Some of whom were persuaded by the Sixuvus defendants to be sympathetic to the Sixuvus defendants plight.

71. Indeed, the Sixuvus defendants used official Village People social media to badger and create false impressions, and to direct fans to interfere with Intervenor's business relations by contacting venues to complain about booking, and to stage walk-outs at concerts while demanding refunds claiming they didn't like the show.

72. This elaborate **ruse** and campaign of interference conducted by the Sixuvus defendant will continue to be conducted by the Sixuvus defendants and their co-conspirators, absent restraint by the court. Intervenor will suffer irreparable harm unless the Sixuvus defendants aren't restrained by the court.

**FIRST CAUSE OF ACTION**
INFORCEMENT OF REGISTRANT'S
PROPRIETARY RIGHTS UNDER U.S.C. § 1114
(AGAINST ALL DEFENDANTS)

73. Intervenor repeats and re-alleges the allegations of Paragraphs 1-72. In intervention pursuant to U.S.C. § 1125(a), Intervenor joins each and every allegation in the complaint of Can't Stop Productions, Inc., (paragraphs 12-44) inclusive, as if set forth fully herein.

**SECOND CAUSE OF ACTION**
PASSING OFF AND/OR INTENTIONAL COPYING
(AGAINST ALL DEFENDANTS)

74. Intervenor repeats and re-alleges the allegations of paragraphs 1-73. Pursuant to U.S.C. § 1125, Intervenor is likely to be harmed by defendants' use of the Kings of Disco in association with the Village People mark (even descriptively); Intervenor is likely to be harmed by

17

defendants use of the Kings of Disco in association well known Village People trade dress or any portions thereof during live performances; Intervenor is likely to be harmed by defendants use of Kings of Disco in association with well known Village People imagery; Intervenor is likely to be harmed by defendants use of the Kings of Disco in association with well known, former and/or augmented Village People social media sites with LIKES or followers originally obtained as or by Village People, while defendants were licensees.

75. The aforementioned and other such uses of the Kings of Disco in  association with Village People will result in a likelihood of consumer confusion.

76. Defendants' actions likewise constitute use in commerce of a word, term, name or device and false designation of origin which is likely to cause confusion, or to cause mistake, or to deceive as to the origin, sponsorship, or approval of defendants' services in violation of 15 U.S.C. § 1125(a).

77. Because of defendants former long-term relationship with the Village People mark as licensees, defendants intentionally sought to capitalize on the mark as a direct result of their firsthand knowledge that the Kings of Disco enjoyed a long-time association with the Village People mark whilst defendants were still licensees; therein making defendants use of the term synonymous with Village People.

78. Defendants had prior knowledge of a public association of the Kings of Disco with Village People prior to their adoption and use of the associated term Kings of Disco.

79. Defendants would not use the term Kings of Disco but for their knowledge of the term's longtime association with Village People.

80. By virtue of the foregoing, Intervenor is entitled to a judgment that defendants' use of

"The Kings of Disco" in association with the Village People mark, even in a descriptive manner, will result in a likelihood of consumer confusion, justifying an injunction restraining use of the Kings of Disco in association with Village People for purposes of live performances and/or for purposes of association with Village People music; and any social media sites originally operated by defendants while a licensee Village People licensee and now couched as Kings of Disco; an award monetary damages to proven, costs, and attorney's fees if incurred.

## THIRD CAUSE OF ACTION
### Interference With Contractual Relations
### (AGAINST ALL DEFENDANTS)

81. Intervenor repeats and re-alleges the allegations of paragraphs 1-80. Sufficient allegations in the complaint supports a claim of interference under New York Law. That the Sixuvus defendants intentionally interfered in the contractual relations between Intervenor and Registrant by inducing Registrant to improperly breach its obligation to Intervenor that she is the exclusive licensee with no other being able to use or trade on the mark for purposes of live performances. By agreeing to allow a former licensee to purposefully capitalize on the Village People mark with use of the Kings of Disco, Registrant is denying Intervenor the same right afforded the Sixuvus as a licensee, to associate the Kings of Disco with Village People. The Sixuvus defendants intended to cause Registrant to breach the agreement and without justification.

82. Intervenor has suffered damages and continue to suffer damages resulting from the Sixuvus defendants' interference, and other interference, justifying an injunction and award in an amount sufficient to defer such further acts of interference.

## FOURTH CAUSE OF ACTION
### UNFAIR COMPETITION
### (AGAINST ALL DEFENDANTS)

83. Intervenor repeats and re-alleges the allegations of Paragraphs 1-82 inclusive, as if set

19

forth fully herein.

84. Defendants, and each of their acts set forth herein, constitute unlawful and/or unfair acts, and therefore constitute an unfair method of competition in violation of the common law of the State of New York.

85. Defendants' actions constitute passing-off and/or association of its services with and/or as those of Village People in contravention to mark's exclusive licensee. The actions constitute an unfair method of competition in violation of the common law of the State of New York.

86. By virtue of the foregoing Intervenor is entitled to a judgment that defendants' use of the mark in connection with "The Kings of Disco" is harmful to Intervenor, justifying an injunction restraining future violations, an award for damages in an amount to be determined, costs, and attorney's fees if incurred.

## **PRAYER FOR RELIEF**

WHEREFORE, Intervenor requests that judgment be entered as follows:

(a) That defendants, and each of their directors, officers, agents, employees, licensees, affiliates, members, any parent and subsidiary companies, attorneys and representatives and all those in privity with or acting under their direction and/or pursuant to their control, be enjoined and restrained, preliminarily and permanently from directly or indirectly:

(b) Using the VILLAGE PEOPLE mark for purposes of live performances; using the term Kings of Disco in association with VILLAGE PEOPLE, or any marks confusingly similar to VILLAGE PEOPLE or suggestive of Village People such as The Kings of Disco, in connection with live musical performances, or imagery;

(c) Performing any live acts likely to cause confusion, or use any service mark, trademarks,

20

names, words or phrases that's likely to cause confusion, to cause mistake, to deceive or otherwise mislead the trade or public into believing that The Kings of Disco are one and the same, or are in some way associated with VILLAGE PEOPLE; or that Sixuvus defendants use of the Kings of Disco in association with the Village People mark is with approval of Intervenor or Registrant; or that the services of the Sixuvus defendants are authorized by Intervenor or Registrant;

(d)  Use of well known Village People social media platforms or sites operated by defendants while licensees of the Village People mark (identified as Village People or Official Village People) now stylized as Kings of Disco; use of similar practice, including those complained of herein which tends to unfairly compete with or injure Intervenor, her business or the goodwill appertaining thereto as embodied in the mark, and to cease use of any associated Village People trade dress;

(e)  Interfering with Intervenor's use of the Kings of Disco;

(f)  That defendants, and each of their officers, directors, agents, employees, licensees, affiliates, members, any parent and subsidiary companies, attorneys and representatives and all those in privity with or acting under their direction and/or pursuant to their control, be required to deliver up for destruction all social media sites, merchandise, labels, signs, cartons, tags, boxes, papers, statements, invoices, advertising, promotional and any other materials bearing the Kings of Disco in association with Village People;

(g)  CANCEL THE KINGS OF DISCO MARK OR APPLCIATION for Fraud on the Trademark Office, or enjoin their **use** in association with the VILLAGE PEOPLE MARK;

(h)  That defendants be required to pay to Intervenor, in treble, compensatory damages for the injury sustained to her business pursuant to statute;

21

(i)  That the defendants be required to account to Intervenor for any and all gains, profits and advantages derived by them from the activities complained of herein, trebled pursuant to statute;

(j)  That defendants be required to pay to Intervenor the costs incurred by Intervenor in this action, together with her reasonable attorney's fees if any;

(k)  That Intervenor receive punitive damages in an amount sufficient to deter future similar acts; and such other and further relief as this Court shall deem just and proper, and;

(l)  Award Intervenor such other and further equitable and legal relief as this Court may deem necessary, just and proper.

**Dated:** March 27, 2020

KAREN L. WILLIS

INTERVENOR/PLAINTIFF

22