UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-----------------------------------x

CAN'T STOP PRODUCTIONS, INC.,

        Plaintiff,

       v.                                    17 Civ. 6513(CS)

                           TELEPHONE CONFERENCE

SIXUVUS, LTD., et al.,

        Defendants,

       v.

KAREN WILLIS, doing business as
Harlem West Entertainment,

        Intervenor.
-----------------------------------x

                               United States Courthouse
                               White Plains, N.Y.
                               June 25, 2020

Before:  THE HONORABLE CATHY SEIBEL, District Judge

**APPEARANCES**

**EISENBERG, TANCHUM & LEVY**
     **Attorneys for Plaintiff**
**STEWART L. LEVY**


**ADELMAN, MATZ, P.C.**
     **Attorneys for Defendants**
**SARAH MICHAL MATZ**


**KAREN WILLIS, Pro Se Intervenor**

1          THE DEPUTY CLERK:  Good afternoon, Judge.

2          This matter is Can't Stop Productions v. Sixuvus.  On

3     the line we have plaintiff's counsel, Mr. Stewart Levy, we have

4     for defendants Ms. Sarah Matz and the Intervenor, Ms. Karen

5     Willis.  Julia is on the line and Christina is on the line.

6          THE COURT:  Very good.

7          Good afternoon, everyone.

8          Let me remind you, if you speak, the first word out

9     of your mouth should be your last name.  We are on the record

10    and the reporter needs to know up front exactly who's speaking.

11    So don't say this is Stewart Levy for plaintiff.  Just say Levy

12    and then whatever it is you have to say so that she can get the

13    transcript right.

14          And for the sake of the reporter, we'll skip the

15    usual pleasantries and get right down to it.

16          I got a letter from Ms. Willis June 9th, docket entry

17    279, I believe requesting that I strike defendant's opposition

18    to her motion to intervene and strike the defendant's

19    cross-motion on the grounds that I don't have jurisdiction,

20    which I didn't really understand.

21          So my first question is, Ms. Willis, you better

22    explain what you believe is the problem with jurisdiction.

23          MS. WILLIS:  Okay.  Good afternoon, your Honor.

24          Your Honor, I'm not interested in going through the

25    motions here any longer.  Plaintiff and defendants have rather

1    upended and rendered intervention moot, futile, unless or until

2    the issue of the settlement of the claims in this case is

3    resolved now either through immediate dismissal of the case, as

4    requested by plaintiff and defendant, or by an order to show

5    cause why the case should not be dismissed in light of the

6    settlement and request for dismissal.  Now, unless that

7    happens, we don't get to intervention anyway.

8            So I think barring an order to show cause why the

9    case should not be dismissed, which would allow me an

10   opportunity, at least a first opportunity, to show why the case

11   should be dismissed, I don't think it's within the Court's

12   power, jurisdiction, to prolong the case in the face of a

13   settlement and request for dismissal unless, of course, the

14   Court knows exactly why the case should not be dismissed and,

15   therefore, sort of get on with it and deny, with prejudice,

16   plaintiff's and defendants' request for dismissal.

17           So that's really where we are here.  And so I think

18   that any type of opposition to intervention is futile.  It's

19   circular and must be stricken, must be stricken, because they

20   know that they have a request for dismissal here.

21           I have had a long talk with my husband's lead counsel

22   here and he has assured me, your Honor, that what Stewart Levy

23   stated in this letter and as well as what the defendants have

24   stated time and time again on the record, that there's nothing

25   to intervene in right now.  There really isn't.  And so the

1    only way I see now, your Honor, to intervene is I would have to

2    be successful at avoiding -- you know, avoiding their

3    settlement agreement, and I can't do it in the context of

4    what's happening right now.  Maybe, with an order to show

5    cause, I could start that process, but, you know, it's sort of

6    similar to what they did with the initial settlement that was

7    voided where I had to take an action to void the settlement to

8    show the Court why that settlement was not valid and then the

9    Court had to restore the case to the calendar.

10            But, finally, here, your Honor, they have sort of --

11   without my permission and knowledge, they're saying, hey, we've

12   settled the case; you have an actual request for dismissal and

13   order before you and unless that's dealt with or until that's

14   dealt with, we can't go anywhere.  If the case gets dismissed,

15   we don't get to intervention.

16            THE COURT:  I'm just as baffled as I was.

17            The settlement occurred months ago, and this issue

18   was raised, if I remember correctly, at our conference back in

19   February, and I forget how it was raised, but the question came

20   up of whether there is anything in which to intervene if the

21   plaintiff and the defendants resolved their differences, and,

22   you know, it's quoted in Ms. Matz' letter, I said the briefs on

23   the motion to intervene should include not only the usual

24   factors governing intervention, such as whether it should be

25   ^permissive or as of right "but also whether the fact that the

1   licensor has now released its claims means there's nothing to

2   intervene on." So that opportunity to address that issue has

3   come and gone. And although I will admit I haven't sunk my

4   teeth into the motion papers yet, apparently that's one of the

5   arguments defendants made and that has gone unopposed. So I

6   don't understand why I would now, four months later, set up a

7   whole second briefing schedule on an issue that we already

8   talked about.

9           So if what I'm hearing, and maybe I'm not hearing it

10  correctly, but if what I'm hearing is, Ms. Willis, you are not

11  interested in pursuing the motion to intervene, I think that

12  means everybody's walking away, and I'm perfectly happy to have

13  that done, but if what you're asking for is an opportunity now

14  to address an issue that I invited you to address in February,

15  the answer is no.

16          MS. WILLIS: Your Honor, no, I'm simply saying that,

17  in light of the settlement of the claims and in light of the

18  order, the only way I see to prevent that from occurring is to

19  show why. But, in any event, my -- if I were to show the Court

20  why -- or if I were in a position, for example, to show why it

21  should not be dismissed, even, you know, if I did it three

22  months ago, we don't get to that issue, your Honor, if the case

23  is actually dismissed. We don't even get to intervention

24  anymore.

25          THE COURT: Yes.

1          MS. WILLIS:  So I'm not in a position anymore.  I'm

2     not in a position.  I've had a good talk with my husband's

3     counsel.  I'm not in a position to stop this -- this -- you

4     know, this settlement as well as the request for dismissal.  I

5     can't stop it.  I don't see any grounds right now to do so.

6          THE COURT:  Well, the reason I didn't -- or the

7     reason why, you know, I didn't take any action on the

8     settlement is because you opposed it and asked me not to

9     approve the settlement or effectuate the settlement.  So we

10    waited and I said, fine, I'm not going to ram the settlement

11    down your throat until you've had a chance to be heard on the

12    issue of what effect it may have on your application to

13    intervene.  And that's what we spent the last four months

14    working on.

15         So I'm still not clear.  I've been holding off on

16    doing anything in relation to the settlement and now, frankly,

17    if I look back on February 6th, I think I was asked to sign a

18    proposed order.  And let me pull it up so that I can be clear

19    on what it says.  I was asked to sign a proposed order and at

20    that time, I think the very next day -- yes, the proposed order

21    is docket entry 262 and 260 and 261 were letters from you,

22    Ms. Willis, saying you heard this settlement is coming and you

23    think it's wrong and it ought to be held up and you're opposed

24    to me dismissing the case, and as a result, when we had our

25    conference on February 6th, I didn't dismiss the case and I

1    directed that the parties briefing address the issue.  And like

2    I said, I haven't sunk my teeth into what the parties said on

3    that issue, but motion papers were filed and opposition and

4    cross-motion was filed and one of two things is going to

5    happen.  Either I'll get to that motion in the ordinary course

6    or if, Ms. Willis, you're telling me that, based on discussions

7    you had with your husband's lawyer or your own research or

8    whatever, you no longer want to pursue intervention in this

9    case, then I'll deny your motion as moot and I'll deny the

10   cross-motion as moot and I'll enter the order of settlement,

11   although I will tweak it with respect to the bond, and we'll

12   all be done.  So which of those things do you want me to do?

13          MS. WILLIS:  So, your Honor, so that the record's

14   clear, I agree with most of it, but, so that the record is

15   clear here, I'm simply saying that I believe that I'm not in

16   the position -- based on the settlement before the Court right

17   now and based on the request for a dismissal, I don't believe

18   that I'm in the position to actually prevent that.  However,

19   for the record, I believe that the only way to sort of salvage

20   this situation is I would have to actually challenge at some

21   point, if I chose to do so, the settlement itself as being

22   invalid.

23          So there are two independent issues.  So, yes, your

24   Honor, I'm not -- I'm simply saying I don't think that I can do

25   anything.  It's moot.  My intervention is moot as far as I'm

1    concerned and I can only, I believe, challenge the actual

2    settlement itself first.  I have to do that first.  I have to

3    undo that settlement first, before you can get to anything

4    else.

5            So, yes, your Honor can do as it pleases here, as you

6    stated, but that's my position is that I'm not necessarily

7    saying that I'm going along with it.  I'm simply saying I don't

8    see how I can stop it right now.

9            THE COURT:  All right.  I'm not clear on what you

10   mean by trying to undo the settlement.  Right now what's in

11   front of me are two motions, which I'll deny as moot, and a

12   proposed order which says -- now I'm reading from docket entry

13   262-1.  It says -- I'll paraphrase -- the action, its claims

14   and counterclaims, pursuant to a settlement agreement dated

15   2-5-20, is hereby discontinued without prejudice and without

16   costs as between Can't Stop and what we've been calling the

17   Sixuvus defendants.  And it says, upon the Court discontinuing

18   the action, the clerk shall return the $50,000 bond.  I think

19   that's actually moot because I already ordered that all except

20   3,000 and change of it be returned.  And I guess the only --

21   and then the second thing it says in the order is the action is

22   dismissed with prejudice and each party shall bear its own fees

23   and costs.  So if I enter that, then the only thing left

24   percolating, and I imagine I can still adjudicate it, is

25   whether the bond -- whether the $3,520 which remains in the

1    bond should in fact be paid out to Ms. Willis.

2              MS. WILLIS:  Yes, your Honor.  I'm not releasing that

3    yet because we still have that before the Court of Appeals on

4    that issue and it will be decided I guess at some point.

5              THE COURT:  All right.  Didn't the Court of

6    Appeals -- I thought the Court of Appeals decided that issue.

7              MS. WILLIS:  No, your Honor.  I think you may be

8    confusing it with the fact that I initially filed an appeal and

9    then the Court of Appeals said, you know, it couldn't be that,

10   it had to be a writ of mandamus.  And so the writ is being

11   considered now.  It's on regular track right now.

12             THE COURT:  All right.  The last thing I have on the

13   docket from the Court of Appeals was, I think, that -- this is

14   on May 29th -- it's dismissing the appeal because there was not

15   a final order.  If that relates to the issue of the bond, we

16   can continue -- we can conclude the litigation on that and then

17   I'll issue a final order, and if Ms. Willis wants to appeal

18   from it or if the Sixuvus defendants want to appeal from it,

19   they can.

20             Let me ask Mr. Levy, do you have any problem with the

21   proposal that I enter your order, the proposed order, with item

22   number 1 tweaked and deny both motions as moot?

23             MR. LEVY:  No.  That's fine with us.  That's fine.

24             THE COURT:  And Ms. Matz?

25             MS. MATZ:  No, I don't believe we have any issue with

1    that.  There's just two things I would like to be in the order.

2    One is that, when you read it, and I'm assuming it's just a --

3    I apologize -- you were reading it wrong.  The first time, you

4    said without prejudice.  The order actually says with

5    prejudice.

6               THE COURT:  You're right.  It says with prejudice and

7    without costs.  So that's my mistake, yes.

8               MS. MATZ:  Yes.

9               And the only other thing is we want there to be just

10   something noted in the record that the motion to intervene was

11   withdrawn and, therefore, denied as moot.

12              MS. WILLIS:  No, that was not.  It's moot.

13              THE COURT:  Well --

14              MS. WILLIS:  The Court's already stated that.  It's

15   being denied as moot, basically.  That's my position.

16              THE COURT:  Well, if you're taking the position that

17   you have nothing to intervene in, which I gather is a change

18   from the position you took in the motion, I'll indicate that

19   it's denied as moot based on the proposed Intervenor's position

20   as expressed at this conference today.  I'll put it that way.

21              MS. WILLIS:  No.  It's based on the motion to -- for

22   dismissal and the settlement.  That's what that's based on.

23   It's based on that, your Honor, and nothing else.  It's moot,

24   but it's not based on what your Honor just stated.  It's based

25   on in light of the settlement as well as the order before the

```
1   Court.  So that the record's clear here.
2              THE COURT:  Well, I want to make sure it's clear
3   since I'm having trouble understanding.
4              What I propose to say is that it's denied as moot
5   based on your position as expressed today that the settlement
6   between plaintiff and defendants renders intervention moot.  Is
7   that fair to say?
8              MS. WILLIS:  It is, yes, yes.  I like that.
9              THE COURT:  All right.  I'll say that.  And then I'll
10  deny the cross-motion as moot in light of the denial of the
11  motion to intervene is moot.  And I'll enter the order, which
12  is document 262-1, just without subparagraph 1.
13             And then the last question is what we should do at
14  this point regarding the $3,250.  Let me just go back and
15  remind myself how we left that.
16             And, Julia, if you remember, feel free to remind me.
17             MS. WILLIS:  Your Honor, we still have to adjudicate
18  that.  The Court still maintains jurisdiction over that issue.
19  And again, it was going to resolve itself self anyway.  It's
20  going to resolve itself.
21             THE COURT:  I'm sorry.  I lost you after it's going
22  to resolve itself.
23             MS. WILLIS:  I'm sorry.  It's going to resolve itself
24  soon anyway, that 3000-some-odd dollars.  So either I will get
25  to keep it or it will go back to them.  We'll see which way it
```

1    goes here.  The Court still remains -- you know, maintains

2    jurisdiction over that issue, anyway.  It's an ancillary thing

3    here.

4        THE COURT:  Yes, I agree.  I'm just trying to

5    remember what I said when I ruled initially on that issue.  And

6    I said this 3,250 I'm hanging onto because it may be that

7    you're entitled to it, and I just can't remember what I said

8    about how we were ultimately going to determine that.  I guess

9    I was going to wait until the end of the case.  But you know

10   what I'm going to do?  I'm going to --

11       MS. WILLIS:  That's exactly what your Honor said,

12   that it would -- it was going to actually resolve pending the

13   end of the case; at that time, a determination would be made as

14   to whether or not I keep that amount, or even more, I guess.

15   If the Court feels, it could decide I get more.  But your

16   Honor, as it stands now, could decide that I get to keep that.

17   But, again, I see that as a very minor little ancillary thing.

18   I'm not going to let that --

19       THE COURT:  I agree with you, but loose ends need to

20   be tied up.

21       I'm just going to pull up my notes from that ruling.

22   I don't know if it's been transcribed yet.  Maybe it has.  It

23   may be that nothing further is required and I should just order

24   that the money go to Ms. Willis, but let me -- if I remember,

25   there were some open issues.

CHRISTINA M. ARENDS-DIECK, RPR, RMR, CRR
(914)390-4103

1          MS. WILLIS:  There's one other open issue and that is

2     my -- I think I put up a thousand dollars, something like that,

3     at some point, also, that has to be released, too.

4          THE LAW CLERK:  Hi, Judge.  I'm sorry for leaving you

5     hanging.  I'm having a slight technical glitch on my end, but I

6     will chime in as soon as I can.

7          THE COURT:  Okay.  I'm trying to find where I would

8     have -- where we would have hidden that ruling in this record.

9     There's so much -- not in the record, in our internal computer

10    system.  There's so much in the case.  I've got so many

11    folders.  I'm looking for my decision on the issue of the bond.

12    Let me just find the date.

13         Does anybody remember -- oh, yes.  February 6th I

14    ruled on it.  Oh, we have a transcript of it, so let me just

15    look at that.  That will be easier.  Just bear with me a minute

16    while I refresh my memory.

17         (Pause)

18         THE COURT:  Okay.  So I limited the recoverable costs

19    to those that arose from the operation of the injunction rather

20    than the costs of litigating it.  And there were two items from

21    the petition that seem to fit that category.  One said e-mails

22    with client and graphic artist on December 14th and another one

23    on December 15th said e-mails with client re fixing online

24    material.  The latter seems appropriate.  The former, e-mails

25    with client and graphic artist, I wasn't sure about because I

1    said that figure might have to be reduced because that line

2    item could include other activities unrelated -- or, no, I'm

3    sorry.  I'm misquoting myself.  What I said was that those

4    figures might have to be reduced because the line items could

5    include and at least one of them does include other activities

6    unrelated to graphic design or fixing online material.

7              THE DEPUTY CLERK:  Judge, this is Walter.  I just

8    e-mailed you the notes, Judge, from the ruling.

9              THE COURT:  All right.  I'm reading now from the

10   transcript.  You're a better man than I am if you could find

11   them on our computer.  Thank you.

12             So what I said was Intervenor is entitled to the

13   presumption of recovery only as to some fraction of the $3,520.

14   And then I said -- I went on to address the defendants'

15   argument that I can't determine that Intervenor was wrongfully

16   enjoined because there was no final decision on the merits and

17   because the final decision on the merits would only be made

18   after a full trial, not after a PI hearing.  It was too soon to

19   determine that the Intervenor was wrongfully enjoined.  I found

20   defendants showed a likelihood of succes, but I didn't make a

21   final adjudication.  And since the defendants had not yet been

22   given a full opportunity to present their case, the bond

23   recovery motion was denied without prejudice to renewal after a

24   final adjudication.

25             So now we're not going to have a final adjudication,

1    so maybe I'm wrong that I retain jurisdiction over that issue.

2        MS. WILLIS:  Actually, your Honor, I had a case on

3    that.  Actually, I think I saw a month ago the Court does

4    actually retain jurisdiction in the event that the case is

5    dismissed, actually.  I have the case.  I don't have it in

6    front of me, but, yes, I'm confident that the Court does.  But,

7    your Honor, you know, you decide it as you will here.  It's up

8    to you.

9        THE COURT:  Well, you know what I would suggest?

10        I don't know what your client is thinking, Ms. Matz,

11    but it seems to me that I could ask the parties to submit

12    authority on whether I can -- you know, about what I should do

13    with what remains in the bond given that we won't have a final

14    adjudication on the merits, but I'm going to make a suggestion

15    that you and Ms. Willis try to come to an agreement on her

16    retaining some, if not all, of that money.  It seems to me it

17    would cost less to do that than to litigate whether or not I

18    still have the ability to do anything with that money.  I'm

19    going to suggest that the parties agree that $2,000 of what

20    remains on the bond go to Ms. Willis and the remainder go to

21    the Sixuvus and that we all get on with our lives.

22        I know you would have to check with your clients, but

23    is that something you think you might recommend, Ms. Matz?

24        MS. MATZ:  I don't want to say whether I would

25    recommend it or not, just speaking candidly, your Honor, but

CHRISTINA M. ARENDS-DIECK, RPR, RMR, CRR
(914)390-4103

1     let me just talk about it with my client after this call.  And

2     might I propose that perhaps we touch base with the Court in a

3     few days or a couple days.

4                   THE COURT:  Sure.  Let's do this.  Let's hope that

5     you can resolve this with Ms. Willis.  If not along the exact

6     lines I suggested, something that will allow both sides to walk

7     away with their heads held high and will save everybody the

8     cost of litigating the issue of what I should do with that

9     money, which literally will cost more than what the amount of

10    money is.  Why don't you send me a letter, Ms. Matz, on June

11    30th telling me either you've resolved it with Ms. Willis or

12    setting a schedule, which hopefully you can agree upon, for

13    each of you to submit letters regarding what I should do with

14    that money.  And I won't close the case pending that one last

15    open item.  Or I'll note on the docket that I retain

16    jurisdiction only over that one open item.

17                   Does that sound like a plan?

18                   MS. WILLIS:  It's okay with me, your Honor.

19                   MS. MATZ:  That sounds good to us, your Honor.

20                   THE COURT:  All right.

21                   I'm really hoping that I'll hear that the parties

22    have resolved this one tiny outstanding matter and that this

23    litigation will end not with a bang, but with a whimper, which

24    is usually how it happens.  So I appreciate everybody's

25    clarifications of their positions today, and I'll look forward

1   to hearing from you on Tuesday.

2           Anything else we should talk about now?

3           MS. WILLIS:  Your Honor, the order of -- I have a

4   thousand -- I can't even really remember the amount anymore

5   that was -- I put up the bond -- have to order that release to

6   me, please.  I don't know the amount anymore.  It was an amount

7   that I put up.

8           THE COURT:  Why don't you -- I just, as I'm sitting

9   here, don't remember what exactly it was for, but if you

10  include it in -- the letter that I'll get from Ms. Matz on

11  Tuesday should be a joint letter with everybody's positions,

12  and if the parties agree to the disposition of that thousand

13  dollars as part of their conversation, great, and if they

14  don't, remind me what it was for and what each party proposes

15  that I do with it.

16          And maybe, Mr. Levy, I don't want to draft you as a

17  mediator, but maybe you can be helpful to both sides here, if

18  you so choose.  It would be (INAUDIBLE), of course.  And if you

19  can flag for me where on the -- you know, if you need to, in

20  that joint letter on Tuesday, flag for me where on this

21  substantial docket I'll find the relevant materials relating to

22  the thousand dollars.  But hopefully you can fold it into your

23  discussions about the 3,250.

24          All right.  So I'll say that I retain jurisdiction

25  only over I'll say the two bonds that were posted.

CHRISTINA M. ARENDS-DIECK, RPR, RMR, CRR
(914)390-4103

1           Okay.  Thank you all very much.  I hope everybody is

2    safe and healthy and remains that way.

3           MR. LEVY:  Before you go, if we want to order the

4    transcript of this, how do we do that now?

5           (Discussion off the record)

6           THE COURT:  Thank you all.  Take care.

7           MR. LEVY:  Thank you.

8           MS. MATZ:  Thank you.

9           MS. WILLIS:  Thank you.

10                              ----

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25